**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

*Office of Field Operations*

# INDUSTRY OPERATIONS MANUAL





*October 2017 Edition*

## October 2017 Revision of the IO MANUAL includes the following:

**IOI SAFETY and JUDICIAL ACTIONS**

Updated the Investigator Liability, by adding Paragraph 5 d. IOI Safety and Judicial Actions - When Federal employees (special agents or otherwise) are sued for damages for actions taken in the scope of their employment, the law provides appropriate protections. In the case of tort claims, the Federal Tort Claims Act provides for substitution of the United States as the defendant in the place of any individually named Federal defendant, thereby insulating the employee from personal liability.

If an IOI who during the course of an inspection used reasonable force to defend him or herself from an attack by the licensee, and who was later sued by the licensee, would be able to rely on having the United States substituted as the defendant in the case of tort claims, and to have a DOJ-provided legal defense (and indemnification) for any constitutional claims. There is no law, policy or precedent whatsoever for the expressed fear that an IOI would somehow lose his or her job in such a situation. However, if ATF/DOJ concluded that, the IOI in fact used unreasonable force (or instigated the fight or disruption); there may not be federal protection/DOJ representation. This limitation applies equally in the case of an SA who ATF/DOJ concluded used unreasonable force to effect an arrest.

An off-duty IOI, like any other person, of course still enjoys the privilege to use reasonable force to fend off a criminal attack. However, if lawsuits were to follow, he or she would be on his or her own, as would an off-duty agent. Unlike an IOI, an off-duty agent sometimes switches back into scope of employment, because he or she sees a crime and, as a law enforcement officer, intervenes. This would not occur in the case of an IOI, nor should it.

**MAJOR INSPECTION TEAM**

Added Paragraph 185 to include a section on the MAJOR INSPECTION TEAM (MIT). The MIT provides support and assistance to field divisions with complex firearms and explosives inspections involving large inventories, sites, and/or other factors. The MIT will concentrate ATF's investigative resources and expertise on inspections where there is a clear need for additional resources while minimizing the time IOIs are on the licensee's or permittee's premises during large-scale inspections.

To request MIT support, the DIO must submit an email at least 45 days prior to the anticipated on-site start date of the inspection to the DAD (IO) and MIT program manager in the Frontline Investigative Support Branch, Field Management Staff. The lead IOI and area supervisor will manage and direct the inspection, provide guidance to the MIT members, and oversee the MIT members during the actual inspection.

Field Operations will provide the funding for MIT activations, and all MIT supported inspections will be conducted in accordance with the procedures outlined in the IO Manual. For additional guidance and detailed information on the MIT program, please see "Major Inspection Team Operating Procedures and Guidelines."

## i-NOTE INCIDENT NOTIFICATION SYSTEM

The i-Note replaced the Significant Incident/Information Report (SIR), and ATF O 3114.1 provide guidelines and establish reporting protocols. IOIs will promptly complete incident notification for any significant, sensitive, or critical situations through their chain of command (field division executive staff) via the i-Note. The i-Note report narrative will be a concise, event driven, executive summary of the incident, and narrative space is limited to 500 characters.

A license revocation or denial does not automatically require that an i-Note report be generated. The creation and distribution of an i-Note in such cases will be at the discretion of the AS/DIO/ASAC/SAC.

A license fine, suspension, revocation, or denial i-Note should be filed only after the DIO has issued the final notice of revocation or denial and either the licensee or permittee files an appeal, or the time period for filing an appeal has elapsed. The i-Note should not be field early in the administrative action process, such as when the recommendation for denial or revocation is made.

Thefts of firearms from a licensee involving one or more firearms shall be reported. Thefts of firearms from a common carrier involving one or more firearms is required when ATF responds to the theft.

A significant loss of firearms (greater than 50), i.e., the discovery that firearms are missing without an apparent criminal cause such as discovery of an inventory shortage exceeding 50 firearms after reconciliation, shall be reported.

Explosives thefts, as well as attempted thefts, i.e., the actual breaking into a magazine or storage facility without taking any products, shall be reported.

A significant loss of explosives (greater than 250 pounds), i.e., the discovery that explosives are missing without apparent criminal cause shall be reported.

For additional guidance and further information, please refer to the ATF O 3114.4, i-Note Incident Notification System.

TABLE OF CONTENTS                                                                 Page

CHAPTER A.  ADMINISTRATIVE AND GENERAL

| | | |
|---|---|---|
| 1. | Bureau Mission and the IO Investigator's Role | 1 |
| 2. | Bureau Organization | 2 |
| 3. | The Industry Operations Inspection Program | 2 |
| 4. | Legal Authorities for Certain Investigator Actions | 2 |
| 5. | Investigator Liability | 3 |
| 6. | Reporting Motor Vehicle Accidents | 4 |
| 7. | Bribery Attempts | 6 |
| 8. | Conduct and Ethics | 6 |
| 9. | Travel Policy and Claims for Reimbursement | 7 |
| 10. | Carrying Firearms | 9 |
| 11. | Dress and Appearance | 9 |
| 12. | Itineraries | 9 |
| 13. | Driver's License | 9 |
| 14. | Traffic and Parking Citations | 9 |
| 15. | Care of Government-Owned and Leased Property | 10 |
| 16. | Vehicle Usage Log | 10 |
| 17. | NON-LE MONTHLY HTW TRANSPORTATION LOG | 10 |
| 18. | Transportation of Non-ATF Employees in ATF Vehicles | 10 |
| 19. | Vehicle Utilization | 10 |
| 20. | Suppressed/Fictitious Motor Vehicle Registration/Plates for POV | 12 |
| 21. | Telework | 12 |
| 22. | Senior Industry Operations Investigator | 12 |
| 23 – 30. Reserved | | 12 |

CHAPTER B. FIREARMS QUALIFICATION INSPECTIONS

| | | |
|---|---|---|
| 31. | General | 13 |
| 32. | Purpose | 13 |
| 33. | Statutory Requirements | 14 |
| 34. | Preliminary Inspection Procedures and Techniques | 15 |
| 35. | Abandonment of Application | 16 |
| 36. | Interview of Applicant | 16 |
| 37. | Correction of Application | 19 |
| 38. | Ownership and Control | 20 |
| 39. | Applicant's Premises | 21 |
| 40. | Security Considerations | 23 |
| 41. | Thefts and Losses | 23 |
| 42. | Environmental Information | 23 |
| 43. | Signature Authority | 24 |
| 44. | Review Procedures | 24 |
| 45. | Review Acknowledgement of Federal Firearms Regulations | 24 |
| 46. | Closing Actions | 25 |
| 47. | Issuance Unlikely | 25 |
| 48. | Referrals | 26 |
| 49. | Variance Requests | 26 |
| 50. | Reports and Recommendations | 27 |
| 51. – 60. Reserved | | 27 |

CHAPTER C. FIREARMS INSPECTIONS

| 61. | General | 28 |
| 62. | Firearms Disposition Emphasis Inspection Program | 28 |
| 63. | Issuance of Assignments | 29 |
| 64. | Planning Inspections and Gathering Information | 30 |
| 65. | Initiating Inspection | 35 |
| 66. | Interviewing Licensee | 37 |
| 67. | Conduct of Business | 38 |
| 68. | Internal Controls Review | 41 |
| 69. | Records Review | 41 |
| 70. | Inventory Verification | 48 |
| 71. | Armor Piercing Ammunition | 50 |
| 72. | Firearms and Ammunition Manufacturers | 50 |
| 73. | Importers | 51 |
| 74. | Collectors | 53 |
| 75. | Pawnbrokers | 54 |
| 76. | Gunsmiths | 55 |
| 77. | NFA Firearms | 55 |
| 78. | Discontinued Business | 56 |
| 79. | Follow up on Leads Developed during Inspection | 58 |
| 80. | Closing Actions | 59 |
| 81. | Theft or Loss Investigations | 62 |
| 82. – 90. Reserved | | 62 |

CHAPTER D. EXPLOSIVES QUALIFICATION INSPECTIONS

| 91. | General | 63 |
| 92. | Purpose | 63 |
| 93. | Safe Explosives Act (SEA) Requirements | 64 |
| 94. | Other Statutory Requirements | 64 |
| 95. | Preliminary Inspection Procedures and Techniques | 65 |
| 96. | Interview of Applicant | 66 |
| 97. | Correction of Application | 69 |
| 98. | Depiction of Applicant's Premises | 70 |
| 99. | Explosives Storage Magazines | 71 |
| 100. | Magazines Failing to Meet Minimum Standards | 72 |
| 101. | Conduct of Business and Regulations Review | 73 |
| 102. | Security Considerations | 75 |
| 103. | Environmental Information | 75 |
| 104. | Signature Authority | 76 |
| 105. | Closing Actions | 76 |
| 106. | Issuance Unlikely | 76 |
| 107. | Referrals | 77 |
| 108. | Variance Requests | 77 |
| 109. | Reports and Recommendations | 78 |
| 110. – 120. Reserved | | 78 |

CHAPTER E. EXPLOSIVES FULL INSPECTIONS

| | | |
|---|---|---|
| 121. | General | 79 |
| 122. | Purpose | 80 |
| 123. | Safe Explosives Act (SEA) Requirements | 81 |
| 124. | Inspection of ATF Magazines | 82 |
| 125. | Preliminary Inspection Procedures and Techniques | 82 |
| 126. | Team Inspections | 83 |
| 127. | Inspection Procedures | 83 |
| 128. | Interview of Licensee or Permittee | 85 |
| 129. | Conduct of Business | 86 |
| 130. | Safety Measures | 88 |
| 131. | Storage Examination | 88 |
| 132. | Unsafe Storage and Seizure of Explosives Materials | 92 |
| 133. | Records | 92 |
| 134. | Workback | 94 |
| 135. | Inventory Verification | 95 |
| 136. | Explosives Importers | 96 |
| 137. | Explosives Manufacturers | 97 |
| 138. | Black Powder Dealers | 97 |
| 139. | Fireworks | 98 |
| 140. | Explosive Pest Control Devices | 98 |
| 141. | Discontinued Business | 99 |
| 142. | Variance Request | 99 |
| 143. | Emergency Storage Request | 100 |
| 144. | Referrals | 100 |
| 145. | Closing Actions | 100 |
| 146. | Reports | 101 |
| 147. | i-Note Incident Notification System (formerly Significant Incident Report) | 101 |
| 148. | Investigations/Reporting of Theft/Loss | 101 |
| 149. | Tracing of Explosives | 101 |
| 150. – 160. Reserved | | 101 |

CHAPTER F. RELATED INSPECTION INFORMATION

| | | |
|---|---|---|
| 161. | Hazardous Duty Pay | 102 |
| 162. | ATF Magazines | 103 |
| 163. | ATF Measuring Equipment | 103 |
| 164. | Willfulness | 106 |
| 165. | Citing Inspection Violations | 107 |
| 166. | Collateral Inspections | 109 |
| 167. | Photocopying and Removing Records | 109 |
| 168. | FFLs or FELs/FEPs Videotaping Inspections | 110 |
| 169. | IO Investigators Videotaping Inspections | 110 |
| 170. | Operational Security | 110 |
| 171. | Inspections During Actual Business Hours | 111 |
| 172. | Inspection Report Format | 111 |
| 173. | Inspection Assignment Progress Reports | 111 |
| 174. | Referrals | 111 |
| 175. | i-Note Incident Reporting System | 117 |

| | | |
|---|---|---|
| 176. | Special Attention Flag (SAF) | 118 |
| 177. | Documentation of Significant Conversations | 118 |
| 178. | Restrictions on Release of GCA Information | 119 |
| 179. | Websites for IO Investigators | 120 |
| 180. | Acting Area Supervisor (AS) Guidelines | 120 |
| 181. | Business Structures | 120 |
| 182. | TSA Airport Explosives Magazine Inspection Program | 121 |
| 183. | Monitored Case Program (MCP) | 121 |
| 184. | Self-Reporting of Violation by FFL | 121 |
| 185. | Major Inspection Team (MIT) | 122 |
| 186. - 190. Reserved | | 123 |

CHAPTER G. N-SPECT

| | | |
|---|---|---|
| 191. | N-Spect | 124 |
| 192. | General Information | 125 |
| 193. | Violation Record | 129 |
| 194. | Recommendation Record | 130 |
| 195. | Referrals | 130 |
| 196. | Inspection Documents | 131 |
| 197. | Inspection Spreadsheets | 131 |
| 198. | Investigative Participants | 131 |
| 199. | Explosives Storage Locations | 131 |
| 200 | Related Inspections | 131 |
| 201. | Post Inspection Information (PII) Folder | 131 |
| 202. | Forms Explorer | 131 |
| 203. | Investigator Diary | 132 |
| 204. – 220. Reserved | | 132 |

CHAPTER H. STANDARD NARRATIVE REPORT GUIDELINES

| | | |
|---|---|---|
| 221. | General | 133 |
| 222. – 230. Reserved | | 133 |

CHAPTER I. INSPECTION SAFETY PROCEDURES

| | | |
|---|---|---|
| 231. | General | 134 |
| 232. | Firearms Inspections | 134 |
| 233. | Explosives Inspections | 134 |
| 234. – 240. Reserved | | 142 |

CHAPTER J. INTERNAL CONTROL GUIDELINES

| | | |
|---|---|---|
| 241. | Evaluation of Licensee's or Permittee's Internal Controls | 143 |
| 242. | Documentation and Review of Internal Controls | 144 |
| 243. | Computerized System | 144 |
| 244. | Sampling Methods | 145 |
| 245. – 250. Reserved | | 146 |

CHAPTER K. ALCOHOL AND TOBACCO DIVERSION – RESERVED

251. – 270. Reserved                                                    146

CHAPTER A. ADMINISTRATIVE AND GENERAL

1. BUREAU MISSION AND THE INDUSTRY OPERATIONS INVESTIGATOR (IOI) ROLE.

    a. ATF's mission statement reflects the intent of the laws and policies under its jurisdiction. This mission is subject to review and may be changed whenever the Congress or the DOJ adds new responsibilities or alters the priorities of existing ones. A statement of mission and objectives is published when such a change is made. ATF's current mission is to:

        (1) Reduce violent crime, prevent acts of terrorism, and protect our Nation.

        (2) Enforce Federal criminal laws and regulate the firearms and explosives industries.

        (3) Work directly and through partnerships to investigate and reduce crime involving firearms and explosives, acts of arson, and illegal trafficking of alcohol and tobacco products.

    b. To carry out these mission-related objectives, ATF's management develops long-range goals designed to keep pace with statutory changes, as well as changes occurring within the regulated industries. To meet short-term goals, field resources are concentrated to meet specific program objectives.

    c. The IOI workforce is ATF's investigative arm responsible for carrying out its regulatory mission. With limited staffing resources and increasing regulatory responsibilities, ATF focuses its resources on operations that have the greatest impact on reducing violent crime and protecting the public. This approach requires a high degree of analytical ability, judgment and resourcefulness on the part of the IOI workforce.

        (1) While carrying out ATF's various inspection programs, IOIs should use their own initiative, creativity, and judgment to uncover regulatory violations. An IOI should take an open-minded approach to all IO inspections, draw conclusions based on relevant and sufficient evidence, and guard against preconceptions and arbitrary opinions.

        (2) This manual, divided by specific program area, is designed to provide the IOI workforce with procedures to follow in preparing for and conducting firearms and explosives inspections.

    d. In addition to monitoring the activities of regulated industry members, the IOI must be constantly alert to possible violations of criminal law. IOIs may encounter violations that may warrant criminal prosecution. If so, they shall make a referral to the field division's Crime Gun Intelligence Center (CGIC) or to State or local law enforcement agencies (directed through the CGIC) as appropriate. Any disclosure of information to such officials must comply with all applicable laws, such as the Privacy Act, 5 U.S.C. § 552a; 18 U.S.C. § 1905 (relating to confidential information and trade secrets); the Right to Financial Privacy Act, 12 U.S.C. § 3401; and 26 U.S.C. § 6103 (relating to tax return information).

2. <u>BUREAU ORGANIZATION</u>.

   a. <u>Headquarters Organization</u>. The Director of ATF, in conformity with policies and delegations made by the U.S. Attorney General, establishes ATF's policies and administers its activities. The Deputy Director reports to the Director and is designated as the Chief Operating Officer for ATF. He or she is responsible for implementing the President's and the Director's goals and ATF's mission, as well as incorporating the principles of the National Performance Review into day-to-day management. Both the Director and the Deputy Director are responsible for ATF's enforcement of the Federal firearms, explosives, and arson laws, as well as its jurisdiction relative to the Federal alcohol and tobacco diversion laws. The Chief Counsel reports to the Director and eight assistant directors report to the Deputy Director.

   b. <u>Industry Operations (IO) (Field Operations)</u>. The Deputy Assistant Director for IO (Field Operations) is responsible for managing ATF's various IO inspection programs. This responsibility is delegated through the special agents in charge (SACs) to the directors of IO (DIOs).

3. <u>THE INDUSTRY OPERATIONS INSPECTION PROGRAM</u>. This manual is designed to provide the IOI workforce with a comprehensive guide to the inspection procedures and techniques for each of the affected IO program areas.

4. <u>LEGAL AUTHORITIES FOR CERTAIN INVESTIGATOR ACTIONS</u>.

   a. The IOI is authorized, as stated on the pocket commission, "to investigate, to require and receive information, and to perform such other duties as authorized by law."

   b. IOIs have the authority (during business hours) to enter the premises of a regulated industry member for the purpose of examining inventory and records. This authority is derived from <u>18 U.S.C. Section 923</u> (g) for firearms licensees and from <u>18 U.S.C. Section 843</u>(f) for explosives licensees and permittees.

   c. IOIs do not have the statutory authority to take an affidavit (sworn statement) in firearms and explosives matters. However, IOIs may take a written statement from a licensee or permittee in certain circumstances, such as to document the theft or loss of firearms or explosives. The written statement (oath-like statement) can be taken under the provision of <u>28 U.S.C. Section 1746</u>; unsworn declarations under penalty of perjury: Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

2

(1)     If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

(2)     If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

5.     INVESTIGATOR LIABILITY. If an IOI is sued in an individual capacity for actions performed within the employee's scope of employment, representation by DOJ may be requested. The steps necessary to obtain this representation are outlined in ATF O 1840.1A, Claims and Judicial Actions, subparagraph 10(b)(2). The Office of Chief Counsel has observed the following regarding claims brought against ATF employees:

a.     The Supreme Court has held that, although a suit can be brought against Government employees in their individual capacities for violation of an individual's constitutional rights, employees are shielded from liability if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. This qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.

b.     With respect to common law torts such as negligence (driving/investigation), malicious prosecution, libel, and slander, the Government employee is immune from liability under the Federal Tort Claims Act (FTCA). The FTCA provides that the exclusive recovery for such torts is against the United States Government.

c.     DOJ has adopted an indemnification policy under which it can indemnify an employee who suffers an adverse judgment or verdict, provided the following conditions are met:

(1)     The employee's conduct giving rise to the judgment or verdict was within the scope of employment.

(2)     Indemnification is in the best interest of DOJ.

(3)     Appropriated ATF funds are available.

d.     IOI Safety and Judicial Actions - When Federal employees (special agents or otherwise) are sued for damages for actions taken in the scope of their employment, the law provides appropriate protections. In the case of tort claims, the Federal Tort Claims Act provides for substitution of the United States as the defendant in the place of any individually named Federal defendant, thereby insulating the employee from personal liability.

In the case of constitutional (Bivens) claims, the DOJ by regulation provides for the defense and indemnification of any individually named Federal defendant, provided that the actions were in the scope of employment, that providing a defense or

3

indemnification is in the interests of the United States, and (in the case of indemnification) funds are available. In addition, while special agents (and other law enforcement officers) are privileged under law to use reasonable force to make arrests and execute warrants, everyone is privileged under law to use reasonable force to defend oneself from a criminal attack.

If an IOI who during the course of an inspection used reasonable force to defend him or herself from an attack by the licensee, and who was later sued by the licensee, would be able to rely on having the United States substituted as the defendant in the case of tort claims, and to have a DOJ-provided legal defense (and indemnification) for any constitutional claims. There is no law, policy or precedent whatsoever for the expressed fear that an IOI would somehow lose his or her job in such a situation. However, if ATF/DOJ concluded that, the IOI in fact used unreasonable force (or instigated the fight or disruption); there may not be federal protection/DOJ representation. This limitation applies equally in the case of an SA who ATF/DOJ concluded used unreasonable force to effect an arrest.

An off-duty IOI, like any other person, of course still enjoys the privilege to use reasonable force to fend off a criminal attack. However, if lawsuits were to follow, he or she would be on his or her own, as would an off-duty agent. Unlike an IOI, an off-duty agent sometimes switches back into scope of employment, because he or she sees a crime and, as a law enforcement officer, intervenes. This would not occur in the case of an IOI, nor should it.

*While laws vary somewhat between jurisdictions, the laws of every state recognize that a person confronted by a criminal assailant may use reasonable force in self-defense. Furthermore, to the extent that an IOI employed reasonable force in self-defense in response to a criminal attack occurring in the course of his or her official duties, the protections of the Federal Tort Claims Act and the program for DOJ legal representation, described in the ATF 1840.1A, Claims and Judicial Actions, para. 11, Judicial Actions Against the Bureau and/or Employees would apply to any resulting legal claims against the IOI.*

6. REPORTING MOTOR VEHICLE ACCIDENTS.

    a. If an IOI is involved in a motor vehicle accident while operating a Government Furnished Automobile (GFA) while on official business, he/she should refer to ATF O 1850.2F, Property and Fleet Management Program.

    b. IOIs are responsible for keeping copies of SF 91, Motor Vehicle Accident Report and SF 94, Statement of Witness, readily available in all vehicles used for official business, and for:

        **Note:** Forms can be found at http://www.gsa.gov/portal/forms/type/SF.

        (1) Operating a GFA in a safe and defensive manner and in accordance with all State and local laws.

        (2) Wearing a seatbelt at all times.

        (3) Reporting any allegations or knowledge of misconduct to the Office of Professional Responsibility and Security Operations (OPRSO)/Internal

Affairs Division upon awareness of such.

(4)    Reporting within 2 hours, to their first-line supervisor or designee, any accident or occurrence of damage involving a GFA.

(5)    Providing the supervisor with the information he/she requests in order for timely submission of the preliminary notification to the Office of Management, Materiel Management Branch, Property and Fleet Management Section (PFMS).

(6)    Providing complete and accurate information related to the accident on the SF 91 and associated forms.

(7)    Providing any witness(es) with the SF 94 for their voluntary completion and ensuring submission of such to the PFMS.

(8)    Notifying the local police department and obtaining a written accident/damage report.

**Note:** Police reports are required when reporting a vehicle accident AND for report of damage ONLY.

(9)    Employees are strongly encouraged to make every effort to obtain photographs of all affected vehicles (and other property) as well as the accident scene and surrounding area.

(10)    Submitting two estimates of property damage for the GFA.

**Note:** If actual repair costs exceed $3,000, consultation with the Logistics and Acquisition Division, Acquisition Branch prior to authorization of repairs is required.

(11)    Submitting a full motor vehicle accident report package in duplicate (hard copies) to the first-line supervisor within the required timeframes.

(12)    Immediately referring any potential claimant to division counsel.

(13)    Refraining from making written or oral statements to anyone other than the investigating officer at the scene.

(14)    Clearly explaining in section VIII of the SF 91 any failure to obtain police report, photographs, or witness's statement(s), as required by ATF O 1850.2F.

(15)    Entering into the Safety & Health Management Information System (WC / OSH MIS) any injury information associated with the accident.

c.    Area Supervisors (AS) are responsible for:

(1)    Fostering safe driving habits through employee awareness and appropriate accountability measures.

(2)    Electronically completing and transmitting to the Chief Property and Fleet Management Section (PFMS) the ATF F 1870.4, Supervisor's Preliminary

Accident and Damage Notification Report, on the same business day as
when the accident is reported by the employee. In cases where the
accident occurred after 4 p.m. or on a non-business day, the transmission
shall take place by 9 a.m. local time on the next business day.

(3)    Notifying the second-line supervisor of the incident within 2 hours.

(4)    Reviewing subsequent accident packages for completeness and accuracy
prior to signing and transmitting such to the field division for supervisory
signature. At the field division level, forms must be signed by the Special
Agent in Charge (SAC) or designee, Assistant Special Agent in Charge
(ASAC), Director, Industry Operations (DIO), or by the division chief for
employees assigned to Headquarters.

(5)    Designating personnel to act on behalf of the employee in order to meet
reporting requirements if the employee is incapacitated as a result of the
accident/incident.

(6)    Ascertaining possible misconduct on the part of the employee. This
includes, but is not limited to, asking the involved employee if he or she
consumed any alcohol, or if he or she was under the influence of any
controlled substance at the time of the accident.

(7)    Ensuring that any allegations or indications of misconduct involving GFAs
are reported to the OPRSO/Internal Affairs Division within two (2) hours of
the incident.

(8)    Ensuring that employees are made aware of the reporting procedures and
of the requirement to refer all claimants to division counsel. (See ATF O
1840.1A, Claims and Judicial Actions, paragraph 5 f.)

7.    BRIBERY ATTEMPTS. Any bribery attempt must be reported promptly (within 24 hours)
to the OPRSO, Personnel Security Branch (PSB) by completing ATF F 8620.51,
Notification of Reporting Requirement, and sending it to the PSB via email at
PSBVerification@atf.gov . Any doubt about whether an incident constitutes an act of
bribery should be resolved by consulting with the PSB. Upon receipt of such information,
the PSB will provide instructions regarding any further actions to be taken.

8.    CONDUCT AND ETHICS. ATF employees are subject to standards of conduct set out in
5 CFR Part 2635, Standards of Ethical Conduct for Employees of the Executive Branch,
5 CFR Part 3801, Supplemental Standards of Ethical Conduct for Employees of
the Department of Justice, ATF O 2130.1B, Conduct and Accountability and ATF O
2130.2A, Employee Ethics and Responsibilities, and ATF O 8610.1C, Integrity and
Other Investigations. Standards of conduct and ethics for IOIs include the following:

a.    ATF personnel shall refrain from acting in a manner that will give the appearance
of the following improprieties: (1) using public office for private gain; (2) giving
preferential treatment to any person; (3) impeding Government efficiency or
economy; (4) losing complete independence or impartiality; (5) making a
Government decision outside official channels; or (6) adversely affecting public
confidence in the Government's integrity.

6

b. ATF personnel may not solicit contributions from other employees for gifts for persons in superior official positions. Exceptions are discussed in 5 CFR Part 2635 subpart C and <u>ATF O 2130.2A</u>.

c. ATF personnel may never solicit anything of monetary value, including food and refreshments, from any person who has or is seeking official action from ATF or DOJ. ATF personnel generally may not accept anything of monetary value, including food and refreshments, from any person who has or is seeking official action from ATF or DOJ, but limited exceptions include:

   (1) Gifts, entertainment, and food offered an investigator where circumstances make it clear that obvious family or personal relationships, rather than business concerns, provide motivation for the gift.

   (2) Food and refreshments that may be accepted with prior appropriate approval if an employee is attending a conference, banquet, or seminar (not related to any investigation) as an official representative of ATF and the food and refreshments are part of the overall function and available to all participants.

   (3) Unsolicited promotional material of nominal intrinsic value.

d. ATF personnel may accept gifts from foreign governments in accordance with <u>ATF O 2130.2A</u>.

e. ATF personnel generally are prohibited from participating in any financial transaction resulting from information obtained through employment in DOJ. Employees should consult with the Office of Chief Counsel for any questions regarding the applicability or scope of this prohibition.

f. ATF personnel are prohibited from accepting employment (compensated or non-compensated) outside ATF, without first obtaining Bureau approval, as described in <u>ATF F 2131.1</u>, Request to Engage in Outside Employment.

g. ATF personnel may not obtain a Federal firearms license or explosives license. See <u>ATF O 2130.2A</u>.

h. With minor exceptions, ATF personnel are prohibited from using Government automobiles for other than official purposes. See <u>ATF O 1850.2F</u> and <u>ATF O 2130.1B</u>.

9. <u>TRAVEL POLICY AND CLAIMS FOR REIMBURSEMENT</u>. Refer to <u>ATF O 1500.3A, Temporary Duty (TDY) Station Travel Policy Manual</u>, for detailed information on travel policy and procedures. SF 1012 created in N-Spect based on diary entries will no longer be used.

DOJ Policy Statement 1400.04 (Temporary Duty Travel) requires mileage offset be taken when using a privately owned vehicle (POV) for official business. DOJ policy requires that reimbursement for local travel (within 50-mile radius) is limited to the individual's out of pocket expenses in excess of those normal-commuting expenses to

7

and from work. The policy does not provide exceptions for 50 percent or more telework or for pending fulfillment of a GOV request. For further information, see "Requirement for Mileage Offset Clarification, Chart and DOJ Policy Statement 1400.04".

Travel Voucher Worksheet (TVW) shall be used to claim reimbursement for mission related travel expenses that require lodging and/or per diem. Prior to travel, the IOI shall complete a Travel Estimate and Request for Document Control Number (DCN) in Microsoft Outlook (under Tools, Forms, Select Form) and send it electronically to the AS for approval, and then forwarded to the Funds Control Analyst or Administrative Officer (FCA/AA).

a.  The FCA/AA will enter the approved request into the Unified Financial Management System (UFMS), creating a Travel Commitment (TC) and obtaining a DCN. The FCA/AA notifies the traveler of the approval by e-mailing to the traveler the DCN reply. The IOI will need to print this approval for submission with the TVW.

b.  The SF 1164, Claim for Reimbursement for Expenditures on Official Business, is used to claim reimbursement for certain local expenses; e.g., cash expenditures for street car, subway, bus, taxi cab fares, or for limited use of a POV on a mileage basis for local travel. The FCA/AA will enter information in the financial system (UFMS) for processing and reimbursement.

In accordance with the ATF O 1500.3A, Temporary Duty (TDY) Station Travel Policy Manual POV mileage for local travel beyond the 50-mile radius, does not require offset and can be claimed on the SF-1164. Column (b) must be marked with code "C" – Other Expenses (itemized), and the accounting classification block at the bottom of the form must contain the entire accounting classification code plus (SOC) Code: 21015. For local travel within the 50-mile radius, offset must be taken and normal commuting expenses deducted. For this mileage, the SF 1164 column (b) must be marked with "A – Local Travel".

c.  Failure to include and submit all required information will result in return of the TVW or SF1164 and delay in the reimbursement. IOIs must include the following receipts with travel voucher submissions:

(1)  Common carrier fares such as airfare, rail, or bus. Identify travel service fee when applicable.

(2)  All lodging expenses (identify lodging taxes in the continental United States (CONUS).

(3)  Rental cars and all cash purchases of gasoline.

(4)  Registration fees.

(5)  Individual travel expenses $75 and above, such as parking, shuttle or taxi.

(6)  Baggage and excess baggage fees.

d.  Receipts must be retained for 6 years and 3 months. A copy of voucher and attachments must be retained for potential audit.

**Note:** If receipt(s) are lost and a duplicate cannot be obtained from the vendor, the IOI shall prepare a memorandum detailing the expense (item or service purchased, date, amount and vendor) and submit memo with the required documents for reimbursement. (Refer to <u>Lost Receipt Memorandum</u>). If an <u>SF-1164</u> is submitted, receipts must be provided for everything except for tolls and subway.

e.   When IOIs are traveling, and cause an alarm while undergoing the TSA explosives trace detection screening, the IOI should present their credentials and explain their duties to help clarify the possible cause of the alarm. IOIs can expect to undergo additional screening of their person and property to resolve the alarm. Such additional screening measures could include a pat down and additional property searches. IOIs are expected to remain professional and cooperative throughout all levels of the screening process.

10.   <u>CARRYING FIREARMS</u>.

a.   IOIs do not have authority to carry a firearm while on official duty. Statutory authority to carry firearms while on official duty has been assigned to the GS-1811 special agent and GS-1801 explosives enforcement officer (EEO) series. (See <u>ATF O 3020.1A</u>, Firearms and Weapons Policy, Chapter B.)

b.   If there are serious safety concerns regarding a particular assignment such that protection is deemed necessary, the IOI should request, through the AS, the presence of a special agent.

11.   <u>DRESS AND APPEARANCE</u>. IOIs are expected to present a professional appearance that reflects personal as well as Bureau integrity. Business attire is considered the normal dress for IOIs. Deviations from normal business attire may be appropriate in some instances; e.g., during a physical inventory. IOIs must wear ATF-issued clothing during explosives inspections, specifically while conducting explosives inventories and inspecting magazines or as appropriate when assisting law enforcement. IOIs shall wear ATF-issued 511 khaki pants and the black collared shirt with the ATF seal during firearms outreach events, including gun shows. Clothing with ATF identification should not be worn while off-duty or in public settings, such as restaurants. (Refer to Chapter I, Inspection Safety Procedures.)

12.   <u>ITINERARIES</u>. IOIs are required to keep their AS apprised of the location of their work and the nature of their duties in advance. Work assignments shall **always** be scheduled in the Government's best interest. Itineraries shall be submitted by prescribed form acceptable to the AS (i.e., electronic calendar, email, etc.)

13.   <u>DRIVER'S LICENSE</u>. Every IOI must maintain a valid State issued motor vehicle driver's license. If this license is revoked or suspended by the State motor vehicle authorities, this action must be reported immediately to the IOI's AS. Revocation or suspension of the IOI's motor vehicle driver's license may be grounds for ATF to institute administrative action against the employee.

14.   <u>TRAFFIC AND PARKING CITATIONS</u>. Traffic citations obtained while driving a GFA will be reported to the AS within 4 hours of receiving the citation. In each instance, the

Case 3:23-cv-00544   Document 1-5   Filed 05/26/23   Page 16 of 155 PageID #: 86

circumstances causing the citation will be reviewed by the AS. IOIs will immediately report to their AS if they have been charged with Driving Under the Influence (DUI)/Operating Under the Influence (OUI) and Driving While Intoxicated (DWI) - whether on or off duty. If the AS's review discloses evidence of employee negligence or abuse of authority, the AS will report the incident to the OPRSO for further investigation.

**Note:** The IOI is responsible for paying for all traffic and parking fines incurred while on official ATF business.

15. <u>CARE OF GOVERNMENT-OWNED AND LEASED PROPERTY</u>. IOIs have a responsibility to protect and care for all Federal property entrusted or issued to them. They must use the property for official purposes and operate such property in a safe manner. When required, IOIs will make all individually assigned property available for inventory or inspection. The IOI will immediately report all incidents of lost, damaged, destroyed, or stolen property to his or her AS. Improper care or use of Government property may subject the employee to monetary liability and/or disciplinary action. (Refer to <u>ATF O 1850.2F</u>, Property and Fleet Management Program.)

16. <u>VEHICLE USAGE LOG</u>. An <u>ATF F 1871.1</u>, Vehicle Usage Log is required to be used by IO investigators to document the use of GSA leased vehicles. This form ensures that an accurate accountability of the vehicle usage is being maintained by the IO investigator. This form also provides managers the ability to identify the operator during a particular time period, and may be beneficial should traffic citations or other events occur relating to the vehicle.

17. <u>NON-LAW ENFORCEMENT MONTHLY HOME TO WORK TRANSPORTATION LOG.</u> An <u>ATF F 1871.2</u>, Non- Law Enforcement Monthly Home-To-Work Transportation Log (Exhibit 19 of <u>ATF O 1850.2F</u>) is required to be completed by all non-law enforcement personnel authorized HTW/WTH transportation.

18. <u>TRANSPORTATION OF NON-ATF EMPLOYEES IN ATF VEHICLES</u>. Bureau personnel driving GFAs will provide transportation only to those persons whose presence is deemed essential to the successful completion of an official mission. This would normally be restricted to ATF employees but could include others; e.g., other Federal officers, State officers, local government representatives, industry members and their representatives.

19. <u>VEHICLE UTILIZATION</u>.

   a. If an employee requests a vehicle, ATF is required to provide one to him or her unless he or she is in training status. The GFA size should be similar to the Chevrolet Malibu or equivalent compact sedan model. Compact four-wheeled drive vehicles may be leased if warranted. All requested vehicles supplied by ATF should be the most fuel efficient and economical models available.

   b. An employee may be authorized to use his or her own POV instead of a GSA leased vehicle only with AS approval. However, it is more cost effective to use a GSA leased vehicle when mileage is over 12,500 miles per year. Federal travel regulations require that an employee be reimbursed at a reduced rate if he or she uses his or her own POV in lieu of an available GFA.

10

**Note:** DOJ Policy Statement 1400.04 requires mileage offset be taken when using a POV for official business, and reimbursement for local travel is limited to the individual's out of pocket expenses in excess of those normal commuting expenses to and from work. For further information see <u>Requirement for Mileage Offset Clarification, Chart and DOJ Policy Statement 1400.04.</u>

c.   If an IOI is assigned a Government vehicle and wants to store the vehicle at his/her residence, he/she must adhere to the following conditions:

   (1)   The vehicle shall only be stored within a 50 mile radius of the IOI's official duty station unless justification is provided to the DAD (IO).

   (2)   The vehicle will not be used for commuting between the IOI's residence and the area office on days when the IOI plans to work in the office all day.

   (3)   The IOI may not regularly begin and/or end his or her workday at the office since this negates the cost-saving benefits of storing the vehicle at the IOI's residence.

d.   Any IOI using a GFA must obtain a completed ATF F 1870.3 authorizing the use and storage of the vehicle at his/her residence. This form must be approved and signed by the SAC. (Refer to <u>Authorization to Use Government Owned or Leased Vehicle, ATF F 1870.3.</u>)

e.   All GFAs are assigned to the AS who, through DIO and through the SAC, <u>may</u> authorize the IOI to store the motor vehicle at his/her residence.

f.   The advantage or "break-even point" for using a GSA vehicle versus a POV depends upon the GSA mileage rate, the GSA rental rate, the POV mileage rate, and the number of miles driven. The GSA mileage and rental rate varies depending on the size and type of the vehicle.   A listing of the current GSA rental and mileage rates can be obtained from the Chief, Property and Fleet Management Section—these rates are subject to change throughout the year. It should also be noted that a GSA vehicle lease covers all gas and maintenance costs.  GSA vehicles are generally replaced every 3 years.

   (1)   The formula for determining the breakeven point (i.e., the number of miles driven per year beyond which it is more cost-efficient to drive a GSA vehicle instead of a POV) is as follows:

   (X miles driven) x (GSA mileage rate) plus (GSA rental rate x 12 mos.) = .555 x (X miles driven).

   (2)   For example, the breakeven point for a compact sedan (with a monthly rental rate of $172, and mileage rate of .23) would be about 6,600 miles per year:

   (6,600 miles)($.23)+ ($172X12) = (6,600 miles)($.555)
   ($1,518)+ ($2,064) = $3,663
   $3,582 = $3,663

11

GSA-Leased Vehicle versus POV Vehicle
GSA Lease is $81 less than POV

20. <u>SUPPRESSED / FICTITIOUS MOTOR VEHICLE REGISTRATION / LICENSE PLATES FOR POV USED FOR OFFICIAL BUSINESS</u>

For safety or security reasons, an IOI may deem it appropriate or necessary to apply for a suppressed or fictitious motor vehicle registration and/or license plates for their POV used for official business. While some State law permits the use of suppressed or fictitious motor vehicle registration and/or license plates by employees of Federal law enforcement agencies, an IOI must get approval from the AS and division management, both the DIO and SAC, prior to submitting such application.

21. <u>TELEWORK</u>.

a. <u>Prerequisite Training</u>. Field IOIs who wish to participate in telework must complete the Office of Personnel Management (OPM) on-line telework training course for employees (Telework 101 for Employees: Making Telework Work For You). Employees may access the course by logging onto LearnATF.gov. Immediate supervisors of employees who request telework participation are required to complete a similar course (Telework 101 for Managers: Making Telework Work For You). This course is also available at LearnATF.gov. (See <u>ATF O 2600.2C</u>)

b. <u>Application Procedures</u>. Participation in telework is voluntary. An employee who wishes to participate in a telework arrangement must initiate the request by completing and submitting the <u>ATF Telework Request Form 2221.1</u> to his/her immediate supervisor along with the certificate of completion of the OPM training course.

c. <u>Approval Procedures</u>. Participation in any form of telework must have documented supervisory approval.

d. <u>WebTA</u>. When preparing time and attendance for the pay period, IOIs must record time spent teleworking in WebTA using the appropriate transaction code from the drop-down menu.

22. <u>SENIOR INDUSTRY OPERATIONS INVESTIGATOR</u> - After five (5) years in grade as a GS-13 IOI, Investigators can pursue a Senior Industry Operations Investigator (SIOI) designation. SIOIs are expected to demonstrate professionalism, function as leaders in their division, and serve as role models for all IOIs, particularly to the newest IOIs. The SIOI designation marks a career achievement. This designation is earned by an employee's commitment to personal development and accountability as well as to the development of others in the overall execution of the mission. As such, those with senior designations would require enhanced credentials as "Senior Industry Operations Investigator (Regulatory). See <u>ATF O 2311.5A, Industry Operations Investigator Career Plan</u>, for SIOI specific requirements.

23. – 30. RESERVED

12

CHAPTER B. FIREARMS QUALIFICATION INSPECTIONS

31. GENERAL.

    a.    This chapter establishes guidelines and procedures for conducting firearms qualification inspections. Unless otherwise directed, all procedures contained in this chapter applicable to the applicant's operations must be followed. However, this Chapter is not meant to preclude the use of other inspection techniques that are necessary to accomplish the purpose(s) of the inspection, e.g., the Firearms Qualification Inspection Quick Reference Guide, may be used to assist in conducting firearms qualification inspections. Regardless of the other techniques implemented, the guidelines and procedures outlined in this Chapter must be followed.

    b.    All firearms inspections should be preceded by an opening conference with the industry member(s). The opening conference will provide the applicant or licensee with an explanation of the inspection process; the intended scope; an estimated timeframe; and any other information and resources needed. The opening conference is used to develop rapport with the industry member while confirming that ATF's presence is intended to assist and educate them in complying with Federal firearm regulations.

    c.    Qualification inspections are only conducted for original applications. Renewal applications are considered firearms (compliance) inspections and completed in accordance with the requirements in Chapter C, Firearms Inspections. The recommendation entered in N-Spect shall be in accordance with the current fiscal year's domain assessment.

    d.    Untimely renewal applications require that a new application be filed. In these instances, past compliance history is a factor to be taken into consideration when recommending approval or denial of the application.

32. PURPOSE. The purpose of a firearms qualification inspection is to:

    a.    Verify the accuracy of the application;

    b.    Ensure the application is for the proper type of license for the proposed business activity;

    c.    Ensure the applicant is qualified;

    d.    Determine if the applicant has premises from which to conduct business (See Section 39 in this Chapter, 27 CFR 478.11);

    e.    Determine the applicant's ability to comply with Federal law and regulations, as well as State and local laws;

    f.    Educate the applicant in Federal laws and regulations and compliance responsibilities as they relate to the proposed business activity;

13

g.   Minimize the possibility of firearms being obtained by prohibited persons;

h.   Reduce illegal diversion of firearms;

i.   Ensure the integrity of records systems (ATF Ruling 2016-1) to facilitate the tracing of firearms; and,

j.   Reduce violent crime and protect the public.

33.   STATUTORY REQUIREMENTS. All firearms licenses must be issued or denied within 60 days of ATF's receipt of a perfected application, 27 CFR § 478.47(c). The Federal Firearms Licensing Center (FFLC) must be notified of inspections that will exceed the 60-day period. The FFLC will not issue a license to an applicant prior to receiving a recommendation from the responsible area office. ATF is required by statutory requirements to issue a Federal firearms license (FFL) if:

a.   The applicant has submitted a properly executed application with the required photograph(s), fingerprint card(s), and correct fee(s);

b.   The applicant is 21 years or more of age;

c.   The applicant, including in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association, is not prohibited from shipping, transporting, receiving, or possessing firearms or ammunition;

d.   The applicant has not willfully violated the Gun Control Act (GCA) or its regulations;

e.   The applicant has not willfully failed to disclose material information or willfully made false statements concerning material facts in connection with the application;

f.   The applicant has premises from which he conducts business subject to license under the Act or from which he intends to conduct such business within a reasonable period of time, or (ii) in the case of a collector, premises from which he conducts his collecting subject to license under the Act or from which he intends to conduct such collecting within a reasonable period of time;

g.   The applicant certifies that:

(1)   the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premises is located;

(2)   within 30 days after the application is approved the business will comply with the requirements of State and local law applicable to the conduct of the business; and the business will not be conducted under the license until the requirements of State and local law applicable to the business have been met; and

14

(3)    the applicant has sent or delivered a form to be prescribed by the Attorney General, to the chief law enforcement officer of the locality in which the premises are located, which indicates that the applicant intends to apply for a Federal firearms license; and

h.    In the case of an application to be licensed as a dealer, the applicant certifies that secure gun storage or safety devices will be available at any place in which firearms are sold under the license to persons who are not licensees (subject to the exception that in any case in which a secure gun storage or safety device is temporarily unavailable because of theft, casualty loss, consumer sales, backorders from a manufacturer, or any other similar reason beyond the control of the licensee, the dealer shall not be considered to be in violation of the requirement under this subparagraph to make available such a device).

34.    PRELIMINARY INSPECTION PROCEDURES AND TECHNIQUES.

a.    Review the assignment, any special instructions, and references noted on the ATF F 5700.14, Assignment and Report;

b.    Review the ATF F 7 (5310.12), Application for Federal Firearms License, and required supporting documentation for completeness, accuracy, and proper execution;

c.    Query the Federal Licensing System (FLS) database and N-Spect to determine if the applicant had or has any other licenses or permits.  Check for special attention flags. Be alert for the applicant's association with previous or current administrative actions under other Federal firearms licenses;

d.    Review area office files, if any (applicant may currently hold other licenses or been a licensee in the past). Be alert for recent or ongoing criminal investigations of applicants or for persons previously associated with an administrative ATF action;

e.    Query N-Force for any open Criminal Enforcement (CE) investigations involving the applicant (refer to Chapter G, N-Spect);

f.    Request information from the division's Crime Gun Intelligence Center (CGIC), as necessary;

g.    If not already done by FFLC, query OpenFox to determine if responsible persons are prohibited or if there is any other information that may indicate a security risk. If requested by FFLC, check local law enforcement or court records or if a disabling conviction is suspected.

    **Note**: OpenFox is DOJ's portal for accessing National Law Enforcement Telecommunication Systems (NLETS) and National Crime Information Center (NCIC);

h.    Determine if there are State and/or local zoning ordinances that would prohibit or place limitations on the proposed business;

15

i.   If the applicant or location is a known security risk, contact the AS to determine the appropriate course of action;

j.   Determine the business structure (See Chapter F, Related Inspection Information); and

k.   Query the appropriate State agency (or agencies) for copies of qualification documents, such as partnership agreements and State registration documents.

l.   Generally, advance notification should be provided to the applicant for qualification inspections.

m.   The applicant should be contacted as soon as possible to arrange for an interview.

n.   Refer to Chapter I, Inspection Safety Procedures, for additional preplanning procedures.

35.   ABANDONMENT OF APPLICATION.

a.   If, after three attempts, the IOI is unsuccessful in establishing contact with the applicant, the IOI will mail the applicant a Notice of Abandonment by certified mail with a return receipt addressed to the IOI. The Notice of Abandonment must be generated in N-Spect and a copy included in the report package.

b.   If the applicant fails to respond to this notice within 30 days, the IOI must document this fact in the report, including the times, dates, and means used to attempt contact.

c.   The inspection will then be closed in N-Spect with a recommendation of "Application Abandoned" and notify the FFLC immediately.

36.   INTERVIEW OF APPLICANT.

a.   Qualification inspections generally take place only when the IOI meets face–to-face with an applicant. The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the applicant. The IOI will identify himself or herself by displaying their Bureau issued credentials.

**Note:** Credentials shall not be photocopied.

b.   If telephone contact is made in lieu of a qualification inspection, then an onsite inspection must be conducted within the next 12 months (telephone contact does not constitute an inspection). Telephone contact in lieu of onsite qualification inspection (face-to-face) shall only be utilized in extenuating circumstances and require AS justification and DIO approval. The justification and approval shall be documented in the PII Folder in N-Spect as well as in the narrative report.

16

c.  Using a valid Government-issued photo identification, verify the name of the responsible person(s) interviewed, date of birth and residence, and record the identification type and number. (For a definition of a responsible person, refer to Definition of "Responsible Person", dated December 22, 2005 and, Supplement to Memorandum "Definition of "Responsible Person" dated February 28, 2006, and the September 2011 FFL Newsletter.)

**Note:** Under certain conditions, an alien with a nonimmigrant visa can obtain an FFL. For example, a nonimmigrant alien who has a valid hunting permit may obtain an FFL provided the hunting permit remains current during the term of the license. An applicant who is not a United States citizen must have an alien number or admission number from the U.S. Citizenship and Immigration Services (USCIS).

d.  Verify that all responsible persons are listed on the ATF F 7 (5310.12). Determine the level of each responsible person's involvement in the business.

(1)  Conduct background (OpenFox) checks on any responsible persons added to the application. Query N-Force for any open CE investigations. Additional responsible persons must submit fingerprint cards (ORI-WVATF1100) and photographs. Check local law enforcement or court records if requested by the FFLC or if a disabling conviction is suspected. (Refer to Use of TECS/NCIC/NLETS and NICS in FEL Inspections for procedures in conducting background checks. While the above document was originally drafted to provide guidance in connection with explosives inspections, the same procedures should be followed for firearms inspections.)

(2)  Document in the inspection report if it appears that any responsible persons may be prohibited. The issuance of the license is contingent upon a successful background check conducted by the FFLC on all responsible persons.

(3)  Verify that the applicant has removed any prohibited individual(s) from a position in which he or she may receive or possess (constructive or actual) firearms.

**Note:** The FFLC, not the IOI, must notify the applicant that the individual(s) is prohibited. IOIs may not disclose the reason that an individual(s) is prohibited.

e.  Determine if the proposed activity requires a license and if the application is for the proper type of license.

f.  Inquire about how the firearms business will be conducted, how the firearms will be ordered, received, and sold. The IOI should consider the following:

(1)  A collector may acquire curios and relics at any location and make an occasional disposition of a curio or relic to enhance his or her collection. This license does not allow the holder to engage in the business as a dealer.

17

(2) Information concerning financial status, sources of supply, and the need for the enterprise, are not requirements for approval of an application.

(3) A franchise to distribute firearms or inventory on-hand would be an indication that the applicant intends to engage in business.

(4) How the applicant intends to obtain firearms for resale.

(5) Does the applicant have the proper tools for the proposed operations; e.g., gunsmithing?

**Note:** Current appropriation restrictions prohibit ATF from denying the issuance of an FFL for an applicant or a renewal of said license due to a lack of business activity provided that the applicant is otherwise eligible to receive an FFL. Whether the applicant intends to engage in business is irrelevant.

g. Determine if additional licenses will be required.

(1) Determine if the applicant intends to manufacture, deal in, or import National Firearms Act (NFA) weapons. If so, advise the applicant that the business operations will be subject to the Special Occupational Tax (SOT). Advise the applicant to contact the Internal Revenue Service (IRS) for an Employer Identification Number (EIN), if necessary.

(2) If the applicant intends to deal in black powder, advise the applicant that a Federal explosives license must be obtained. This fact should be noted in the narrative report. If feasible, also conduct an explosives qualification inspection and obtain the application and other appropriate documentation to avoid an additional field visit. (See ATF EF 5400.13/ 5400.16, Application for Explosives License or Permit, and Chapter D, Explosives Qualification Inspections).

(3) Determine if the applicant intends to manufacture, import or sell armor piercing ammunition. If so, advise the applicant of the Federal law and regulations pertaining to this activity (Refer to Chapter C, Firearms Inspections). Refer information regarding excise tax liability issues to the Alcohol and Tobacco Tax and Trade Bureau's (TTB) National Revenue Center (NRC). TTB.gov Official Site

(4) An importer may incur an excise tax liability on various firearms, including antiques or replicas of antiques, and ammunition imported and sold under 26 U.S.C. Section 4181. Refer the applicant to the TTB for any excise tax liability questions.

(5) Be aware of gunsmithing activities that may constitute manufacturing, requiring a type 07 manufacturer of firearms FFL and possibly incurring excise tax liabilities. (See ATF Rulings 2009-01, 2009-05, 2010-10 and 2015-1)

**Note:** Manufacturers of firearms and ammunition, as well as certain reloaders of ammunition under 26 U.S.C. Section 4181, may incur an excise tax liability for

18

firearms and ammunition produced and sold by them, including replicas of antique firearms. Manufacturers are required to file excise tax returns as soon as they begin operations. For specific return and deposit requirements, recommend that the manufacturer contact TTB.

h.  Determine if the applicant will import or export firearms and advise the applicant of the requirements of the Arms Export Control Act (AECA), if applicable. Determine the products to be imported or exported and the countries involved.

**Note:** A Federal firearms license is not required to export firearms.

i.  All manufacturers, exporters, and brokers of defense articles, defense services, or related technical data, as defined on the United States Munitions List, are required to register with Directorate of Defense Trade Controls (DDTC). This would include type 07, 10 and 06 firearms licenses. Registration is primarily a means to provide the U.S. Government with necessary information on who is involved in certain manufacturing and exporting activities. Registration does not confer any export rights or privileges, but is a precondition for the issuance of any license or other approval for export. Helpful hints on submitting a complete registration package with DDTC can be found at http://www.pmddtc.state.gov/registration. A complete registration package consists of a DS-2032, Statement of Registration, a transmittal letter, a legal documentation and other attachments as needed. The registration fees are $2,250 for 1 year and $3,500 for 2 years.

**Note:** ATF current policy is to advise applicants of DDTC requirements.

j.  Verify that the required State and/or local permits have been applied for or obtained. Using the Firearms Standard Narrative Worknote Workbook, document the permit or license numbers, or the date the application was filed with the State or local entity.

k.  If the applicant is a successor, advise the applicant to properly maintain the prior records or forward them to the ATF National Tracing Center (NTC), Out-of-Business Records Repository (OBRR) in Martinsburg, West Virginia.

l.  Verify that the correct business hours are listed on the application. If the applicant does not intend to maintain weekday business hours, inquire as to the applicant's availability for inspection purposes.

m.  Obtain any supporting documentation not submitted with the application; i.e., fingerprint cards, photographs, and identifying information for responsible persons. If the applicant has to pay additional fees because of a change in the type of licensee, the IOI will advise the applicant to contact the FFLC for guidance.

37.  CORRECTION OF APPLICATION.

a.  Review the application and proposed operations with the applicant or responsible person to verify that the information on the application is correct. Have the applicant initial and date any amendments to the application. If further

19

amendments are needed after the onsite inspection, the IOI shall forward the document to the applicant via fax, email or mail. The applicant will make the necessary amendments, initial and date them, and return the perfected application to the IOI.

b.   If it appears the applicant has willfully omitted or falsified any material information, the IOI will develop data on these willful misrepresentations and document them in writing to sustain denial proceedings. If willful omission or falsification is suspected, **do not** allow the applicant to make any changes or amendments to the application. Contact the AS. When IOIs develop information of a potential criminal nature, the matter must be referred to the appropriate CE office.

c.   In the case of a CE investigation of an applicant, IOIs shall discuss the matter with the AS. In most cases, IOIs must delay taking action on an application pending a CE investigation. Do not delay submission of the inspection report due to a pending criminal investigation but note that there is an ongoing investigation.

**Note:** The IOI and AS shall discuss the inspection findings with the DIO, Counsel, and appropriate CE personnel.

38.   OWNERSHIP AND CONTROL. The IOI shall verify ownership and control of the business by examining available documents (e.g., corporate documents, deeds, rental agreements, loan agreements, etc.). Pay particular attention to any indications of fronting or hidden ownership. (Refer to Indicators of Hidden Ownership, for areas to explore in identifying fictitious applications.) Some examples of indications of hidden ownership include:

a.   Application fee paid by someone other than the applicant;

b.   Applicant has little to no knowledge of the firearms industry or the laws and regulations, and cannot answer business questions;

c.   Writing on application appears to be completed by more than one individual (i.e., signature is different than other parts of applications);

d.   Lease agreement including names other than on the application would indicate an undisclosed interest or share in the business;

e.   Same business premises as a former FFL who had a license revoked, surrendered in lieu of revocation, former applicant who was denied, present licensee under indictment or with revocation or denial proceedings;

f.   Applicant is a successor to or connected with (e.g., family member, responsible person, etc.) a former FFL who had a license revoked, surrendered in lieu of revocation;

g.   Last name of the applicant is the same as a former licensee, former applicant, or

20

present licensee under indictment or with revocation or denial proceedings.

39.   APPLICANT'S PREMISES.

a.   Determine if the applicant has premises from which to conduct the proposed business within a reasonable amount of time (refer to 18 U.S.C. Section 923 (d)(1)(E)).

   (1)   The premises must be a permanent location where the applicant intends to operate the firearms business, maintain the required firearms records, and where the firearms license will be posted.

   (2)   The premises must be controlled by the applicant and accessible to ATF IOIs for inspection purposes. Notify the applicant of right of entry and advise the applicant that the records, inventory, and premises are subject to inspection.

b.   Determine if the applicant owns or rents the premises. If the applicant does not own the proposed business premises, review the lease or rental agreement to determine if the proposed business activity violates the agreement. If the proposed business activity is not clearly stipulated in the agreement, the IOI can ask the applicant to contact the property owner and secure a letter to ensure the proposed business activity is permissible and not in violation of the agreement. As needed, the IOI can contact the property owner to verify or authenticate the letter or information but only after the applicant has been given the opportunity to secure any additional information from the property owner.  Document all contacts and contact information in the narrative report, and include any submitted letter with the inspection report.

c.   ATF generally will **not** issue a firearms license for the following types of premises:

   (1)   Military installations where no permission to operate a firearms business has been granted, in writing, by the base commander;

   (2)   Hotels or other transient types of residential property where the applicant has no continuing interest in the property;

   (3)   The property owned by a third party where the applicant is merely a guest without control over the property and does not have clear authorization from the property owner to conduct a firearms business at the location (e.g., the home of a parent or relative);

   (4)   Some forms of public housing where the tenants occupy the premises under rigid restrictions against use of the property for conducting a firearms business. (Public housing in particular can present a problem since it can include everything from subsidized rent for commercial rental property to temporary shelters. Who controls the premises and its accessibility to ATF IOIs for inspection purposes must be established in determining the premises' suitability. The Department of Housing and

21

Urban Development (HUD) should be contacted to assist in this determination.

**Note:** While the operation of a licensed firearms business within a school zone creates challenges, such as the proper possession and transportation of firearms on public streets to and from the business within the school zone, a licensed firearms business can be lawfully conducted on private property within 1,000 feet of a school.

d.   Determine if the premises is within a restricted zoning area.

**Note:** Provisions of the Violent Crime Control and Law Enforcement Act of 1994 require applicants to comply with State and local law within 30 days of issuance of the FFL.

(1)   If an applicant's premises is within a restricted zoning area, offer the applicant options such as determining whether the applicable jurisdiction would issue a variance for the proposed activities or withdrawing the application until the zoning issue is resolved.

(2)   If the inspection discloses that the applicable jurisdiction does not enforce their own zoning restrictions for firearms businesses, Federal firearms licenses will usually be issued.

(3)   If an applicant's premises fall within 1,000 feet of a school, advise the FFL of the specific means by which they can ensure that their customers are not in violation of 18 U.S.C. Section 922(q) (e.g., firearm must be unloaded and in a locked container or locked firearms rack on a motor vehicle, customer possesses a valid State license or permit to carry a firearm, etc.)

e.   Internet Firearms Business – Based on previous rulings and court cases, ATF's policy is that a business need only be accessible to the particular clients the business is set up to serve, whether or not those clients actually come to the premises. They need not be open to the general public, and ATF will not deny a license on the basis that they do not constitute a "business premises."

A firearms dealer may lawfully conduct an internet only type of firearms business without physically transferring firearms at the licensed premises, assuming zoning restrictions do not disqualify this limited form of business. If the zoning restrictions only apply to "foot traffic" for example, further investigation may be needed to determine if the particular internet business would be acceptable. Where business may lawfully be conducted from the premises, a license should be issued if the applicant otherwise meets licensing requirements.

f.   Primarily Gun Show Business Only – ATF's policy is that licensees may lawfully conduct business primarily at gun shows whether or not they transfer firearms at their licensed premises, provided that the licensee maintains a business premises at which ATF can inspect records and inventory, and local zoning restrictions do not prohibit this limited form of business.  See memo dated February 21, 2017 titled "Federal Firearms Licenses for Dealers to Primarily Conduct Business at Gun Shows" from DAD (IO).  (See also Important Notice to

22

Dealers and Other Participants at this Gun Show <u>ATF I 5300.23A</u> for guidelines regarding permissible activities at gun shows.)

40. <u>SECURITY CONSIDERATIONS</u>. If the applicant intends to maintain an inventory of firearms, determine if security measures will be implemented to prevent theft. Also, the IOI shall:

    a.    Recommend that the applicant conduct regular inventories. IOIs can refer applicant to <u>ATF P 5380.2 How to Conduct Firearms Inventory</u> to advise them of the proper procedures in conducting firearms inventory.

    b.    Evaluate the applicant's procedures for ordering, receiving, distributing, and storing firearms to determine whether the applicant's controls ensure that operations will be conducted in accordance with Federal law and regulations, are properly reflected in the required records, and provide for the safety and security of the firearms. Discuss with the applicant any weak internal controls and recommend corrective action. (This is voluntary when not specifically covered by a regulation.) For specific security measures to help FFLs safeguard their firearms refer to <u>ATF P 3317.2</u>, Safety and Security Information for Federal Firearms Licensees, available though the ATF Distribution Center.

    c.    Advise the applicant to report any suspicious activity to the local law enforcement authorities and to ATF by calling 1-800-800-3855.

41. <u>THEFTS AND LOSSES</u>. IOIs shall advise the applicant of the following action to be taken in connection with the theft or loss of firearms:

    a.    Report any theft or loss of firearms within 48 hours of discovery to ATF by calling 1-888-930-9275. Written notification also must be provided to ATF by completing <u>ATF EF 3310.11</u>, Federal Firearms Licensee Firearms Inventory Theft/Loss Report as required by <u>27 CFR 478.39a</u>.

    b.    Report the theft or loss of firearms to local law enforcement authorities within 48 hours of discovery; and,

    c.    Report the theft or loss of NFA firearms immediately to the National Firearms Act Branch, as required by <u>27 CFR 479.141</u>. Recommend that the theft or loss also be reported to the local ATF office.

    d.    When a theft or loss of firearms is discovered, recommend that the applicant take a complete inventory. Be sure to notify him or her that this is a voluntary procedure.

    e.    Enter "stolen" or "missing" as appropriate, the date of theft or loss, and the ATF Incident Report number in the disposition column of the acquisition and disposition (A&D) record.

    f.    Retain copies of the written notification (e.g., <u>ATF EF 3310.11</u>, as well as the local law enforcement agency report) to serve as documentation of the incident.

42. <u>ENVIRONMENTAL INFORMATION</u>. In accordance with <u>33 U.S.C. §1341</u>, <u>ATF F 5000.29</u>, Environmental Information and <u>ATF F 5000.30</u>, Supplemental Information on

23

Water Quality Considerations are required to be included with the ATF F 7 (5310.12) (Form 7) only for those applicants/licensees whose activity may result in a discharge into navigable waters. The determination of whether the forms are required is the responsibility of the applicant, but may be verified by ATF during the qualification or compliance inspection or other times. Not all applicants will need to submit the forms. Generally, the forms will be required for manufacturers and only if the activity may result in a discharge into navigable waters. If applicable, the forms will be collected by field office investigators during the inspection. The applicant may face consequences for non-compliance. Once an applicant has provided these forms to ATF, they must maintain current and valid forms with the ATF or risk revocation under 18 U.S.C. §923(e). However, these forms are still required for a manufacturer of explosives.

43. SIGNATURE AUTHORITY. The IOI will obtain documented signature authority, if necessary. Documented signature authority for the application is not necessary if the signer is identified in the application as a corporate officer, corporate general manager, partner, or as the owner (sole proprietor). Documented signature authority (i.e., appropriate corporate documents disclosing the person's authority) is required for any other person to sign the application or to represent an applicant or licensee in administrative conferences or hearings to sign correspondence, or to receive information on behalf of the applicant or licensee. Documented signature authority is not required for a licensee's employee (e.g., salesman, clerk, etc.) to execute the ATF F 4473, Firearms Transaction Record, or other required records.

44. REVIEW PROCEDURES. Review procedures for detecting straw purchases (refer to Diversion Indicators) and advise applicant to contact ATF if there are questions about suspicious transactions.

45. REVIEW ACKNOWLEDGEMENT OF FEDERAL FIREARMS REGULATIONS. Review the Acknowledgment of Federal Firearms Regulations with the applicant (see Chapter H, Standard Narrative Report Guidelines). Have the applicant sign and date the acknowledgement. Maintain a signed copy of the acknowledgment in the area office file and upload it into N-Spect. Provide the applicant with ATF P 5300.15, FFL Quick Reference and Best Practices Guide. If the applicant refuses to sign the Acknowledgment form, document the applicant's refusal in the inspection report. Review in detail the following:

   a. Right of entry for ATF officers to business premises and records for the purpose of conducting a compliance inspection;

   b. Requirement to respond to ATF requests for gun tracing information by telephone within 24 hours;

   c. Requirement to report thefts or losses of firearms to ATF within 48 hours of discovery;

   d. Sales should only be made from the licensed premises, except for gun shows or events pursuant to 18 U.S.C. Section 923(j) and 27 CFR 478.100;

   e. Sales or deliveries between licensees;

   f. Proper procedures for renewal;

24

g.      Proper procedures for reporting changes to the license and discontinuance of the business, including disposition of the business records;

h.      Proper preparation and filing of ATF F 4473;

i.      Procedures for reporting sales from a personal firearms collection;

j.      Proper completion of the A&D record;

k.      Recognizing and avoiding straw purchases;

l.      Proper reporting of multiple sales of handguns when a sale is made involving two or more handguns within a 5-business day period;

m.      The 20-year period for record retention (5-year retention period for transfers not made, refer to 27 CFR 478.129);

n.      National Instant Criminal Background Check System (NICS) requirements, how to enroll with NICS, or the State point-of-contact, when and how NICS checks are conducted, time limits on NICS checks, valid NICS exemptions, and NICS delays; and

o.      Out-of-Business (OOB) procedures.

46.     CLOSING ACTIONS.

a.      Hold a closing conference with the applicant.

b.      Provide the applicant with the address and telephone number of the local ATF IO and CE offices.

c.      Advise the applicant that publications and forms can be ordered via the ATF Internet at www.atf.gov or by calling the ATF Distribution Center.

d.      Advise the applicant that information regarding Federal firearms laws and regulations can be obtained by visiting the ATF Internet site at www.atf.gov and encourage the applicant to sign up to receive firearms industry news updates.

e.      Provide suggestions for internal control reviews, to include conducting regular inventories.

f.      Discuss the need to train employees who will be handling firearms and/or records with regards to appropriate conduct of business and Federal firearms regulations. Further, explain that violations of Federal law committed by employees acting on an FFL's behalf will result in a violation against the licensed business.

47.     ISSUANCE UNLIKELY.

a.      If circumstances indicate there is an absolute bar to issuance of a license, obtain the necessary documentation to support the denial.

25

b. If issuance appears unlikely, advise the applicant of the reasons why the application may be denied and discuss voluntary withdrawal option, unless such action could compromise a pending criminal investigation or it appears that the applicant has willfully omitted or falsified any material information (Refer to 27 CFR 478.71).

c. Withdrawal of Application. A withdrawal of an application must be voluntary. If the applicant wishes to withdraw the application, the IOI will have the applicant sign and date a withdrawal letter, which is available in N-Spect. The IOI should advise the applicant that the FFLC will be notified and the license fee will be refunded if the application is withdrawn.

d. Relief from Disabilities. If requested, the IOI may advise the applicant on how to apply for relief from Federal firearms disabilities. However, current appropriation restrictions prohibit the expenditure of funds from ATF's appropriations for investigating or acting upon relief applications **from individuals.** Check with the AS or Counsel for the status of this provision.

48. REFERRALS. Any referrals to ATF CE and other Federal, State, and local agencies will be made by IO in accordance with Chapter F, Related Inspection Information, and Chapter G, N-Spect.

49. VARIANCE REQUESTS. Requests for variances from the requirements of regulations must be submitted in accordance with 27 CFR 478.22. Except for firearms marking variances, all variance requests must be prepared in letter form, from a responsible person, and be addressed to the Chief, Firearms Industry Programs Branch (FIPB). The FIPB will review and respond to those variance requests. (See ATF Ruling 2016-1 for alternate recordkeeping requirements.)

The variance request must specifically describe the proposed alternate method or procedure and shall set forth the reasons for it, as required by 27 CFR 478.22(a)(3). The licensee must demonstrate good cause for the alternate method or procedure [478.22(a)(1)]. The alternate method or procedure must be within the purpose of, and consistent with the effect intended by, the specifically prescribed method or procedure and that the alternate method or procedure is substantially equivalent to that specifically prescribed method or procedure [478.22(a)(2)]. The alternate method or procedure will not be contrary to any provision of law and will not result in an increase in cost to the Government or hinder the effective administration of this part [478.22(a)(3)].

Firearms marking variance requests must be prepared in letter form or by completing the ATF F 3311.4, Application for Alternate Means of Identification of Firearm(s) (Marking Variance) from a responsible person, and submitted to the Firearms Technology Industry Services Branch (FTISB) formerly Firearms Technology Branch (FTB) at marking_variances@atf.gov.

a. The applicant should provide the following:

(1) Name, address, license number, telephone number, and email address of the person making the request; and

26

(2)    Any other information that could assist ATF's decision with the request.

b.    Firearms and Ammunition Technology Division through FTISB has final decision making authority over marking variance requests. Firearms and Explosives Industry Division through the FIPB has final decision making authority over all other variance requests. IOIs may provide their recommendation for variances via a memo, channeled through their AS & DIO. A copy of the variance request shall be maintained in the area office file. IO field personnel do not have the authority to issue any variance approval letters. The original variance request and the approval letter will be maintained by the Chief, FTISB for marking variances, and by the Chief, FIPB for all other variances.

c.    A response written by FIPB to approve or deny the variance request will be first forwarded to the applicable DIO and AS. FIPB will wait 3 working days before sending the response to the industry member to allow the DIO and AS to express any concerns regarding the response to either approve or deny the variance. If the variance is approved, FIPB will outline the conditions of the variance for the applicant. If the variance is disapproved, FIPB will advise the applicant as to why the variance cannot be granted. The variance request and the response by FIPB will be maintained by FIPB.

**Note**: Only approved variances will be sent to the Chief, FFLC at their request.

50.    <u>REPORTS AND RECOMMENDATIONS</u>.

a.    The IOI shall write a narrative report and make a recommendation on ATF F 5700.14. The report and attachments will be prepared and assembled in accordance with Chapter H, Standard Narrative Report Guidelines.

b.    The IOI shall ensure that all pertinent information received during the application process is included in the narrative report to verify the accuracy of the application and ensure that any issues that could cause problems or concerns for future compliance inspections are fully documented.

51. - 60.  RESERVED

27

CHAPTER C.  FIREARMS INSPECTIONS

61.  <u>GENERAL</u>. This chapter establishes guidelines and procedures for conducting firearms inspections of Federal firearms licensees. Effective FY 2013, the Full Firearms Inspection has been consolidated with the FIREARMS DISPOSITION EMPHASIS INSPECTION PROGRAM, hereafter referred to as DE inspections. All firearms compliance inspections shall now be DE inspections. DE inspections require 100% inventory verification and 100% ATF Fs 4473 review.

**Note:** Theft/Loss and Special Request inspections are not DE inspections. Renewals are considered to be low priority and should not be conducted without a compelling reason, such as renewals flagged in FLS, as requested by the AS, and those requiring inspection prior to renewal.

Firearms inspections are conducted for any of the following reasons and may focus on one or more of these specific areas.

a.  Detect and prevent illegal diversion of firearms by FFLs;

b.  Determine if a licensee is complying with Federal laws and regulations;

c.  Ensure the integrity of the required records in order to facilitate firearms tracing;

d.  Detect and prevent the possibility of firearms being obtained by prohibited persons and straw purchasers (refer to <u>Diversion Indicators</u>); and

e.  Educate the licensee in Federal firearms laws and regulations as they relate to the business activity.

62.  <u>FIREARMS DISPOSITION EMPHASIS INSPECTION PROGRAM</u>

a.  The DE inspection program is a strategy to detect and prevent the diversion of firearms from legal commerce. The purpose of the DE inspection is to manage IO resources efficiently and effectively, to identify, disrupt and prevent illegal firearms trafficking. ATF firearms trafficking investigations identified straw purchasers, unlicensed sellers and corrupt FFL's as being responsible for diverting approximately 80 percent of the recovered firearms to the illicit marketplace. Stolen and illegally obtained firearms are recovered from a wide variety of sources, violent crime scenes, narcotics traffickers, and even from children at schools. Traffickers play a significant role in making illegal firearms available to those with criminal intent. ATF's statutory authority to regulate the firearms industry uniquely positions IOIs to identify illegal or structured purchases or sales that occur at the retail level and to ensure licensees are aware of preventive methods to stop such sales.

b.  The DE inspection program will focus resources to examine licensees where criminal activities or non compliance would have the greatest potential for harm to the public. The program utilizes investigative techniques tailored to the identification of suspected traffickers. These inspections allow flexibility to focus on specific high-risk areas of business operations, which may lead to the discovery of illegal firearms diversion.  The DE inspection approach outlined in this manual will be used in programs, and other initiatives (e.g., licensees located

28

in crime gun source States and licensees located on Canadian and Mexican borders). IOIs may use the <u>Firearms Disposition Emphasis Inspection Quick Reference Guide, to assist in conducting DE inspections, however, this guide must not be used in lieu of the guidelines and procedures contained in this Chapter.</u>

c.   The DE inspection program is designed to serve as a warrantless annual inspection. However, a warrantless inspection **may not** be conducted if ATF has reasonable cause to believe that the FFL has engaged in a criminal violation of the GCA and that evidence thereof may be found on the licensee's premises (in which case a probable cause warrant must be obtained). A warrant also must be obtained if the purpose of the inspection is to assist in the criminal investigation of the FFL. On the other hand, a warrantless inspection **may** be conducted to assist during a criminal investigation of someone other than the licensee; to trace a firearm in the course of a bona fide criminal investigation; or, as stated above, to conduct an annual inspection. Additionally, a warrantless inspection may be conducted if the FFL consents to the inspection. Moreover, if you develop reasonable cause or probable cause that the FFL has violated the GCA during the course of a lawful warrantless inspection, you do **not** have to stop the inspection and obtain a warrant. (See <u>Important Legal Opinion Pertaining to Firearms Inspections</u>). If the IOI is not certain whether a warrantless inspection may be conducted, he or she shall contact division counsel.

d.   The procedures outlined in this chapter should be accomplished through a combination of observation, testing, and interview. This chapter is not meant to preclude the use of other inspection techniques that are necessary to accomplish the purpose(s) of the inspection.

e.   Many of the inspection steps noted, such as the review of internal controls, deal with voluntary measures that the industry member could take to help reduce violent crime and protect the public through partnership with ATF. (Refer to the <u>Diversion Indicators</u>). Voluntary action(s) on the part of the licensee during an inspection procedure should be noted, see <u>ATF P 5300.15, FFL Quick Reference and Best Practices Guide.</u>

63.   <u>ISSUANCE OF ASSIGNMENTS</u>.

a.   Inspection assignments should be mission driven, in accordance with the current domain assessment, and rely on various sources of information to identify licensees that exhibit business practices that may contribute to the diversion of firearms.

(1)   <u>Licensees will be identified for inspection</u> based on risk factors identified in the domain assessment, and information obtained from area office files, VCAB queries, licensees, and law enforcement. Field Offices will utilize all available intelligence sources in order to identify licensees for inspection.

29

(2)    <u>Intelligence Gathering</u>.

    (a)    <u>Area Intelligence</u>. Field offices should review available data for their area in order to compile a list of possible licensees for a DE inspection. To assist in identifying licensees that require a DE inspection, field offices have a number of resources available, such as office files, FLS, e-Trace, and experience/history with licensees.

    (b)    <u>Intelligence from Other Licensees</u>. Information provided by other licensees, will be screened for its authenticity and relevance. An IOI will investigate the information using all available databases and information in the area office files. If the IOI feels that the inspection should be initiated, he/she will recommend conducting the inspection to the AS. If the AS concurs, an inspection will be initiated. Any gathered intelligence should be coordinated with the division's Crime Gun Intelligence Center (CGIC).

    (c)    <u>Requests by ATF Headquarters or the DIO</u>. Inspection requests such as targeted HQ specific programs, initiatives or mandates.

    (d)    <u>Referrals from Law Enforcement</u>. ATF special agents, and other law enforcement officers, frequently have contact with licensees and other individuals who have information regarding a particular business or licensee. Contact should be made with local law enforcement agencies to obtain information on high crime areas, most common crime guns and the current trends. If a law enforcement office has information regarding a licensee that does not merit a criminal investigation (e.g., not keeping all required records or other regulatory violation), the IOI shall recommend to the AS that an inspection of the licensee be conducted.

    **Note:** ATF special agents may not send an IOI into a business in order to obtain criminal evidence on the licensee. The inspection cannot be initiated to further a criminal investigation of the FFL.

b.    In generating assignments, the last inspection date (onsite end date of the previous inspection) must be considered to ensure the current inspection is not conducted within 12 months of the last inspection.

64.    <u>PLANNING INSPECTIONS AND GATHERING INFORMATION</u>. IOIs may use **DE Inspection Quick Reference Guide** to assist in conducting inspections. However, this guide must not be used in lieu of the guidelines and procedures contained in this Chapter.

a.    <u>Preliminary Inspection Procedures</u>

    (1)    The IOI must be familiar with the terminology commonly used in the firearms industry before conducting an inspection (See <u>ATF Guidebook, Importation & Verification of Firearms, Ammunition & Implements of War</u>)

30

(2)     IOIs shall become familiar with all relevant Federal, State and local laws and regulations pertaining to the operations of the licensee.

(3)     In preparation for the assignment, IOIs will refer to Chapter I, Inspection Safety Procedures.

(4)     Advance notification will not be given prior to conducting firearms compliance inspections except under extenuating circumstances. When prior notification is necessary, such notification will be made as close to the inspection date as feasible. Prior notification must be approved by the AS and documented in the inspection report including the reason it was done. Two examples of situations in which notification may be appropriate are:

(a)     A firearms dealer who operates a seasonal business; e.g., only during duck-hunting season; or

(b)     A company with erratic business hours in a rural area that would require several hours of travel time by an IOI.

(5)     Prior to handling firearms, the IOI must review the procedures outlined in Firearms Safe Handling Procedures. There is also a mandatory "Firearms Function and Safe Handling for IOIs" training requirement for all IOIs due by September 30th of each fiscal year.

(6)     Under certain circumstances, the AS should consider a team approach to conducting inspections, such as large volume dealers in high crime areas. Consideration should be given to inspecting every FFL in areas where diversion is suspected. When a team of IOIs are inspecting multiple FFLs in a given area, the investigators should communicate intelligence information daily (e.g., compare names and firearms and look for trafficking patterns). Shared intelligence can be used to identify patterns of diversion. In addition, if the focus of an inspection involves an FFL with more than one business location, consideration should be given to utilizing the "team" approach and inspecting each licensed premises, when possible.

b.     Gathering Preinspection Information and Intelligence. Once the FFLs have been selected for an inspection, IOIs will use investigative techniques and resources to develop comprehensive intelligence on the business, licensee, and responsible persons, as well as firearms diversion trends in the area (types of commonly recovered crime guns in the area, etc.). Work conducted by IOIs prior to the onsite inspection is a critical element of any firearms inspection. In preparation, the IOI will:

(1)     Review the assignment, any special instructions and references noted on the ATF F 5700.14 and perform appropriate queries (FLS, NFA, TECS, OpenFox, e-Trace).

**Note:** OpenFox is DOJ's portal for accessing NLETS and NCIC. However, if your office has access to a State computer terminal, additional valuable information may be available (i.e., vehicle information, property information).

31

(2)   Unless otherwise directed, the period of review will be the 12 month period immediately preceding the start of the inspection.

   **Note:** The IOI shall verify the onsite end date of the previous inspection to ensure the current inspection is NOT conducted within 12 months of the previous inspection.

(3)   Query N-Force for any open CE investigation.

(4)   Query OpenFox to determine if all responsible persons are prohibited, if there is any other information that may indicate a security risk, or if there is an ongoing CE investigation. Background checks that disclose prohibiting information will be forwarded with any referrals, but must not be maintained in the area office files. In addition, background checks that do not result in prohibiting information must be discarded immediately.

(5)   Review the Federal Licensing System (FLS) to determine the length of time the license has been active, the license status, premises location(s), and any other licenses held. Check for special attention flags (SAFs). Notify the FFLC if any of the information is determined to be inaccurate. No information regarding a flagged license will be given outside ATF without approval of the Chief, FFLC, and SAC.

(6)   Review the licensee's history of compliance available in the area office files and in N-Spect. Original applications and subsequent amendments may provide background information on hours of operation, responsible persons, and safety issues. If area office files are incomplete, the investigator should contact the FFLC for pertinent background information.

   **Note:** Area office files should not be removed from the IOI's official post of duty. These files must be readily available in the event it is necessary to investigate a theft of firearms and/or provide information for a criminal investigation or to ATF counsel.

(7)   Acquire a FFL history report from the Violent Crime Analysis Branch (VCAB) for the past 3 years. The report lists a particular licensee's "history" of firearm traces, multiple handgun sales and stolen firearms. The report may identify suspect firearms traffickers who are indicated as purchasing large numbers of firearms or who are associated with numerous traces. Review the report for indications of firearms diversion (individuals with large numbers of multiple purchasers, individual purchasers associated with a firearms trace(s), unsuccessful traces, and stolen firearms). Multiple sale and trace information is also available via e-Trace. If not already provided, the FFL history query should be requested on ATF F 3312.3, Crime Gun Analysis - Query Request, and sent via e-mail to the VCAB. (This information should generally be requested for the inspection period unless the AS issues other instructions). This query includes the date of the licensee's firearms traces, multiple sales, and

32

theft/loss history. To assist in identifying potential straw purchasers, IOIs can request that the VCAB list be sorted various ways, including in alphabetical order by name of purchaser.

**Note:** Dallas, Houston, Los Angeles, Phoenix and San Francisco Field Divisions IOIs are required to request multiple sales of long gun history from the VCAB for review.

(8)    Acquire NICS Audit Log report(s) from FBI NICS or similar report(s) from the Point of Contact (POC) State Agency. An FFL Audit Log should be requested via e-mail to fflaudit@leo.gov. The email only needs to contain a statement requesting the FFL Audit Logs, the RDS keys (no other information is needed - no dashes on RDS keys, no FFL name, no city or State), and time period requested. The FFL Audit Log will contain up to 60 days of comprehensive information for all transactions. For proceed and delayed transactions, the log will only contain the date NICS was contacted, the NICS transaction number (NTN), and the NICS response. NICS will also provide the IOI with any information about problems or discrepancies that have been experienced with the FFL. Upon request, more than 60 days of denial information will be made available by NICS.

This list will be used onsite to verify that the FFL is conducting these checks and documenting them accurately. Look for suspicious NICS NTNs (refer to NICS Audit Log Procedures) and use the FFL Audit Log to identify the volume of business and suspicious patterns. NICS POC States have the option of either supplying their own FFL Audit Log to ATF or having NICS supply it.

With the increased use of NICS E-Check, IOIs may get questions from FFLs or encounter scenarios while conducting inspections related to its use. See E-Check and Duplicate NTN Guidance document, which explains two scenarios that involve reasons for duplicate NTNs. An NTN belonging to another account for the same licensee and an FFL self-audits their E-check submission and discovers the purchaser information was erroneously transcribed from 4473 into E-check.

(9)    If conducting an inspection involving NFA firearms, the investigator must request an inventory of NFA firearms by contacting the NFA Branch at least 3 to 7 working days prior to the day of the inspection. The request must be submitted on ATF F 5320.22, NFA Records Search (See Instructions for completing). A Transactional History Report, which details every firearm the licensee has manufactured, received and disposed, is also available. The licensee's SOT status shall also be verified for the inspection period.

**Note:** IOIs should be aware that any information supplied by the NFA Branch which relates to the National Firearms Registration and Transfer Record (NFRTR) **cannot** be disclosed to any person(s) outside ATF (refer to 26 U.S.C. Section 6103). Any disclosure of NFA-related information must be approved by ATF counsel. Agencies outside ATF

33

must contact ATF counsel in order to obtain information under the disclosure exceptions.

(10)    If conducting an inspection of an importer, the IOI must request that the Firearms and Explosives Imports Branch (FEIB) provide ATF F 6, Application and Permit for Importation of Firearms, Ammunition and Implements of War, and ATF F 6A, Release and Receipt of Imported Firearms, Ammunition and Implements of War, and other pertinent information, such as photocopies of permits, associated documents, and the types and quantities of firearms imported to verify the accuracy of the importer's records. The request should be submitted at least three (3) weeks prior to the date needed by the IOI so FEIB has sufficient time to retrieve and return the requested records. Records retrieval for very large importers will require additional time. This information should generally be obtained for the previous 12-month period unless otherwise justified.

**Note:** IOIs and IOIS should have access to the Customs and Border Protection (CBP) Automated Customs Environment (ACE) Database to obtain importation information.

(11)    If conducting an inspection of a manufacturer and/or an importer, the IOI should search the office files and FLS database to determine if the licensee has any active marking variances prior to contacting the Firearms Technology Industry Services Branch (FTISB). You may reach the FTISB at (304) 616-4300 or via email at marking_variances@atf.gov.

(12)    Utilize the list of commonly recovered crime guns and known weapons of choice in the local area received from VCAB, CGIC, and/or local law enforcement.

(13)    Initiate "individual" e-Trace queries for all multiple sale and firearm trace purchasers. Be alert for purchasers appearing on the FFL history report that appear in e-Trace as either multiple sale purchasers, or those involved with a firearms trace (purchaser/associate) from another Federal firearms licensee. The numbers of traces that are listed, as well as the "time to crime," are helpful in providing an overall picture of the dealer's activities. Document any purchasers of interest.

(14)    Research and verify business ownership and responsible person information utilizing Internet search engine sites to conduct pertinent research and available State or local databases to ensure compliance with State and local laws. (Secretary of State for corporate and LLC information; State or local licensing authorities for pawnbrokers and business licenses.)

(15)    Initiate an OpenFox stolen firearm query for all firearms described as "stolen" on the FFL history report. Be alert for diversion indications for weapons "recovered" in a different part of the country and record weapons of interest. Consult with division Industry Operations Intelligence Specialist (IOIS) for additional information.

(16)     Share information with co-located ATF special agents and local law enforcement agencies. Special agents and State agencies with similar inspection/investigation authority often have pertinent information on certain dealers, including suspect purchasers, which may augment the information found in the area office file. IOIs should consider this to help identify names of purchasers and buying patterns that might otherwise be overlooked.

(17)     Maintaining a good rapport with the industry is always helpful, and can result in gathering intelligence for developing leads in identifying firearms trafficking trends and patterns. The CGIC's IOIS should also be used as a resource in this area.

(18)     If information is needed from another ATF jurisdictional area, consult with the AS and request a collateral inspection.

(19)     Request information from the division's Crime Gun Intelligence Center (CGIC), as necessary.

(20)     Contact your AS if the licensee or location is a known security risk. Consider the use of a special agent whenever there is a safety concern or issue.

65.     <u>INITIATING INSPECTION</u>.

a.     The IOI will conduct the inspection during actual business hours unless consent is received from the licensee. Generally, if a licensee is conducting business operations at the premises, they are considered to be open for inspection purposes. The actual business hours may be different than the hours of operation stated on the application for the license. For a discussion of "actual" business hours, refer to Chapter F, Related Inspection Information.

b.     Once an inspection is initiated, the IOI should complete an inspection without interruption, if at all possible. The timely completion of the inspection, including the submission of a fully documented inspection report, is critical. (Refer to Chapter F, Related Inspection Information for required timeframes for completing inspection reports.) This is to preclude any misunderstanding concerning ATF conducting more than one annual inspection of the licensee. A break in the inspection should only occur due to circumstances beyond the IOI's control. If an interruption in the inspection occurs, the licensee should be provided with an approximate date when the inspection will resume and the reason for the delay. In addition, the AS must be advised of the reason for any delays.

c.     The IOI will not sign any document which releases the licensee from any type of liability; e.g., physical injury sustained at the business premises.

d.     A reasonable cause warrant (sometimes referred to as an inspection warrant) is required to conduct an inspection within 12 months of the last inspection without the licensee's permission. Title 18 U.S.C. Section 923(g)(B), which

35

amended the Gun Control Act (GCA) of 1968, placed certain restrictions on ATF's ability to inspect the inventory and records of licensees (See Guidelines for FFL Warrants for more information concerning when a reasonable cause warrant would be required). Under 18 U.S.C. Section 923(g)(1)(A), "The secretary may inspect or examine the inventory and records of a licensed . . . dealer without such reasonable cause or warrant . . . not more than once during any 12 month period." ATF has interpreted this to mean that the 12 month period will commence on the day when the closing conference is conducted, which is the "onsite end date." The onsite end date in N-Spect is now synonymous with the "Last Inspection Date" entry in the FLS database. AS will ensure the FLS is updated by notifying the Firearms Licensing Center by documenting the Last Inspection Date in a Post Inspection Information entry in N-Spect.

e.  An ATF employee cannot "visit" an FFL to check records if an inspection was conducted in the last 12 months, absent the consent of the licensee, unless certain statutory requirements are met. For example, the IOI is looking for specific names under a criminal investigation number (IN) and the FFL is not the subject of the criminal investigation. A general search of the records for suspicious purchasers, such as searching FFL records for unknown or potential traffickers, constitutes an inspection. If the licensee consents to an inspection within the 12 month period of the last compliance inspection, the IOI must obtain a completed "Consent to Inspection of Records and Inventory". If only records will be reviewed, the IOI must obtain the licensee's approval by securing a completed "Consent to Review Records" as applicable.

f.  In the event that a licensee denies access to the licensed premises, the IOI must observe the following guidelines:

(1)  Ensure that the premises to which access was denied is listed on ATF F 7 (5310.12), Application for Federal Firearms License, or is stated by the licensee to be the business premises. The IOI must physically visit the licensed premises, display his or her credentials, and state who he or she is and the purpose of the visit. The IOI should make it clear that he or she is requesting access to the business premises.

(2)  Once the licensee refuses entry to the business premises during actual business hours, the IOI shall clearly demand entry to the business premises to inspect the required records and inventory. If the licensee continues to deny entry and access to the business premises, the IOI must inform the licensee that the continued denial of entry and access is a violation and legal grounds for revocation of the FFL. The licensee must be provided with the specific law and regulation citations of which the FFL is in violation (See 18 U.S.C. Section 923(g) and 27 CFR 478.23).

**Note:** If an IOI does not attempt to physically enter the premises during business hours, the IOI could not testify *with certainty* that the licensee, or the licensee's employee(s), refused to allow the IOI to conduct an inspection at the premises.

36

(3)    If the licensee continues to refuse entry to the business premises, the refusal will be considered willful. The IOI will immediately withdraw from the area and contact the AS for the appropriate course of action, such as remaining at the scene, receiving approval of the DIO to obtain a reasonable cause warrant and/or initiating revocation proceedings. After consulting with the AS and division counsel, the IOI must write a short statement that documents the licensee's refusal to allow entry and access to the business premises. The statement must reflect the date, time, licensee's name, licensee's address, FFL number, the name of the person who denied access to the premises, and that person's position. The IOI shall consult with the AS and division counsel to determine whether a copy of the statement of the licensee's denial to the premises should be provided to the licensee.

g.    Determine if the licensee has any other ATF licenses or permits. (Query FLS, NFA, as applicable.) If the IOI finds the licensee also holds a license as a dealer in black powder, consult the AS to determine if an SEA inspection is due and should be conducted. (Refer to Chapter E, Explosives Full Inspections).

## 66.    INTERVIEWING LICENSEE.

a.    The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the industry member.  The IOI will identify himself or herself by displaying their Bureau issued credentials. Make positive identification of the licensee or the responsible person(s) and verify and record identifying information.

**Note**: Credentials shall not be photocopied.

b.    Interview the licensee or a responsible person to determine whether there have been any changes to any qualifying documents, such as the most current application and the business structure (For procedures to report changes after original qualification, see Changes To Federal Firearms License after Issuance. For an explanation of the different types of firearms licenses, see Firearms Licensing Activities, and Business Structures).

c.    Determine if the licensee has moved the business premises to a new location without filing ATF F 5300.38, Application for an Amended Federal Firearms License.  If so, the IOI must notify the licensee to cease conducting business from the new unlicensed location or premises. The DIO shall issue an immediate "Cease and Desist" letter to be delivered by the IOI, and a copy shall be provided to the FFLC. The license at the original licensed location shall not simply be considered abandoned. This policy supersedes the memo dated May 24, 2011, "Unreported Changes of Address by Federal Firearms Licensees (FFLs)."

d.    The IOI shall request the licensee voluntarily surrender the license for the previous location or premises. The IOI should also assist the licensee (former) with the completion and submission of an original ATF F 7, Application for Federal Firearms License. The IOI must advise the licensee (former) that they

37

cannot operate at their new location until the new license is issued. The licensee, either before or after receiving the cease and desist letter, could still choose to lawfully operate at his/her original business premises and when requested, ATF should give the licensee the opportunity to explain the situation before simply terminating the license.

e. If the licensee does not want to or declines to surrender their license for the previous location, or the IOI cannot locate the licensee, the IOI shall notify the AS, and advise the licensee that ATF shall initiate revocation of the license. The AS shall notify the DIO who shall begin revocation of the license. A Notice of Revocation shall be served (or attempted to be served) at the business premises (and also at the last known active mailing address of the license).

f. Former FFLs who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in business" of selling firearms without a license. See Important Notice – Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL.

g. If there have been any unreported changes in trade name, control, responsible persons, or business entity, ensure that the changes are immediately reported to the FFLC. Assist the licensee in preparing the appropriate paperwork and incorporate such into the inspection report package to be forwarded to the FFLC. Cite the licensee as appropriate. Provide assistance regarding the filing of any required applications or notices. Corporations or associations are required to report change in control within 30 days of change. Upon expiration of the license, a new ATF F 7 must be filed. (Refer to 27 CFR 478.54).

**Note:** A change in ownership may require the transfer of all NFA weapons.

h. If evidence is uncovered that indicates hidden ownership, ask to review business records, such as partnership agreements, corporate records, leases, and purchase orders. Contact the AS and ATF division counsel for guidance. Pay particular attention to those situations where the licensee's spouse is known to be prohibited under the law. Document any prohibited person's or unreported person's degree of involvement in the business. Determine if they take an active part in conducting the business or signing transaction records, if they are involved in filing applications for State or local licenses, and if they have access to firearms, keys, locks or alarm combinations. Refer any suspected criminal activity to CE. If no criminal activity is suspected, the IOI must advise the licensee that the prohibited person cannot actually or constructively possess, receive, ship, or transport firearms (Refer to Indicators of Hidden Ownership).

67. CONDUCT OF BUSINESS.

a. Verify that the license is posted and is of the proper type for the licensee's operations.

b. Determine if the licensee is complying with other Federal, State or local laws, such as licensing and zoning. Refer any violations to the proper authorities.

38

c.  If the licensee conducts over-the-counter transfers of handguns to nonlicensees, ensure that the licensee displays the Youth Handgun Safety Act (YHSA) Poster and distributes the YHSA Notice (Refer to ATF I 5300.2.)

d.  Ensure that the licensee is providing secure gun storage or safety devices for all handgun sales to nonlicensees.

e.  ATF's appropriations language specifically prohibits ATF from denying the renewal of a Federal firearms license based on zero business activity. For a definition of "engaged in the business," refer to 27 CFR 478.11. For further information, pertaining to the term "engaged in the business" and NFA firearms refer to ATF Ruling 76-22.

    **Note:** If the licensee is found to be involved in a criminal activity, such as unlawfully engaging in a firearms business at unlicensed locations, or if traces have been associated with sales made during the inspection period but the licensee indicated there was no business activity, take no further action until consulting with the AS and CE.

f.  Be alert for operations at other locations that require an ATF license or permit.

    **Note:** 27 CFR 478.50 should be cited when it is determined that an FFL conducted business away from the licensed premises (e.g., owner of storefront is found to have conducted sales at his residence). This regulation should also be cited where an FFL conducted business at an event that did not meet the definition of a Gun Show or Sporting Event as per 478.100(b) or; the FFL conducted business at a Gun Show or Sporting Event in a State other than the State certified on the actual Federal Firearms License.

    27 CFR 478.100(c) should only be cited if the FFL fails to record the gun show or sporting event on the ATF F 4473. Finally, 27 CFR 478.41 should be cited if the licensee conducted business other than that for which the specific type of license for which they have been issued allows (e.g., a Type 01 Dealer is regularly conducting manufacturing operations would be in violation of 27 CFR 478.41(b)).

g.  Verify compliance with any approved variances, including any stipulations or conditions outlined in the variance. Verify whether the variance is still needed. If the variance is found to hinder effective administration of the regulations or the FFL is failing to comply with the conditions set forth in the variance, recommend that the variance be rescinded and document the reasons in the inspection report. Forward such recommendations to FIPB for official determination (See ATF Ruling 2016-1 for alternate recordkeeping requirements).

h.  If the licensee's operations require payment of SOT, examine the special tax stamp or proof of payment to verify proper class and amount of tax. If a discrepancy is found, the IOI will prepare a referral to the NFA Branch. Refer to the November 2009 Newsletter for additional information.

i.  Ensure the licensee is not transferring firearms or ammunition to individuals who do not meet the age requirements.

39

(1) Long guns and long gun ammunition may be sold only to persons 18 years of age or older.

(2) Handguns and handgun ammunition may be sold only to persons 21 years of age or older.

(3) Frames or receivers and "other" firearms, including NFA firearms, may be sold only to persons 21 years of age or older. This also includes certain commercially produced shotguns which come equipped with a pistol grip in place of the butt stock, are not shotguns but are considered handguns under the GCA.

    a) These firearms may only be sold to a resident of the same State in which the FFL is licensed.

    b) If there are concerns about what constitutes a shotgun, the IOI shall contact the Firearms Technology Branch (FTB).

    c) Interchangeable ammunition, such as .22 cal. rimfire, may be sold to a person who is at least 18 years of age or older if the dealer is satisfied that it is for use in a rifle. If the ammunition is intended for use in a handgun, the 21-year-old minimum age requirement must be met.

j. Antique firearms do not fall under the purview of the GCA (Reference 18 U.S.C.921 (a)(16) and ATF P 5300.4, Federal Firearms Regulations Reference Guide, General Information #7). For a determination of whether a firearm meets the definition of an antique firearm, contact FTB.

k. If the licensee occasionally imports firearms and ammunition and is not licensed as an importer, verify compliance with the permit requirements by examining the ATF F 6, and ATF F 6A (Refer to ATF F 6 Common Errors). If the licensee is liable for firearms and ammunition excise tax, advise them to contact TTB or generate a referral to TTB, as appropriate.

l. If the licensee facilitates private party transfers, ensure that the firearms are being entered into the A&D Record, and recording "Private Party Transfer" on the ATF F 4473. See ATF Proc. 2013-1.

m. Ensure that firearms transferred from the licensee's personal collection are transferred in accordance with 18 U.S.C.923(c) and 27 CFR 478.125a. Under certain circumstances, a licensed dealer (who is also a sole proprietor) is exempt from the requirements to complete an ATF F 4473 and to initiate a background check under the Brady Law when selling a firearm from his or her personal firearms collection (Refer to the March 2006 FFL Newsletter for additional information).

n. If criminal activity is suspected, take no corrective action and contact the AS.

40

68.  INTERNAL CONTROLS REVIEW.

    a.    Conduct a review and evaluation of the licensee's internal controls. A significant objective of the inspection is to evaluate whether firearms are moving from legal commerce to the illegal marketplace. When using the FFL Internal Control Review Guide, the IOI shall use a combination of the following investigative techniques:

        (1)    observation during the inspection,

        (2)    testing of the proprietor's records and other documents, and

        (3)    interviewing the FFL to obtain the required information.

    The inventory and records shall be examined and analyzed. Any discrepancies, anomalies or other irregularities must be fully explained and ultimately rectified to prevent future recurrence. The IOI shall fully document in the standard narrative report, any observed internal control weaknesses, including possible corrective action, and steps taken during the inspection to address any concerns. (See FFL Internal Control Review Guide and Chapter J, Internal Control Guidelines).

69.  RECORDS REVIEW.

    a.    Verify that the licensee has and is using current versions of applicable forms and firearms publications.

    b.    Ensure the required records are maintained on the licensed premises and are retained for the required period of time.

    c.    Examine required firearms records to ensure compliance with the laws and regulations. The IOI should compare required records with one another and, if warranted, with commercial records.

        **Note:** There is no statutory requirement for the licensee to provide ATF with commercial records for examination. However, IOIs may obtain the FFL's consent to review them. The comparison of records aids in determining their reliability; e.g., ATF F 4473 will be checked against disposition entries and, where permitted, against commercial invoices. Also invoices from suppliers can be used to verify acquisitions are accurately and timely documented in the A&D book.

    d.    Review the A&D Records.

        (1)    Verify that the A&D record is maintained in the proper format. Verify entries in the records for accuracy, completeness, and timeliness. Licensees should be told not to use correction fluid (Wite Out and Liquid Paper). Instead, licensees should be instructed to draw a single line through the incorrect field, record the correct information, and initial and date the change next to the correction. If there is not enough room, the licensee should be instructed to line out the whole entry and create and reference a new entry with the correct information on the next available line of the A&D record. Licensees should be made aware that there is no need to wait for an inspection to correct these kind of errors.

41

(2)    IOIs should <u>not</u> cite FFLs for failing to identify the full 15 digit FFL number in the A&D Record (bound book) if the name and first three and last five digits of the FFL (RDS Key) are recorded in the bound book. Although the regulations indicate that the FFL number is required to be recorded in the bound book, field operations has not been enforcing this requirement since 2013. The practice by FFLs of using the RDS key in lieu of the full FFL number is well established. For example, it is acceptable for them to use it on the 4473 (Block 32), for FFL eZ Check, and use of the RDS key is also referenced in in the ATF FFL Quick Reference and Best Practices Guide Publication.

Licensed importers who maintain A&D records pursuant to ATF Ruling 2011-1 and licensed manufacturers who maintain A&D records pursuant to ATF Ruling 2016-3 must record their entire or complete15 digit license number. If IOIs encounter an importer or manufacturer not recording the complete license number, do not cite a violation but instruct the licensee to start recording the complete number to comply with the conditions of the ruling.

(3)    Look at the A&D record for weapons of choice. Note any large shipments and numerous sales taking place in a short time-frame.

(4)    Verification of A&D disposition entries with completed ATF Forms 4473 or law enforcement letterhead authorizations. Select a sample of disposition entries in the A&D record to verify that the licensee obtained the completed ATF F 4473, FFL information, or law enforcement letterhead authorization for each entry (This is the only way to verify that a disposition in the A&D book has a corresponding ATF F 4473 on file). Ensure that each entry contains all of the required information. The sample size shall be selected based on the following criteria: If the number of dispositions for the review period is fewer than 25, review all dispositions. If the number of dispositions is more than 25, then review 25. If no discrepancies are noted, no further testing is required. If an ATF F 4473 or law enforcement letterhead authorization is not found for any particular disposition in the selected sample, double the sample size if there are fewer than 1,000 dispositions for the review period. If there are more than 1,000 dispositions, increase the sample size to 5 percent of the total number of dispositions. For any dispositions that do not have a corresponding ATF F 4473 or law enforcement letterhead authorization, discuss conducting a forward trace with the AS. Forward traces must be approved by the AS and DIO and documented in the PII Folder in N-Spect. Document the violations as appropriate.

**Note**: If IOIs discover there is no ATF F 4473 on file (lost, missing or not completed), the IOIs are <u>not</u> to instruct the FFL to complete a 4473 after the transaction has occurred. IOIs shall document the violation for failure to complete the 4473 and/or contact NICS, and run the transferee through NCIC. If the transferee is prohibited and a NICS was not conducted, the IOI can pursue a fine for this violation. ATF cannot compel the FFL to

42

contact the transferee to come in and recreate or complete a 4473 nor should the FFL recreate the form. Doing so could be construed as falsifying records. Another NICS check should never be conducted as this could be misuse of the NICS system. Consult with your AS as appropriate for additional guidance.

(5)   Verification of ATF Forms 4473 or law enforcement letterhead authorization with A&D disposition entries. Select a sample of <u>ATF F 4473</u> or law enforcement letterhead authorizations and trace them to the A&D record to verify that the dispositions are properly recorded using the sample selection guidelines above. Document the violations as appropriate.

**Note:** If there are discrepancies in the A&D Record or the physical inventory (such as firearms in inventory with no acquisition entry in the A&D Record, or firearms not in inventory with no disposition entry in the A&D Record and no corresponding ATF F 4473 on file), the IOI shall consider examining commercial records if access is granted by the licensee.

e.   Review ATF Forms 4473

(1)   Review 100% of the ATF Forms 4473 completed during the 12 month review period for accuracy and completeness. These forms must also be reviewed for indications of firearms trafficking, unreported multiple sales, prohibited sales and straw purchasers.

**Note:** Conducting **less** than 100% review of ATF Forms 4473 requires AS justification, DIO approval, and DAD (IO) notification. The justification, approval, and notification must be documented in the PII Folder in N-Spect as well as in the narrative report.

(2)   Verify that the ATF Forms 4473 are properly filed; contain the proper certification by the transferee and transferor; reflect the proper purchaser identification document(s) information; reflect proof of alien status; and contain the identification of the firearm(s) transferred.

(3)   When IOIs encounter incomplete or inaccurate information on Sections A, B, or C, the corrective action should be that the FFL <u>attempt</u> contact with the transferee to obtain the missing information. The licensee should document their attempted contact (i.e., noting time and date of phone contact and conversation details, photocopy of letter and envelope prior to mailing, and/or certified copy showing receipt of attempted delivery) as proof of corrective action. IOIs can only <u>request</u> and cannot require the FFL to make the recommended corrective action.

(4)   If errors are disclosed, do not have the licensee make corrections on the original ATF F 4473. If corrections are needed, a photocopy of the original ATF F 4473 shall be used to annotate corrections and must be attached to the original form (Refer to <u>ATF Open Letter dated November 6, 2003</u>).

43

(5)     Using the NICS FFL Audit Log, verify that the licensee is complying with the requirement to perform NICS checks and ensure that NICS is not being used improperly.

**Note**: FFLs who facilitate transfers of firearms between private unlicensed individuals must record "Private Party Transfer" on the ATF F 4473. See ATF Proc. 2013-1.

(a)     Verify that the licensee has recorded on ATF F 4473 the date NICS was contacted, the NTN, NICS initial response and:

1       NICS final response and date, if any. If an initial "delay" response was received and no final response was given, verify that the firearm transfer did not take place within three (3) business days.

2       Verify that the licensee is relying on a NICS check only for use in a single transaction and for a period not to exceed 30 calendar days from the date that NICS was initially contacted.

(b)     If the licensee is in a State whose law provides for issuance of a valid permit or license to allow the transferee to possess, acquire, or carry a firearm, verify that the licensee is either attaching a copy of the valid permit or license to the ATF F 4473 or is recording on the ATF F 4473 any identifying number, date of issuance and expiration date (if provided) from the permit or license. If the transferee does not have a valid State permit or license, verify the licensee is contacting NICS or designated State agency for a transferee background check, recording the transaction number, initial response, and final response and date, if any. A list of State permits that qualify as alternatives to a NICS check can be found at (Permanent Brady Permit Chart).

(c)     Verify that before the licensee transfers a firearm to a nonimmigrant alien who possesses a NICS alternative permit, the licensee obtains additional information to establish that the nonimmigrant alien has established residency in a state. See U.S.C. 922(b)(3).

**Note:** A nonimmigrant alien is prohibited from receiving a firearm unless he or she falls within an exception as outlined in 18 U.S.C. 922(y)(2) and can provide evidence of this to the licensee. A common exception is the possession of a valid (unexpired) hunting license or permit lawfully issued by a State.

(d)     Verify that the licensee is retaining ATF F 4473 in a separate file, where a NICS check has been initiated, but the transfer of the firearm(s) is not made (e.g., transaction is denied or cancelled).

(e)     Verify that the licensee is not allowing "straw purchases" when the

44

transferee was denied by NICS, especially for firearms of choice. Compare the denied ATF Forms 4473 to the ATF Forms 4473 documenting transfers. Look for the same last names, addresses, and the same firearms transferred close to the day the initial proposed transfer was denied. Refer information disclosing possible straw purchases to ATF CE.  Refer to <u>Diversion Indicators.</u>

(f)     Select a sample of NTNs and verify that the NTN is recorded on both the NICS FFL Audit Log and the ATF F 4473.  If any problems or errors, such as a missing NTN or a discrepancy in the response provided by NICS, are disclosed among the sampled NTN's, the sample size should be expanded.  With the increased use of E-Check, IOIs may get questions from licensees or encounter scenarios while conducing inspection related to its use.  See <u>E-Check and Duplicate NTN Guidance</u> document, which explains two scenarios that involve reasons for duplicate NTNs.  An NTN belonging to another account for the same licensee and the FFL self-audits their E-check submission and discovers the purchaser information was erroneously transcribed from 4473 into E-check.

(g)     Query the NTN Validator whenever an NTN appears on ATF F 4473 but not on the NICS FFL Audit Log.

**Note:** The NTN Validator will confirm that a particular NTN meets the algorithm devised by NICS. It does not indicate that the transferor's identifying information was accurately furnished to NICS or that NICS has previously issued that NTN. For detailed instructions on using the NTN Validator, IOIs should refer to the Federal Bureau of Investigation (FBI) user's manual that came with the software.

<u>1</u>     If false NTNs are found using the NTN Validator, it will be possible to obtain a certification from the FBI stating that such NTNs could not have been issued by the NICS system (See <u>NICS Audit Log Procedures</u>, for guidance regarding the NTN Validator and NICS Audit Log).

<u>2</u>     If a discrepancy cannot be reconciled between the ATF F 4473 and the FFL Audit Log, and it has been determined that the Audit Log is not in error, appropriate action must be initiated, such as issuing a violation or generating a referral to CE.

(h)     Ensure the licensee is familiar with straw purchases and the prohibited person restrictions. Particular attention should be given to transactions involving handguns or firearms that are most commonly used in crimes in the geographic area of the licensee.

(i)     Verify the person who actually identifies the buyer or accepts the identification of the transferee is the person who signs the ATF F 4473 as transferor.

45

f.   Diversion Emphasis - Review ATF Forms 4473 to identify potential firearms traffickers and straw purchasers. Build rapport with and question the proprietor about suspicious purchasers. Asking the right questions in the right way can be an effective investigative tool. Interview the "manager" or other employees to gather as much information as possible about the business and the clientele.

**Note:** IOI should be thoroughly familiar with the list of Diversion Indicators.

(1)   Identify ATF Forms 4473 and separate by weapons of choice. Look for sales over the past 12 months of commonly recovered crime guns and known firearms of choice in the local area, and patterns or indicators associated with diversion.

(2)   Organize these ATF Forms 4473 alphabetically by purchaser. Look for multiple sales, repeat purchases of interest, attempts to avoid multiple sale reporting, names of suspected traffickers identified in pre-inspection, and differing handwriting styles used by the same purchasers.

(3)   Organize ATF Forms 4473 by purchaser address (i.e., city or zip code). Look for patterns of purchases in previously identified addresses of interest, such as high crime areas.

(4)   When reviewing ATF Forms 4473, be aware of diversion indicators such as types of identification used, differing handwriting styles or ink, corrections to the "Certification of Transferee" questions, etc.

(5)   Attempt to complete unsuccessful traces. Utilizing the VCAB trace reports, complete all unsuccessful traces (**annotated by code "D"**) requested in the past 12 months. For a complete list of trace completion codes, access e-Trace. Completed trace information shall be submitted to the National Tracing Center.

(6)   Look for suspicious NICS NTNs and use the FFL Audit Log to identify the volume of business and suspicious patterns. Refer to the April 2003 memorandum entitled "NICS Transaction Number Validation" from AD (FEA).

(7)   Review multiple sales of long guns. Target the rifles and shotguns more frequently used by the criminal element that may be diverted for illegal purposes.  Contact the field division's CGIC for a list of these long guns.

(8)   Be observant of activities in and around the business premises. Pay attention to the type of clientele and how sales are conducted. Also note items of interest, such as out-of-State license plates.

(9)   Review ATF Forms 4473 and ATF Forms 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers, to identify any unreported multiple sales and multiple handgun sale patterns.  If the licensee's records show an individual received more than one handgun within 5

46

consecutive business days (excluding pawn redemptions, consignment returns, and gunsmith returns) during the inspection period, verify with the VCAB or via e-Trace that an <u>ATF F 3310.4</u> was submitted. If unreported multiple sales are disclosed, have the licensee complete the required forms and cite the licensee accordingly. The investigator shall submit the reports in accordance with the instructions on the form. Document all discrepancies and cite the licensee accordingly.

**Note:** Effective August 14, 2011, the Dallas, Houston, Los Angeles, Phoenix and San Francisco Field Divisions (CA) FFLs are required to submit <u>ATF F 3310.12,</u> Report of Multiple Sale or Other Disposition of Certain Rifles, when at one time or during any five consecutive business days, an FFL sells or otherwise disposes of two or more semi-automatic rifles capable of accepting a detachable magazine and with a caliber greater than .22 (including .223/5.56 caliber) to an unlicensed person.

(10)   Pay attention to large shipments and compare to sales trends with respect to large shipments with short time-to-sale and compare invoices to the A&D Record if trafficking is suspected.

(11)   Determine whether purchasers of traced firearms have purchased other firearms from the licensee. Verify if those additional firearms purchased have been associated with crimes. Document the purchasers' identifying information along with any other sales made to these individuals and refer to CE if appropriate.

(12)   For dispositions to other licensees, determine if the licensee is verifying the identity and licensed status of the transferee prior to making the disposition. The IOI shall determine what means the transferor used to establish the transferee's identity and licensed status; e.g., examining a certified copy of transferee's FFL. Advise the licensee that FFL EZ Check may be used to assist in determining the validity of a certified copy of an FFL.

**Note:** Regulations do not require the licensee to maintain the certified copies of FFLs, but many licensees choose to do so.

(13)   The IOI must be alert for altered or fraudulent certified copies of licenses. If the licensee is maintaining certified copies, verify the following:

(a)   The signature is original on a hard copy, or a fax, email, or electronic copy of the license is on file.

(b)   The license was current at the time of purchase.

(c)   The certified copy of the license was not altered.

(d)   The copy is a valid FFL as verified using the FLS database. If it is determined that a certified copy has been altered or is fraudulent, a referral shall be made to CE.

47

(14)  When a dealer-to-dealer transaction appears to be suspicious, a collateral inspection shall be requested by referral to the appropriate field office for action.

(15)  Verify that the FFL is completing ATF Fs 4473 for consignment firearms that are returned to the consignee.

(16)  If a licensee conducts business temporarily at a gun show located in the same State specified on the license, verify the licensee is properly recording the location of the sale on the ATF F 4473. (Refer to 27 CFR 478.100(c), and Important Notice to Dealers and Other Participants at this Gun Show, ATF I 5300.23A; see also paragraph 67f).

**Note:** It is recommended, but not required, that the location of the sale is also recorded in the A&D Record. The proper cite for failure to record the gun show or sporting event on the ATF F 4473 is 27 CFR 478.100(c).

70.  <u>INVENTORY VERIFICATION</u>

a.  The objective of taking a physical inventory is to verify the reliability of the records for regulatory and tracing purposes, and to identify potential firearms traffickers. All records should be handled as potential evidence. As such it is preferable that the IOI not write or mark on the licensee's original records. In cases in which it is impractical to create a working printout or copy of the licensee's records, the IOI shall limit the markings that he or she makes in the required records (e.g., ticks or check marks in the bound book). The IOI shall never write or mark on the records in such a way that could affect the integrity or authenticity, or alter the material content, of the records.  The IOI can advise the licensee of the proper procedures in conducting firearms inventory by referring them to ATF P 5380.2 How to Conduct Firearms Inventory.

**Note:** If a printout of the licensee's inventory is used, the IOI shall retain only those pages or entries that document a violation. All other pages shall be returned to the licensee. IOIs are not authorized to remove a licensee's records (or copies of records) from the licensed premises only for convenience purposes or other reasons lacking a legal basis. (See Photocopying Federal Firearms Licensee Records during Regulatory Inspections/Investigations memorandum dated May 15, 2012)

(1)  A complete (100%) physical inventory must be taken. This means each firearm in inventory must be physically identified by serial number and matched to the corresponding A&D record entry. The IOI must also account for each open entry in the A&D record.

**Note:** Conducting **less** than a complete (100%) physical inventory requires AS justification, DIO approval, and DAD (IO) notification. The justification, approval and notification must be documented in the PII Folder in N-Spect as well as in the narrative report.

(2)  If it is necessary to determine if a firearm has been converted to a fully automatic weapon or if there are indications of conversion, the IOI should

48

refer to <u>Field Test for Automatic Fire</u>. IOIs are cautioned that they should not classify a firearm without conferring with FTB. The sole responsibility for this type of determination rests with the Chief of FTB. If it is determined that the firearm may possibly be an NFA firearm, contact the AS. Refer to the <u>Firearms Safe Handling Procedures</u>.

(3) Ensure that firearms are marked in accordance with <u>27 CFR 478.92</u> (or <u>479.102</u> if NFA firearms) and properly described in the acquisition portion of the licensee's A&D record (refer to <u>General Marking Requirements</u>, and <u>Marking Requirements for Manufacturers and Importers</u>). If an IOI determines that the firearm has an obliterated serial number, he or she should make a referral to CE.

(4) If the licensee has filed a theft loss report during the inspection period, the IOI shall verify that none of the firearms listed on the theft/loss report are in the licensee's inventory.

(5) All inventory discrepancies should be brought to the attention of the licensee and reconciled with available commercial records and ATF Forms 4473. The licensee must make the appropriate notation in the A&D record.

b. <u>Theft or Loss</u>.

(1) Inquire if any firearms have been reported stolen or lost since the last inspection. If there have been any unreported thefts or losses from the licensee's business inventory or private collection, the licensee must:

(a) Notify ATF by calling 1- 888-930-9275 (24 hours/ 7 days) and submit <u>ATF F 3310.11</u>, Federal Firearms Licensee Firearms Inventory Theft/Loss Report, within 48 hours. The licensee must retain copy 2 with his or her permanent records.

(b) Annotate in the A&D record either "stolen" or "missing," as appropriate, the date theft or loss was discovered, and the ATF incident number.

(c) Notify local law enforcement authorities.

(2) Review police reports and/or insurance claims (if attached to the police report or provided by the licensee) to substantiate the alleged theft or loss. Ensure that unreported or unrecorded thefts or losses are recorded in the A&D record prior to the conclusion of the inspection. In addition, the licensee should be cited for failure to timely record the disposition of a firearm (<u>27 CFR 478.125</u>(e); for licensed manufacturer <u>27 CFR 478.123</u>(b); and licensed importer, <u>27 CFR 478.122</u>(b), and failure to timely report the theft or loss (<u>27 CFR 478.39a</u>). The licensee should be cited for failure to report the theft or loss of a firearm when it can be shown that the licensee was aware that a firearm was missing but failed to complete the report.

49

71. ARMOR PIERCING AMMUNITION.

    a.    Verify that the licensed dealer is not transferring armor piercing (AP) ammunition, except for AP ammunition received and maintained as business inventory prior to August 28, 1986 that is transferred only to any department or agency of the United States or any State or political subdivision thereof. (See Armor Piercing Ammunition Inspection Guidelines)

        **Note:** Any licensed dealer who fails to abide by those conditions is subject to revocation of the FFL [27 CFR 478.99(e)].

    b.    Verify that AP ammunition is properly marked (27 CFR 478.92(b) and ATF Rul. 2002-6). Verify that packaging of AP ammunition is properly marked (27 CFR 478.92(b)(2)).

    c.    Verify that the licensee is accurately maintaining a separate record of armor piercing ammunition dispositions (27 CFR 478.122(b), 478.123(b), 478.125(a), 478.125(b), 478.125(c) and 478.125(d), when applicable).

        **Note:** The definition of armor piercing in the GCA only applies to handguns. Some rifle ammunition can be used in handguns but ammunition that cannot be used in a handgun is not "armor piercing ammunition" as defined.

        The definition of AP ammunition is:

        1.    **Projectiles or projectile cores** which may be used in a **handgun** and which are constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or

        2.    **Full jacketed projectiles** larger than .22 caliber designed and intended for use in a **handgun** and whose jacket has a weight of more than 25 percent of the total weight of the projectile.

        The term does not include shotgun shot required by Federal or State environmental or game regulations for hunting purposes, frangible projectiles designed for target shooting, projectiles which the Director finds are primarily intended to be used for sporting purposes, or any other projectiles or projectile cores which the Director finds are intended to be used for industrial purposes, including charges used in oil and gas well perforating devices.

72. FIREARMS AND AMMUNITION MANUFACTURERS.

    a.    Verify that the manufacturer is properly marking firearms manufactured (27 CFR 478.92(a)). Verify that the manufacturer is properly marking NFA firearms (27 CFR 479.102). (See also Guidance for Requesting Marking Variances, Ruling 2002-6, Ruling 2009-1, Ruling 2009-2, Ruling 2009-5, Ruling 2010-10, Ruling 2012-1, Ruling 2013-3, February 2011 FFL Newsletter, September 2013 Vol. 2 FFL Newsletter, Determination of Improperly Marked NFA Weapons, and "Marking Requirements for Licensees Performing Manufacturing Activities on Unmarked Firearms".)

b.   Verify that armor piercing ammunition is only manufactured for authorized purposes and is properly marked (27 CFR 478.37, 478.99(d), and 478.92(b)).

c.   Determine if the manufacturer is maintaining proper records and accurately accounting for the manufacture and disposition to licensees and nonlicensees (27 CFR 478.123(a), 478.123(b), 478.123(d), and 478.125).

   **Note:** ATF Ruling 2016-3 authorizes licensed manufacturers to consolidate their records of manufacture or other acquisition of firearms and their separate firearms disposition records, provided all of the conditions in the ruling are met.)

d.   Determine if the manufacturer is properly submitting ATF F 5300.11, Annual Firearms Manufacturing and Exportation Report (AFMER) under 18 U.S.C. Chapter 44, Firearms, to the Firearms and Explosives Services Division. If not, the IOI will obtain the completed form to be submitted. The AFMER report is due by April 1st for the previous calendar year.

   (1)   If the manufacturer may be liable for firearms and ammunition excise tax, advise them to contact TTB and make a referral as appropriate.

   (2)   A manufacturer's license allows the licensee to deal in the same type of firearms or ammunition that is covered by such license. For example, a manufacturer of firearms other than destructive devices can deal in any type of firearm other than destructive devices.

73.   IMPORTERS

a.   Title 18 U.S.C. 925(d) provides standards for the importation of firearms and ammunition into the United States. In particular, 18 U.S.C. 925(d)(3) provides that the Attorney General shall authorize a firearm to be imported if it meets several conditions: (1) it is not defined as a firearm under the NFA; (2) it is generally recognized as particularly suitable for or readily adaptable to sporting purposes; and (3) it is not a surplus military firearm.   However, this subsection of the regulations further provides that "in any case where the Attorney General has not authorized the importation of the firearm pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled."

b.   ATF has determined that the language of 18 U.S.C. 925(d)(3) permits no exceptions that would allow frames, receivers, or barrels for otherwise non-importable firearms to be imported into the United States. Accordingly, ATF will no longer approve ATF F 6 of any frames, receivers, or barrels for firearms that would be prohibited from importation if assembled. There are no exceptions to the statutory language. However, ATF recognizes that certain firearm barrels may be used to assemble either an importable or a nonimportable firearm. With this fact in mind, ATF believes that such "dual use" barrels would be eligible for importation under section 925 (d)(3) for commercial purposes, provided prospective importers of such barrels make representations indicating that neither the importer nor subsequent purchasers of the barrels will use the barrels

51

to assemble nonimportable firearms.

c.    Under the Arms Export Control Act (AECA) of 1976, persons engaged in the business of importing articles enumerated on the U.S. Munitions Import List (27 CFR Part 447) must register with the Director of ATF (this authority has been delegated to the Chief, Firearms and Explosives Imports Branch). The IOI shall verify registration by examining an approved application, ATF F 5330.4 (4587), Application to Register as an Importer of U.S. Munitions Import List Articles. Also, IOIs may verify an importer's registered status by contacting the Firearms and Explosives Imports Branch.

d.    An ATF F 6 is required to import defense articles enumerated in the U.S. Munitions Import List. This requirement includes any firearm manufactured after 1898 for which no fixed cartridge ammunition is readily available, except for antiques/replicas as defined in the GCA.

e.    Verify that imported firearms in inventory are marked with the name of the country in which they were manufactured, the city and State of the importer, as well as other required markings (27 CFR 478.92, see Determination of Improperly Marked NFA Weapons). Instances of marking violations are to be reported to the Firearms and Explosives Imports Branch.

f.    Verify that importation A&D records are properly maintained. See 27 CFR 478.122 and ATF Ruling 2011-1. Verify the information (ATF F 6 and 6A) obtained from the Firearms and Explosives Imports Branch with the importer's records (27 CFR 478.122).

g.    ATF F 6A (5330.3C) is used to effect the release of the imported firearms from U.S. Customs and Border Protection (CBP). Select a sample of ATF Fs 6 and ATF Fs 6A and verify that the firearms are properly entered in the required acquisition records (27 CFR 478.122(a) and ATF Ruling 2011-1). For firearms that are initially entered into a Customs Bonded Warehouse (CBW) for subsequent entry into an importer's premises, the FFL must complete two ATF Forms 6 (one for entry into the CBW, and one for the release from the CBW) and 6A.

h.    Determine whether the importer is forwarding properly completed ATF Forms 6A to the Firearms and Explosives Imports Branch within 15 days after release from CBP's custody (27 CFR 478.112).

i.    Determine if dispositions made by the importer to other licensees are properly recorded in the required records and separately maintained (27 CFR 478.122).

**Note:** Importers are required to maintain separate records for dispositions to licensees and nonlicensees per 27 CFR 478.122(b) and (d). However, these records can be consolidated if the requirements of ATF Ruling 2011-1 are met.

j.    Determine if transfers are made to nonlicensees and verify that separate records are being maintained (27 CFR 478.122(d)). (See ATF Ruling 2011-1 for consolidation of disposition records noted above.)

52

k.    For a licensee who makes more than an occasional importation of a firearm for a specific person as outlined in 27 CFR 478.113, the IOI shall determine whether the licensee is engaging in the business of importing firearms for resale, which requires a Type 08 importers license and registration under Part 447. ATF F 6 and ATF F 6A are required for occasional importations.

**Note:** If questions arise involving engaging in the business of importing in relation to occasional importations, the IOI shall seek guidance from the AS, DIO, and counsel.

l.    A licensed importer is allowed to deal in the same type of firearms or ammunition authorized to be imported under his or her license. For example, an importer of firearms other than destructive devices can deal in any type of firearm other than destructive devices. Verify that the licensed importer is following all applicable recordkeeping requirements. If the licensee's operations require payment of SOT, examine the special tax stamp or proof of payment to verify proper class and amount of tax. If a discrepancy is found, the IOI shall prepare a referral to the NFA Branch.

m.    Verify that records of A&D and disposition of articles enumerated in the U.S. Munitions Import List (other than firearms and ammunition) are maintained for a period of 6 years, in accordance with 27 CFR 447.34, and are reconciled to commercial records (i.e. import manifest).

n.    An importer may incur a liability for excise tax on various firearms, including antiques or replicas of antiques, and ammunition imported and sold under 26 USC 4181. The IOI shall direct the licensee to contact TTB.

o.    Verify that armor piercing ammunition is imported for authorized purposes and that it is properly marked.

74.    COLLECTORS.

a.    Verify that the licensed collector is not engaged in business as a dealer in any firearms, including curios and relics.

b.    A licensed collector may acquire and dispose of curios and relics in interstate commerce (if the transaction is not contrary to State or local law). The IOI must verify that dispositions of curio and relic (C&R) handguns to nonlicensees have only been made to residents of the same State in which the collector is licensed (if the transaction is not contrary to State or local law).

c.    Verify that the collector is only conducting transactions in firearms classified as curios and relics (see definition: 27 CFR 478.11). The licensed collector has the same status as a nonlicensee with respect to transactions involving firearms that are not classified as curios and relics. Verify that licensed collectors:

(1)    Maintains A&D records in the proper format. (There is no requirement for licensed collectors to obtain a completed ATF F 4473 prior to the sale of a C&R firearm to a nonlicensee).

(2)      Submits reports of multiple handgun dispositions.

d.      If a collector desires to have a firearm classified by ATF as a curio or relic, instruct the collector to submit a written request to the Chief, FTB, outlining the historical significance, along with a complete description of the firearm to be classified.

e.      At the election of a licensed collector, the annual inspection of records and inventory may be performed at the ATF IO office closest to the collector's licensed premises where the inventory and records are maintained.

f.      Each licensed collector who delivers a handgun to a nonlicensee shall provide written notification as described in 27 CFR 478.103 (see ATF I 5300.2, Youth Handgun Safety Act Notice). Collectors are not required to display the ATF I 5300.1, Youth Handgun Safety Act Poster.

g.      If the collector makes dispositions of armor piercing ammunition that was acquired prior to August 28, 1986, verify that accurate records are maintained in the proper format (27 CFR 478.125(a), 478.125(b), and 478.125(d).

75.      PAWNBROKERS.  Verify that the pawnbroker:

a.      Obtains ATF F 4473 for pawn redemptions.

b.      Conducts NICS checks for all dispositions, including pawn redemptions.

c.      Conducts the mandatory NICS check at the time of redemption when an optional NICS check was conducted at the time a firearm was offered as collateral for a loan, and the optional NICS check resulted in a proceed response.

d.      Notifies the local law enforcement agency within 48 hours of receiving the denial notice, if the pawnbroker completed an optional NICS check when a firearm was offered as collateral for a loan, and the optional NICS check resulted in a denial. A record of the law enforcement contact should be made on the ATF F 4473.

e.      Is aware that pawned firearms may not be lawfully returned to a person who is underage or in a prohibited category.

**Note:** When pawned firearms are returned to a third party because the person who pawned the firearm is prohibited, the licensee may include a statement on the ATF F 4473 indicating that the third party who received the firearm was warned about straw purchases. Licensees may also have the third party sign the statement. However, licensees are not required to include such a statement, and the statement will not necessarily protect them from prosecution.  ATF F 4473 contains a general instruction stating that licensees can include any information on the form that is relevant to the transaction.

f.      Submits reports of multiple handgun dispositions. A report need not be made where pistols or revolvers, or any combination thereof, are returned to the same person from whom they were received. (Effective August 14, 2011, SW Border

Field Divisions (Houston, Phoenix, Dallas, Los Angeles) FFLs are required to submit ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, when at one time or during any five consecutive business days, an FFL sells or otherwise disposes of two or more semi-automatic rifles capable of accepting a detachable magazine and with a caliber greater than .22 (including .223/5.56 caliber) to an unlicensed person.

76. GUNSMITHS.

   a.  Verify firearms kept overnight are entered into the A&D record.

       **Note:** Gunsmiths need not enter firearms in the A&D record if the gunsmith does not retain the firearm overnight and the firearm is returned to the same person from whom it was received. Also, an ATF F 4473 or NICS check need not be executed when a repaired firearm is returned to the same person from whom it was received.

   b.  If the gunsmith's operations appear to constitute manufacturing, determine the need for a manufacturer's license (contact division counsel, FIPB or FTB for clarification as needed). Under certain conditions, a gunsmith may be liable for payment of excise tax as a manufacturer of firearms. Refer the licensee to TTB for further excise tax information and/or generate a referral to TTB, as appropriate. The IOI should also be aware that this type of activity may require a license change under the GCA.

   c.  Any person who engages in an activity that primarily adds to or changes a firearms appearance by camouflaging or engraving (cosmetic processes or activities) on a firearm should be licensed as a dealer which includes gunsmith under the GCA. Refer to ATF Ruling 2009-01, for additional information.

77. NFA FIREARMS.

   a.  Persons conducting business in NFA firearms must be licensed under part 478 of the regulations. Procedural and substantive requirements are contained in 27 CFR Part 479, along with regulations pertaining to transfer tax and SOT.

   b.  Verify that the licensee is dealing in NFA firearms. If a license and Special Tax Stamp were obtained in order to avoid transfer tax on NFA weapons purchased for the licensee's personal collection, IOIs must contact their AS for guidance. These firearms may be subject to seizure or forfeiture for failure to pay transfer tax (Refer to ATF Ruling 76-22, 27 CFR 479.11: Meaning of Terms).

   c.  Verify that the licensee has ATF F 5630.7, Special Tax Stamp, or proof of payment for all periods of liability.

   d.  Inventory all NFA firearms on hand. Reconcile any discrepancies disclosed during comparison of the inventory to the A&D record, the NFRTR and the licensee's file of NFA registration and transfer forms. Verify that all approved transfers have, in fact, occurred. Document any discrepancies in the inspection report and forward a copy of the NFA Inventory Discrepancy Worknote to the NFA Branch.

Case 3:23-cv-00544   Document 1-5   Filed 05/26/23   Page 62 of 155 PageID #: 132

e.  Compare the licensee's NFA transfer file to the A&D record and verify that ATF Forms 4473 are being completed on NFA transfers as appropriate. Be alert for tax errors.

f.  Verify that NFA firearms are properly marked. If NFA firearms are found to be improperly marked, follow the procedures set forth in Determination of Improperly Marked NFA Weapons.

g.  If an NFA firearm, registered as unserviceable, appears to be functional, request assistance from FTB for a determination.

h.  Verify that NFA firearms registered on an ATF F 5320.10, Application for Registration of Firearms Acquired by Certain Governmental Entities, are in the possession of a law enforcement entity.

i.  If the IOI questions the registered ownership of any NFA firearm, the NFA Branch shall be contacted for resolution. However, if a negative response is received and the possibility exists that a violation has occurred, this information must be immediately referred to CE.

j.  The IOIs shall not seize, detain or accept voluntary abandonment of NFA weapons or destructive devices.

k.  Recordkeeping requirements of 27 CFR Part 478, including the preparation of ATF F 4473, are applicable for NFA special taxpayers. Additionally, approved registration documents must be kept for all NFA weapons registered to the licensee as specified by 27 CFR 479.131.

l.  NFA transfers are exempt from NICS checks because a background check has been completed during the NFA approval process. **NOTE:** A NICS check must be conducted if an NFA firearms has been approved for transfer to a trust, or to a legal entity such as a corporation, and no background check was conducted as part of the NFA approval process on the responsible person or individual who will receive the firearm. Responsible persons and individuals who have undergone a background check during the NFA application process are listed on the approved NFA transfer form. (See Final Rule 41F, Background Checks for Responsible Persons of a Trust or Legal Entity with Respect to Making or Transferring a Firearm)

n.  The IOI **must not disclose** any information concerning NFRTR, SOT returns, or excise tax returns outside of ATF without first discussing this matter with ATF Counsel and the AS to determine if the disclosure is lawful.

    **Note: The IOI should be aware that civil and criminal penalties apply to any individual making unauthorized disclosures (Refer to 26 U.S.C. Section 6103).**

78.  DISCONTINUED BUSINESS.

a.  If the IOI determines that the licensee is not actively engaged in the business, the IOI may ask the licensee if he or she wants to surrender the license. If the licensee does not wish to surrender the license, the IOI may **not** pursue this issue.

**Note:** Current appropriations prohibit ATF from denying any license solely on the basis of the licensee not having any business activity (i.e., zero acquisitions and/or dispositions). However, this restriction does not preclude license or renewal denials when other bases exist. For example, licensees who have zero business activity may also lack a business premises that complies with local zoning law.

b. If the licensee is out of business, the following actions must be taken:

    (1) The IOI will make every attempt to locate the licensee and obtain a letter surrendering his or her license and ensure that all required records are forwarded to the ATF National Tracing Center, (NTC), Out-of-Business Records Repository (OBRR), 244 Needy Road, Martinsburg, WV 25405.

    (2) If less than 10 boxes of records are to be shipped, each box should be weighed. Send an e-mail to NTC at obrshipping@atf.gov with the number of boxes and the weight of each box. You will receive the appropriate number of FedEx shipping labels via e-mail. If more than 10 boxes are to be shipped, contact NTC via email, obrshipping@atf.gov for instructions to make shipping arrangements with the approved ground freight carrier. Notify NTC, OBRR that the records are being shipped.

    (3) If the license has not expired, obtain a letter surrendering the license. Forward the original letter and license to FFLC. A copy of the letter and license must be included with the records forwarded to NTC, OBRR.

    (4) Prior to forwarding the records to NTC, OBRR, the required records shall be examined for completeness and the IOI should make every effort to ensure that the acquisition and disposition of all of the licensee's firearms have been properly annotated in the records.

c. In the event the licensee succeeded another licensee, the IOI shall:

    (1) Ensure that the predecessor's records were either forwarded to the NTC OBRR or are being properly maintained by the successor; and

    **Note:** If the records are being maintained by the successor, verify that the succession of records is reflected in FLS

    (2) Ensure that the predecessor's firearms were properly recorded as transferred to the successor.

    (3) If the licensee deals in NFA firearms, the IOI shall ensure that all NFA firearms have been properly identified.

        (a) An NFA licensee, operating as a sole proprietor, partnership, or corporation, who discontinues business and provides notification to ATF, may retain all firearms, including sales samples (other than machine guns manufactured or imported on or after May 19, 1986). NFA firearms may be retained by the partnership or

57

corporation until the entity dissolves, whether or not engaged in the business.

**Note:** Possession by the individual partners or corporate officers is regarded as a taxable transfer.

(b)     If the person or entity discontinuing the NFA business resides in a State where the continued possession as an individual places them in violation of State law, the firearms must be transferred pursuant to applicable law prior to the lapse of the special tax status. If State law prohibits possession of the NFA firearms, they may be transferred or arrangements made for their storage in a State where possession is allowed. If the tax status has lapsed, the transfer will require either payment of the transfer tax or transfer to a law enforcement agency or other Government entity.

(c)     If the person or entity has possession of machineguns which were manufactured or imported on or after May 19, 1986, transfer of these firearms must be completed prior to the lapse of the FFL and SOT to avoid illegal possession under 18 U.S.C. 922(o). The licensee must transfer the NFA firearms to a Government agency or to a qualified Federal firearms licensee who can provide the documentation required by 27 CFR 479.105.

79.     FOLLOW UP ON LEADS DEVELOPED DURING INSPECTION

(1)     Search OpenFox and e-Trace on all suspicious individuals and firearms identified during the inspection. Look at guns that are recovered and identify the possessor to see if his or her name reappears elsewhere in the inspection.

(2)     If the inspection is being conducted in a State where concealed weapons permits are accepted as an alternative to NICS, conduct Openfox checks on some of these permit holders to determine if the transferee is prohibited.

**Note:** All criminal history checks in Openfox must be conducted in accordance with the guidelines prescribed (refer memo dated May 27, 2005, Use of TECS/NCIC/NLETS and NICS in FEL Inspections). While this was intended to provide guidance for conducting criminal history checks in connection with explosives inspections, it also applies to firearms inspections.

(3)     With AS and DIO approval, conduct forward traces on suspicious purchases. (See Sample Disposition Verification Letter). The AS and DIO must document their approval in the PII Folder in N-Spect.

(4)     With AS approval, contact suppliers if questions arise about number of acquisitions by the licensee.

58

80.     <u>CLOSING ACTIONS</u>.

(1)     Reporting Violations. Prepare ATF F 5030.5, Report of Violations, to document the violations disclosed during the inspection. Consult division counsel prior to issuing the ATF EF 5030.5 if such action would jeopardize a criminal investigation.  For big chain FFLs (Dick's, Gander, Cabela's, Academy, Wal-Mart, etc.), provide inspection results by submitting a copy of the Report Violations to their corporate compliance officer.

(2)     Documenting Violations. Copies of FFL records, including ATF Forms 4473 must be made to document significant omissions and errors cited on ATF EF 5030.5. If the IOI does not have access to a copier at the licensee's premises, the records may be removed for copying with the licensee's permission, utilizing ATF EF 3400.23, Receipt for Property and Other Items. Upon return of the documents to the licensee, the IOI must have the licensee sign and date the ATF EF 3400.23 indicating receipt of the records.  For further discussion of photocopying and removal of records from the licensed premises refer to Chapter F, Related Inspection Information, and the "Photocopying Federal Firearms Licensee Records during Regulatory Inspections/Investigations" memorandum dated May 15, 2012.

If the licensee surrenders the FFL to avoid administrative action, fully document violations so that any future application could be justifiably denied. The FFLC, based on the AS's recommendation, will assign an SAF code to identify those persons who surrendered their licenses to avoid administrative action.

(3)     Closing Conference. Hold a closing conference with the licensee or a responsible person. Advise the licensee of the recommendation, if appropriate. Note the names of person(s) attending and the date of the closing conference and document in the narrative report.

(a)     Discuss the violations cited and recommend methods of compliance to avoid recurrence.

1       The licensee or responsible person shall be given a copy of the ATF EF 5030.5. Attach the ATF EF 5030.5 with original signatures to the inspection report. The IOI shall ensure that all corrective actions have been completed before submitting the assignment for review.

**Note:** If the FFL refuses to sign the ATF EF 5030.5, the IOI shall state the reason for such refusal in the narrative report.

2       Discuss with the licensee specific actions to be taken to ensure the operations remain in compliance with the regulations.

59

        <u>3</u>      Thoroughly review the Acknowledgement of Federal Firearms Regulations (AFFR) with the licensee. Have the licensee sign and date the AFFR, provide the licensee a copy and maintain the original with the inspection report. If the licensee refuses to sign, document the licensee's refusal in the inspection report.

    (b)    Discuss any internal control weaknesses that were noted during the inspection to assist the licensee in preventing repeat violations and the diversion of firearms.

        **Note:** This discussion is held solely for the benefit of the licensee. The IOI cannot require the licensee to correct any weaknesses identified during the review that are not required by regulation or law.

    (c)    Document the FFL's reasons **<u>why</u>** the violations occurred.

(4)    <u>Recall Inspections</u>. Generally, whenever a warning conference is recommended and approved, a recall inspection shall be conducted. Recall inspections made <u>within </u>the 12-month period from the onsite end date of the previous inspection will constitute a second entry for the period and will require either the consent of the licensee or a warrant based upon "reasonable cause." See <u>Consent to Review Records and Consent to Inspection of Records and   Inventory.</u>

(5)    <u>Reports</u>. A narrative report is required for all inspections and must conform to Chapter H, Standard Narrative Report Guidelines.

(6)    <u>i-Note</u>. If required, prepare an i-Note to report a significant incident in accordance with the guidelines prescribed in Chapter F, Related Inspection Information.

(7)    <u>Variances</u>. If the licensee requests a variance ensure that the variance request is submitted in accordance with <u>27 CFR 478.22.</u> Except for marking variances, all variance requests are approved by FIPB. The request must be prepared in letter form, from a responsible person, addressed to the Chief, FIPB, and submitted to <u>FIPB@atf.gov</u>.  All marking variances must be prepared either in letter form or by completing the <u>ATF F 3311.4, Application for Alternate Means of Identification of Firearm(s)</u> (Marking Variance) from a responsible person, and submitted to the FTISB at <u>marking_variances@atf.gov</u>. Any variance request received by the area office must be forwarded to either FIPB or FTISB. A recommendation may be included when forwarding the variance.

    (a)    Variance request should explicitly describe the proposed alternate method or procedure.  The licensee should provide the following:

        <u>1</u>    Name, address, license number, phone number and email address of the person making the request; and,

Case 3:23-cv-00544   Document 1-5   Filed 05/26/23   Page 67 of 155 PageID #: 137

    2    Any other information that could assist ATF's decision with the request.

(b)    The IOI shall include in the inspection report, and in the comments block of the ATF F 5700.14, a recommendation for approval or disapproval of the variance request. If disapproval is recommended, include the reasons for this recommendation. A copy of the variance request shall be maintained in the area office files. The original variance request and a copy of the inspection report will be forwarded to the Chief, FIPB.

(c)    A response will be written by FIPB and first forwarded to the DIO and AS. FIPB will wait 3 working days before sending the response to the licensee to allow the DIO and AS to express any concerns. If the variance is approved, FIPB will outline the conditions of the variance for the licensee. If the variance is disapproved, FIPB will advise the licensee why the variance cannot be granted.

**Note**: Only approved variances will be sent to the Chief, FFLC, at their request.

(8)    With AS and DIO approval, conduct forward traces on suspicious purchasers. **Note**: The AS and DIO must document their approval in the PII Folder in N-Spect.

(9)    Referrals. If information is disclosed during the course of the inspection involving criminal and/or civil violations that require immediate action, the IOI will verbally refer the information to the AS and follow up with a written referral. Information involving criminal and/or civil violations that do not require immediate action shall be referred within 5 working days via the AS to the CGIC. (See Chapter F for referral preparation and submission guidelines. See also ATF O 3800.2, ATF Intelligence Program.)

(10)    When conducting an NFA inspection with inventory discrepancies, forward the NFA Inventory Discrepancy worknote to the NFA Branch for processing.

(11)    Complete the assignment in N-Spect and submit to the AS. (Refer to Chapter G for N-Spect information.)

(12)    Recommendations for Administrative Action. Administrative actions shall be recommended in accordance with current policy, including the guidelines in ATF O 5370.1C, Federal Firearms Administrative Action Policy and Procedures, dated February 21, 2017.

(13)    ATF prefers the voluntary surrender of FFLs, rather than pursue costly administrative action against the licensee.

**Note:** If the licensee surrenders his/her FFL to avoid punitive administrative action, any future application could be justifiably denied. In

61

such cases, a SAF shall be placed on the license to identify those persons who, having previously held licenses and surrendered their licenses to avoid administrative action.

81.   THEFT/LOSS INVESTIGATIONS

   a.   An inspection will not be initiated in response to a reported theft or loss of firearms unless CE is contacted. Generally, all investigations of thefts or losses of firearms will be conducted jointly by CE and IO.

   b.   If appropriate, the IOI shall conduct an internal control evaluation, a full 100% inventory verification, 100% of the time (unless a lesser inventory is justified by the A/S and then approved by the DIO), review security measures and review theft/loss reporting procedures. (See ATF O 3310.7 Stolen Firearms Program)

82.   – 90.  RESERVED

62

## CHAPTER D. EXPLOSIVES QUALIFICATION INSPECTIONS

91. GENERAL.

a. Unless otherwise directed, the guidelines and procedures outlined in this chapter must be followed. This is not meant to preclude the use of other inspection techniques that are necessary to accomplish the purpose(s) of the inspection.

b. IOIs may use Explosives Qualification Inspection Quick Reference Guide, to assist in conducting explosives qualification inspections. However, the guidelines and procedures outlined in this chapter must be followed. (Also refer to Explosives Limited Permit (Actual Storage) Qualification Inspection Quick Reference Guide, and Explosives Limited Permit (Contingency Storage) Qualification Inspection Quick Reference Guide.)

**Note:** To prepare for these types of assignments, IOIs should refer to Chapter I, Inspection Safety Procedures,and Explosives Definitions and Terms.

92. PURPOSE. The purpose of an explosives qualification inspection is to:

a. Verify the accuracy of the application;

b. Ensure that the application is for the proper type of license/permit for the proposed business activity;

c. Ensure that only qualified applicants enter the industry and that only qualified individuals receive, possess and/or handle explosive materials. (See Background Check Guidelines);

d. Inform and educate the applicant about Federal laws and regulations and compliance responsibilities as they relate to the proposed business activities;

e. Determine if the applicant has in the-State premises from which to conduct, or intends to conduct, business;

f. Ensure the integrity of record systems to facilitate the tracing of explosives.

**Note:** Explosives may be traced for various reasons (e.g., to determine the source of misused explosive materials, to identify suspects of stolen explosive materials, and to detect diversion of explosive materials to prohibited persons);

g. Ensure the safe and secure storage of explosives;

h. Prevent criminal misuse of explosives and protect the public;

i. Identify areas of weakness and vulnerability in security and safety measures in order to prevent prohibited persons from obtaining explosive materials; and,

j. Ensure premises and storage are adequate for the type of operations to be conducted.



Case 3:23-cv-00544 Document 1-5 Filed 05/26/23 Page 70 of 155 PageID #: 140

93.    SAFE EXPLOSIVES ACT (SEA) REQUIREMENTS.

    a.    The SEA amended the Federal explosives laws to require that ATF must verify "by inspection" that applicants for user permits and licenses have places of storage for explosive materials that satisfy the standards of safety and security set forth in the regulations. The SEA requires an onsite inspection of places of storage of all new and renewal applicants for user permits and licenses, however, not for limited permittees.

    b.    In order to ensure compliance with the requirements of the SEA, a field qualification inspection ("Qualification New" in N-Spect Profile) must be conducted on every new explosives license and user permit applicant, but not on limited permittee applications.

        **Note:** Qualification inspections are only conducted for original applications. Renewal applications are considered explosives (full) inspections and must be completed in accordance with Chapter E, Explosives Full Inspections. Generally a full inspection will be conducted at time of renewal. Inspections conducted up to 12 months prior to the renewal date meet this requirement. These inspections will include verification of storage as required by the SEA and all other aspects of a full inspection. However, inspection of fireworks licensees, if conducted during the industry's "busy season," that typically occurs around the Fourth of July, may be completed in two separate inspections as described more fully in Chapter E.

    c.    Inspection procedures are different with respect to limited permittees. Upon receipt of an original application, or at the time of renewal, ATF may verify proper storage via telephone conversation, letter, or other means deemed appropriate. Places of storage for limited permit applicants can be physically inspected only at the time of the original application or at the time of renewal. Such visual inspection may take place only once every 3 years. Inspection of the renewal applicant's records may be conducted on a voluntary basis only.

94.    OTHER STATUTORY REQUIREMENTS. Due to statutory requirements, all licenses and permits must be issued or denied within 90 days of ATF's receipt of a perfected application. The Federal Explosives Licensing Center (FELC) is to be notified of inspections that will exceed the 90 day period. The FELC will not issue a license or permit to an applicant prior to receiving a recommendation from the responsible area office. ATF is required by statutory/regulatory requirements to issue a license or permit to any person who has filed a proper application and paid the prescribed fee provided the following requirements of 18 U.S.C. Section 843 are met:.

    a.    The applicant is not a prohibited person described in 18 U.S.C. Section 842(i);

    b.    The applicant has not willfully violated any of the provisions of the Federal explosives law or the regulations issued thereunder;

    c.    The applicant has an in-State premises from which he/she conducts or intends to conduct business;

Case 3:23-cv-00544    Document 1-5    Filed 05/26/23    Page 71 of 155 PageID #: 141

d.   The Attorney General verifies by ATF inspection, or, if the application is for an original limited permit or the first or second renewal of such a permit, by such other means as the Attorney General determines appropriate, that the applicant has a place of storage for explosive materials which meets such standards of public safety and security against theft as the Attorney General by regulations shall prescribe;

> **Note:** This does not apply to an applicant for the renewal of a limited permit if the Attorney General has verified, by ATF inspection within the preceding 3 years, that the applicant has a place of storage for explosive materials which meets such standards of public safety and security against theft.

e.   The applicant has demonstrated and certified in writing that he/she is familiar with all published State laws and local ordinances relating to explosives materials for the location in which he/she intends to do business;

f.   None of the employees of the applicant who will be authorized by the applicant to possess explosives materials is any person described in 18 U.S.C. 842(i); and

g.   In case of a limited permit, the applicant has certified in writing that the applicant will not receive explosive materials on more than six separate occasions during the 12-month period for which the limited permit is valid.

> **Note:** Being under 21 years of age no longer prohibits a person from obtaining an explosives license or permit. However, it is unlawful for any person to knowingly distribute explosive materials to anyone under 21 years of age. Consequently, a person under 21 years of age can possess/handle explosive materials but cannot acquire them. Also, ATF cannot deny a license or permit where Employee Possessors (EPs) are prohibited. Rather, the Federal explosives licensee (FEL)/Federal Explosives Permittee (FEP) has to remove the prohibited EP(s) from duties that require possession of explosives.

95.   PRELIMINARY INSPECTION PROCEDURES AND TECHNIQUES.

a.   Review the assignment, any special instructions, and references noted on the ATF F 5700.14, Assignment and Report.

b.   Review the ATF F 5400.13/5400.16, Application for Explosives License or Permit under 18 U.S.C., Chapter 40, Explosives, for completeness, accuracy, and proper execution.

c.   Review the plat plan drawing, if available.

d.   Using the FLS, verify if the FELC has completed the background checks and issued Notices of Clearance on all responsible persons and EPs submitted with the application (see Background Check Guidelines).

e.   Review FLS to determine if the applicant has any other licenses or permits, or was a licensee or permittee in the past. Check for SAFs. Be alert for the applicant's association with previous or current administrative actions under other Federal explosives licenses or permits. (See ATF O 5440.1 Federal Explosives Administrative Action Policy and Procedures.)

f.  Review area office files and previous inspection reports. Be alert for recent or ongoing criminal investigations of applicants or for persons previously associated with an administrative action.

    **Note:** Area office files may not be removed from the IOI's official post of duty. These files must be readily available in the event of a theft or explosion.

g.  Request information from the field division's CGIC as necessary.

h.  Query N-Force for any open CE investigations. If found, determine if SAF is needed.

i.  If the applicant or location is a known security risk, contact the AS to determine the appropriate course of action.

j.  Determine the business structure. (See Chapter F, Related Inspection Information.)

k.  Query appropriate State agencies for copies of qualification documents, such as partnership agreements and State registration documents.

l.  Follow advance notification procedures:

    (1)  The applicant shall be contacted as soon as possible to arrange for an interview.

    (2)  If, after a minimum of 3 attempts, the IOI is unsuccessful in establishing contact with the applicant, the IOI must send the applicant a Notice of Abandonment by certified mail with a return receipt addressed to the IOI. The Notice of Abandonment shall be generated in N-Spect and a copy included in the report package.

    (3)  If the applicant fails to respond to the Notice of Abandonment, the IOI must document this fact in the report, including the times, dates, and means used to attempt contact.

    (4)  The inspection will then be closed in N-Spect with a recommendation of "Application Abandoned".

96.  INTERVIEW OF APPLICANT.

a.  All original explosives application inspections must be conducted in person. The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the applicant. The IOI will identify himself or herself by displaying their Bureau issued credentials.

    **Note:** Credentials shall not be photocopied.

b.  Renewal explosives inspections are considered full inspections, not qualification inspections.

66

c.  Using valid Government photo identification, verify the name of the responsible person(s) interviewed, business title, date of birth, address, and the identification type and number.

d.  Determine if the proposed activity requires a license and that the application is for the proper type of license. With the exception of onsite manufacturers, licensees need a separate license for each business location for which they intend to manufacture, import, or distribute explosives. A separate license is not required for locations which serve only as storage sites or delivery depots. In this instance, all sales would have to be consummated from the same licensed premises. A licensed manufacturer or a licensed importer does not need a separate license to deal in explosives from his licensed premises.

e.  Determine if the proposed activity requires a permit and that the application is for the proper type of permit. An explosives permit is required for each person who intends to acquire not for resale explosives materials in interstate, intrastate or foreign commerce.  Be aware that a single user permit may be used at multiple locations. A user permittee may import for his/her own use. A user- limited permit is valid only for a single purchase transaction. Alternatively, a limited permit is valid for up to six explosives purchases from a licensee located in the same State as the purchaser. (Refer to Explosives Licensing, for a more detailed description of the different types of explosives licenses/permits.)

f.  Determine if the applicant intends to engage in the explosives business. Although the term "engaged in the business" is not susceptible to a rigid definition within 18 U.S.C. Sections 841 - 848, it is interpreted to imply an element of continuity or habitual practice. If the IOI believes that the applicant may not be engaged in the business, this must be stated in the report so that specific inquiry can later be made as part of a compliance inspection.

    **Note:** An application cannot be denied for failure to engage in the business.

    (1)  If there are indications that the applicant does not intend to engage in the business, the IOI shall determine if there is a need for the license or permit.

    (2)  The IOI should be aware that financial status, sources of supply, and need for the enterprise, are not requirements for approval of an application.

g.  The IOI shall verify ownership and control of the business by examining available documents (e.g., corporate documents, deeds, rental agreements, loan agreements, etc.) with the consent of the applicant.  Pay particular attention to any indications of fronting or hidden ownership. (Refer to Indicators of Hidden Ownership for areas to explore in identifying applications filed by someone other than the true applicant.) Some examples of indications of hidden ownership include:

    (1)  Application fee paid by someone other than the applicant;

67

(2)     Applicant has little or no knowledge of the explosives industry or the laws and regulations, and cannot answer business questions;

(3)     No hours of operations given;

(4)     Writing on application appears to be completed by more than one individual (i.e., signature is different than other parts of applications);

(5)     Same business premises as a former FEL/FEP who had the license revoked, surrendered in lieu of revocation; a former applicant who was denied; a present FEL/FEP under indictment or with revocation or denial proceedings;

(6)     Applicant is a successor to or connected with (e.g., family member, responsible person, etc.) a former FEL/FEP who had a license/permit revoked or surrendered in lieu of revocation; and

(7)     The last name of the applicant is the same as a former licensee/permittee, former applicant, or present licensee/permittee under indictment or with revocation or denial proceedings.

(8)     If hidden ownership is suspected, document all evidence and relevant circumstances, including statements, by the applicant, to sustain denial proceedings if appropriate.

h.     Conduct OpenFox checks on all responsible persons and employee possessors added to the application. Additional responsible persons must submit fingerprint cards (ORI-WV ATF0900) and photographs.

**Note:** The fingerprint card shall be sent to the FELC in West Virginia. Employee possessors must complete ATF Fs 5400.28, Employee Possessor Questionnaire. It shall be documented in the inspection report if it appears that the responsible person and/or employee possessor may be prohibited. FELC shall be notified of any possible prohibited persons using the Post Inspection Information (PII) folder in N-Spect. The issuance of the license or permit is contingent upon a successful background check conducted by the FELC on all responsible persons. Refer to Background Check Guidelines and Use of TECS/NCIC/NLETS and NICS in FEL Inspections, for guidelines on conducting background checks.

i.     Verify that the applicant has removed any prohibited individual(s) from a position in which he/she may receive or possess (constructive or actual) explosive materials. The prohibited person must immediately be removed from the list of authorized individuals who may receive explosive materials. Advise the applicant that persons who are prohibited from possessing explosive materials may request relief from the Federal explosives disability by filing an ATF F 5400.29, Application for Restoration of Explosives Privileges. However, filing an application for relief does not give the employee the right to possess explosives. Employees must wait for a determination from the Explosives Relief of Disabilities (EROD) Section. The IOI shall direct all inquiries regarding relief of explosives disabilities to the

68

EROD Section at (202) 648-7110.

**Note:** IOIs may not disclose the reason that the individual(s) is prohibited. Additionally, the FELC must be the entity to notify the applicant that the individual(s) is prohibited, not the IOI.

j.   Advise the applicant that any new responsible persons must be reported to ATF within 30 days of the change and that notification must include appropriate identifying information. The FELC will then contact the licensee/permittee in order to obtain fingerprint cards and photographs. Newly hired employee possessors must submit a completed ATF Fs 5400.28 to the FELC within 30 days of employment. Unless the FEL knows or has reason to believe that a new EP is prohibited, the EP may possess explosives unless and until otherwise notified by ATF.

k.   Verify that the required State and/or local permits have been applied for or obtained. Record permit/license numbers or the date the application was filed with the State or local entity.

**Note:** An application cannot be denied for failure to comply with State and local requirements, e.g., licensing and zoning. However, the IOI should advise the applicant that State and local authorities will be notified that the proposed operations may be in violation of licensing, zoning, or other laws. The applicant may wish to voluntarily withdraw his or her application. If the applicant does not withdraw the application, details of the possible violations of State and local requirements must be included in the inspection report. The IOI shall make a formal referral to the State or local authorities through the AS.

l.   Determine if the applicant will export explosives and advise the applicant of the requirements of the Arms Export Control Act (AECA), if applicable. Describe the products expected to be exported and the countries to which the products will be exported in the narrative report (see 27 CFR 555.129).

m.   If the applicant is a successor, advise the applicant to properly maintain the previous owner's records or to forward them to the ATF NTC, OBRR.

n.   Verify that the correct business hours are listed on the application. If the applicant does not intend to maintain normal business hours, inquire as to the applicant's availability during the normal work day.

97.   CORRECTION OF APPLICATION.

a.   Review the application with the applicant. Have the applicant initial and date any amendments to the application.

b.   If it appears the applicant has willfully omitted or falsified any material information, the IOI shall develop data on these willful misrepresentations and document them in writing to sustain denial proceedings. If this is suspected, **do not** allow the applicant to make any changes/amendments to the application and contact the AS for further action.  When an IOI develops information of a

69

potential criminal nature, the matter shall be referred to the appropriate CE office. Do not delay submission of the inspection report due to a pending criminal investigation but note that there is an ongoing investigation.

**Note:** The IOI and AS shall discuss the inspection findings with the DIO, Counsel, and appropriate CE personnel.

98.   DEPICTION OF APPLICANT'S PREMISES.

a.   Determine if the applicant has premises from which to conduct business or operations and whether it is in compliance with State and/or local requirements. (See 27 CFR 555.11 and 555.49)

b.   Determine if the applicant owns or rents the premises. If the applicant does not own the proposed business premises, review the lease or rental agreement to determine if the proposed business activity violates the agreement. If the proposed business activity is not clearly stipulated in the agreement, the IOI can ask the applicant to contact the property owner and secure a letter to ensure the proposed business activity is permissible and not in violation of the agreement. As needed, the IOI can contact the property owner to verify or authenticate the letter or information but only after the applicant has been given the opportunity to secure any additional information from the property owner.  Document all contacts and contact information in the narrative report, and include any submitted letter with the inspection report.

c.   Determine if any other type of business will be operated from the premises and document it in the inspection report.

d.   Determine the type and location of all explosives storage magazines or have applicant obtain written authorization of contingency storage.

(1)   Contact the person providing the contingency storage and verify the arrangements. Verify that contingency storage has been inspected and approved within the past 3 years. If not, it must be inspected. Contingency storage must be listed and described in N-Spect under storage locations. Record Global Positioning System (GPS) coordinates of storage site(s) on plat map.

(2)   Determine if multiple licensees or permittees are using the same contingency storage and ensure that the total amount of explosives that could be stored would be in compliance with the Tables of Distances.

(3)   Ensure that all buildings and storage facilities are identified on the map/plat of the premises. Drawings provided should include distances between all storage magazines, inhabited buildings, public highways, passenger railways, fireworks plant buildings, fireworks process buildings, fireworks non-process buildings, fireworks shipping buildings, and other facilities which could be damaged if the magazine exploded. Barricades should be depicted on the drawing.

70

(4)    Although not required by the regulations, the drawing should include a complete description of the entire area surrounding the magazine (e.g., a wooded area located north of the magazine may not contain any magazines or inhabited buildings, but should still be identified on the diagram) even if the area surrounding the magazine is not the applicant's premises. Provide a description of public facilities (e.g., gas stations, fast food restaurants, and churches) in the general area, even if outside the Table of Distance (TOD) requirements. For outdoor storage, this information is useful in the event the applicant exceeds the maximum amount allowed by the TOD. (For indoor storage, if the building containing the magazine is in compliance with Federal regulations, but is located adjacent to other businesses and poses a threat to public safety, contact State and/or local authorities.) The drawing shall include the following certification statement, "This is a true and accurate drawing of my premises." The applicant must sign and date the certification.

e.    Physically measure all distances between critical features to verify that all outdoor magazines meet the TOD requirements. Document the means of measurement. (Refer to paragraph 163, Chapter F, Related Inspection Information.)

f.    Determine the maximum quantity of explosives allowed to be stored in each magazine according to the submitted plat plan and the appropriate TOD.

g.    If a storage magazine is to be used outside of the jurisdiction of the IOI's area office, prepare a referral for a collateral inspection.

h.    If explosive materials are present, be alert for storage in adjoining structures and process areas. Also, be alert for any new inhabited building construction in the area and if necessary verify with local authorities. Document any storage that is not in a compliant magazine. If explosive materials are being improperly stored, make referrals, as appropriate, and if the violations are determined to be willful, recommend denial of the application.

i.    Unless it appears that the applicant has willfully omitted or falsified any material information, have the applicant make any necessary corrections or amendments to the plat and re-certify it as necessary.

99.   EXPLOSIVES STORAGE MAGAZINES.

a.    Verify that all magazines meet construction, lighting, and housekeeping requirements. Prepare an Explosives Magazine Examination Worksheet for each magazine. (Refer to Chapter H., Standard Narrative Report Guidelines.)

b.    Obtain GPS coordinates and enter into N-Spect (see chapter G). For indoor magazines, obtain GPS coordinates for the structure housing the magazines. Enter GPS coordinates into N-Spect in decimal format carried up to 5 decimal places (e.g., 32.12345). GPS coordinates are not required for day boxes.

c.    Obtain photographs of all magazines and upload them to N-Spect. If there are several identical magazines, it is only necessary to photograph one of the

71

magazines. Photographs of other structures, such as process and non-process buildings/areas should be taken to further depict the premises. IOIs shall place labels with unique ID number on the interior walls of industry owned magazines (except Type 3 day boxes) under a voluntary program with licensees and permittees.

d.      Advise the applicant that regulations require the applicant to notify the appropriate fire safety authority having jurisdiction in the locality where explosive materials are being stored per 27 CFR 555.201(f). Notification includes the type, capacity, and location of each magazine on commencement of storage of explosive materials. The IOI shall ensure that the required notification has been made.

e.      If the applicant conducts mining operations, the storage of explosives may also be regulated by the Mine, Safety and Health Administration (MSHA). Prepare a referral to MSHA, if appropriate.

   **Note:** IOIs shall **not** inspect underground explosives magazines as these magazines are inspected by MSHA.

100.    MAGAZINES FAILING TO MEET MINIMUM STANDARDS.

a.      If a magazine does not meet the minimum construction and/or the prescribed TOD requirements, and if the deficiencies cannot be corrected within a reasonable period of time, the IOI will advise the applicant of the following:

   (1)     The applicant may withdraw the application and re-apply when the magazine deficiency is corrected, or ATF will consider denial of the application.

   (2)     If the quantity of explosive materials exceeds the amount allowed by the TOD, it may be possible to correct the problem by limiting the amount of explosives in the magazine.

   (3)     If the magazine does not meet the required construction standards, the materials must be removed to a storage magazine that is in compliance with regulations until the deficiency is corrected.

   (4)     If a magazine does not meet construction requirements, but does not yet contain explosive materials, then the proprietor may opt to apply for a variance, provided that the magazine substantively meets the standards in the regulations.

      **Note:** If the magazine(s) contain explosives materials, the IOI shall consult with the AS.

b.      **Do not** request that deteriorated explosives be moved. If deteriorated explosives are found, the IOI must move immediately to a safe distance from the magazine and contact the AS to determine the appropriate course of action, e.g., notify CE and/or State and/or local authorities. IOIs shall contact the Explosives Technology Branch (Bureau Headquarters) or an ATF Certified Explosives

72

Specialist (CES) for technical assistance regarding suspected deteriorated explosives. The IOI will advise the applicant to consult with the manufacturer or distributor for advice on proper and safe disposal procedures.

**Note:** All Public Safety Violations involving explosives must be corrected before submission of the inspection report. (See Public Safety Violations.)

c.      The applicant shall be advised that approval cannot be given until any necessary corrections have been made to the storage facility, or until a variance has been approved (see paragraph 100 a (3) above).

101.   CONDUCT OF BUSINESS AND REGULATIONS REVIEW

a.      If the applicant applied for a Limited Permit, explain the proper use and completion of ATF F 5400.30, Intrastate Purchase of Explosives Coupon, and ATF F 5400.4, Limited Permittee Transaction Report.

b.      Review the "Acknowledgment of Federal Explosives Regulations" (see Chapter H) with the applicant. Have the applicant sign and date the acknowledgment document. Maintain a signed copy of the acknowledgement in the area office file. (This document is not required to be entered into N-Spect.)

c.      The IOI shall review in detail with the applicant the following:

(1)     The proper preparation of acquisition and disposition (A&D) records, daily summary of magazine transactions, and ATF F 5400.5, Report of Theft or Loss - Explosive Materials;

(2)     Magazine construction regulations, housekeeping requirements, the need to inspect all magazine(s) every 7 days, and the Table of Distances;

(3)     The reporting requirements with the addition of new magazines or a change in construction of existing magazines;

(4)     The provision that allows keeping acquisition, disposition, and magazine records for fireworks by quantity and size instead of weight (27 CFR 555.122, 555.123, 555.124 and 555.127);

(5)     Manufacturers and importers marks of identification;

(6)     The exemption for distributions of commercially manufactured black powder in quantities of 50 lbs. or less for sporting, recreational or cultural purposes in antique firearms and antique devices. All other distributions of black powder may only be made to persons holding valid Federal explosives licenses or permits;

(7)     The right of entry for ATF officers to business premises (including places of storage) and explosives records:

(a)     For licensees and user permittees, inspections can be conducted anytime during hours of operation with no annual restriction.

73

(b) For limited permittees, an onsite storage inspection is allowed once every 3 years without the permittee's consent. ATF has no authority to inspect records without the permittee's consent.

(8) The requirement to report the theft or loss of explosive materials within 24 hours of discovery to ATF (refer to paragraph 102);

(9) The restriction that explosives sales may be made only from the licensed premises and that any additional location from which sales are to be made requires another license;

(10) The stipulation that a Federal explosives license or permit does not confer any rights or privileges to conduct business contrary to any State or other law;

(11) The procedures for renewing the license or permit;

(12) The proper procedures for reporting changes and/or discontinuance of business (including disposition of discontinued business records); and

(13) If the applicant is succeeding another licensee, advise the previous licensee and the successor that the explosives records must be annotated to reflect the transfer and turned over to the successor (refer to 27 CFR 555.128).

d. For explosives importers:

(1) Determine if articles on the U.S. Munitions Import List will be imported and verify that the applicant has filed for registration on ATF F 5330.4, (4587) Application to Register as an Importer of U.S. Munitions Import List Articles. Advise the applicant that records of munitions list articles other than firearms and ammunition must be maintained for 6 years.

(2) Make applicants aware of the provisions for submitting samples to ATF for analysis and identification (including ammonium nitrate). (Refer to 27 CFR 555.110.)

(3) Discuss marking requirements for imported explosive materials.

e. For explosives manufacturers:

(1) Determine the method of accounting for explosives manufactured onsite if those explosives are not used on the same site within 24 hours. If explosives manufactured onsite are not used within 24 hours, they must be entered into the required records and properly stored (i.e., the exemption in the regulations is only for recordkeeping requirements, not for storage; see 27 CFR 55.123 (d) (3)).

(2) Make applicants aware of the provisions for submitting samples to ATF for analysis and identification (including ammonium nitrate). (Refer to 27 CFR 555.110.)

74

(3)      Ensure that the applicant completes <u>ATF F 5000.30</u>, Supplemental Information on Water Quality Considerations - in accordance with <u>33 U.S.C. §1341</u>(a), and <u>ATF F 5000.29</u>, Environmental Information, and that these forms are included with the application.

f.      For fireworks manufacturers:

(1)      Advise the applicant of quantity limitations on explosives in fireworks process buildings. (Refer to <u>27 CFR 555.221</u>.)

(2)      Advise the applicant of applicable Tables of Distances. (Refer to <u>27 CFR 555.222</u> thru <u>555.224</u>.

(3)      Make the applicants aware of the provisions for submitting samples to ATF for analysis and identification. Refer to <u>18 U.S.C. 843(i)</u>

(4)      Advise manufacturers of requirement to remove finished product to storage. (Refer to <u>27 CFR 555.221</u>)

102.      <u>SECURITY CONSIDERATIONS</u>. Discuss with the applicant that explosives are of interest to criminals and terrorists. Refer to <u>ATF P 5400.15</u>, Safety and Security Information for Federal Explosives Licensees and Permittees. The IOI shall:

a.      Provide the applicant with a copy of the ATF P 5400.15.

**Note:** Use of the Security Checklist is voluntary on the part of the applicant.

b.      Encourage the applicant to restrict the use of preload variances and to take added measures for security at times of terrorist threats as information is communicated by the National Terrorism Advisory System (NTAS).

c.      Evaluate the applicant's procedures for ordering, receiving, distributing, storing, accounting for, and using explosives to determine whether the applicant's controls ensure that operations will be conducted in accordance with Federal law and regulations, that acquisitions and dispositions are properly reflected in the required records, and that explosive materials are properly safeguarded. Discuss any internal control weaknesses identified with the proprietor.

**Note:** The IOI cannot require the proprietor to make any changes not mandated by law or regulation.

d.      Advise the applicant to report all thefts or losses of explosives and any suspicious activity to the local law enforcement authorities and to ATF by calling 1-800-800-3855. Reports of thefts or losses must be reported to ATF within 24 hours of discovery. In addition, the licensee or permittee must complete <u>ATF F 5400.5, Report of Theft or Loss of Explosive Materials</u>, within 24 hours of discovery.

103.      <u>ENVIRONMENTAL INFORMATION</u>. If the application is for a license to manufacture explosive materials, the IOI must ensure that the applicant completes <u>ATF F 5000.30</u>, Supplemental Information on Water Quality Considerations - under <u>33 U.S.C. §1341</u>(a)

75

and ATF F 5000.29, Environmental Information. Verify the information submitted and forward the forms with the application.

104. SIGNATURE AUTHORITY. The IOI shall obtain documented signature authority, if necessary. Documented signature authority for applications is not necessary if the signer is identified in the application as a corporate officer, corporate general manager, partner, or as the owner (sole proprietor). Documented signature authority such as Power of Attorney, or appropriate corporate documents disclosing the person's authority, is required for any other person to sign the application, to represent an applicant or licensee in administrative conferences or hearings, to sign correspondence, or to receive information on behalf of the applicant or licensee.

105. CLOSING ACTIONS.

    a. Hold a closing conference with the applicant.

    b. Provide the applicant with the address and telephone number of the local ATF IO and CE offices.

    c. Provide the applicant with forms or publications information and refer the applicant to the ATF website, www.atf.gov

    d. If the applicant makes an inquiry concerning when the license or permit will be issued, advise the applicant that ATF acts on applications within 90 days of receipt of a properly executed application. (Refer to 27 CFR 555.49).

106. ISSUANCE UNLIKELY.

    a. If circumstances indicate that there is an absolute bar to issuance of a license and/or permit, obtain the necessary documentation and report all details.

    b. If issuance appears unlikely, advise the applicant of the reasons why the application may be denied and discuss the voluntary withdrawal option, unless such action could compromise a pending criminal investigation or it appears that the applicant has willfully omitted or falsified any material information. (Refer to 27 CFR 555.72.)

    c. Withdrawal of Application. A withdrawal of an application must be voluntary. If the applicant wishes to withdraw the application voluntarily, the IOI must have the applicant sign and date a withdrawal letter, which is available in N-Spect. The IOI will advise the applicant that the application fee will be refunded if the application is withdrawn.

    d. Relief from Disabilities. If the applicant has inquiries regarding relief from disabilities, direct the applicant to contact the Explosives Industry Programs Branch (EIPB), Relief of Disabilities Section at (202) 648-7110.

Case 3:23-cv-00544   Document 1-5   Filed 05/26/23   Page 83 of 155 PageID #: 153

107.   REFERRALS. Any referrals to ATF CE and other Federal, State, and/or local agencies will be made by IO in accordance with Chapter F, Related Inspection Information, and Chapter G, N-Spect, in this manual.

108.   VARIANCE REQUESTS. Variances from the requirements of regulations must be submitted in accordance with 27 CFR 555.22. All variance requests, including those for recordkeeping, must be prepared in letter form, from a responsible person, addressed to the Chief, EIPB and submitted directly to EIPB via e-mail at eipb@atf.gov . If the area office receives the variance, the IOI may provide a recommendation channeled through their AS and, if appropriate, DIO. When storage magazines do not meet the standards prescribed by the regulations, but are constructed substantially equivalent to the standards, the applicant may submit a request for a variance in accordance with 27 CFR 555.22.

**Note:**  If the magazine(s) meets one of the construction standards outlined in ATF Ruling 76-18, 27 CFR 555.207: Construction of Type 1 Storage Facilities, no variance is needed.

   a.   The variance request must explicitly describe the proposed alternate method or procedure and the reasons for such.  The applicant should provide the following:

      (1)   Name, address, license or permit number, phone number, and email address of the person making the request.

      (2)   Any other information that could assist ATF's decision with the request.

      (3)   If the request is storage related, pictures that address the specific storage method involved in the request, i.e., magazine, locks, location, surrounding structures, etc. Name, address, and phone number of the local fire department having jurisdiction where the magazine is located.

   b.   EIPB has final decision making authority over variance requests. IO field personnel do not have the authority to issue any variance approval letters. A response will be written by EIPB and sent to the applicant with copies forwarded directly to the DIO, and Chief, FELC. If the variance is approved, EIPB will outline the conditions of the variance for the applicant. If the variance is disapproved, EIPB will advise the applicant as to why the variance cannot be granted.

   c.   A copy of the variance request shall be maintained in the area office file. The variance request and a copy of the approval letter will be maintained by the Chief, EIPB.

   d.   If the variance is disapproved, EIPB will advise the applicant why the variance cannot be granted. Explosives cannot be stored in a non-compliant magazine while the variance is being considered.

77

109.   REPORTS AND RECOMMENDATIONS.

    a.    The IOI shall write a narrative report and make a recommendation on ATF F 5700.14. The report and attachments will be prepared and assembled in accordance with guidelines prescribed in chapter H.

110. – 120.  RESERVED

CHAPTER E.  EXPLOSIVES FULL INSPECTIONS

121.  GENERAL. This chapter establishes guidelines and procedures for conducting explosives full (compliance) inspections. A full inspection is conducted to determine if a licensee/permittee is complying with Federal laws and regulations and to detect and prevent the diversion of explosive materials from legal to illegal commerce. IOIs should seek to maintain a cooperative relationship with industry members. This relationship will help the IOI gain valuable information concerning operations and activities. This is not meant to detract from the focus of ATF's mission to reduce violent crime and protect the public. Many of the inspection steps noted, such as the review of internal controls, deal with voluntary measures that the industry member could take to help reduce violent crime and protect the public through partnership with ATF.

a.  IOIs may use the Explosives Licensee Inspection Quick Reference Guide, and the Explosives Permittee Inspection Quick Reference Guide, to assist in conducting inspections of explosives licensees and permittees. However, the guidelines and procedures outlined in this chapter must be followed. (Also refer to Fireworks Inspection Quick Reference Guide.)

**Note:** Before conducting these inspections the IOI should review Chapter I, Inspection Safety Procedures, and Chapter J, Internal Control Guidelines. In addition, IOIs must be familiar with the terminology commonly used in the explosives industry before conducting a full inspection. (See Explosives Definitions and Terms.)

b.  Unless otherwise directed, all of the inspection procedures contained in this chapter must be followed.

c.  Assignment of a full inspection is based upon:

(1)  The statutory requirements of the Federal explosives laws, as amended by the SEA;

(2)  Established priorities in the current domain assessment;

(3)  The AS's judgment; or

(4)  A request by the SAC, DIO, ATF Headquarters, or another field division.

d.  When IO is notified by CE that a licensee or permittee is under investigation, the following actions will be taken:

(1)  IOIs shall verify through the FLS that a SAF has been placed on the license/permit. If the licensee or permittee is under MSHA jurisdiction, the DIO will consult with the SAC and determine whether MSHA will be notified.

(2)  The SAC, DIO, and/or AS will be consulted before the FELC takes final action on issuing a renewal license/permit.

79

(3)     No information regarding a flagged license will be provided outside of ATF without approval of the Chief, FELC and the division SAC.

(4)     IOIs may not conduct any inspection of a licensee or permittee who is under investigation by CE without the concurrence of the SAC.

e.     MSHA conducts inspections of mine and quarry operators holding Federal explosive licenses or permits. MSHA has agreed to inspect the underground storage at these facilities for compliance with storage regulations pertaining to safety and security, and the associated Daily Summary of Magazine Transaction (DSMT) Records required under 555.127. MSHA will cite operators for violations of 27 CFR 555, and provide violation information to ATF. ATF will inspect above-ground storage and associated DSMT records, as well as all other remaining parts of the explosives operations. ATF is responsible for any license or permit action under 18 U.S.C. Chapter 40.

**Note:** MSHA will not examine any records pertaining to acquisitions or dispositions, nor any information pertaining to Conduct of Business regulations prescribed in 27 CFR Part 555 Subpart F.

f.     MSHA provides inspection results information to EIPB who, in turn, will forward the information to the applicable DIO. ATF shall ensure the violations cited were corrected by contacting the licensee or permittee if MSHA does not document that the violations have been corrected. If the MSHA inspection was result of a referral from ATF, the violations cited by MSHA shall be entered into the violations tab in N-Spect under the same UI# that generated the referral. If the MSHA initiated the inspection on their own, the DIO shall make a determination if the results of the MSHA inspection would warrant or mandate an ATF inspection. If an assignment is issued, the MSHA violations shall be entered in the violations tab in N-Spect under that UI#.

It is important that ATF ensures that all violations are corrected. For example if MSHA cites an underground storage violation, verification that the violation has been corrected can be accomplished by one of the following procedures:

(1)     Request that MSHA re-inspect the underground magazine to confirm correction;

(2)     If #1 is not possible, ask the licensee/permittee to take a photograph to show the violation has been corrected;

(3)     If #1 and #2 are not possible, a responsible person of the licensee or permittee shall provide a written statement certifying that the violation has been corrected and, if applicable, attach any work order or invoices for parts or equipment received or used to correct the violations.

122.     PURPOSE.  The purpose of an explosives inspection is to:

a.     Determine if a licensee or permittee is complying with Federal laws and regulations;

b.     Ensure the integrity of record systems to facilitate the tracing of explosives;

80

c.     Ensure the safe and secure storage of explosives;

d.     Prevent and detect criminal diversion and misuse of explosives;

e.     Investigate and detect thefts and illegal diversion of explosives; and

f.     Identify areas of weakness and vulnerability in security and internal controls in order to prevent prohibited persons and terrorists from obtaining explosive materials.

   **Note:** Many of the security and internal control measures are voluntary and not requires by regulation. Refer to Chapter J, Internal Control Guidelines.

123.   SAFE EXPLOSIVES ACT (SEA) REQUIREMENTS.

a.     The Federal explosives laws, as amended by the SEA requires that ATF must verify "by inspection" that applicants for user permits and licenses have places of storage for explosive materials that satisfy the standards of safety and security set forth in the regulations. The SEA also requires onsite inspection of places of storage of all new and renewal applicants for user permits and licenses, but not of limited permittees.

b.     In order to ensure compliance with the SEA requirements, a full inspection will be conducted at renewal time. Inspections conducted up to 12 months prior to the renewal date meet this requirement. These inspections will include verification of storage as required by the SEA and all other aspects of a full inspection.

c.     If a full inspection has been conducted within the 12 months prior to the renewal date of the license or permit and no significant violations are disclosed, the field office should recommend approval of the renewal application upon receipt from the FELC and no inspection should be initiated. If there is a need to verify the status of responsible persons or employee possessors, a "recall inspection limited scope" may be conducted prior to approval of the renewal. In cases in which the recent SEA full inspection resulted in significant findings or violations, a recall inspection should be conducted at the time of renewal or earlier, as appropriate.

   **Note:** There is no 12-month mandatory waiting period for conducting an explosives recall inspection as there is with firearms.

d.     Inspection procedures are different with respect to limited permittees. Upon receipt of an original application, or at the time of renewal, ATF may verify proper storage via telephone conversation, letter, or other means deemed appropriate. Places of storage for limited permit applicants can only be physically inspected either at the time of the original application or at the time of renewal. Such visual inspection may take place only once every 3 years. Inspection of the renewal applicant's records may be conducted on a voluntary basis only.

81

e. When fulfilling the SEA requirements of fireworks licensees and permittees (3-year cycle) a SEA Full inspection is required. However, during peak seasons of high production and inventory (e.g., May, June, and July), these inspections should primarily focus on safe storage along with a cursory records review. This would include Table of Distances, magazine construction, and inventory verification. Inventory verification encompasses the reconciliation of DSMT records with the physical inventory. If there are indications of public safety issues or a history of noncompliance (i.e., a previous warning letter or warning conference), a full inspection may be conducted). During the off-season, a recall inspection limited scope must be issued and an extensive recordkeeping examination and internal control evaluation conducted as this is not done during peak season. This process allows ATF to focus on public safety issues and meet the SEA requirements. It is also less intrusive to the industry members' business operations during their busy season.

124. <u>INSPECTION OF ATF MAGAZINES</u>. Refer to Chapter F, Related Inspection Information, for guidance.

125. <u>PRELIMINARY INSPECTION PROCEDURES AND TECHNIQUES</u>.

a. The IOI shall review the licensee's or permittee's compliance history available in the area office files and in N-Spect. Drawings of the licensee's or permittee's premises should also be reviewed. Original applications and subsequent amendments may provide background information on hours of business, responsible persons, etc.

**Note:** If area office files are incomplete, the IOI should contact the FELC for pertinent background information.

b. Query the FLS database to ensure that the licensee or permittee is currently active and to determine whether there are any active variances.

c. Query N-Force and contact the appropriate CE office for any open CE investigations.

d. Query the Automated Customs System (ACS) through the contact person in the field division or the FEIB to determine if the licensee or permittee has imported any explosive materials.

e. Review the United States Bomb Data Center (USBDC), National Explosives Tracing Center report to determine whether the licensee or permittee reported any thefts or losses. For assistance on how to request an explosives trace refer to: http://www.atf.gov/content/Explosives/explosives-enforcement/USBDC-explosives-tracing

f. A review of past inspections and current operations shall be conducted to determine if an early morning inspection is necessary and if additional IOIs are needed. If the licensee/permittee or location is a known security risk, contact the AS to determine the appropriate course of action.

82

g.  As a general rule, advance notification will not be given prior to conducting explosives full inspections. When prior notification is necessary, such notification will be made as close to the inspection date as is feasible. Prior notification must be approved by the AS and documented in the inspection report.

Examples of two types of situations in which notification may be appropriate are:

(1)  An explosives licensee or permittee whose business premises are normally unattended during business hours; or,

(2)  A company with erratic business hours in a rural area that would require several hours of travel time by an investigator.

h.  At times, it may be necessary to determine if product is being improperly stored overnight in a manufacturing or processing area, on trucks, or in an unapproved storage facility. When this occurs the IOI should arrive at the premises early in the morning and commence the inspection when the proprietor begins operations. Generally, if a licensee or permittee is conducting operations at the business premises, they are considered to be open for inspection purposes. Refer to subparagraph 127(e) and Chapter F, Related Inspection Information.

i.  Determine the proximity of any safe havens. Concerns about the misuse of safe havens will be referred to the EIPB.

126.  <u>TEAM INSPECTIONS.</u> For industry members with large, complex, or sensitive operations, the team concept is the best approach. The exact number of team members will be determined by the AS based on the industry member's operations. Conducting a team inspection should reduce the time frame in which the field work is conducted, as well as facilitate a more thorough physical inventory and review of records. Additionally, this type of inspection provides a training opportunity for less experienced IOIs.

127.  <u>INSPECTION PROCEDURES.</u>

a.  In the event a licensee/permittee denies access to the licensed premises, the IOI will observe the following guidelines:

(1)  Ensure that the premises to which access was denied is listed on the <u>ATF F 5400.13/5400.16</u> or stated by the licensee or permittee to be the business premises. The IOI must make it clear that he/she is requesting access to the business premises. The business premises include places where records are stored. (See definition in <u>27 CFR 555.11.</u>)

(2)  Once the licensee or permittee refuses entry to the business premises during business hours, the IOI must clearly request entry to the business premises to inspect the required records and inventory. If the licensee or permittee continues to deny entry and access to the business premises, the IOI must inform the licensee or permittee that the continued denial of entry and access is legal grounds for revocation of the license or permit. The licensee or permittee must be provided with the specific law and regulation citations that have been violated (e.g., <u>27 CFR 555.24</u>).

83

(3) If the licensee or permittee continues to refuse entry and/or access to the business premises, the refusal will be considered willful. The IOI will immediately withdraw from the premises and contact the AS for the appropriate course of action, such as obtain approval from the DIO to obtain an inspection warrant and/or initiate revocation proceedings. The IOI must write out a short statement that documents the licensee's refusal to permit entry and/or access to the business premises. The statement must reflect the date, time, licensee's or permittee's name, address, and license or permit number. The IOI will sign the statement, give a copy to the licensee or permittee and keep the original statement for the area office file. Depending on the circumstances (i.e., a hostile licensee), the licensee's or permittee's copy may be sent via certified mail. In addition, the IOI must contact his/her AS for instructions on whether to remain near the site to observe any possible illegal operations.

b. Once an onsite inspection commences, the IOI will complete the inspection without interruption. Timely completion of the inspection, including the submission of a fully documented inspection report, is critical.

(1) If an inspection remains open 30 days after it began, the lead IOI will submit a status report to the AS. Thereafter, this status report will be submitted on a weekly basis until the inspection is completed. The status report must include the reason(s) for delay and the anticipated completion date.

(2) A break in the inspection should only occur due to circumstances beyond the IOI's control. If an interruption in the inspection does occur, the licensee or permittee shall be provided with an explanation and an approximate date when the inspection will resume.

c. Generally, the period of review will be the 1 year period from the start of the inspection. In the case of a recall inspection, the review period shall always begin with the end date of the last inspection.

d. The IOI must not sign any document which releases the licensee or permittee from any type of liability (e.g., physical injury) sustained at the business premises.

e. When an explosive licensee or permittee is known to begin operations early in the morning, prior to the stated business hours, the IOI may begin an early morning inspection with the approval of the AS. This should be timed to coincide with the actual beginning of operations by the licensee or permittee. An early morning inspection should verify the following:

(1) Pre-loaded trucks are not being left unattended overnight without a proper variance;

(2) No finished product is left overnight in a process building or area;

(3) Explosives removed from magazines are being properly accounted for in the DSMT records as required by regulations; and

84

(4)     No illegal operations are occurring.

128.    INTERVIEW OF LICENSEE OR PERMITTEE.

a.      Make positive identification of the licensee, permittee or the responsible person
        and verify identifying information. The IOI shall conduct himself or herself in a
        professional manner at all times and seek to maintain a cooperative relationship
        with the industry member. The IOI will identify himself or herself by displaying
        their Bureau issued credentials.

        **Note:** Credentials shall not be photocopied.

b.      Interview the licensee, permittee or a responsible person to determine whether
        there have been any changes to the business structure, trade name, control,
        responsible persons, employee possessor, class of explosives, or qualifying
        documents and operations. For procedures to report changes after original
        qualification and for an explanation of the different types of business entities, see
        Explosives Licensing, and Business Structures.

        If any unreported changes are disclosed, ensure that the proprietor immediately
        reports such to the FELC.  (Refer to 27 CFR 555.54, 555.56, and 555.57.)

        (1)     Provide assistance regarding the filing of any required applications or
                notices.

c.      Verify compliance with any approved variances. Verify whether the variance is
        still needed. If the continued approval of the variance is found to hinder effective
        administration of the regulations or to be a threat to public safety, recommend to
        EIPB that the variance be rescinded and document the reasons in the inspection
        report.

d.      The IOI should ask for consent to review business records, such as partnership
        agreements, corporate records, leases, and purchase orders. If evidence is
        uncovered that confirms the existence of hidden ownership, contact the AS for
        further guidance.

        **Note:** Pay particular attention to those situations where the licensee's or
        permittee's spouse, former business associates, etc., is known to be prohibited
        under the law. Document the prohibited person's degree of involvement in the
        business. Determine if they take an active part in conducting the business or
        signing business records. Refer any suspected criminal activity to CE. If no
        criminal activity is suspected, the IOI will advise the licensee or permittee that the
        prohibited person cannot possess, receive, ship, or transport explosive materials.

e.      Determine if the licensee or permittee has moved the business or operations to a
        new address without properly amending the license or permit as required under
        27 CFR 555.54. Advise the licensee or permittee that a change of address
        notification to amend the license must be submitted immediately to the FELC.

f.      If it is determined that the licensee or permittee is inappropriately operating at a
        location other than the licensed or permitted premises, and that an additional

85

license is required for these operations, notify the AS immediately (see Explosives Licensing for guidelines). The proprietor shall be advised to cease operating from the unlicensed location.

g. Determine if the licensee or permittee has any other ATF licenses or permits.

h. Determine if the licensee or permittee is complying with other Federal, State, or local laws, such as permitting and zoning. Refer any violations to the proper authorities. Note the name and phone number of the State or local officials contacted.

i. Verify that the licensee or permittee has notified the authority having jurisdiction for fire safety of any storage facilities per 27 CFR 555.201(f). Note the name and phone number of the person contacted.

j. Document all storage locations at this site and other locations.

129. CONDUCT OF BUSINESS.

a. Verify the license or permit is posted and is of the proper type for the operations conducted.

b. Obtain a list from the licensee or permittee of all responsible persons (RPs) and employees that are authorized to possess explosive materials. Compare this list with all persons cleared by ATF to possess explosives and note any discrepancies. Refer to Background Check Guidelines and memorandum titled Use of TECS/NCIC/NLETS and NICS in FEL Inspections dated Mary 27, 2005 for guidance on conducting OpenFox queries.

(1) If additional responsible persons are identified, ensure that the licensee or permittee provides written notification to the FELC of all required identifying information. A copy of the notification shall be obtained for the area office file.

**Note:** Fingerprints cards and photographs must be submitted upon renewal. Conduct preliminary OpenFox queries and if prohibitive information is disclosed, notify FELC and CE as appropriate, after consultation with the AS.

(2) Ensure that all employee possessors (EPs) are reported upon renewal. Ensure that the proprietor is aware that if additional EPs are added after renewal, ATF Fs 5400.28, (EPQ), must be submitted within 30 days of the EP's employment date. Conduct preliminary OpenFox queries and if prohibitive information is disclosed, notify FELC and CE as appropriate, after consultation with the AS. Copies of completed forms must be maintained for the area office file. Under no circumstances may the IOI disclose to a licensee or permittee the reasons why an EP is prohibited.

(3) If a RP or EP has been removed by the FEL/FEP, ensure that the licensee or permittee notifies FELC in writing and obtain a copy of the notification for the area office file.

86

(4)    Conduct random OpenFox queries on all RPs and/or EPs to determine if any individuals have become prohibited since the last background check was completed by ATF. If prohibitive information is disclosed, notify FELC and CE, as appropriate, after consultation with the AS.

(5)    If information is obtained during the inspection that a RP or EP may be prohibited, conduct OpenFox queries to ensure that no disabling factors have developed since issuance of the license or permit.

(6)    If you encounter a RP or EP who may be a prohibited alien, initiate an Citizenship and Immigration Services (CIS) query through OpenFox (IAQ query) to determine the person's immigration status. If it is unclear whether a person's status makes him/her a prohibited person, contact your field division's coordinator, who will follow up with the EIPB.

c.    As appropriate, persons observed handling or possessing explosive materials should be compared to the list of personnel authorized to possess explosives. Verify that each is a RP or is on the current list of EPs.

d.    Ask the licensee or permittee to voluntary disclose whether there have been any suspicious job applicants or employees leaving employment under suspicious circumstances. With consent, obtain identifying information about these individuals, and make a referral to CE as appropriate.

e.    For explosives permittees, verify that no other explosives are being distributed.

f.    For explosives licensees, verify that the licensee is obtaining certified copies of licenses or permits prior to distributing explosives.

    **Note:** Although not required to be maintained, the IOI should examine these copies, if available. Verify that the signature is original and that the license was current at the time of purchase. Examine the copy to determine if it has been altered in any way. If it is determined or appears that a certified copy has been altered or is fraudulent, make a referral to CE after consulting the AS.

g.    For licensees, verify that a certified statement of intended use is being obtained from purchasers prior to distributing explosives to licensees or permittees in accordance with 27 CFR 555.103(b)(2)(iii).

h.    Verify that licensees are properly identifying individuals prior to distributing explosive materials.

i.    Verify that the licensee is obtaining a list of employees authorized to receive explosive materials. Verify that the licensee or permittee is retaining this list as required by 27 CFR 555.103(b)(2)(ii) and 555.105(b)(5).

j.    Verify that the person accepting delivery of explosives is on the list of persons authorized to accept delivery, and that the person's identity has been verified using a Government-issued photo ID in accordance with 27 CFR 555.11, 555.103 (b)(2)(ii), and 555.105 (b)(6)(i).

87

k. For explosives licensees, verify that the licensee is obtaining, completing, and submitting <u>ATF F 5400.4</u>, Limited Permittee Transaction Report, for all distributions of explosives to limited permittees in accordance with <u>27 CFR 555.105(b)(2)</u>. Verify that such distributions have only been made to limited permittees located in the same State. Utilize FLS queries to obtain information about permittee coupon usage, licensee coupon redemption, monthly and daily flagged coupon usage, and lost or stolen coupons by State or by county.

l. If unusual or suspicious activity is suspected, select a sample of explosives purchasers who had explosive materials delivered to them by common or contract carrier. Conduct a forward trace inspection on these purchasers to ensure that transactions have been made in compliance with the laws and regulations. Obtain approval from both the AS and DIO prior to conducting any forward trace inspections. Approval shall be documented in the PII Folder. Remember that onsite inspections for limited permittees are limited to once every 3 years. Therefore, inform any limited permittee that any response to a forward trace is voluntary and not part of a mandatory inspection. (Check Department of Transportation (DOT) regulations for common contract carriers.)

130. <u>SAFETY MEASURES</u>. When inventorying explosive materials, IOIs must follow the safety procedures outlined in Chapter I, Inspection Safety Procedures.

**Note:** IOIs who have not completed the explosives handling training course must not physically handle any explosive material or device. Unless the IOI has received this training, all explosive materials are to be handled only by the licensee or permittee, their representative, or other IOIs who have received the training.

131. <u>STORAGE EXAMINATION</u>.

a. Determine the class(es) of explosives that the licensee or permittee manufactures, imports, distributes, and/or uses.

b. Ensure that all explosive storage facilities are inspected (including magazines not currently in use) for compliance with 27 CFR Part 555, Subpart K – Storage, and ATF Rulings <u>76-18</u> and <u>77-24</u>.

**Note:** The storage facilities of a limited permit holder cannot be physically inspected upon renewal if within the preceding 3 years ATF has verified that the magazine(s) meets the requirements of <u>27 CFR 555 subpart K</u>. However, if there is reason to believe that there is a problem with storage by the limited permit holder, ATF may physically inspect the storage facilities with the approval of the limited permittee. Alternatively, a warrant could be obtained to inspect the premises.

c. Other than general use buildings, examine **all** possible storage areas and onsite structures. Be alert for storage in adjoining structures and processing areas.

d. Record the type and location of all off-site storage locations. This should include construction sites and shot site services, if appropriate. Inspect or refer for inspection all off-site storage locations.

Case 3:23-cv-00544 Document 1-5 Filed 05/26/23 Page 95 of 155 PageID #: 165

e.  Verify that the area office files contain written verification of contingency storage. Contact the person providing the contingency storage and verify the arrangements. Document the company, name and phone number of the person contacted, and verify that contingency storage is in compliance with the laws and regulations. Determine what other contingency storage is approved for this site and if it can accommodate all contingency plans. Verify that contingency storage has been inspected and approved within the past 3 years.

f.  Verify that the licensee or permittee inspects each magazine at least once every 7 days.

g.  Discuss security measures as appropriate. Encourage proprietor to keep all magazine keys in a secure area and determine if the licensee or permittee can account for all of the magazine keys.

    **Note**: Security of keys is a voluntary internal control. (See ATF P 5400.15.)

h.  The IOI shall ensure that all magazines comply with construction, lighting, and housekeeping requirements. (Consider using magnets or mirrors to ensure that the underneath of type 4 and type 2 magazines are not constructed of wood and use thickness gauges—ultrasonic or manual—to accurately measure steel thickness. If you cannot determine the number of tumblers in a padlock, ask the licensee or permittee for documentation. Measure the diameter of the padlock shackle and ensure that it is case hardened).

    **Note:** When storage magazines do not meet the standards prescribed by the regulations, but are constructed substantially equivalent to the standards, the licensee or permittee may request a variance in accordance with 27 CFR 555.22. If the magazine(s) meets one of the construction standards outlined in ATF Ruling 76-18, no variance is needed.

i.  Prepare an Explosives Magazine Examination Worksheet for each magazine, inspected and verified, in accordance with the standard narrative report guidelines prescribed in Chapter H. IOIs shall place labels with unique ID numbers on the interior walls of industry owned magazines, except Type 3 day boxes, under a voluntary program with licensees and permittees.

j.  Obtain GPS coordinates for each magazine (excluding day boxes) or building containing a magazine and enter such into N-Spect.

k.  Verify that magazine photos in the area office file and N-Spect are current. Take photos of the magazine(s), update the area office file and upload the photos into N-Spect.

l.  Ensure that all buildings and storage facilities are reflected on the drawing provided by the licensee or permittee.

    (1)  Drawings provided shall include distances between all storage magazines, inhabited buildings, public highways, passenger railways, fireworks plant buildings, fireworks process buildings, fireworks non-

89

process buildings, fireworks shipping buildings, and other facilities which could be damaged if the magazine exploded.

(2) Verify the accuracy of the distances stated on the licensee's or permittee's plat drawing for compliance with TOD requirements and document the means of measurement. (See Table of Distances Chart, and paragraph 164 ATF Measuring Equipment, located in Chapter F, Related Inspection Information.)

(3) Barricades should be depicted on the drawing. Ensure that barricades meet the definition of barricade per 27 CFR 555.11, if used in applying TOD.

(4) The drawing should include a complete description of the entire area surrounding the magazine even if the area surrounding the magazine is not part of the licensee's or permittee's premises (e.g., wooded area located north of the magazine may not contain any magazines or inhabited buildings, but should still be identified on the drawing). Provide a description of all public facilities (e.g., gas stations, fast food restaurants, and churches) in the immediate area that could potentially be damaged by an explosion (even if outside TOD requirements).

(5) For manufacturers, the IOI shall identify "in process" and manufacturing areas. Verify that the proprietor is not using these areas for storage.

(6) The drawing must include the following certification statement, "This is a true and accurate drawing of my premises." The licensee or permittee must sign and date the certification.

m. If the IOI determines that the existing drawing is accurate, have the licensee or permittee re-certify the plat with a current date and signature.

n. If corrections to the plat are required, have the licensee or permittee make the necessary corrections and re-certify the drawing with a current date and signature.

o. If the licensee or permittee is using a magazine(s) acquired since the last inspection, except for magazines used for other than temporary (under 24 hours) storage and mobile or portable type 5 magazines, determine whether the proper notification was made to ATF. (See 27 CFR 555.63.) If the licensee or permittee has not notified ATF, the IOI shall obtain a notice from the licensee or permittee and include this violation on ATF F 5030.5, Report of Violations.

p. Determine what inventory controls are in place to ensure that quantity and TOD restrictions are not exceeded.

q. Verify that all outdoor magazines meet TOD requirements. (See 27 CFR 555.218 – 555.224, and when blasting agents or ammonium nitrate is located near high explosives, see Open Letter to Federal Explosives Licensees and Permittees Table of Distance Requirements dated September 17, 2012)

90

**Note**: When citing TOD violations, use 27 CFR 555.206 and **not** the tables of distances in 555.218, 555.219, and 555.220. The only exception would be fireworks processing buildings distances in 555.222 and 555.223; those violations shall be cited using 27 CFR 555.221.

r. Determine the maximum quantity of explosives allowed to be stored in each magazine according to the appropriate TOD.

(1) If TOD violations are identified, it may be possible to correct the violation by limiting the amount of explosives stored to the amount allowed by the TOD as opposed to moving the magazine.

(2) If any two or more magazines are separated by less than the minimum distance specified by the applicable TOD, such magazines will be considered as one magazine. The shortest distance from any point of the combined magazines to any other feature will govern the quantity restriction using the applicable TOD.

(3) The quantity of explosives materials stored in a detonator magazine will govern the distance required between detonator magazines and other magazines containing explosive materials.

s. When explosive storage violations are found, the IOI must:

(1) Document any storage that is not in a compliant magazine. If the licensee or permittee refuses to allow access to any structure on the premises, document the refusal and contact the AS. The IOI may inspect any building/structure that constitutes the business premises. This can be gleaned from the application and through interview of the licensee. If there is a question as to what constitutes the business premises, the IOI shall contact his or her AS and division counsel. When the business premises include a residence, a clear delineation as to what constitutes the business premises needs to be established. Any questions in this area shall be addressed to division counsel.

(2) Advise the licensee or permittee to take immediate corrective action. Contact the AS for guidance, if corrective action is not or cannot be taken immediately.

(3) Dynamite containing nitroglycerin may deteriorate with age. If dynamite sticks show obvious beading or are sweating, **do not** request that deteriorated explosives be moved. The IOI must immediately move to a safe distance from the magazine and contact the AS to determine the appropriate course of action, e.g., notify CE and/or the State or local authorities. The IOI will advise the proprietor to consult with the manufacturer or distributor for advice on proper and safe disposal procedures.

**Note:** All public safety violations involving explosives must be corrected before the completion of the inspection. (See Public Safety Violations.)

91

132. <u>UNSAFE STORAGE AND SEIZURE OF EXPLOSIVES MATERIALS</u>. If explosives are being stored in a manner that places the public at risk and all attempts to reduce that risk have been exhausted (e.g., moving the excess explosives to an alternative storage site), and an assessment of the risk of moving the explosives has been made, seizure action and possible emergency destruction may be necessary. Field division management will contact local division counsel and the Asset Forfeiture and Seized Property Division (refer to <u>ATF O 3400.1D</u>, Property Taken into Bureau Custody), and contact the Arson and Explosives Programs Division for guidance regarding seizure and possible emergency destruction actions. If explosives are seized, generally the recommended administrative action will be revocation.

**Note:** IOIs are **not** authorized to seize or to take abandonments of explosive materials.

133. <u>RECORDS</u>.

   a. An examination of the required explosives records and inventory will be conducted to determine that the inventory is properly accounted for and to determine whether the licensee or permittee is in compliance with the pertinent laws and regulations.

   b. The examination should also verify that storage limits were not exceeded during the inspection period and that product was not lost, stolen or diverted, and any missing or stolen product was properly documented and reported to ATF.

   **Note:** For limited permit holders, there is no authority to review the required records. However, if the permittee gives voluntary consent to review the records, ensure that voluntary consent is documented. If consent is not obtained, ATF F 5400.30, Intrastate Purchase of Explosives Coupons, and <u>ATF F 5400.4</u>, Limited Permittee Transaction Reports documenting sales to the limited permittee, may be examined at the premises of the supplier.

   c. IOIs must review the required records to ensure that they contain all required information and are completed in a timely manner. Required records include the following:

   (1) Acquisition, importation and manufacturing records;

   (2) ATF F 5400.4 forms;

   (3) Statements of intended use of explosives;

   (4) Distribution records;

   **Note:** Permittees are only required to maintain records of distributions of surplus stocks.

   (5) Record of explosives manufactured for own use (Exception: A licensed manufacturer is exempt from the recordkeeping requirements of <u>27 CFR 555.123(d) if the explosives materials are manufactured for his/her own use and used within a 24 hour period at the same site.</u>); and,

92

(6)      Separate DSMT records for each magazine.

d.      Verify that the required records are maintained on the business premises for at least 5 years from the date of the transactions. If records are being maintained for more than 5 years, encourage the licensee or permittee to surrender the records more than 5 years old to the IOI. The IOI shall then forward those records to the NTC.

e.      If the DSMT records are kept at a central location, verify that separate records are maintained for each magazine.

f.      Verify that the acquisition and disposition records agree with the DSMT records and instruct the licensee or permittee to resolve any discrepancies. Utilize other source documents to verify receipt and usage, if access is granted by the licensee or permittee. Prepare worksheets, as necessary.

**Note:** Explosive materials manufactured by a licensee or permittee and used within a 24-hour period at the same site are exempt from the recordkeeping requirements of 27 CFR 555.123 (d).

g.      Verify that the licensee or permittee is taking an annual inventory, recording the results in the DSMT, and resolving any discrepancies.

h.      Using accurate DSMT records and/or a current physical inventory, determine whether the licensee or permittee has exceeded the amount of explosives allowed by the appropriate TOD during the inspection period.

i.      Verify that the ATF Fs 5400.4 are being retained in chronological or alphabetical order.

j.      Select a sample of ATF Fs 5400.4 and verify proper execution. Be alert for indications of prohibited transactions, such as out of State distributions, more than six distributions to the same permittee, and no attached ATF F 5400.30. If prohibited activity is suspected, query the FLS database for coupon usage or theft and prepare referrals as appropriate.

k.      If inspection is of a permittee, determine whether a distribution of surplus stock of explosive materials has occurred. If appropriate, verify the licensee or permittee to whom surplus stock was sold or returned, the quantity of explosive materials involved, and the date of the transaction(s). Discuss with the AS whether an inspection of the distributee(s) is necessary.

l.      Select a sample of commercial records, with the consent of the licensee, to verify proper receipt and disposition entries in required records.

**Note:** If commercial records are being used as the required ATF records, the licensee would be required to grant access.

m.      Determine if the licensee exports explosives, and verify that exports were properly recorded and in compliance with the Arms Export Control Act. If

93

diversion is suspected, verify the explosives products exported, the quantities exported in the last year, and the countries to which they were exported.

n. Document any unusual purchases or dispositions for possible inclusion in the forward trace program. These would include the following:

    (1) Fireworks picked up prior to the Fourth of July that were purchased by licensees/permittees who have only contingency storage; and

    (2) Large sales of display fireworks to user-limited permittees.

o. Verify that any thefts or losses were properly reported to ATF, and correctly recorded in the required records. Compare the records with the report generated by the USBDC. Advise the licensee or permittee that a theft or loss must be reported within 24 hours of discovery. If a theft or loss was not reported, have the licensee or permittee immediately contact ATF by calling 1-800-800-3855, prepare and submit ATF F 5400.5, Report of Theft or Loss – Explosive Materials, and contact the State or local authorities. Ensure the theft or loss is recorded in the DSMT records, and prepare a referral to the appropriate CE field office.

p. Utilize the internal control guidelines in chapter J of this handbook, to evaluate the licensee's/permittee's procedures for ordering, receiving, selling, and accounting of explosives to determine whether transactions are properly reflected in the required records.

134. WORKBACK.

a. A workback must be conducted to verify the accuracy of the licensee's or permittee's record system. A workback is a simple way to verify the totals presented. For example, start from a previously known figure, such as:

    (1) An ATF conducted inventory;

    (2) The required annual inventory;

    (3) The last purchase of an item or set of items;

    (4) Entry documents for imports; or

    (5) Production reports for manufacturing operations.

    **Note:** A workback is not required if the licensee or permittee did not have inventory at the beginning of the inspection and did not have inventory during the entire inspection period. However, if the industry member had any inventory at any time during the inspection period, regardless whether or not they had inventory at the beginning of the inspection, a workback must be conducted.

b. Add all validated acquisitions to the "previously known figure" to arrive at "a total to account for" amount. Next, add the physical inventory taken on the date of the inspection to all validated dispositions to arrive at a "total accounted for."

94

Compare the "total to account for" to the "total accounted for" amount. These figures should agree if the records are accurate. If the figures do not agree, additional work must be performed to identify errors in the records. Another method of conducting a workback accounting is to add all validated acquisitions to the "previously known figure" (as previously described) to obtain a "total to account for" figure. Next, subtract all dispositions (including recorded losses) from the "total to account for" to arrive at the "total accounted for" figure. This number ("total accounted for") must agree with the physical inventory.

**Note:** There is no set number on how many workbacks should be conducted. Factors to consider shall include licensee's or permittee's internal controls, compliance history, number of suppliers, size of inventory (different kinds or types of products), unusual or large orders/shipments, products susceptible to theft/loss and present higher risk for use by criminals/terrorists, and if inspection will result in administrative action. Consult with the AS as appropriate.

135.  INVENTORY VERIFICATION. The objective of taking a physical inventory is to ensure that the materials or products in question actually exist and to test the accuracy of the records.

a.  One hundred percent inventory verification shall be conducted on all inspections where the quantity of explosives in inventory is **10,000 pounds or less** for high explosives and blasting agents (excluding detonators), and **1,000 pounds or less** for low explosives. For high explosives, 10,000 pounds equals approximately 180 cases (10,000 pounds/55 pounds per case). For fireworks, 1,000 pounds equals approximately 2,000 3-inch shells (72 per case); 1,100 4-inch shells (36 per case); 128 10-inch shells; or 83 12-inch shells.

**Note:** These values are approximate industry averages and reflect the composition found in both domestic and imported aerial shells. Variations will occur from manufacturer to manufacturer, as well as from item to item. For detonators, a minimum sample of 1,000 should be selected for verification.

b.  For inventories of high explosives and blasting agents **greater than 10,000 pounds**, and for inventories of low explosives **greater than 1,000 pounds**, the IOI may select a sample of explosives for verification. The sample size should be equal to the greater of 10,000 pounds or 10 percent of the product on hand for high explosives and blasting agents, and the greater of 1,000 pounds or 10 percent of the inventory for low explosives. The sample should be based on an entire product line or type of explosives product, e.g., for display fireworks, the sample could be all 3-inch shells. Alternatively, all of the explosives within a magazine could be selected for verification.

c.  If any of the selected explosives sampled cannot be located or the required records cannot be reconciled, an expanded sample equal to twice the size of the original sample must be conducted to fully determine the extent of the inventory discrepancies. Some products will be very difficult if not impossible to reconcile, e.g., bulk inventory, detonator cord, etc. Judgment must be exercised when expanding a sample based on apparent discrepancies with these products. If it is determined that the expanded sampling approach is not sufficient to identify the extent of the proprietor's inventory deficiencies, the IOI shall conduct 100 percent inventory verification.

95

d.  Also, 100% inventory verification shall be conducted for all recall inspections where the licensee or permittee was cited for inventory discrepancies or TOD violations in the previous inspection. In addition, a full inventory generally should be conducted on all inspections that warrant a "team approach."

e.  When selecting explosives for inventory verification, consideration should be given to those explosive products that are more susceptible to being lost or stolen and which present a high risk of use by terrorists or other criminals. These products include detonators, boosters, and bags of Ammonium Nitrate Fuel Oil (ANFO), among others.

f.  When fireworks are present, refer to ATF I 5400.29, Explosives Conversion Chart for standard percentages used in determining the net weight of pyrotechnic composition in fireworks. (Under 27 CFR 555.127, fireworks may be recorded in the DSMT by the number and size of individual display fireworks in a finished state or as the number of packaged display segments or packaged displays instead of weight.)

g.  Instruct the licensee or permittee to reconcile all inventory discrepancies against available records. This should be recorded by entering the overage or shortage in the DSMT record, entering "Per ATF Inspection", the date, and the correct balance.

h.  If an inventory discrepancy is the result of a theft or loss, verify that it is properly reflected in the licensee's or permittee's records and ensure that it is properly reported.

i.  Determine what inventory controls are in place to ensure that quantity and TOD restrictions are not exceeded.

j.  Select a representative sample of explosives on hand and verify that they have the proper manufacturer's or importer's markings. Document how the sample was derived in the narrative report. (Refer to 27 CFR 555.109.)

k.  For additional guidance on calculating explosives weights, refer to ATF I 5400.29, Explosives Conversion Chart.

l.  If criminal activity is suspected, the IOI shall contact the AS for guidance. The AS will consult with the DIO and appropriate CE personnel.

m.  All thefts and losses will be investigated jointly by IO and CE.

136.  EXPLOSIVES IMPORTERS. In addition to the compliance work steps outlined in this chapter, when investigating an explosives importer, the IOI must:

a.  Verify the accuracy of the licensee's importation records utilizing the results of CBP's ACE database query.

b.  Determine if articles on the U.S. Munitions Import List are imported and verify that the importer is registered on an approved ATF F 5330.4 (4587).

**Note:** Records of Munitions List articles other than firearms and ammunition must be maintained for 6 years.

    c.    Ensure that explosive materials imported into the United States have the required marks of identification prescribed under 27 CFR 555.109.

137.    EXPLOSIVES MANUFACTURERS. In addition to the other guidance in this chapter, when investigating an explosives manufacturer, IOIs must:

    a.    Examine the explosive materials manufactured to determine whether the manufacturer is placing the required marks of identification on explosives for sale or distribution.

        **Note:** Do not confuse marks of identification with the product identification codes. Proper markings include the name and location of the manufacturer as well as the date and shift of manufacture. (Refer to 27 CFR 555.109.)

    b.    Determine the manufacturer's method of accounting for explosives manufactured on site if those explosives are not used within 24 hours. Be aware that explosives manufactured for the licensee's own use and used within 24 hours at the same site are exempt from marking requirements.

    c.    With the proprietor's consent, determine if precursor chemicals (i.e., raw materials) have been properly accounted for and can be reconciled to the manufacturer's records.

138.    BLACK POWDER DEALERS. In addition to the compliance work steps outlined in this chapter, when investigating a black powder dealer, IOIs must:

    a.    Public Law 93-639 (1975) allows nonlicensees/nonpermittees to purchase commercially manufactured black powder, in quantities of 50 pounds or less, solely for sporting, recreational or cultural purposes for use in antique firearms or antique devices. Verify that dispositions of black powder in excess of 50 pounds or for use other than for sporting, recreational, or cultural use in antique firearms or antique devices have been made only to persons holding valid Federal explosives licenses or permits.

    b.    Inspect all storage magazines for compliance with construction requirements (type 4 minimum). The DSMT records of indoor type 4 magazines must be inspected to ensure that no more than 50 pounds of black powder have been stored in the magazine during the inspection period.

    c.    Verify that the licensee is maintaining DSMT records in compliance with the regulations.

    d.    Verify that black powder dealers are completing ATF F 5400.28, Employee Possessor Questionnaire, for their employees.

97

139.    FIREWORKS.

   a.    Review the definitions in <u>27 CFR 555.11</u> as they relate to the fireworks industry. (See <u>Explosives Definitions and Terms</u>.)

   b.    Verify that only licensed manufacturers are making or assembling fireworks for sale or distribution. Manufacturers may make explosives from component chemicals or assemble fireworks products from existing explosive materials. In either case, highly sensitive explosive materials such as flash powder and black powder will be present. (Refer to Chapter I, Inspection Safety Procedures.)

   c.    Determine, with the proprietor's consent, if precursor chemicals (i.e., raw materials) have been properly accounted for and can be reconciled to the manufacturer's records.

   d.    Ensure that fireworks are stored with marks visible for inspection. (See also <u>ATF Ruling 2010-2 Visibility of Marks on Explosives Containers Stored in Magazines.</u>)

   e.    Use the appropriate tables for fireworks when making TOD determinations.

   f.    For bulk salute classification and weight determination for TOD (refer to <u>Clarification of Bulk Salute Regulation</u>).

140.    <u>EXPLOSIVE PEST CONTROL DEVICES (EPCD)</u> - EPCD qualification inspections including renewals are generally conducted telephonically. On-site inspections are required if other classes of explosives materials have been purchased during the last three (3) years, are being used or will be used. In all cases, the IOI will follow the steps ordered in Chapter D, Explosives Qualifications including securing photographs of the proposed storage magazines, plats, etc.

The IOI will question the applicant, licensee, or permittee as to whether other classes of explosives have been purchased during the past three (3) years, identify the explosives material, and determine if they are stored in compliance with Part 555. Where it is revealed that other classes of explosives were purchased or are in use, an onsite inspection is required due to increased risk of use of FEL/P for purchases of other than EPCDs. The IOI shall request the applicant, licensee or permittee to provide clear photographs of sufficient quality to accurately depict and show the magazine(s) in its entirety, to include the front, sides, and back of the magazine as applicable. The applicant shall include on the magazine photograph(s) the following certification (signed and dated), "This is a true and accurate representation of my magazine. I do not store and will not store any explosives other than EPCDs on my premises." Photographs of other structures, including inhabited buildings, roadways, other magazines, etc. should be included. The use of panoramic photographs is recommended. The IOI shall complete an explosives magazine worksheet by requesting the information needed from the applicant, licensee or permittee. GPS coordinates should be requested and verified using Google Earth.

141. <u>DISCONTINUED BUSINESS</u>.

    a.    If it is determined that the licensee or permittee is no longer engaged or is not actively engaged in business, the IOI shall determine if there is an intent to resume business in the future. If the proprietor has no intent to actively engage in the business, they should be encouraged to surrender their license or permit.

    b.    When notification is received that a licensee or permittee intends to discontinue business operations, the proprietor should be contacted and notified about the requirements of <u>27 CFR 555.61</u> and <u>27 CFR 555.128</u>. The IOI shall also inquire about the disposition of any remaining explosive materials.

    c.    If a licensee or permittee intends to discontinue business operations, the IOI shall:

        (1)    Obtain a letter voluntarily surrendering the license or permit.

        (2)    Email ATF NTC, OBRR at <u>obrshipping@atf.gov</u> for shipping information and forward the required records. The scope of any records examination and possible corrections to the records will be determined by the AS, prior to their submission to the NTC, OBRR. The licensee or permittee has 30 days following discontinuance of business or operations to deliver records to ATF.

    d.    If explosives are still in inventory, advise the licensee or permittee that prior to the surrender of the license or permit, the explosives materials must be consumed or transferred to another licensee or permittee.

    e.    In the event the licensee or permittee is succeeded by another licensee or permittee, verify the maintenance of the required records by the successor or their submission to the ATF NTC, OBRR.

142. <u>VARIANCE REQUEST</u>. Variances from the requirements of regulations may be submitted in accordance with <u>27 CFR 555.22</u>. All variance requests, including recordkeeping, must be prepared in letter form from the licensee's or permittee's responsible person(s), addressed to the Chief, EIPB submitted via email <u>EIPB@atf.gov</u>. If the area office receives the variance request, the area office may submit a recommendation and forward it along with the variance request to EIPB through the AS.

    a.    When storage magazines do not meet the standards prescribed by the regulations, but are constructed substantially equivalent to the standards, the applicant may submit a request for a variance in accordance with <u>27 CFR 555.22.</u>

    **Note:** If the magazine(s) meets one of the construction standards outlined in <u>ATF Ruling 76-18</u>, no variance is needed.

    b.    The variance request should explicitly describe the proposed alternate method or procedure. The applicant should provide the following:

99

(1)      Name, address, license or permit number, phone number, and email address of the person making the request.

(2)      Any other information that could assist ATF's decision with the request.

(3)      If the request is storage related, pictures that address the specific needs for the request, i.e., magazine, locks, location, surrounding structures, etc and the name, address, and phone number of the local fire department having jurisdiction where the magazine is located.

c.      The IOI shall include in his or her inspection report a recommendation for approval or disapproval of the variance request. A copy of the variance request shall be maintained in the area office files.

d.      A response will be written by EIPB and sent to the applicant with copies forwarded directly to the DIO and Chief, FELC. If the variance is approved, EIPB will outline the conditions of the variance for the applicant. If the variance is disapproved, EIPB will advise the applicant why the variance cannot be granted.

143.      <u>EMERGENCY STORAGE REQUEST</u>. The primary concern in all storage matters is public safety. Before any product is moved, an assessment must be made to determine if moving the product poses a greater risk to the public than granting an emergency storage variance. ATF will only consider approving an emergency variance request if the variance provides for sufficient protection to public safety. When evaluating these requests, ATF's primary concern is the public's safety. The division management team (SAC, ASAC, and DIO) is responsible for recommending the appropriate course of action to the EIPB.

144.      <u>REFERRALS</u>. Any referrals to ATF CE and to other Federal, State, and local agencies will be made by IO in accordance with Chapter F, Related Inspection Information, and Chapter G, N-Spect, in this manual.

145.      <u>CLOSING ACTIONS</u>.

a.      <u>Documenting Violations</u>. For best evidence, copies of records should be made to document omissions and errors cited on the Report of Violations. If the IOI does not have access to a copier at the industry member's premises, the records may be removed from the licensed premises with the FELs/FEPs consent for copying utilizing <u>ATF EF 3400.23</u>, Receipt for Property and Other Items. Upon return of the documents, the IOI must have the industry member sign and date the ATF F 3400.23 indicating receipt of the records.

b.      <u>Report of Violations</u>.

(1)      The IOI will prepare <u>ATF F 5030.5</u> to document all violations disclosed during the inspection.

**Note:** At no time may the IOI issue an ATF F 5030.5 if the information contained on the report could jeopardize a pending criminal investigation.

100

(2)     The report of violations must be prepared in N-Spect. If this is not possible, it is acceptable to complete the form by hand. If completed by hand, the violations still must be entered in N-Spect. The report of violations, signed and dated by both the IOI and the licensee/permittee or responsible person, shall be entered in N-Spect. In addition, evidence of corrective actions shall also be entered in N-Spect.

(3)     All violations must be documented in detail on ATF F 5030.5 to convey the specific problem areas to the licensee or permittee and to support any future administrative or criminal proceeding which may result. The form shall include appropriate corrective action for each violation and the date by which the correction is to be made. If not corrected immediately, follow-up action must be initiated to ensure that the violations were corrected and to document the date of the correction. If corrected immediately, the current date should be shown.

c.      Closing Conference. Hold a closing conference with the licensee or permittee. Advise the licensee or permittee of the recommendation, if appropriate. Note the names of person(s) attending and the date of the closing conference and document in the narrative report.

(1)     Discuss the violations cited and recommend methods of compliance to avoid recurrence and the consequences of repeated violations.

(a)     The FEL/FEP or responsible person shall be given a copy of the ATF EF 5030.5. Attach the ATF EF 5030.5 with the original signatures to the inspection report. The IOI shall ensure that all corrective actions have been completed before submitting the assignment for review.

**Note:** If the FEL/FEP refuses to sign the ATF EF 5030.5, the IOI shall state the reason for such refusal in the narrative report.

(b)     Discuss with the FEL/FEP or responsible person specific actions to be taken to ensure the operations remain in compliance with the regulations.

(c)     Thoroughly review the Acknowledgment of Federal Explosives Regulations (AFER) with the FEL/FEP. Have the FEL/FEP sign and date the AFER, provide them a copy and maintain the original with the inspection report. If the FEL/FEP refuses to sign, document their refusal in the inspection report.

d.      A recall inspection will be recommended when significant public safety violations are disclosed by the inspection or there is a concern that the licensee or permittee is either unwilling or unable to take proper corrective action.

**Note:** All public safety violations must be corrected prior to closing the inspection.

e.      Ensure that the licensee or permittee has a current copy of ATF P 5400.7, ATF: Explosives Laws and Regulations.

100

f.    Provide the applicant with the address and telephone number of the local ATF IO and CE offices.

g.    Recommend that the licensee or permittee report any suspicious activity to the local ATF field office 1-800-800-3855 after gathering as much information as possible.

146.  REPORTS.

a.    IOIs will prepare reports in accordance with the guidelines prescribed in Chapter H, Standard Narrative Report Guidelines.

b.    Inspections reports must be completed in accordance with the timeframes prescribed in Chapter F, Related Inspection Information.

147.  i-NOTE INCIDENT NOTIFICATION SYSTEM.  If required, prepare an i-Note in accordance with the guidelines prescribed in Chapter F, Related Inspection Information.

148.  INVESTIGATIONS/REPORTING OF THEFT/LOSS

a.    Criminal investigations initiated as a result of a reported theft or loss by an industry member must be conducted jointly with CE. The IOI will conduct an internal control review, inventory verification, and a review of the security checklist. Any reports generated from such activities shall include the CE investigation number and address all relevant information about how the theft or loss occurred or could have been prevented. This should include a discussion about mode of entry, how security was defeated or compromised; model and make of locks compromised, and photos of the entry, including cut locks, hasp, door removals, etc.

b.    On every inspection it is important to advise industry members to report all thefts and losses to the Joint Support Operations Center by calling 1-800-800-3855.

149.  TRACING OF EXPLOSIVES. IOIs may be required to assist CE in the tracing of recovered explosives. These inspections should include an internal control review, inventory verification, and a review of the security checklist, when applicable.

150.  - 160. RESERVED

101

CHAPTER F.  RELATED INSPECTION INFORMATION

161.    HAZARDOUS DUTY PAY. Hazardous duty pay differential is paid subject to 5 CFR Part 550, and Appendix A to Part 550 requirements. Under this part, hazardous duty pay is authorized when personnel are assigned and perform work with or in close proximity to exposed explosives or incendiary materials that are "highly sensitive and unstable."

   a.    The following two categories fall within the definition of "highly sensitive and unstable" for purposes of qualifying for hazardous duty pay:

      (1)    Loose stores (not in original shipping container) and/or spills of bulk black powder or flash powder found in the storage facilities or processing areas at the premises of any licensee or permittee.

      (2)    Deteriorated explosive materials that pose an immediate danger of physical harm to ATF employees or other personnel, such as deteriorating sticks of nitroglycerine-based dynamite when the nitroglycerin has leaked through the packing materials and has crystallized, or when electric detonator caps have metal connectors that are badly corroded with rust.

   b.    If employees encounter a hazardous situation, they should contact their AS. The AS will consult with the appropriate DIO, Chief Counsel and Administration and Ethics Division to make an initial determination whether a situation warrants hazardous duty pay differential. Hazardous duty pay is computed based on the total number of hours that the employee is in a pay status on the day on which hazardous duty was performed, regardless of the actual amount of time he/she was exposed to the hazardous duty. The total hours that an employee is in pay status includes any overtime hours worked and any annual or sick leave taken on the day that the hazardous duty was performed. For public safety reasons, employees should make every effort to rectify any hazardous duty situations as quickly as possible.

   c.    The authority to approve hazardous duty pay has been delegated to the Chief, Human Resources, (refer to ATF O 1100.168B). The approval process is as follows:

      (1)    The AS will submit a cover memorandum and hazardous duty pay worksheet (see Worksheet for Requesting Hazardous Duty Pay Compensation) to the DIO for approval.

      (2)    The SAC will initial off and send the package to the Chief, Field Management Staff (FMS).

      (3)    The Chief, FMS will provide oversight for consistency of application and route the worksheet to the Chief, Human Resources Division for payment.

            **Note**: IOIs will not be able to enter time and Hazardous Duty Pay code in WebTA.  FMS will request HQ Payroll manually enter and code the

102

additional pay after receiving and ensuring the required documentation and approval process have been met.

162. ATF MAGAZINES.

    a.    Magazines used to store ATF explosive materials must be examined by IO annually. IOIs will place label with unique ID number on the interior walls of all ATF magazines. See Magazine ID Program ATF Magazines.

    b.    Inspections of ATF magazines shall be titled in N-Spect with the name "ATF Magazine" followed by the name of the group primarily using the magazine; e.g., ATF Magazine - New Orleans II. When conducting examinations of ATF magazines, the IOI must ensure that ATF-owned explosives are entered into the DSMT records and that the quantities for both ATF-owned explosives and seized regulated explosives are used to verify compliance with TOD requirements. It is not necessary to verify the accuracy of seized evidence records. Instead, the recorded quantity can be accepted for TOD determinations. ATF-owned explosive materials, on the other hand, must be verified against the DSMT records. A complete inventory must be conducted. In addition, a workback shall be performed to ensure accuracy of the records and inventory. The magazine custodian must be present during the inspection.

    c.    Inspections of ATF magazines shall be documented on the Explosives Inspection Report Format.

    d.    If ATF owns the explosives magazine, any exceptions noted must be corrected immediately. All other non-Bureau-owned explosives magazines where ATF has explosive materials stored must be examined by ATF IOIs for compliance with regulations and safety standards. If exceptions are discovered, the IOI will notify the owner of the magazine of the exceptions and will make recommendations to bring the magazine into compliance. In some instances, the magazine owners may be exempt from storage requirements and choose to remain noncompliant. In order to exemplify the safe storage and use of explosives materials, ATF field offices will not use a non-Bureau-owned explosives magazine that is not in compliance. If necessary, field offices will make arrangements to find a more suitable location that will be in compliance.

163. ATF MEASURING EQUIPMENT.

    a.    Laser Range Finder.

        (1)    Before using the range finder on an inspection the IOI must have received training in the proper use of this device.

        (2)    When verifying TOD using the laser range finder, the IOI must ensure that the equipment has been tested for accuracy in accordance with the guidance provided in Laser Range Finder Calibration Instructions and Laser Range Finder Calibration Log. A separate record for each range finder shall be maintained in the area office to document the tests performed. If based on the test conducted it is determined that the unit is

103

not functioning properly, the IOI must immediately stop using the device and request a replacement unit.

(3) If feasible, the accuracy of the range finder will be verified using a second measuring device, such as a measuring wheel or tape measure, during any inspection where a TOD violation exists. If possible, the verification process should be accomplished prior to citing the violation. If this is not feasible, the accuracy of the range finder should be tested as soon as possible upon completion of the inspection and documented in the worksheets or narrative report. This will reduce the risk of the accuracy of the range finder being called into question at a hearing or court proceeding.

(4) IOIs **must** perform calibration testing on the equipment in any instance where distances measured solely by the range finder may result in an administrative action pertaining to TOD. This test should be conducted as close to the time of inspection as possible, preferably before or at the time of inspection, but may be done after the inspection. Otherwise, calibration or testing should be performed at least twice per year (bi-annually). (See <u>ATF F 3000.5</u>, Laser Range Finder Calibration Log)

b. <u>GPS Devices</u>

(1) ATF has absolute jurisdiction and is responsible for accurately accounting for all licensed and permitted explosive magazine storage sites.

(2) IOIs must obtain the GPS coordinates of all explosives magazines (excluding day boxes). The GPS coordinates collected by IOIs will be used for life-threatening situations and will support ATF's role in ensuring national security. GPS coordinates for explosives magazines must be accurately acquired, verified and correctly entered into N-Spect. ATF will compile and maintain this data for all explosive magazine storage nationwide. Capturing accurate GPS coordinates for explosive magazines is paramount to national security.

(3) Before using the GPS device on an inspection, the IOI must have received training in the proper use of this equipment.

(4) Generally, GPS devices are not to be used to verify TOD requirements. Measuring tapes, a measuring wheel, or a laser range finder must be used if possible. Google Earth Ruler is the <u>preferred alternate</u> procedure in lieu of GPS devices for IOIs to use in determining distances when conducting explosives inspections (see Paragraph 163 c). However, if a GPS device is used to verify TOD requirements, terrain features or other reasons that necessitated using a GPS unit must be documented in the worksheets or in the inspection report.

(a) A licensee/permittee should not be cited if the distance calculated using the GPS device meets the TOD requirements after taking into account the margin of error of the GPS coordinates. For

104

example, if the TOD require that a magazine be 650 feet away from a private dwelling and the GPS device indicates the magazine is only 645 feet away before taking into account a degree of accuracy of plus or minus 10 feet for the GPS coordinates at the time the reading was taken, the licensee should not be cited for a TOD violation.

(b)     If the GPS device is used to cite a licensee/permittee for a TOD violation, the IOI must document all variable GPS settings/options used in determining coordinates and/or location; e.g., position format, map datum, input/output settings. The IOI must also document the weather conditions or foliage condition, accuracy rate measurement displayed on the GPS.

(5)     IOIs **must** perform calibration testing on the equipment in any instance where distances measured solely by the GPS may result in an administrative action pertaining to TOD.  This test should be conducted as close to the time of inspection as possible, preferably before or at the time of inspection, but may be done after the inspection. Otherwise, calibration or testing should be performed at least twice per year (bi-annually). (See ATF F 3000.6, GPS Receiver Calibration Log, and Inspection GPS Distance Calculator Worksheet)

c.     iPhone – IOIs are authorized to use their iPhones to obtain GPS coordinates for explosives magazines during inspections. IOIs can use the "maps" application already installed in their iPhone. See GPS Coordinates using iPhone Map.

Open the map application.  It should pinpoint your exact location.
Select the icon where your location is marked.
A "My Location" screen will appear.  Pull up the screen and you will see the Latitude and Longitude readings for the GPS of your exact location.  These readings show four digits after the decimal point.  You can just add zeroes to the end if additional digits are necessary to enter it into N-Spect.

d.     Google Earth Ruler.

(1)     The Google Earth Ruler (GER) is a virtual globe map, and geographical information program. It maps the Earth using satellite imagery and aerial photography. As stated previously in paragraph 163 b (4), GER is the preferred alternate procedure for IOIs to use in determining distances when conducting explosives inspections. Each set of GPS coordinates can have a margin of error of several feet, depending on weather conditions. That margin of error is compounded as multiple coordinates are taken to measure distances between magazines, inhabited buildings, highways, etc. Therefore, the GER is recommended as a better alternative for distance determination when direct line-of-sight measurements are not possible.

(2)     IOIs will determine the distance by obtaining GPS coordinates of all explosives magazines (excluding day boxes). IOIs must follow and apply

105

all the steps on proper use of the GER before using it during an inspection. Generally, the GER should be used only as an alternative method to verify TOD requirements. Measuring tape, a measuring wheel, or a laser range finder must be used if possible. If the GER is used, the reason why must be documented in the worksheets and in the inspection report. If the GER is used to cite a licensee or permittee for a TOD violation, the IOI must document all the measurements (e.g., length and heading) used in determining coordinates and locations at the time the reading was taken. GER coordinates for explosives magazines must be accurately acquired, recorded, verified, and correctly entered in N-Spect. Capturing accurate GER coordinates for explosive magazines is a matter of national security. (See Google Earth Ruler Measurement Information for instructions and sample measurements and results.)

164. <u>WILLFULNESS</u>. Willfulness means the intentional disregard of a known legal duty or plain indifference to the licensee's or permittee's legal obligations. ATF is not required to prove that the licensee or permittee intended to violate the law. There is no set formula for establishing willfulness; e.g., a percentage of violations per total transactions. While large numbers of violations may establish willfulness, courts have also upheld revocations based on a single violation, such as a straw sale or a sale to a prohibited person have also upheld revocations where there was no prior history of violations, but there was other evidence of willfulness. ATF Counsel is a resource available for determining whether willfulness has been established. Willfulness may be proved in a number of ways, to include:

a. A history of similar, repeat violations;

b. Statistical evidence; e.g., number of incorrect ATF Fs 4473;

c. Blatant disregard for storage and Table of Distance requirements;

d. General compliance history, including any efforts by ATF personnel to educate and inform the licensee or permittee as to his/her legal responsibilities (i.e., the review of the Acknowledgment of Rules and Regulations during the qualification and subsequent inspections);

e. Licensee or permittee, employee, or third party statements and admissions;

f. Actions by a licensee or employee during the inspection that hindered or obstructed the inspection;

g. Violations that clearly indicate intentional disregard of the law, such as a licensee or permittee knowingly entering false information in the required records; or

h. In an administrative matter, generally the Government must present sufficient evidence to support the alleged violation. There is no requirement to prove an allegation beyond a reasonable doubt, which is the standard reserved for criminal matters.

165.   CITING INSPECTION VIOLATIONS.

a.   Definitions.

(1)   Violation - failure to comply with a **specific** section of the regulations.

(2)   Instances - the number of times a **specific** section of the regulations was violated.

b.   Technical Correctness.

(1)   Violations, where there is no corresponding regulation, shall be cited using the statute (e.g., 18 U.S.C. Section 922(z)).

(2)   Violations, where there is both a statute and a corresponding regulation, shall be cited using the regulation citation only; e.g., 27 CFR 478.125(e).

(3)   Regulatory provisions that are State or local violations can be cited (e.g., 27 CFR 478.99(b)(2)). However, local ordinances can only be cited if they are published by ATF (ATF P 5300.5, State Laws and Published Ordinances – Firearms). In addition, violations shall be referred to the appropriate State or local agency; e.g., State or local waiting periods.

(4)   When citing TOD violations, use 27 CFR 555.206 and **not** the tables of distances in 555.218, 555.219, and 555.220. The only exception would be fireworks processing buildings distances in 555.222 and 555.223; those violation shall be cited using 27 CFR 555.221.

(5)   Violations are specified to the appropriate subsection, such as 27 CFR 478.124 (c). Example below shows three separate cited violations.

| 1 | 27 CFR 478.124(c)(1) | Failure to obtain a properly completed ATF F 4473. On four occasions, the licensee transferred firearms after the purchaser had left a blank in prohibiting questions – one blank in #10, one blank in #12J, one blank in 12K, and one blank in 12L. |
|---|---|---|
| 2 | 27 CFR 478.124(c)(3)(iv) | Failure to record the NICS transaction number on ATF F 4473 on three occasions. |
| 3 | 27 CFR 478.124(c)(5) | Failure to sign ATF F 4473 when transferring a firearm on four occasions. |

(6)   Violations shall not be **"stacked."** Stacking is using the same citation multiple times for the same violation; it is also using two different citations for the same violation.  For example, a violation of any provision of 27 CFR 478.125(e), will always be recorded as one violation regardless of how many provisions of this section of the regulations are violated. In this example, citing 27 CFR 478.121(c) as a separate violation for recordkeeping violations would be considered

107

stacking. (However, 27 CFR 478.121(c) may be cited as well if the FFL "knowingly" made "any false entry.")

**Examples of citing of 27 CFR 478.125(e) on the Report of Violations and N- Spect Results Tab:**

**CORRECT** citing of 27 CFR 478.125(e)

| NO. | U.S.C. or CFR CITATION | NATURE OF VIOLATION |
|-----|------------------------|---------------------|
| 1 | 27 CFR 478.125(e) | Failure to maintain an A&D record in bound form. |
| | | Failure to timely record the acquisition of a firearm in the A&D record on 15 occasions. |
| | | Failure to timely record the disposition of a firearm in the A&D record on five occasions. |

**N-Spect Results Tab Violations:** 1

**INCORRECT** citing (stacking) of 27 CFR 478.125(e):

| NO. | U.S.C. or CFR CITATION | NATURE OF VIOLATION |
|-----|------------------------|---------------------|
| 1 | 27 CFR 478.125(e) | Failure to maintain a Firearms A&D Record in a bound form. |
| 2 | 27 CFR 478.125(e) | Failure to timely record the acquisition of a firearm in the A&D record on 15 occasions. |
| 3 | 27 CFR 478.125(e) | Failure to timely record the disposition of a firearm in the A&D record on five occasions. |

**N-Spect Results Tab Violations:** 3

OR

| NO. | U.S.C. or CFR CITATION | NATURE OF VIOLATION |
|-----|------------------------|---------------------|
| 1 | 27 CFR 478.125(e) | Failure to maintain a Firearms A&D Record in a bound form. |
| 2 | 27 CFR 478.121(c) | Failure to maintain a Firearms A&D Record in a bound form. |

**N-Spect Results Tab Violations:** 2

c.  Report of Violations.

    (1)    When citing a violation, cover all elements that make up the violation.

    (2)    Document violations with as much specificity as possible. **Do not** write vague violations. Examples:

        (a)    **Poor**: Failure to properly record entries in the A & D Record.

108

(b) **Better**: Failure to record in the A&D Record the acquisition of a firearm on three occasions. In three instances, the licensee failed to record the acquisition of a firearm in the A & D Record.

(c) **Best**: Failure to record in the A&D record the acquisition of the following firearms (entries were made 90 days after receipt of the firearms):

<u>1</u>    Remington 870, s/n C981191A (Book 2, page 10, line 10).

<u>2</u>    S & W 686, s/n B8629 (Book 3, page 11, line 1).

<u>3</u>    Colt Commander, s/n 482C346 (Book 4, page 8, line 6).

(3) Use photocopies and photographs for documentation of violations, when available.

(4) Do not cite licensees for using commonly accepted State and/or identification abbreviations, such as D.L. for driver's license. Such citations should not be issued because they are not violations of the GCA, or its' implementing regulations.

166. <u>COLLATERAL INSPECTIONS</u>. In a situation where a field division discovers violations during a collateral inspection requested by another division, the division that found the violations shall submit a detailed report that documents the violations to the division that requested the collateral inspection. The requesting division shall include those findings when contemplating the appropriate administrative action to pursue.

**Note**: For SEA Collateral Inspections, a 4th tier under SPECIAL REQUEST OTHER, called "COLLATERAL INSPECTION – SEA" shall be used for assignments to conduct inspections for referrals received that are generated as a result of an SEA inspection of a parent/master company that has locations in your area. The recommendation should be coded "Special Request Completed".

For all explosives collateral inspections where violations are disclosed, the IOI shall document the violations in the report, but the citing of the violations and issuance of the ROV shall be done by the lead IOI of the parent/master company inspection. The receiving field division of the referral that conducts the inspection shall provide access to their inspection in N-Spect to the lead IOI of the parent/master company that generated the referral.

167. <u>PHOTOCOPYING AND REMOVING RECORDS</u>.

For best evidence of a violation, copies of records must be made to document omissions and errors cited on <u>ATF F 5030.5</u>. If the IOI does not have access to a copier at the industry member's premises, the records may, with the proprietor's consent, be removed for copying using <u>ATF F 3400.23</u>. Upon return of the documents, the IOI must have the industry member sign and date the ATF F 3400.23 indicating receipt of the records.

a. IOIs are not authorized to remove an FFL's records (or copies of those records including computerized printouts, from the licensed premises only for convenience purpose or other reasons lacking a legal basis. **(Only records that**

109

**document violations shall be photocopied or scanned.**) Refer to ATF Memorandum dated May 15, 2012, Photocopying Federal Firearms Licensee Records during Regulatory Inspections/Investigations.

b.  If there are too many records to copy, a representative sample should be photocopied, photographed, or scanned to document the violation. For inspections that do not result in recommendation of revocation or denial (e.g., ROV, WL, WC, etc.), a minimum sample of five photocopies of instances of each type of violation is sufficient for demonstrating the violation. However, all instances of the violation must be documented on a worksheet. Division counsel should be consulted regarding the number of forms needed as evidence.

c.  Photocopies of FFL and FEL A&D records must be made prior to the licensee/permittee making any corrective notations on them, for documentary purposes. Further, an FFL or FEL should not make amendments to transaction records, such as the ATF F 4473. Rather, if it is necessary, due to traceability of the firearm for a purchaser to return to the premises to add or correct information on a firearms or explosives transaction record, you should advise them to make a photocopy of the record and have amendments made to the photocopy.

d.  Refer to Advisory on Safe Photography, for guidance when taking photographs around explosives.

168.  FFLs or FELs/FEPs VIDEOTAPING INSPECTIONS. Unless there is some State law protection, there is no restriction on the licensee or permittees videotaping the inspection. However, videotaping in a manner that makes the inspection more difficult or time-consuming could be construed as a willful failure to permit inspection. In such cases, an IOI must contact the AS and ATF Counsel for further guidance. Furthermore, IOIs commonly must confer with each other and discuss issues to which the proprietor should not be privy. Under such circumstances, the IOIs must ensure that such discussions are not subject to videotaping or any other recording.

169.  IOIs VIDEOTAPING INSPECTIONS. Taping of industry members or others by IOIs is not a standard inspection technique. If an IOI believes that it is necessary to tape an inspection, an industry member, or someone else, he or she shall get approval from the DIO through the AS. Prior to granting approval, the DIO will consult division counsel, and if needed Headquarters counsel, in making a determination of both the legality and appropriateness of taping based upon the unique factors in each situation. In addition, any taped record must be retained in the area office until such time as the case is finally resolved (through all appeals).

170.  OPERATIONAL SECURITY.

a.  Laptop Computers on Inspections.

(1)  IOIs may use laptops when conducting inspections at the licensee's or permittee's premises. However, they must only be used in an environment that provides adequate security and protection of sensitive ATF files and data. In addition, the laptop must not be left unattended in an unsecured environment.

110

    (2)     If the licensee objects to the use of a laptop, the IOI should determine the reason for the licensee's objection and clarify the intent of using them.

                The licensee might misconstrue the laptop as a means to make a record of firearms purchasers (an appropriations rider specifically forbids ATF from compiling information on firearms purchasers). If the licensee continues to object, the IOI should record the necessary information manually.

    (3)     Laptops must not be used inside any magazine or room containing explosives.

    b.    <u>Sensitive Information</u>. ATF sensitive information, such as workpapers, applications, and background information, must be kept in a briefcase or other secured container that is only accessible to the IOI or other authorized ATF personnel.

171.    <u>INSPECTIONS DURING ACTUAL BUSINESS HOURS</u>. Inspections must be conducted during the licensee's or permittee's actual business hours (<u>27 CFR 478.23</u>(b)). Actual business hours are not necessarily limited to the hours stated on the application and have been interpreted to include those times when business operations are being conducted. Review of the hours listed on the subject's application is one factor in determining the FFL's actual business hours, but other factors that affect whether ATF has a right to inspect include: are the premises open to the public; are customers in the store; are employees inside working; does the FFL raise any objection about not being open for business, etc. If there is any question about the FFL's actual business hours, IOIs should contact ATF Counsel.   A warrantless inspection may be conducted outside of actual business hours with the licensee's consent, refer to <u>Consent to Inspect Outside Business Hours</u>.

172.    <u>INSPECTION REPORT FORMAT</u>. All inspection reports must be in compliance with the guidelines prescribed in Chapter H, Standard Narrative Report Guidelines.

173.    <u>INSPECTION ASSIGNMENT PROGRESS REPORTS</u>.

    a.    Once an onsite inspection commences, timely completion of the inspection, including the submission of a fully documented inspection report, is critical. If an inspection remains open 30 calendar days after all the field work is completed, the IOI must submit a status report on ATF F 5030.7, Inspection Assignment Progress Report, to the AS. Thereafter, ATF Fs 5030.7 must be submitted on a weekly basis until the inspection is completed. The ATF F 5030.7 must include the reasons for delay and the anticipated completion date.

    b.    Division management must ensure that recommendations for revocation/denial, as well as other administrative actions, are initiated and completed in a timely manner. Cases recommending warning letters or warning conferences must be finalized within 90 days from the beginning of DIO review; i.e., a warning letter issued or a warning conference held.

174.    <u>REFERRALS</u>.

    a.    <u>General</u>.

111

(1)     During the course of an inspection, if information is disclosed involving criminal and/or civil violations that require immediate action, the IOI will verbally refer this information to the AS and follow up with a written referral.

(2)     Information involving criminal and/or civil violations that do not require immediate action shall be referred within 5 working days via the AS to the field division's Crime Gun Intelligence Center (CGIC.

    (a)     Generally, the 5 working days timeframe does not commence until the information has been verified or confirmed and the referral perfected. For example, if a prohibited person is being referred and confirmation of the person's conviction requires securing certified copies of court documents, the 5 working days timeframe does not begin until the IOI has received the court documents.

    (b)     The IOI shall thoroughly document referrals in N-Spect including additional steps or procedures taken to justify necessary delays. The date a verbal referral is made is considered the actual date of the referral for the purposes of meeting the 5 working days submission requirement.

(3)     All referrals must be generated in N-Spect and submitted for approval to the AS. After approval, the AS will forward a hard copy of <u>ATF F 5000.21, Referral of Information, to the CGIC through the DIO within the previously mentioned 5 working days. A copy of the approved form will be included as an exhibit in the inspection report.</u>

    (a)     Where unforeseen or other extenuating circumstances may delay the referral from the meeting the 5 working days timeframe (i.e., illness, unscheduled leave, travel, etc.), the AS may grant an extension if all the following guidelines are met:

        <u>1.</u>     IOI must request approval from the AS within the 5 working days timeframe via the PII Folder;

        <u>2.</u>     AS must make an entry in the PII Folder documenting the approval, provide justification and indicate the expected date of the referral completion;

        <u>3.</u>     AS extension cannot be more than 15 working days from the approval date;

        <u>4.</u>     Any additional extension can only be granted and approved by the DIO who shall also make an entry in the PII Folder documenting approval.

    (b)     Proper documentation in N-Spect will ensure accurate determination if a referral was submitted timely. Referrals are an invaluable tool for our law enforcement partners and timeliness is essential, therefore, extensions to the 5 working days requirement

should be the exception and the not the norm.

(4)     A separate referral will be made for each unrelated item of information. For example, information concerning violations by unrelated individuals will not be combined even though the information is to be referred to the same agency.

(5)     External referrals must be forwarded, with an accompanying memorandum from the SAC to the field division's CGIC for transmittal to outside agencies with an accompanying memorandum from the SAC. The AS will use N-Spect to alert the DIO of a referral needing approval. The DIO will review all external referrals for approval before they are forwarded to the SAC.

(6)     The field division's CGIC will analyze the referrals and determine the proper reporting procedures as outlined in ATF O 3270.10D, The Disclosure, Documentation, and Handling of Investigative Information (Office of Field Operations), and ATF O 3800.2, ATF Intelligence Program. Within 10 working days, the field division's CGIC will generate an initial response to referrals by either directing the IO office who initiated the referral to enter the status of the referral within the "Referrals Information Response" tab in N-Spect or by opening an intelligence case in N-Force. After an intelligence case number is assigned and the "General Information" tab, Investigative Profile "Referral from Industry Operations, " is annotated, the case should be transferred to the appropriate CE group or field office.

**Note:** Criminal intelligence referrals from IO offices will be titled "Industry Operations Referral" and include the name of the individual or business. The criminal intelligence case will be developed and maintained in the same fashion as an actual case and may be converted from a criminal intelligence case to an actual case at any time.

(7)     The CE office receiving the referral from the CGIC will enter within 30 working days the status of the referral in the Management Log in N-Force if no investigative activity has occurred.

(8)     The IO office receiving the referral from the CGIC will within 30 working days notify the field division's CGIC of the status of the referral (e.g., the referral resulted in an inspection, and if applicable, the inspection number). The CGIC will direct the IO office initiating the referral to enter the status of the referral in the Referrals Information Response Tab in N-Spect. The only exceptions to this procedure are referrals made for "information purposes only."

(9)     On a quarterly basis, the field division's CGIC will provide a status of the referral to the IO office that initiated the referral. The initiating office will update this information in the Referrals Information Response tab in N-Spect.

**Note:** It is critical that the Referrals Information Response tab be

113

accurately completed and updated on a timely basis. The results will be analyzed by program offices to determine program effectiveness and to generate external performance measures, such as how many referrals were made by statute, the number of criminal cases initiated because of referrals, the related investigation numbers, and corresponding outcomes.

b.  Coordination of Internal Referrals. Division management will meet and establish criteria for the type and scope of criminal information which is of interest to both ATF CE and the U.S. Attorney's Office.

c.  Types of Information Referrals. The following listing is not all inclusive, but is provided as a listing of the types of violations or information that must be referred to the CGIC through the AS:

   (1)  Referrals Within ATF.

      (a)  False Statements. A referral should be generated for any false statements on applications, affidavits, or on any form or other filing by an applicant or other person. This includes instances in which there is an indication of intentional omission, concealment, or misrepresentation of fact, but does not include inadvertent errors or omissions. Section 1001 of Title 18, U.S.C. provides for a fine and/or imprisonment of a person making a false, fictitious, or fraudulent statement if the following conditions exist:

         1  The statement is false and is made with willful intent.

         2  The statement is material to the inspection.

      (b)  Organized Crime. Indications of involvement by organized crime in any activity.

      (c)  Bribery of an ATF Officer. Evidence that an industry member has bribed or attempted to bribe an ATF officer. This information also needs to be reported to the OPRSO.

      (d)  Destruction or Concealment of Evidence and Associated Acts. Indications that records or other types of evidence have been destroyed or deliberately concealed. This includes indications of attempts to influence potential witnesses whether by threat or through other means.

      (e)  Willful Operations Without a Permit or License. Indications or evidence of willful acts or operations without proper authorization as established in 18 U.S.C., Chapters 40 and 44.

      (f)  Denial of Access to the Premises of ATF Regulated Industry Members. The denial of an investigator's access to an ATF regulated industry member's premises or storage areas (when required by law and/or regulations) without sound reasons shall be referred to the AS immediately.

114

(g)     <u>Explosives Storage Violations Which Pose a Danger to the Public</u>. If the inspection shows that a storage violation poses a danger to the public and has not been corrected as specified, a referral shall be made to CE and the local fire marshal.

(h)     <u>Prohibited Persons in Possession of Firearms or Explosives</u>. All incidents of possession of firearms or explosives by prohibited persons must be immediately referred to ATF CE (CGIC and appropriate RAC/GS) and include specific information about the firearms or explosives involved, date(s) of suspected possession, source(s) of supply, and background information on the possessor that details the disability.

(i)     <u>Firearms Trafficking Activity</u>. Any indications of firearms trafficking activity must be referred to ATF CE for investigative consideration e.g.; illegal and/or suspicious acquisitions or dispositions (to include large block or repetitive purchases by unlicensed or licensed individuals of weapons of choice). Document all available information, relevant background information on the subject such as criminal, military, and immigration history, and associates involved in the trafficking activity, such as the likely straw purchasers or FFLs.

    **Note:** ATF Forms 4473 can only be copied if there is evidence of criminal violation.

(j)     <u>Prohibited Persons</u>. The involvement of prohibited persons in the firearms operations.

(k)     <u>Unregistered NFA Firearms</u>. All known or suspected NFA firearms not registered with ATF will be referred to ATF CE. The IOI must document possession of the firearm by taking photographs and by recording all markings and dimensions of the firearm if CE will not seize the firearm immediately.

(l)     <u>Illegal Explosives</u>. If it appears the FEL may be manufacturing M-80's, M-100's, Silver Salutes and Cherry Bombs for sale or distribution, ATF CE must immediately be notified.

(m)     <u>Falsification of Records</u>. ATF CE shall be notified of cases in which a licensee or permittee has deliberately falsified his or her records.

(n)     <u>Explosives Diversion</u>. An immediate referral must be made to CE when it is disclosed that explosive materials have been stolen or otherwise diverted. This includes cases in which employees of a licensee or permittee are involved in the diversion.

(1)     <u>Referrals Outside ATF</u>.

115

(a)    Referrals concerning illegal aliens to the DHS, Citizenship and Immigration Services (CIS).

(b)    Corporate irregularities; e.g., a discovery that a corporation was not properly incorporated and authorized to issue stock. Such a referral should be made to the State authority that regulates corporations.

(c)    Violations of State and/or local firearms and explosives laws. This also includes State and local zoning and fire prevention laws and ordinances; e.g., violations concerning prohibited businesses being conducted in residential areas, and violations of licensing, storage and sales.

(d)    All firearms and ammunition excise tax issues should be referred to TTB.

(e)    Issues regarding safe havens and transportation of explosive materials should be referred to DOT.

(3)    <u>Disclosure Restrictions (Referrals Out of Bureau)</u>. Before making any referrals outside of ATF, IOIs should be thoroughly familiar with the guidelines contained in <u>ATF O 9000.1B</u>, Public and Governmental Affairs. The Privacy Act of 1974 does not prohibit the referral of possible violations of law to the appropriate agency that is responsible for investigating or prosecuting such violations or that is charged with enforcing or implementing the law under which the violation arises. However, ATF personnel are restricted from making law enforcement disclosures contrary to the sections of law referred to below. In addition, personnel may be subject to dismissal, fines, and criminal prosecution for violating those restrictions. When an IOI has doubt as to whether or not these apply to information he/she feels should be referred to other Federal, State, or local law enforcement or regulatory agencies, the referral must be cleared through the DIO and division counsel.

(a)    <u>Title 26 U.S.C., Section 5848</u>. This section of law restricts the use of information or evidence obtained from an application, registration, or records required to be submitted or retained by an individual in order to comply with the NFA or the regulations issued thereunder. Disclosure of such documents or information will be made **only** through the Office of Public and Governmental Affairs with appropriate coordination with division counsel.

(b)    <u>Title 26 U.S.C. Section 6103</u>. This section of law prohibits the disclosure of any tax "return" or "return information" unless it falls within a specific exception. In conjunction with their official duties, investigators may disclose "return information" to the extent that such disclosure is necessary in obtaining information which is not otherwise reasonably available for enforcing the provisions of Title 26. However, prior to making any disclosure of "return" or "return information," IOIs must obtain the approval of the AS and DIO,

116

with appropriate coordination with division counsel. "Return" information includes the transfer taxes associated with the NFA; therefore, information regarding NFA transfers cannot be disclosed.

(c) <u>Title 26 U.S.C. Section 7213</u>. This section of law sets forth the penalties for violation of the Tax Reform Act of 1976, including 26 U.S.C. Section 6103. In addition, it establishes sanctions against Government employees who make known the operations, style of work, or apparatus of any manufacturer or producer visited by them in the discharge of their official duties except as otherwise provided by law.

(d) <u>Title 18 U.S.C., Section 1905</u>. This section of law provides sanctions against Government employees who divulge information relating to trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of income, projects, losses, or expenditures of any person, firm, partnership, corporation, or association except as authorized by law. This section also provides penalties for Government employees who disclose any returns or return information to any person except as provided by law.

(e) <u>ATF budgetary restrictions on disclosure, as described in Paragraph 178, Restrictions on Release of GCA Information</u>.

175.  <u>i-NOTE</u> (formerly SIGNIFICANT INCIDENT/INFORMATION REPORT or SIR)

The i-Note replaced the SIR, and ATF O 3114.1 provide guidelines and establish reporting protocols.  IOIs will promptly complete incident notification for any significant, sensitive, or critical situations through their chain of command (field division executive staff) via the i-Note.  The i-Note report narrative will be a concise, event driven, executive summary of the incident, and narrative space is limited to 500 characters.

A license revocation or denial does not automatically require that an i-Note report be generated.  The creation and distribution of an i-Note in such cases will be at the discretion of the AS/DIO/ASAC/SAC.

A license fine, suspension, revocation, or denial i-Note should be filed only after the DIO has issued the final notice of revocation or denial and either the licensee or permittee files an appeal, or the time period for filing an appeal has elapsed.  The i-Note should not be field early in the administrative action process, such as when the recommendation for denial or revocation is made.

Thefts of firearms from a licensee involving one or more firearms shall be reported. Thefts of firearms from a common carrier involving one or more firearms is required when ATF responds to the theft.

A significant loss of firearms (greater than 50), i.e., the discovery that firearms are missing without an apparent criminal cause such as discovery of an inventory shortage exceeding 50 firearms after reconciliation, shall be reported.

117

Explosives thefts, as well as attempted thefts, i.e., the actual breaking into a magazine or storage facility without taking any products, shall be reported.

A significant loss of explosives (greater than 250 pounds), i.e., the discovery that explosives are missing without apparent criminal cause shall be reported.

For additional guidance and further information, please refer to the ATF O 3114.4, i-Note Incident Notification System.

176. SPECIAL ATTENTION FLAG (SAF).

    a. An SAF allows ATF personnel the opportunity to request that the FFLC and the FELC "flag" a firearms or explosives licensing system record with a special code, known as "SAF," when an administrative action against the licensee or permittee is pending or when the licensee or permittee is under investigation. This notification shall be made using the e-mail functionality in the Post Inspection Information (PII) Folder in N-Spect.

    b. The following are examples of when an SAF should be initiated:

        (1) CE Investigation.

        (2) Inspection Needed.

        (3) Problem Dealer.

        (4) Pending Denial.

        (5) Pending Revocation.

        (6) Charged by Information (State).

        (7) License suspension action.

        (8) Under Indictment.

        (9) Do not contact.

        (10) Do not renew without contacting area office.

177. DOCUMENTATION OF SIGNIFICANT CONVERSATIONS.

    a. ATF field personnel are required to document all conversations with industry members or their representatives, or others (i.e., a citizen complaint) that involve sensitive or potentially sensitive or problematic issues. This is particularly critical in situations where the industry member is under investigation for civil or criminal violations.

118

b.   A record of conversation shall include at a minimum:

  (1)   The name and title of the person involved in the conversation.

  (2)   The date, hour, and location when the conversation took place.

  (3)   The purpose of the conversation; and

  (4)   A summary of significant facts and conclusions reached.

c.   A record of conversation, (ATF F 5000.4) shall be documented in N-Spect and a hard copy kept in the area office file.

178.   RESTRICTIONS ON RELEASE OF GCA INFORMATION.

a.   Since Fiscal Year 2003 ATF's annual budget has contained various restrictions relating to the disclosure of GCA information. These restrictions cover disclosure to the public of **any** information required to be kept as a record by FFLs or reported to ATF under the GCA (trace requests and multiple sales reports), 18 U.S.C. Section 923(g). The restriction does not apply to information maintained solely under the NFA.

b.   The nondisclosure language is not intended to interfere with disclosures by ATF routinely made during the course of fulfilling ATF's statutory mission to provide assistance to Federal, State, local, and international law enforcement. Thus, ATF may provide restricted data:

  (1)   In civil and administrative litigation initiated by ATF or concerning an ATF enforcement action;

  (2)   Disclosures of statistical information concerning total production, importation, and exportation by each licensed importer and licensed manufacturer;

  (3)   Upon request, to law enforcement agencies and prosecutors in connection with a criminal case within their jurisdiction.

c.   The restriction clearly prohibits disclosures to the public through the Freedom of Information Act (FOIA), press releases, or subpoena. Disclosures of this nature are no longer authorized.

d.   The below list includes the Office of Chief Counsel's understanding of the restriction the Disclosure Division, Public information officers, and ATF personnel are required to abide by.

  (1)   Information that may continue to be disclosed to the public.

    (a)   FFL list or portions thereof.

    (b)   FFL applications and licenses.

119

    (c)    Inspection reports to the extent that information was not extracted from prohibited records. Copies of prohibited records that are part of the inspection report would be withheld; release would consist of violations cited and other ATF observations not from dealer records.

    (d)    Information, other than data contained in dealer records, provided to ATF by law enforcement agencies in requests to trace a firearm, so long as it is not contained in the Firearm Tracing System (FTS).

  (2)    <u>Prohibited disclosures to the public</u>.

    (a)    Information from OOB records.

    (b)    ATF F 4473.

    (c)    Firearm licensee A&D records, and data compiled from such records (e.g., inventory loss data).

    (d)    Firearms trace data reported by dealers and any 923(g) information retrieved from dealer records.

    (e)    Any data contained in the FTS.

    (f)    Multiple Sales Reports and any 923(g) information retrieved from dealer records.

    (g)    <u>ATF F 3310.11</u>, FFL Firearms Inventory Theft/Loss Report.

    (h)    Records of transactions of semiautomatic assault weapons.

    (i)    Law enforcement certification letters.

    (j)    Record of approved variances.

    (k)    ATF Fs 6 and 6a (importation) and supporting documentation.

  e.    Questions regarding the restriction requirements outlined in the paragraph shall be directed to Associate Chief Counsel (Disclosure & Forfeiture), Office of Chief Counsel.

179.  <u>WEBSITES FOR IOIs</u>. Refer to <u>Websites for IO Investigators</u> and <u>Virtual Intelligence Guide</u> (VIG) that may be helpful in conducting inspections. Log into the VIG using your network ID and password.

180.  <u>ACTING AREA SUPERVISOR (AS) GUIDELINES</u>. Refer to <u>Checklist for Acting Area Supervisors – Review of Firearms and Explosives Inspections.</u>

181.  <u>BUSINESS STRUCTURES</u>.  (Refer to <u>Business Structures</u>.)

120

182.   TSA AIRPORT EXPLOSIVES MAGAZINE INSPECTIONS. For basic procedures and guidance for inspecting explosives storage magazines at airports upon the request of the TSA, see ATF O 5400.12, TSA Airport Explosives Inspection Program.

183.   MONITORED CASE PROGRAM (MCP). The MCP focuses on the prompt identification of inspections that have the potential to pose significant risk to the Bureau or public safety. Its effectiveness relies upon the self-reporting, at the field office/division level, of the Bureau's most critical or sensitive inspections supplemented by HQ efforts to identify industry operations investigations that should be evaluated for inclusion in the MCP. (See MCP Criteria, Exhibit 1 of ATF O 3200.1A)

   a.   The AS will promote, encourage, and ensure ongoing dialogue at all levels of their office aimed at identifying inspections meeting the criteria as well as ensure all provisions of the ATF O 3200.1A are fully implemented and effectuated.

   b.   IOIs must ensure that all inspections that meet the MCP criteria or guidelines are communicated to the AS for review and consideration.

   c.   The AS, with the lead IOI if deemed necessary, will provide an initial briefing to the division management team on the status of each case meeting the MCP criteria so the SAC can assess the merits of the case for inclusion in the MCP

   d.   The briefing shall include the progress, plans, and problems, and provide an opportunity for the division management team to provide guidance, assess risks, and address potential issues or concerns.

   e.   The AS will ensure an entry in the Post Inspection Information (PII) Folder in N-Spect is made noting that the briefing was completed, using the MCP update fields available.  (See ATF O 3200.1A, for AS Responsibilities.)

   f.   Upon the SAC's determination, with input from the DIO, that the inspection meets the MCP criteria, the AS shall ensure that the Monitored Case Summary IO Initial Submission Template (Exhibit 8C of ATF O 3200.1A) is completed and forwarded to the division management team for review, and submitted to the FMS-ISB Microsoft Outlook Mailbox within 5 business days. Updates will be entered into N-Spect in the PII Folder by the AS and sent electronically to the DIO before the 10th day of each month. Following review and approval by the SAC, the DIO will forward the PII update to the FMS-ISB via the FMS-ISB Mail box in N-Spect.

   g.   In addition to the documents listed in the IO Source Document Reference Guide (Exhibit 4 of ATF O 3200.1A), and the Monitored Case Summary IO Initial Submission Template (Exhibit 8C of ATF O 3200.1A) must be inserted or scanned into the Source Document Folder in N-Spect. (Refer to ATF O 3200.1A for additional information.)

184.   SELF-REPORTING OF VIOLATION BY FFL – An FFL self-reporting a violation can be an effective way for the industry member to convey that they had no intent to violate and intend to comply with the GCA.  Self-reporting a violation does not negate the fact that a violation did in fact occur and in no way grants a pass or waiver from a citation.  Every situation must be evaluated on its own merit.  Self-reported violations that impact public safety or ATF's enforcement priorities should generally result in a follow-up inspection being initiated.

121

Some questions to ask when an FFL contacts you might include the following: What is the violation (statute or regulation)? How and when was the violation discovered? What is the scope or extent of the violation (how widespread)? What corrective actions or steps have been taken to prevent future occurrence?

To document the self-reporting conversation, an Acknowledgment Letter was developed. This letter should be sent via certified mail to the FFL with a copy maintained in the office file to track the licensee's knowledge of the violation. See email dated February 14, 2017 titled "Acknowledgment of FFL Self Disclosure Violation FD Response Letter" and sample acknowledgment letter.

185. MAJOR INSPECTION TEAM (MIT) - The MIT provides support and assistance to field divisions with complex firearms and explosives inspections involving large inventories, sites, and/or other factors. The MIT will concentrate ATF's investigative resources and expertise on inspections where there is a clear need for additional resources while minimizing the time IOIs are on the licensee's or permittee's premises during large-scale inspections.

Generally, field divisions will identify those inspections requiring MIT support during the drafting of their Domain Assessment. This will allow the MIT program manager to work proactively with field divisions to coordinate MIT activations for inspections well in advance of the anticipated onsite start date of the inspection, and ensure MIT resources are activated in an efficient manner throughout the year. If an unanticipated need for MIT assistance arises during the fiscal year the DIO should submit a request to the DAD (IO) and MIT program manager as soon as possible.
MIT applicants and members must meet all of the following requirements:

- Be a GS-13 IOI assigned to the Office of Field Operations.
- Have a current performance appraisal of at least "Exceeds Fully Successful."
- Not be the subject of a current or pending integrity or performance disciplinary action or investigation, not have received discipline in the form of a suspension of 5 days or more during the past 2 years, and must not have had an official finding of engaging in illegal discrimination.
- Must have the concurrence of his/her area supervisor, Director, Industry Operations (DIO), and Special Agent in Charge.

MIT members' duration of expected service will be 3 years. This term may be extended if necessary based on operational needs with field division management concurrence and DAD (IO) approval. This term may also be curtailed based on performance issues, participation levels, and other factors.

To request MIT support, the DIO must submit an email at least 45 days prior to the anticipated on-site start date of the inspection to the DAD (IO) and MIT program manager in the Frontline Investigative Support Branch, Field Management Staff. The lead IOI and area supervisor will manage and direct the inspection, provide guidance to the MIT members, and oversee the MIT members during the actual inspection.

122

Field Operations will provide the funding for MIT activations, and all MIT supported inspections will be conducted in accordance with the procedures outlined in the IO Manual. The lead IOI or the area supervisor should provide advance notification of inspections to the licensee or permittee due to the amount of resources and logistics involved. Advance notice provides an opportunity for the lead IOI and area supervisor to work with the industry member to develop an efficient plan to utilize the MIT and lessen the impact of the inspection on their operations. For additional guidance and detailed information on the MIT program, please see "Major Inspection Team Operating Procedures and Guidelines."

186.– 190.  RESERVED

CHAPTER G.  N-SPECT

191.    N-SPECT. N-Spect is an Oracle database application that enables field personnel to capture, organize, and retrieve all inspection related information.  As a single-point of data entry, inspection information is entered once and can be used in multiple areas throughout the system.  Each assignment generated in N-Spect is identified with a unique identification number (UI). N-Spect automatically generates and formats reports and forms by extracting data previously entered into the system. N-Spect is designed to adhere to ATF business rules, thus increasing the productivity of IOIs. It is imperative that IOIs make every effort to ensure that **all** the data collected in N-Spect is accurate and that **all** relevant and mandated data fields are completed. The IOI must ensure that data entered in N-Spect is consistent with that entered in all other areas of the inspection report, e.g., inspection documents, ATF F 5030.5, Report of Violations, narrative report, etc. It is the supervisor's responsibility to review and verify the accuracy and completeness of information entered into the system. In addition, reports can be generated in N-Spect, and forms can be extracted from data previously entered into the system. This chapter outlines additional required information and further defines certain data fields.

Electronic Investigative File Management System (EIFMS) – Under this paperless system, N-Spect is utilized as the archive for all inspection reports, related exhibits and attachments.  IOIs combine inspection documents into Inspection Documents Folder or a Portfolio in accordance with field division policy. Exhibits and other documents are combined into a single (or multiple, if applicable) source document.  See EIFMS Manual Non-Portfolio or Portfolio Version for more detailed instructions.

Once approved by the AS, and the UI is closed, the Portfolio and Source Documents will be extracted and inserted into an inspection storage folder, sorted and organized before being combined into a single PDF. This single PDF is converted into a TIF for electronic transmission to the Licensing Center's share drive. This is done by the IA, IOA, or the person designated by the AS.

a.    Documents inserted into the Portfolio include:

(1)    Narrative report with electronic signature of lead IOI (WORD)
(2)    Worksheets workbook, if applicable (EXCEL)
(3)    Report of Violations, if applicable (PDF)
(4)    ATF F 5700.14 Assignment and Report (with final recommendation and electronic signature of AS or last reviewer) (PDF)
(5)    Attachments (Application, with amendments, if applicable referrals) (PDF)

b.    Documents inserted as Source Documents include:

(1)    Exhibits such as magazine photos or ATF F 4473, if applicable contain exhibit stamps with discrepancies electronically circled in red.
(2)    Documents submitted as part of qualification, if applicable business license, etc.
(3)    Signed acknowledgement of the regulations

    c.    Hard or Paper Documents to be placed into office file include (list is not all inclusive):

        (1)    Acknowledgement of Regulations (signed)
        (2)    Application (with applicant changes)
        (3)    ROV (signed and dated by both IOI and licensee/permittee or responsible person)
        (4)    Other documents as determined by AS (referrals, FLS printout, trace history and audit log of current assignment, corporate documents, copies of business license(s), work-notes generated by IOI during assignment, etc.)

## 192.  GENERAL INFORMATION.

    a.    General Inspection Information.

        (1)    Onsite Start – Enter the date that the inspection started onsite. (It is important to ensure compliance with GCA 12-month inspection requirements.)

        (2)    Onsite End – For both FIREARMS and EXPLOSIVES inspections, the onsite end date is the date when the closing conference is conducted.

            Date Application Perfected (DAP) – This field shall be completed on original and renewal qualification inspections. If there are no corrections or amendments required during the licensing center review or field inspection, the DAP field shall be populated with the date stamp/received by the licensing center. If there are corrections or amendments required as a result of the licensing center review and/or field inspection, enter the date the corrections or amendments were made. In cases where the licensing center has the applicant correct an application, the information can be obtained from the Federal Licensing System (FLS) comments section.

            **Note**: In instances, where the application is perfected or properly executed, even if it is eventually withdrawn, the DAP field should still be populated. If an application is withdrawn and was not perfected or properly executed, then do not populate the DAP field. However, when the DAP field is left blank, the reason must be documented in the narrative report. For example, the applicant decided to withdraw the application prior to reviewing and verifying the information on the application with the IOI. The DAP field is not populated for inspections involving an Application for an Amended FFL.

        (3)    If phone contact is made in lieu of an in-person interview of a firearms applicant, then a firearms inspection must be conducted within 12 months of issuance. On the "Profile" tab, under "Insert Field Activities," select "Qualification New Telephone." Selecting this option in N-Spect indicates that an in-person interview has not occurred.

125

(4)    Explosives qualifications, with the exception of users limited (type 60) with contingency storage, require an in-person inspection prior to the issuance of the license or permit.

(5)    Last Inspection Date – populate this field with the onsite end date of the last or previous compliance inspection. If no compliance inspection has been conducted, you may leave the field blank.

b.    Results Record.

(1)    General Tab. For additional information, refer to the IOI Quick Reference Guide.

(a)    Violations – N-Spect automatically provides the total number of violations cited by the investigator in the violations folder. **Note:** If two or more citations apply to the same violation, this will be entered as a single violation. The number of instances of a violation will be fully and accurately documented in the narrative report of inspection. "Instances" refers to the number of times a specific section was violated. For example, if a licensee fails to timely record the acquisition of a firearm on five occasions and the disposition of a firearm on 14 occasions, the following section would be cited, 27 CFR 478.125(e) and would be counted as one violation with 19 instances. Refer to Chapter F, Citing Inspection Violations, for a further explanation.

(b)    Referrals – N-Spect automatically provides the total number of referrals generated in the referrals folder. This number includes referrals to Federal, State and/or local agencies.

(c)    NICS/POC – Compared to 4473's – Total number of NICS/POC checks that were verified from the "Gun Audit Log" provided by the FBI NICS section or the State POC, including any denied transactions that were verified. Generally, this will be the number of NICS checks performed by the FFL within the last 60 days.

(d)    ATF Forms 4473 on file (last 12 months) – Total number of ATF Forms 4473 on file for the licensee in the 12 months immediately preceding the inspection. This may not be the same as the number of ATF Forms 4473 reviewed.

(e)    Computerized Criminal History (CCH) (Guns and Persons) – Total number of CCH checks conducted on individuals and firearms during the inspection. If CCH, NLETS and NCIC checks are conducted on the same individual, only count this as one CCH check.

(f)    CCH Hits (Guns and Persons) – Total number of hits obtained from CCH checks conducted on firearms and individuals during the inspection. A hit is: (1) a felony or prohibiting misdemeanor

126

taken as far as you are permitted to proceed under local guidelines to determine actual disposition, (2) any conviction of any lesser crimes which CE requests be referred to them, or (3) any information which indicates that a firearm was stolen.

**Note:** Do not include any stolen firearms with a date of theft occurring after the date of disposition. Record multiple felonies disclosed on a check as one hit.

(g)  Trace – Successful – Total number of successful traces which begin with an "S" (successful) code, for the licensee in the 12 months immediately preceding the inspection.

(h)  Trace – Unsuccessful – Total number of unsuccessful traces for the licensee in the 12 months immediately preceding the inspection. The IOI should only attempt to reconcile the traces with a "D" (Dealer) or "M" (Manufacturer) code.

(i)  Trace- Resolved by the IOI –Number of "D" and "M" traces that were resolved by the IOI.

**Note:** Trace data can be obtained from the VCAB or e-Trace. Access e-Trace for a complete list of trace completion codes.

(2)  Firearms Tab. For further information see the IOI Quick Reference Guide.

(a)  Total number of firearms traced to this licensee in the past 12 months regardless of when the firearms were sold – Total number of firearms traced (both successful and unsuccessful) to the dealer in the 12 months immediately preceding the inspection regardless of when they were sold. This number can be obtained from the VCAB, trace history or e-Trace.

(b)  Total number of firearms reported stolen/missing in the last twelve months – Total number of firearms reported to the NTC either stolen or missing from inventory in the 12 months immediately preceding the inspection. This number can be obtained from the VCAB, trace history or e-Trace.

**Note:** Do not include firearms disclosed as stolen or missing from inventory as a result of the current inspection.

(c)  478.99 Total Transactions with Violations/Prohibited Sales – Total number of forms with violations of 27 CFR 478.99, certain prohibited sales or deliveries (i.e., felons, dishonorable discharge).

**Note**: This also includes "Yes" answers to questions 11 b-k on the ATF Forms 4473.

(d)  478.100 Total Number of Transactions with Violations/Business Away From Premises – Total number of forms where the licensee

127

violated 27 CFR 478.100, conduct of business away from licensed premises. This should not include qualifying gun shows or sporting events. For additional information see paragraph 67f.

(e) 478.102 Total Number of Transactions with Violations/NICS Requirements – Total number of forms where the licensee failed to conduct a NICS background check and the firearm was transferred in violation of 27 CFR 478.102.

(f) 478.124 Total Number ATF Forms 4473 Reviewed – Total number of ATF Forms 4473 reviewed.

(g) 478.124 Total No. With Violations on ATF F 4473 Certification – Total number of forms reviewed with blank or erroneous responses on the ATF Forms 4473 questions 11a-11l, 16 and/or 17.

**Note**: Some violations cited may not be 27 CFR 478.124.

(h) 478.124 Total No. With Violations on ATF F 4473 Section A – Total number of forms with errors or omissions on the ATF Forms 4473 in Section A, other than questions 11a-11l, 16 and/or 17.

**Note:** Some violations cited may not be 27 CFR 478.124. See Firearms Worksheet Workbook.

(i) 478.124 Total number with other violations – Total number of ATF Forms 4473 with errors or omissions in sections B, C and/or D.

**Note:** Some violations cited may not be 27 CFR 478.124. See Firearms Worksheet Workbook.

(j) 478.125 Number of Firearms in Inventory – Total number of firearms in the physical inventory.

(k) 478.125 – Number of Open Disposition in A&D Records – Total number of open dispositions in the A&D Records.

(l) 478.125 – Number of Inventory Discrepancies – Total number of inventory discrepancies. This includes firearms acquisitions not recorded in the A&D Records prior to the inspection, firearms recorded as disposed of when found in inventory, dispositions not recorded but reconciled, duplicate entries, and firearms missing from inventory. This also includes 478.22 (importers) and 478.123 (manufacturers) discrepancies.

(m) 478.125 – Firearms Missing/Stolen after Reconciliation – Total number of missing or stolen firearms that are unaccounted for after the inventory reconciliation is final. Any unaccounted for firearms **must** be reported on an ATF F 3310.11, Federal Firearms Licensee Inventory Theft/Loss Report.

(n) 478.125 – Firearms transactions completed but not recorded in ANY required records – Total firearm(s) never recorded in the

128

A&D Records prior to transfer.

  (o) 478.126a Total Number Unreported Multiple Sales – Total number of unreported multiple handgun sales by the licensee for the inspection period. This does not include multiple rifle sales.

  (p) 478.126a Total Number of Guns Involved – Total number of handguns involved in the unreported multiple sales. This does not include multiple rifle sales.

 (3) Explosives Tab – This field should reflect any improperly stored explosive materials during the course of the inspection.

 (4) Outreach Tab – This field should be completed when conducting seminars or training classes to persons/organizations outside of ATF.

193. **VIOLATION RECORD.**

 a. Violation Tab Creates a record of violations to be cited for the inspection. The ATF F 5030.5 is created and imported into the inspection documents folder. The data entered populates the violations field. The ATF F 5030.5 signed and dated by both the IOI and licensee/permittee or responsible person shall be entered in N-Spect including evidence of correction action(s) taken.

  (1) Violation Type – Select the correct "type" of violation and identify the corresponding subpart in the regulations under which the violation falls. For example, a firearms violation in 27 CFR 478.41 through 27 CFR 478.60 would fall under Subpart D-Licenses and therefore be entered into N-Spect as a "Licensing/Permit" type of violation.

  (2) Public Safety Violation – An explosives violation shall be referenced as a public safety violation. Only explosives violations shall be entered as public safety violations.

  (3) Number of Instances – Enter the number of times a specific section was violated. For example, if a licensee fails to timely record the disposition of a firearm on 14 occasions, this should be entered as 14 instances. For ATF F 4473 violations, this would be the number of forms.

  (4) Corrective Action – Explain the recommended corrective action to be taken by the proprietor.

  (5) Licensee Response - Note the licensee's/permittee's response for each violation cited. Describe in detail the actions taken and relevant statements made concerning each specific violation – for example "I record the serial numbers from the box, not the actual firearm". The response can be added and/or edited even after the ATF F 5030.5 has been issued since the response is not printed on the ATF F 5030.5. The IOI can modify the response even after the closing conference has been held and prior to the submission of the assignment to the AS.

129

(6)     Corrected Immediately – Any violations that are corrected by the closing conference will be considered to have been corrected immediately.

(7)     Date to be Corrected – Any violation not corrected immediately, must be given a target date for completion of the corrective action.

(8)     Date Corrected – If the violation is not corrected immediately, the IOI must enter the date the licensee or permittee corrected the violation.

(9)     Date System will notify investigator that violation has not been corrected – This is the target date assigned by the investigator for the completion of the corrective action.

(10)    Violation Uncorrectable/Preventative Action Discussed – If the violations occurred in the past and is not continuing, or by their very nature, cannot be corrected, and the licensee or permittee is given specific and detailed instructions on how those violations can and should be prevented in the future, the IOI must select this field and check the box.

b.     Citation Tab. Regulation citations must be entered into N-Spect. Law citations should only be used when there is no corresponding regulation.

194.    RECOMMENDATION RECORD. The most appropriate inspection recommendation must be selected from the drop down menu in the Recommendation Record. Only one recommendation shall be entered in N-Spect.

195.    REFERRALS. All referrals must be generated in N-Spect and, after the AS's approval, forwarded in hard copy form on ATF F 5000.21, Referral of Information, to the CGIC within 5 days. However, IOIs discovering information that requires immediate action will verbally refer this information to the AS with a follow-up written referral. (Refer to Chapter F, paragraph 174 for additional information on referrals.)

a.     A separate referral will be made for each item of information. For example, information concerning violations by unrelated individuals will not be combined even though the information is to be referred to the same agency.

b.     The IO office receiving the referral will enter within 30-days the status of the referral (e.g., the referral resulted in an inspection and if applicable the inspection number) in the "Referrals Information Response" tab in N-Spect.

c.     If a referral not associated with an actual inspection needs to be generated (e.g., a phone tip about suspected criminal activity by a nonlicensee), a general assignment, such as "FY-05 Firearms Referrals," can be created for this purpose.

d.     While N-Spect archives referrals electronically, hard copies of attachments to referrals should be retained in the originating office.

130

e.      The CGIC will provide on a quarterly basis the status of a referral to the IO office that initiated the referral. The IO office that initiated the referral will update this information in the "Referral Information Response" tab in N-Spect.

f.      It is important to note, that once approved, a referral record is locked to all users except those with supervisory access.

196.    INSPECTION DOCUMENTS. Narrative reports, worksheets that document a violation, explosives magazine worksheets, and acknowledgement of regulations must be imported into N-Spect. Worknotes workbooks are not required to be imported into N-Spect.

197.    INSPECTION SPREADSHEETS. Any spreadsheets created during the course of an inspection that support a violation must be imported into N-Spect.

198.    INVESTIGATIVE PARTICIPANTS. If assistance is received from anyone other than an assigned inspection user, the investigator must complete all fields in the "Investigative Participant's Record."

199.    EXPLOSIVES STORAGE LOCATIONS. Enter explosives storage locations, magazine types, owner information and GPS coordinates. (Add full address of storage, not just GPS coordinates.) The GPS readings can be verified using mapping software or a website such as http://boulter.com/gps. (*GPS coordinates are not required for day boxes so populate this field with all 9's, 1's or 0's until N-Spect can be revised.*)

200    RELATED INSPECTIONS. These are used to link the current assignment with previous inspections.

201.    POST INSPECTION INFORMATION (PII) FOLDER. These are used by the AS and DIO to notify FFLC & FELC on issuance/renewal of license(s) and permit(s), administrative actions, changes involving licensee or permittee information, and to track action taken after the field work is completed. (Refer to Post Inspection Information Memorandum)

202.    FORMS EXPLORER. The following ATF forms and letters must be generated in or imported into N-Spect, when required:

a.      ATF F 5000.21, Referral of Information.

b.      ATF F 5030.7, Inspection Assignment Progress Report (see Chapter F).

c.      ATF F 5030.5, Report of Violations. (Signed and dated by both the IOI and licensee/permittee or responsible person.)

d.      Notice of Abandonment.

e.      Warning Letter.

f.      Warning Conference Letter.

131

g.   Warning Conference Follow-Up Letter.

h.   Request for Withdrawal of Firearms/Explosives License/Permit Qualification.

i.   Request for Withdrawal of Firearms/Explosives Renewal Application.

j.   Notice of Discontinuance of Business.

k.   i-Note

203.   INVESTIGATOR DIARY. With the implementation of N-Spect electronic diaries, IOIs are required to maintain the following information in N-Spect.

a.   Daily Information.

(1)   Odometer start**

(2)   Odometer stop**

(3)   Day Start time

(4)   Day Stop time

**Odometer start and stop mileage information is only required to document mileage for use of a POV for official business. It is not required for GOV/GSA vehicles.

b.   Hours Worked. The hours worked each workday; UI number, if applicable; PPC Code (will self-populate if UI number is entered, as will title); and transaction code (e.g., regular time). Non-UI-specific hours shall be entered, along with a PPC code and transaction code. Remarks can be added to any entry for clarification purposes.

c.   AS are required to review N-Spect diary entries for each IOI under their supervision at least twice a year.

204. – 220.   RESERVED

132

CHAPTER H.  STANDARD NARRATIVE REPORT GUIDELINES

221.    <u>GENERAL</u>. A narrative report must be prepared for all inspections. The report format must conform to the prescribed guidelines which are available on the ATF Web Portal, Office of Field Operations, Industry Operations, <u>Narrative Report Formats</u>.

   a.    Inspection Report Guide

   b.    Inspection Report Standards

   c.    Instructions for Firearms and Explosives Reports

   d.    Firearms Qualification Report Format

   e.    Firearms Inspection Report Format

   f.    Firearms Special Report Format

   g.    Firearms Qualifications Report (Template)

   h.    Firearms Inspection Report (Template)

   i.    Firearms Special Report (Template)

   j.    Firearms Worknotes Workbook

   k.    Firearms Worksheets Workbook

   l.    Explosives Qualification Report Format

   m.    Explosives Inspection Report Format

   n.    Explosives Special Report Format

   o.    Explosives Qualification Report (Template)

   p.    Explosives Inspection Report (Template)

   q.    Explosives Special Report (Template)

   r.    Explosives Worknotes Workbook

   s.    Explosives Worksheets Workbook

222.  – 230.  RESERVED

133

CHAPTER I.  INSPECTION SAFETY PROCEDURES

231.  GENERAL.

a.  This chapter identifies policies and procedures that are intended to minimize risks of workplace illnesses and injuries to IOIs. It also provides requirements and technical guidance for the IOIs to help recognize, evaluate, and control workplace safety and health hazards during explosives inspections. Each IOI shall observe the following safety guidelines to ensure that explosives inspections are conducted safely.

b.  It is noted that licensees/permittees are subject to a number of Occupational Health and Safety Administration (OSHA) regulations that are intended to protect employees from workplace exposures and hazards. Although licensees/permittees are obligated to comply with these regulations to protect their own workers, some may not be in compliance or recognize any duty to protect Government IOIs. IOIs should not assume that such protective measures are in place or will protect them during inspections. IOIs have the right to refuse entry and request that the licensees/permittees abate significant hazards should unsafe/unhealthy conditions be encountered.

232.  FIREARMS INSPECTIONS. In preparation for a firearms inspection, the IOI shall adhere to the following procedures:

a.  Review Safety Profile from previous inspection, if available.

b.  Verify that applicant/licensee is not under investigation by CE.

c.  Review previous inspection reports, if available.

d.  If applicant/licensee is located in high risk area or if there are other unsafe conditions, consider requesting the assistance of an ATF special agent.

233.  EXPLOSIVES INSPECTIONS. In preparation for conducting an explosives inspection, the IOI shall adhere to the following procedures:

a.  Preinspection Preparation and Planning.

(1)  Safe Handling of Explosives Training. All IOIs conducting an explosives inspection or assisting in an explosives criminal investigation shall have attended the mandatory ATF Safe Handling of Explosives training before being permitted to touch or otherwise move any explosives. IOIs must always be familiar with the characteristics of the explosive product and ensure that safety measures are in place prior to handling.

(2)  Licensee/Permittee Safety Policies. Prior to conducting inspections, IOIs shall familiarize themselves with any existing licensee/permittee safety and health policies/procedures that may pertain to explosives inspections. IOIs shall comply with any such policies/procedures.  However, **do not**

134

sign any document that releases the licensee/permittee from any type of liability (e.g., physical injury) sustained at the business premises.

(3)    Clothing. Bureau-issued clothing has been designed to reduce the risks posed by static electricity and electric sparks as well as to present a professional appearance. The issued clothing has approved ATF indicia that are critical when conducting early morning inspections or assisting with investigations of accidental explosions or other enforcement actions with ATF special agents.  Where static is a potential hazard, outer clothing made of wool, silk or synthetic blends or use of non-electrostatic dissipative boots may pose a safety hazard due to a potential accumulation of a static charge or other reasons and **must not be worn**. Therefore, it is ATF policy that the following requirements be met:

    (a)    Wear only Bureau-issued 100 percent cotton pants and shirts, boots and coat (if applicable) will be worn when conducting explosives inspections (except black powder inspections at a firearms dealer's premises).

    (b)    Bureau-issued clothing shall only be worn during official duty hours.

    (c)    Efforts shall be made to conceal ATF indicia when wearing Bureau-issued clothing in public.

         **Note:** An exception to the above clothing requirements is made for inspection of black powder dealers at firearms dealer's premises.

(4)    Equipment. IOIs shall have with them the following Bureau-issued, safety-related equipment for use when conducting an explosives inspection:

    (a)    Protective helmet.

    (b)    Eye protection.

    (c)    Intrinsically safe flashlight.

    (d)    Non-spark producing metal thickness gauge.

    (e)    Plastic measuring tape (non-sparking/non-metallic).

    (f)    Full-face, air-purifying respirator with combination chemical cartridges (See memorandum dated March 16, 2012, Policy Statement –Medical Surveillance/Respiratory Protection Program).

    (g)    Cotton and/or anti-static, penetration-resistant nitrile gloves (to be provided).

135

(h)     Mirrors (nonsparking/nonmetallic) (to be provided).

(i)     Aluminum or wooden ladders.

(5)     Personal Electronic Devices. All electronic devices (e.g., cellular
        telephones, pagers, GPS devices, cameras, electronic gauges) shall be
        removed prior to entering any explosives storage facility. All two-way
        communications equipment shall be turned off in any blast or storage
        area.  Refer to Advisory on Safe Photography.

(6)     Jewelry. All spark-producing jewelry or accessories shall be removed
        prior to entering any explosives storage facility.

(7)     Emergency Contingencies. Prior to beginning an inspection, IOIs shall
        establish contingencies in the event of an emergency such as a fire or
        explosion, incapacitation/ unconsciousness, confrontation, etc. Such
        contingencies shall include methods of signaling alarm, identifying rally
        points and paths of egress, confirmation of contact numbers for
        emergency response personnel, and possible use of a "buddy system."

(8)     Parking. IOIs shall park at a safe distance from explosives storage
        facilities facing the nearest exit. Avoid parking in areas of high and/or
        dried grass and brush. Leave vehicle doors unlocked and ensure that
        keys are immediately accessible.

(9)     Respirator Usage.  Certain activities (e.g., inspection of walk-in magazines
        containing nitroglycerin (NG)-based dynamite) require the use of
        respirators as a means of controlling potential exposures to airborne
        chemical vapors. Any use of respirators requires advance screening,
        qualification, and training. At the discretion of the SAC or his/her
        designee, up to three 1801 Industry Operations Investigators (IOI) per
        Division can remain in the Respiratory Protection Program (RPP) (See
        memorandum dated March 16, 2012, Policy Statement –Medical
        Surveillance/Respiratory Protection Program).

b.      Initial Hazard Assessment.

(1)     Hazard Identification. Upon arrival at an explosives magazine or
        processing area, immediately examine the interior for unsafe conditions
        such as residue powders on the floor, spillage, or deteriorated explosive
        materials. If conditions are encountered that pose an immediate threat to
        safety, the inspection shall be terminated and all IOIs shall immediately
        proceed to a safe location. If any such situation is encountered, IOIs
        shall request that the licensee/permittee take corrective action to
        eliminate the hazardous situation. This may include the destruction of the
        explosive materials by the entity storing the materials or removal by the
        manufacturer or distributor of the product for destruction (e.g., if loose
        stores of black powder and/or flash powder are found in a storage
        facility, the licensee/permittee shall be required to take immediate

136

corrective action to rectify the situation). The inspection shall be resumed only when the hazards have dissipated or have been corrected. Examples of unsafe conditions which may pose an immediate threat include:

(a)     Deteriorated explosives, residue powders on the floor, or spillage. Never handle damaged, leaking, or deteriorated explosives. Signs of deteriorated explosive materials may include crushed boxes, stains or discoloration on boxes or explosives, leakage, and crystallization. **Do not** enter a magazine or processing area with these materials present. Instead, leave the area immediately and contact the AS. Instruct the licensee/permittee to consult with the manufacturer or distributor for advice on proper safeguarding and disposal.

        **Note:** An exception to this requirement would include loose stores of explosives powder in a processing facility to the extent that such materials are being used in the assembly process.

(b)     Broken or inappropriate explosives packaging.

(c)     Detonators stored with other explosives.

        **Note:** Detonators that will not mass detonate (i.e., detonators designated 1.4 by DOT and in the original packaging, not loose) may be stored with electric squibs, safety fuse, igniters and igniter cord in a type 4 magazine.

(d)     Detonators stored with explosives other than delay devices and electric squibs, safety fuse, igniters and igniter cord in a type 1 or type 2 magazine.

(e)     Bulk quantities of combustible materials and chemicals stored in magazines with explosives.

(f)     Illegal Explosives. DO NOT handle illegal explosive devices. Contact your AS immediately.

(g)     Static/spark/shock sensitive areas. Working in areas where explosives are located (e.g., magazines, process buildings, explosive materials-related facilities) may present significant hazards from static electricity, sparks, or shock waves. **It is imperative** that IOIs recognize situations that may result in a potential static/spark/shock sensitive area, and take full precautions. Flash powder, black powder, and pyrotechnic compositions are generally the most sensitive materials. **Use extreme caution** when handling or working around these materials, particularly if loose powder or opened or improperly packaged explosives are present, or if the relative humidity in the work area is below 20 percent. Information regarding the

137

presence of these materials and the location of any static/spark/shock sensitive areas should be solicited from the licensee/permittee during the pre-inspection discussions. See <u>Explosives Magazine Pre-Entry Safety Guidelines</u>, for additional information.

    (h)    Nitroglycerin (NG)-Based Explosives.

        <u>1</u>    Working in areas where NG–based dynamite is located may present special health concerns due to potential chemical exposures. Such exposures may result from inhalation of NG vapors or from inhalation of the related chemical, ethylene glycol dinitrate (EGDN). Typically, the most notable symptom of exposure due to inhalation and/or skin absorption is a severe headache. However, other noticeable health effects may also occur (e.g., lightheadedness, nausea, vomiting) depending on factors such as airborne concentration, degree of skin contact, individual susceptibility, prescription medications being taken, etc.

        <u>2</u>    Hazard identification associated with NG-based dynamite may require soliciting advance inventory information and material safety data sheets (MSDSs) from the licensee/permittee, an assessment of the feasibility of acceptable passive magazine ventilation, individual susceptibilities, apparent symptoms, etc.

    (i)    Heat Stress.  Be prepared to recognize the signs and symptoms of heat stress and to respond effectively. Heat stress may be a particular risk when the weather is hot and humid and you are not acclimatized (i.e., have not spent 2 weeks in similar weather conditions). Under such conditions, be prepared to monitor for signs and symptoms of heat stress, take frequent breaks, and drink plenty of fluids. Refer to <u>Chemical Exposure and Heat Stress Signs and Symptoms, to become more aware of possible signs/symptoms of heat stress.</u>

    (2)    <u>Supervisor Contact</u>. Contact your immediate supervisor and report any unsafe conditions as soon as possible. If the immediate supervisor is unavailable, then the second-level IO supervisor, or the RAC, duty agent, or division office supervisor, as appropriate, shall be contacted.

    (3)    <u>Technical Support</u>. For technical support dealing with the identification of potential hazards during such inspections, the IOIs shall contact his/her immediate supervisor. For additional technical information, contact the EIPB and Explosives Technology Branch.

c.    <u>Conducting the Inspection</u>.

    (1)    <u>Access to Explosives</u>. **Do not** walk or crawl on the top of explosive materials or containers. Use wooden or aluminum ladders (if necessary)

138

to examine explosive materials inventories. Another method, when practical, is to use mirrors to view the product. As a last resort, remove the containers of explosive materials for better visibility.

(2)     Handling Explosives. Always be familiar with the characteristics of the explosive product prior to handling. Explosive products shall only be carried in the original packaging or appropriate cartons or boxes. **Do not** drag, push, drop, or toss explosives or packages of explosives. **Do not** pick up display fireworks by the attached fuse or quick match. **Never** tamper with, or attempt to remove, the contents of any detonator, fireworks, or other explosive product.

(3)     Lifting. IOIs should handle, lift, and carry explosive products only when necessary, and ensure that the following proper lifting techniques are used:

(a)     Bend your knees, not your back.

(b)     For stability, keep your feet wide apart; in this way you are using your strong leg muscles and not straining your back.

(c)     As a rule, keep your hips aligned under your shoulders to keep your back straight.

(d)     Carry the object against your body (so that its center of gravity is closer to yours).

(e)     Bend at the knees to put the object down.

(4)     Tools Used for Opening/Closing Containers. Tools used for opening or closing containers of explosive materials are to be of nonsparking materials, except that metal slitters may be used for opening fiberboard containers. When opening containers, **do not** create sparks or static hazards. Do **not** allow slitters (such as box cutters and knives) to touch metal box fasteners or the explosive materials inside the containers. Metal objects, other than nonsparking transfer conveyors, are not to be stored in any magazine containing high explosives.

(5)     Placement of Explosive Materials. Explosive materials shall not be placed directly against the interior walls or configured such that ventilation does not occur.

(6)     Smoking and Open Flames. Smoking, or any open flames, shall not be permitted within 50 feet of a storage facility or building where explosives are handled, stored or used, or in any room containing an indoor magazine.

(7)     Sparking Materials. No sparking materials (e.g., exposed metal, ferrous metal nails in the floor or side walls, etc.) shall come in contact with the stored explosive materials.

139

**Note:** This is not a requirement for all magazines, such as a Type 2.

(8) Packaging of Explosives. Explosive materials are not to be packed or repacked inside or within 50 feet of a magazine, except with respect to fiberboard or other nonmetal containers. Containers of explosive materials must be closed while being stored unless the requirements in ATF Ruling 2012-2 are met. Licensees and permittees who comply with all the conditions set forth in the ruling at all times are not required to obtain a separate, individual variance approval from ATF pursuant to the regulations at 27 CFR 555.214(b) and (c).

(9) Skin Exposure. Avoid getting explosive materials or chemicals on exposed skin or in eyes. Wear a long-sleeve shirt to avoid skin absorption of chemicals found in explosives. Use cotton and/or anti-static, penetration-resistant nitrile gloves, as applicable.

(10) Inhalation Exposure. As circumstances dictate, only a Bureau-issued respirator shall be used by IOIs to protect against potential harmful airborne dusts and vapors. It is currently ATF's policy that qualified IOIs wear respirators when conducting inspections of all walk-in type magazines containing NG-based explosives. (Refer to ATF O 1600.5B, Safety, Health and Environmental Programs).

(11) Decontamination. Always wash or sanitize hands following examination of explosives or other related chemicals. If any other bodily areas are exposed, flush the contact areas with water.

(12) Insects/Animals/Plants. Be cautious of insects, animals and poisonous plants in the area (e.g., dogs, snakes, rodents, bees, spiders, poison ivy);

(13) Volatile Materials. All volatile materials shall be kept a distance of at least 50 feet from outdoor magazines.

(14) Housekeeping. Licensees/permittees are required to keep the areas where explosive materials are located clean, dry and free of grit, paper, empty packages and containers, and rubbish. Floors shall be regularly swept. No spark-producing metal brooms or utensils shall be used in the cleaning and maintenance of magazines or kept in the magazines. Areas surrounding magazines shall be kept clear of rubbish, brush, and dry grass, or trees (except live trees more than 10 feet tall) for more than 25 feet in all directions. Living foliage which is used to stabilize the earthen covering of a magazine need not be removed.

d. Special Hazards and Controls.

(1) Static/Spark/Shock-Sensitive Environments. Working in areas where explosives are located (e.g., magazines, process buildings, explosive materials-related facilities) may present significant hazards from static electricity, sparks, or shock waves. **It is imperative** that IOIs recognize such potential static/spark/shock-sensitive areas and take full precautions prior to entry. Flash powder, black powder, and pyrotechnic compositions are generally the most sensitive explosive materials. **Use extreme caution** when handling or working around these materials, particularly if loose

140

powder or opened or improperly packaged explosives are present. Special precautions to be taken in such situations include:

(a) **Ground yourself immediately prior to entering sensitive areas** by touching an unpainted metal exterior of the magazine or the ground prior to entering.

(b) Ensure that you are wearing the appropriate Bureau-issued clothing and boots, and that any equipment brought into the sensitive area is approved for such use.

(c) Check your shoes and magazine floors for rocks, sand, or grit that could cause a friction spark.

(2) <u>Chemical Hazards - NG-based Explosives</u>. As previously noted, working in areas where NG–based dynamite is located presents special concerns due to potential chemical exposure. As a result, the following precautions shall be taken prior to entering explosives magazines known to contain NG-based explosives:

(a) Air-out (ventilate) the magazine so that accumulated vapors are dispersed. Ventilation should occur for at least 30 minutes immediately prior to entry.

(b) Wear Bureau-issued clothing, including a long-sleeve BDU shirt, to minimize skin contact with NG or EGDN vapors.

(c) Wear a Bureau-issued, full-face air-purifying respirator with the appropriate combination cartridges when working in enclosed areas (e.g., walk-in magazines). All respirator wearers must first be screened, trained, and qualified by the Office of Management, Policy and Safety Branch. (Refer to <u>ATF O 1600.5B</u>). At the discretion of the SAC or his/her designee, up to three 1801 Industry Operations Investigators (IOI) per Division can remain in the Respiratory Protection Program (RPP). See memorandum dated March 16, 2012, <u>Policy Statement –Medical Surveillance/Respiratory Protection Program.</u>

e. <u>Explosives Magazine Pre-Entry Safety Guidelines</u>. This safety awareness list shall be reviewed by IOIs prior to entry into any walk-in type explosives magazine. The purpose of this awareness list is to focus attention on ways to mitigate safety/health risks due to potential exposure to static/sparking hazards and/or NG or EGDN vapors.

f. <u>Respiratory Protection Program (RPP)</u>. ATF O <u>ATF O 1600.5B</u>, Safety, Health and Environmental Programs provide information and mandatory procedures for required respirator use. All IOIs must thoroughly familiarize themselves, and ensure full compliance with the above referenced materials, especially relating to fit-testing, respirator restrictions, equipment maintenance and care, and training requirements, ensuring full compliance. At the discretion of the SAC and their

141

management team, up to three IOIs per Division, will remain in the RPP (See memorandum dated March 16, 2012, Policy Statement –Medical Surveillance/Respiratory Protection Program). Although not required to complete annual medical examinations, all IOIs must be medically cleared prior to wearing a respirator as outlined in Chapter D of ATF O 1600.5B. The Office of Management, Policy and Safety Branch shall be responsible for the development and implementation of procedures for the inclusion of IOIs in the Bureau's Respiratory Protection Program, as applicable.

234.– 240.  RESERVED

CHAPTER J. INTERNAL CONTROL GUIDELINES

241. <u>EVALUATION OF LICENSEE'S OR PERMITTEE'S INTERNAL CONTROLS</u>. The evaluation of a licensees or permittees existing internal controls is the basis for determining the extent of testing or detail work to be done. Internal controls describe the business organization and procedures that provide reasonable assurance that errors or irregularities are prevented and timely detected and that objectives are achieved. Internal control evaluations have limitations. Such evaluations are conducted by the IOI to provide ideas for investigative avenues to pursue. Understanding a business from an internal control standpoint also will provide IOIs with a better understanding of whether violations found are isolated or systemic, and whether they are likely to recur in the future. An IOI's concern with internal controls is to determine whether industry members have procedures in place to ensure that inventory is accounted for; entries are accurately and timely made in required records; commodities are not transferred to persons who are prohibited by law from receiving or possessing them; and inventory is safeguarded from theft or loss.

    a.      Characteristics of a Sound System of Internal Controls.

        (1)      <u>Segregation of functions or division of duties</u>. Optimally, no one person should have controls over more than one functional responsibility, unless, the business is a sole proprietor. There are three general duties that should be performed by either different departments or, at a minimum, three different employees.

            (a)      Authority to execute a transaction (i.e., conducting a sale or ordering from suppliers).

            (b)      Recording the transaction.

            (c)      Custody of the assets involved in the transaction (i.e., inventory control).

        (2)      <u>A sound system of policies and practices which is demonstrated by the consistent application of formal and informal procedures</u>. These include the error-checking routines performed to verify the accuracy of the recordkeeping system.

        (3)      <u>Periodic comparisons of records with actual quantities</u> (e.g., regular inventories).

        (4)      <u>Employees have duties and responsibilities in line with their qualifications, training and experience</u>.

        (5)      <u>Independent review or oversight functions</u>.

    b.      <u>Internal Controls in Small Businesses</u>. Usually large businesses will have detailed procedure manuals, specialized employees, and separation of duties. Small businesses may not give as much consideration to internal controls, as they may not have the staff or the time to set up internal controls procedures.

143

(1) Many smaller businesses have only a few individuals who function in many capacities, therefore, it is impossible to provide many of the required checks through segregation of operations.

(2) The key person in most of these businesses is the owner/manager who may or may not be able to supervise all the important transactions and assure recordkeeping accuracy.

242. DOCUMENTATION AND REVIEW OF INTERNAL CONTROLS.

a. For specific internal control procedures pertaining to firearms refer to "FFL Internal Control Review Guide"

b. For specific internal control procedures pertaining to explosives refer to Security Considerations (ATF P 5400.15, Safety and Security Information for Federal Explosives Licensees and Permittees.)

c. Company manuals may contain a description of procedures or record systems that may be useful in documenting the internal controls system.

d. Evaluation of previous inspections may be useful in assessing the reliability of the system of internal controls.

243. COMPUTERIZED SYSTEM. Information systems may often produce reports containing operational and compliance related information that makes it possible for an entity to control a commodity. Most large companies use a computerized recordkeeping system. Large computerized systems have controls that should prevent or detect processing errors that might occur.

a. The following controls should be in place:

(1) Procedures to detect the failure to properly capture transactions for ATF required records.

(2) A back-up procedure to minimize information loss.

(3) Procedures to correct input errors. (Access to make corrections, or manually override the system should be restricted to one or two employees). The employees inputting data should not have access to override the system entry.

(4) Procedures to prevent processing invalid transactions.

(5) Procedures to fully document any manual overrides. There should be a log of all corrections and manual overrides with detailed explanations and copies of supporting records.

b. Computerization can lead to tasks being centralized (e.g., one person may be responsible for making all computer entries) which could adversely impact internal controls.

144

c.   If source documents are filed in several locations, making access to those files difficult, and if the data is not readily available electronically, the steps of tracing source documents may be eliminated.

244.   SAMPLING METHODS. For a detailed discussion of sampling and sampling methods, see Sampling in Auditing, Hill, Roth, Arkin.

a.   The IOI should use sampling whenever testing of less than 100 percent (requires AS justification, DIO approval, and DAD (IO) notification for firearms inventories and ATF F 4473 only). There are three objectives when using sampling techniques in the field:

   (1)   To evaluate the effectiveness of internal controls to determine the scope and extent of testing necessary.

   (2)   To test for compliance with ATF requirements.

   (3)   To check the accuracy of inventory and related records.

b.   The following issues should be considered when evaluating whether sampling should be used:

   (1)   Sampling can be extremely time consuming, especially when the population is large and dynamic and is not readily adaptable to such procedures.

   (2)   If the records are not sequentially numbered, they should not be sampled by statistical methods unless the records can be easily recapped or numbered with an artificial numbering system. If the records cannot be numbered, the IOI can use systematic sampling. (see below)

   (3)   The reliability of the industry member's records is determined through the use of testing. It is used to determine whether the industry member's records are reliable. The appropriate degree of testing is that level which can logically be relied upon to reveal errors in nearly the same proportion as would exist in the total area tested; however, there is always some risk in any sampling process.

c.   The three major sampling techniques are statistical sampling, judgment sampling and systematic sampling.

   (1)   Judgmental sampling is selected on the basis of the IOI's opinion of the best items to examine and not based on random sampling or other factors. An example of judgmental sampling is selecting ATF F 4473s of weapons of choice to review rather than all 4473s or every nth 4473. Judgmental sampling has some limitations in that the results cannot be projected to all transactions, however, judgmental sampling will show compliance with internal control procedures, and it can be used to good advantage in the following situations:

      (a)   When testing small populations.

145

    (b)    When verifying an inventory if an industry member has good internal controls and a favorable compliance history.

    (c)    When examining records prepared during periods of unusual or seasonal activity.

(2)    <u>Statistical sampling</u> is a scientific method to sample an entire population and project the results with known precision. Statistical sampling may be used to test large populations, to verify inventories at large industry members, or to test those with a poor compliance history or weak internal controls. The facts surrounding each examination must be evaluated to determine whether it is cost effective to complete a statistical sample. High risk areas, such as inventory verification, require a minimum of 95 percent confidence level with a +/- 2 percent error rate.

(3)    <u>Systematic Sampling</u> is a method of drawing every "Nth" item beginning with a random start. Obtain the sampling interval "N" by dividing the field size by the sample size. Use systematic sampling with caution because the sample result may be biased and it may not be apparent that a bias exists. For example, if a sample of 200 4473s out of 4,000 is desired, every 20th 4473 may be selected provided all 4,000 forms are covered and the starting point is a random selection.

245. – 250.  RESERVED

CHAPTER K.  ALCOHOL AND TOBACCO DIVERSION - RESERVED

251. – 270.  RESERVED

Case 3:23-cv-00544   Document 1-5   Filed 05/26/23   Page 154 of 155 PageID #: 224

147