Department of the Treasury |  | Bureau of Alcohol, Tobacco and Firearms | BRIEF
ATF B 5370.1
05/08/2003

EXPIRES: 05/08/2005

Subject: NATIONAL FEDERAL FIREARMS LICENSEE ADVERSE ACTION POLICY

To: All ATF Offices

1. **PURPOSE.** To identify minimum guideline recommendations for adverse actions relative to inspections of Federal firearms licensees (FFLs). Adverse action is defined as a warning letter, warning conference, or revocation of FFL, including a recommendation of denial of a renewal application based on the results of an inspection. The issuance of a Report of Violations, ATF F 5030.5, is not an adverse action.

2. **BACKGROUND.**

    a. Compliance inspections of FFLs are conducted to verify that FFLs are complying with the provisions of the Gun Control Act (GCA) and its implementing regulations. Compliance with the GCA by the firearms industry is essential to assist with nationwide crime control and public safety efforts, as part of ATF's Integrated Violence Reduction Strategy (IVRS). As an additional benefit, inspections serve to educate FFLs of their rights and responsibilities associated with the conduct of a firearms business.

    b. A national policy for administering adverse actions is necessary to promote consistent and fair resolution of violations. Revocation should be undertaken for willful violations of the GCA or its regulations that could affect public safety or hamper the Bureau's ability to reduce violent crime.

3. **REFERENCES.**

    a. ATF H 5030.2B, *Regulatory Enforcement Inspector Handbook*, dated 9/9/1996. This handbook details the standard operating procedures for ATF Inspectors conducting compliance inspections.

    b. ATF O 5000.10A *Administrative and Criminal Actions*, dated 4/14/1988.

    c. 18 U.S.C. 923.

4. **CANCELLATION.**

    a. Cancels Federal firearms licensee procedures in ATF O 5000.10A, *Administrative and Criminal Actions*, paragraphs 9 and 10, dated April 14, 1988.

Distribution: ATF-ML-9      OPI: 7210I

    b. Cancels previous issued policy memo, <u>Firearms Programs Policy Information</u>, dated August 24, 1998.

    c. Cancels previous issued policy memo, <u>FFL Administrative Actions</u>, dated February 15, 2001.

5. <u>WILLFULNESS</u>. In order to sustain a revocation of a Federal firearms license, the Government must establish at least one willful violation of the GCA or its regulations by the licensee. In the context of a GCA licensing proceeding, "willfulness" means the intentional disregard of a known legal duty or plain indifference to a licensee's legal obligations. ATF is not required to prove that the licensee intended to violate the law. There is no set formula for establishing willfulness. Willfulness may be proved in a number of ways, some of which are suggested by the following discussion. One method of establishing willful violations is to establish a history of similar, repeat violations including instances when the licensee was counseled concerning the violations. An example of this situation is when a licensee is cited for record keeping violations and is issued a report of violations and/or participates in a warning conference and then engages in similar violations. Additionally, large numbers of violations may establish willfulness. However, courts have upheld revocations based primarily on a single GCA violation such as a straw sale or a sale to a prohibited person and have also upheld revocations where there was no prior history of violations. Statistical evidence, such as the number of incorrect ATF Forms 4473, is useful in proving willfulness, however all facts and circumstances surrounding violations must be evaluated in order to determine willfulness. The following would also be evidence of willfulness:

    a. General compliance history, including any efforts by ATF personnel (i.e., during the Application Inspection) to educate and inform the licensee as to the licensee's legal responsibilities.

    b. Licensee/employee/third party statements and admissions.

    c. Actions by a licensee or employee during an inspection that hindered or obstructed the inspection.

    d. Violations that were necessarily willful, such as a licensee knowingly entering false information in a licensee's records or knowingly making false statements when questioned about possible violations.

6. <u>POLICY</u>.

    a. <u>Establishment of Two-tiered Plan</u>. This brief establishes a two-tiered plan of action for resolution of violations through administrative action. Tier one groups types of violations into categories (levels) that necessitate specific adverse action. Tier two is a Headquarters board review process of inspection reports that recommend adverse action outside of these minimum levels, i.e. either a higher or lower level of recommendation. Tier two does not apply to inspection reports that recommend adverse actions consistent with tier one. The basic structure of a national policy will assist Special Agents in Charge (SACs);

Directors of Industry Operations (DIOs), Assistant Chief Counsels, Division Counsels, Area Supervisors (ASs), and Inspectors in making appropriate recommendations.

b. <u>Tier One Levels of Action</u>.

(1) <u>Level I: Warning Letter and/or Reports of Violations</u>. Reports of violations and warning letters should be issued to the FFL for those non-willful violations that clearly do not meet the criteria for a warning conference or revocation. A report of violations would be appropriate in instances, as outlined below, where the FFL has not had similar prior violations. A warning letter would be appropriate in instances where the FFL has had prior violations and incurs additional and or similar violations. Some examples (not all inclusive) of these types of situations would include:

   (a) One instance in which ATF Forms 4473 have any items of Section 12 (Certification Of Transferee) left blank or completed incorrectly; or items left blank in Section B, indicating failure to obtain proper identification. Improper identification will include instances where the address on the photo identification does not match the address on the ATF F 4473.

   (b) Instances in which omissions are found on the ATF F 4473 (e.g., county of residence, race, date of transaction, etc.) that do not affect the legal transfer of the firearm.

   (c) Acquisition and disposition records are not being maintained in the proper format as required by 27 CFR 478.125, but contain the required information and are otherwise accurate with respect to acquisitions and dispositions.

   (d) The Federal firearms license is not posted on the business premises or the Youth Crime Gun Safety Act poster is not displayed.

(2) <u>Level II: Warning Conference</u>. The following violations merit a warning conference as the minimum adverse action:

   (a) Two or more instances in which ATF Forms 4473 have any items of Section 12 (Certification Of Transferee) left blank or completed incorrectly; or items left blank in Section B, indicating failure to obtain proper identification. Improper identification will include instances where the address on the photo ID does not match the address on the ATF F 4473.

   (b) FFL is missing less than the threshold value of firearms after reconciliation. The threshold value is defined as the lesser of either 10 firearms or 10 percent of the last 12 months' firearms

dispositions. As an example, if the FFL disposed of 50 firearms in the previous 12-month period, the threshold value would be five firearms. If that same FFL disposed of 500 firearms in the same period, then the threshold value would be 10. Missing firearms should always result in the FFLs preparing a theft/loss report for any unaccounted firearm(s).

(c) FFL fails to report 2 or more multiple sales, if there were multiple sales for the applicable period. This will not be applicable if the FFL can show that the multiple sale form was mailed, but was never received or processed by ATF.

(d) FFL fails to report to ATF a theft or loss of a firearm from inventory.

(e) FFL fails to record any acquisitions or dispositions within 7 days from the date of transaction.

(f) FFL uses computer records without obtaining an ATF computerized record keeping variance or fails to follow the conditions of the variance.

(g) FFL does not have firearm safety or security devices (e.g., trigger locks, hard cases, etc.) available for sale.

(3) Level III: Revocation. The following violations merit revocation if willfulness is established:

(a) FFL is missing more than the threshold value of firearms after reconciliation (or half the threshold value if the FFL was a prior recipient of a warning conference for missing inventory).

(b) The FFL did not have all the required records. For example, the FFL did not have an acquisition and disposition book (to include gun show activities) or did not complete ATF Forms 4473.

(c) The FFL refuses ATF right of entry to his/her licensed business premises during the actual hours of operation.

(d) The FFL has previously attended a warning conference and similar violations are found during subsequent inspection.

(e) The FFL is engaged in any activity for which he/she is not licensed (e.g., manufacturing ammunition, manufacturing NFA weapons, conducting business at out-of-state gun shows.).

(f) The FFL knowingly makes a sale to a prohibited person; under-age individual; or, in the case of handguns, to an out-of-State

Page 4

      resident. A referral should be made to the appropriate RAC or group supervisor.

  (g)  The FFL knowingly engages in a straw sale. A referral should be made to the appropriate RAC or group supervisor.

  (h)  The FFL falsifies a record. A referral should be made to the appropriate RAC or group supervisor.

  (i)  The FFL is not completing background checks (Point of Contact (POC) or National Instant Check System (NICS) in all cases when required. A referral should be made to the appropriate Resident Agent in Charge (RAC) or Group Supervisor (GS) if the person receiving the firearm is determined to be prohibited; see also 18 USC 922(t)(5) — civil fines and suspensions).

7. **GENERAL GUIDANCE.**

  a.  In order to ensure consistency in making recommendations, guidelines must be followed. Absent concurrence of the Headquarters Review Board (paragraph 10), it will not be permissible after a recall inspection to recommend adverse action that already has been taken in connection with the same FFL. The appropriateness of a revocation action shall be determined solely on whether there is a willful violation of the Gun Control Act or its regulations that could affect public safety or hamper the Bureau's ability to reduce violent crime based on all facts and circumstances of each case.

  b.  Area Supervisors will, in all instances, generate a follow-up annual compliance (recall) inspection whenever a warning letter or warning conference is undertaken. As a general rule, recall inspections should only be recommended in conjunction with an adverse action, such as a warning letter or warning conference.

  c.  It is expected that revocation recommendations, as well as other adverse actions, be initiated and completed in a timely manner. In no case should more than 90 days pass from the beginning of DIO review until the following actions are taken:

    (1)  Issuance of a warning letter.

    (2)  Holding a warning conference.

    (3)  Issuance of a notice of revocation.

Case 3:23-cv-00544  Document 1-6  Filed 05/26/23  Page 5 of 8 PageID #: 230

8. **INVENTORY VERIFICATION.**

   a. As a general rule, a complete inventory verification must be performed when conducting a recall inspection where the previous inspection disclosed missing firearms. This means that each firearm in inventory must be physically recorded by serial number and matched to the corresponding bound book entry and each open entry in the bound book must be accounted for. The DIO can approve statistical sampling of the inventory, in lieu of a complete inventory, if circumstances warrant.

   b. Inventory procedures may vary, but it is advisable to use a team approach to accomplish the inventory in one day, if at all possible, and minimize, to the extent possible, the disruption of the FFL's business.

9. **FIELD RESPONSIBILITIES.** Responsibilities for field personnel and management are as follows:

   a. **Inspector.**

      (1) The inspector will conduct the inspection per established ATF guidelines, which include use of the workplan. In the event that violations are uncovered, the inspector will determine whether the violations meet the requirements of level I, II, or III regardless of the FFL's reasons/rationale for the violations. The inspector will then make the appropriate recommendation based on the guidelines contained herein and forward the inspection report to the area supervisor.

      (2) If, for any reason, the inspector believes that the minimum adverse action requirement is inappropriate and wishes to make an alternate recommendation, the inspector will document the reasons and forward the inspection report to the area supervisor for review.

   b. **Area Supervisor.**

      (1) The area supervisor will review all firearms inspection reports to ensure that the inspector's recommendation meets established guidelines that necessary data has been entered correctly in N-Spect and all relevant inspection work steps have been adequately performed.

      (2) If the inspector's recommendation does not conform to established guidelines and the inspector has made an alternate recommendation, the area supervisor will make an independent evaluation of the alternate recommendation. If the area supervisor concurs with the inspector's recommendation, the area supervisor will document the reason(s) for concurrence with the alternate recommendation and the inspection report will be forwarded to the DIO for review.

(3) Absent an alternate recommendation from an inspector, the area supervisor may make an alternate recommendation for the inspection report, which will be documented and forwarded to the DIO for review.

(4) A Significant Activity Report (SAR) will be generated electronically for inspections with a warning letter, warning conference notice, or revocation recommendation. The inspector should prepare the SAR after area supervisor and DIO review the inspection report.

c. Director of Industry Operations.

(1) The DIO will review all inspection reports that recommend adverse actions or involve alternate recommendations. DIOs should periodically sample for a specific period of time all firearms compliance inspection reports for adherence to these policy guidelines.

(2) If the inspection report recommendation does not conform to the minimum requirements and the DIO does not concur with an alternate recommendation, the DIO will return the inspection report to the area supervisor for appropriate action, e.g. additional documentation. No warning letter should be issued or warning conference held without DIO review of the inspection report.

(3) If the DIO concurs with the alternate recommendation or decides to make an alternate recommendation, the DIO will route the inspection, along with a written justification, through the Special Agent in Charge, to the Chief, Firearms Programs Division.

d. Field Counsel. Field Counsel should be consulted for input and assistance in assessing any adverse actions as well as assisting in making willfulness determinations.

e. Special Agent In Charge. The SAC has ultimate responsibility to ensure that this national policy is properly enforced. To this end, additional controls may be established in each division.

f. Firearms Programs Division.

(1) The Firearms Enforcement Branch (FEB), will monitor the SARs and N-Spect for consistency and conformity with the national policy and use the information to prepare a quarterly report on all adverse actions to be distributed to Firearms, Explosives and Arson (FEA) and Field Operations (FO) management.

(2) The Firearms Programs Division will conduct periodic quality reviews of field divisions to ensure compliance with the national policy on adverse actions.

Case 3:23-cv-00544    Document 1-6    Filed 05/26/23    Page 7 of 8 PageID #: 232

10. <u>Tier Two: FFL Adverse Action Review Board</u>.

   Tier Two is a Headquarters FFL Adverse Action Review Board that will review adverse action recommendations that do not fall within tier one guidelines.

   a. The Chief, FEB, will evaluate all recommendations made by the field that fall outside the prescribed guidelines and assemble the Headquarters Review Board (HQRB). The HQRB will be made up of the following persons:

      (1) Chief, Firearms Programs Division (or designee).

      (2) Deputy Assistant Director (Field Operations) from the affected field division.

      (3) Special Assistant to the Assistant Director, Field Operations.

      (4) DIO of affected divisions, as a technical advisor only.

   b. The Associate Chief Counsel (FEA) (or designee) will be available to provide legal advice to the board.

   c. The HQRB will convene on a biweekly basis, as needed, to review alternate recommendations presented by the field. No DIO will initiate any type of adverse action outside the parameters set forth in the brief, nor will any inspection report containing an alternate recommendation be closed without concurrence from the HQRB.

11. <u>CONCLUSION</u>. This national policy will ensure the highest possible level of compliance with the law by the firearms industry and enhance consistency of adverse actions nationally. A clearly outlined basic structure for a national policy will assist Special Agents in Charge, Directors of Industry Operations, Assistant Chief Counsels, Area Supervisors, and Inspectors in making appropriate recommendations determined by the severity of the violations and recurrences.

12. <u>QUESTIONS</u>. If you have any questions regarding this brief, please contact the Chief, Firearms Enforcement Branch, at (202) 927-7770.

This policy is not intended, and should not be construed, to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or its employees.

*John P. Malone*

Assistant Director
Firearms, Explosives and Arson