**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives
*Office of Field Operations*

# INDUSTRY OPERATIONS MANUAL





PROTECTING THE PUBLIC
SERVING OUR NATION

*October 2019 Edition*

## *October 2019 Revision of the IO MANUAL includes the following:*

Restructured the application and compliance chapters for both firearms and explosives to follow the flow of Spartan. These include the addition of the following subchapters: General Pre-Inspection Procedures, Spartan Pre-Inspection Procedures, General Onsite Inspection Procedures, and Spartan Onsite Inspection Procedures.

External referrals will be reviewed/approved by the DIO, reviewed by Division Counsel, for transmittal to outside agencies with an accompanying memorandum signed off by the SAC.

The N-Spect Chapter (Chapter G) was not removed due to the ATF Magazine, Amended Application and Other Magazine Inspections are still being documented in N-Spect.

The Spartan Chapter (Chapter H) replaced the Narrative Report Guideline Chapter. The narrative reports templates and guidelines are still available on the ATF Portal, FO, Industry Operations, Narrative Reports for those inspections still being documented in N-Spect.

Spartan was designed to eliminate the duplication of effort in documenting inspection results. All inspection findings, business entity information, business activities, suspicious criminal activities and violations can be documented in real-time thus eliminating the need for Narrative Reports and Worksheets. IOIs will **not** create and/or upload separate Narrative Reports any longer.

### E-2 Travel System
Revised Paragraph 9 to delete reference to the Travel Voucher Worksheet and include the E2 Travel System. The E2 Travel system shall be used to request approval and claim reimbursement for mission related travel expenses that require lodging and/or per diem. IOIs shall ensure their E2 system profile is accurate and update it as needed. Supporting documents such as receipts must be scanned and attached to the electronic voucher before submitting to the approving official. For additional information, see the E2 Solutions page on the ATF Portal.

### GOV and Home to Work Commuting
Revised Paragraph 19c. due to guidance pursuant to the AD (FO) memorandum dated June 11, 2018 titled "Government Owned Vehicle and Home to Work Commuting".

Updated Paragraph 19c.(1) since it now requires the approval of the DAD (IO) to store the GOV outside the 50-mile radius of the IOI's official duty station.

Added Paragraph 19c.(4) to note that if the IOI is under a telework agreement, the IOI shall report to his/her normal worksite (the office) at least twice per pay period. Exceptions must be approved by the DAD (IO) in consultation with the Office of Chief Counsel.

### Procedures for Documenting new NTNS that involve NICS Call Center Errors and Changing Proceed to a Denial after NICS receives new information
Updated Paragraph 64a.(8) to include a situation that an IOI may encounter where a NICS check was done incorrectly by the NICS call center and the FFL, who was not at fault, should not be cited for a violation. Also updated Paragraph 64a.(9) to include a situation where after conducting the background check and giving a proceed to the FFL, the NICS receives information that shows the transaction should be denied. The NICS will contact the FFL and advise of the re-creation of a check and will generate a new NTN for the subject so that it can be denied and transferred to ATF's DENI Branch.

Instructions on the proper documentation on the ATF F 4473 for both situations are explained in detail. For more information, see NICS Guidance for new NTNs and Checks Initiated by NICS.

## Department of Defense (DOD) Contractor Inspection

Updated Paragraph 64b.(2)(c)1b. and Paragraph 125b. (3)(a)(3) to include that a Department of Defense (DOD) contractor will generally be given 45 days advanced notification of the inspection. Any deviation from this advanced notification requires DIO approval. For additional information, please refer to the DOD Compliance Inspection Work Program, Acronym and Contact list.

## NICS Use during FFL Inspections

Updated Paragraph 64b.(2)(b)2 to add that as another investigative tool and in connection with an FFL inspection, the IOI is authorized to use NICS to conduct additional background checks on responsible persons and employees if the IOI has reason to believe that a responsible person or employee, with actual or constructive possession of firearms, is prohibited. For more information, see Use of NICS during FFL Inspections June 6, 2019 and Follow up guidance June 19, 2019.

## Citations related to Firearms Type in Required Records

Updated Paragraph 64c.(7)(d)4 and Paragraph 64c.(7)(e)4 to include guidance that IOIs should not be citing licensees for abbreviating the firearm type in the acquisition and disposition (A&D) record and on the ATF Form 4473. (Reference email to all DIOs dated Feb 7, 2018 "Citations Related to Firearms Type in Required Records"). This guidance only applies to recording the firearm "type" in the A&D record and on the ATF Form 4473.

Commonly recorded "types" of firearms are rifle, shotgun, pistol or revolver, which are defined in 27 CFR 478.11. Page 6 of the ATF Form 4473 states that types of firearms include, but are not limited to pistol, revolver, rifle, shotgun, receiver, frame, and other firearms that are not either handguns or long guns (rifles or shotguns), such as firearms having a pistol grip that expel a shotgun shell or National Firearms Act (NFA) firearms.

Since "type" is not defined under Federal law, there is no violation of Federal firearms laws or regulations if a licensee elects to abbreviate the type of firearm in the A&D record. ATF has allowed types of firearms to be abbreviated in the A&D record, such as pistol grip firearms (Reference the March 2013 FFL Newsletter, Volume 2). It also is not a violation to list a firearm as "lever action" or "semi-auto." However, if the licensee fails to enter any description of the type of firearm (leaves the applicable field blank), then it is a violation of 27 CFR 478.124(c)(4) for the ATF Form 4473 and/ or 27 CFR 478.125(e) (dealers and pawnbrokers), 27 CFR 478.122 (a) (importers), and 27 CFR 478.123(a) (manufacturers) for the A&D book. If the licensee records the type erroneously (i.e. records a rifle as a shotgun) on the ATF Form 4473, there is a violation of 27 CFR 478.124(c)(4); and when it is recorded erroneously in the A&D record, there is a violation of 27 CFR 478.125(e), 27 CFR 478.122, and/ or 27 CFR 478.123(a).

When IOIs encounter licensees abbreviating the type of firearm or adding additional descriptors to it on the ATF Form 4473 and/or the A&D record, they should instruct the licensee to fully and accurately record the type of firearm and explain why it positively impacts public safety (i.e. it aids ATF in tracing firearms, helps in criminal investigations, etc.). IOIs should not cite a violation.

## Time Allowance for FFLs to Reconcile More Than 50 Unaccounted Firearms

Added Paragraph 64c.(7)(f)10 to address time allowance for licensees to reconcile inventory and determine the disposition of firearms. Depending on the circumstances, if the licensee has more than 50 unaccounted firearms, the licensee may be given additional time, generally up to two weeks, at Area Supervisor (AS) or Director Industry Operations (DIO) discretion, to further determine the disposition of the firearms. While additional time may be given to reconcile the

IO Manual
(October 2019)

inventory in cases where a larger inventory discrepancy exists, the IOI should start with the least amount of time, and extend the time as needed, so long as the licensee is showing a conscientious effort in resolving the discrepancy.

### Determination of Which Transactions on Which to Conduct Forward Traces
Updated Paragraph 64c.(7)(e)26 to add that when determining which transactions to conduct forward traces on, it is recommended that the IOI select transactions that occurred at gun shows, transactions in which the initial NICS/State POC response was delayed, and transactions involving the purchase of multiple firearms.

### Generating the ROV in Spartan in lieu of uploading ATF F 5030.5 on offline inspections
Revised Paragraphs 64d.(2)(b)1, 125d.(2)(c)2, and 165c.(3) to include that if the IOI has to conduct the inspection offline, it is preferred that IOIs generate the ROV in Spartan and not upload a manually completed ATF F 5030.5 (Report of Violations or ROV). IOIs should enter the violations in Spartan and generate the ROV to ensure consistency and accuracy in Spartan. The IOI can either email or print the ROV and mail it to the licensee or permittee.

### Proof of National Firearms Act (NFA) Firearm Registration
Revised Paragraph 65j. to note that the ATF policy regarding NFA registration paperwork holds that the "original" document, required to be produced for an ATF officer, is the document received in the format received from the NFA Division or Firearms and Explosives Services Division (FESD). Therefore, when a licensee or non-licensee submits an electronic version of a form, and receives an approved electronic version back, the electronic version is considered the original document. When a licensee or non-licensee submits a paper version of the form, and receives an approved paper version of the form back, the paper version is considered the original document. At the request of an ATF officer, the original electronic copy must be printed by the person as proof of registration.

For purposes of inspection, when the original NFA registration paperwork is in an electronic format, a request for a printed version should only be made if the electronic version is illegible, not completely visible, insufficient in any way, or if it is needed to document violations or inspection findings. (See email dated Jan. 5, 2018 from FMS to DIOs titled "Electronic NFA Registration Forms")

### Violation(s) Uncovered During a Theft/Loss Inspection When the FFL is a Victim of a Crime
Revised Paragraph 73c. to add that if during a theft/loss inspection an IOI uncovers a violation, the IOI should take that opportunity to educate the licensee and advise them on how to correct and prevent the violation from occurring again. The purpose of a theft/loss inspection is to determine the actual firearms that are missing or stolen. It is not a compliance inspection, and an ROV shall not be issued. However, in situations where the violation(s) disclosed during a theft/loss are egregious, the AS can decide that a compliance inspection should be conducted. The compliance inspection should be conducted at a later date, keeping in mind that the licensee has been robbed or burglarized, and is a victim of crime. The DIO should issue a memorandum to the licensee identifying the violations disclosed during the theft/loss inspection and corrective action that was discussed with and taken by the licensee, and noting that a compliance inspection will be conducted at a later date. The memo should be sent via certified mail, and the DIO may use the self-reporting violation memorandum as a guide. (Please refer to email dated September 20, 2017 titled "FY 2018 Coding Guidelines")

### Magazine ID Number/Sticker Tracking Log
Updated Paragraphs 95e.(6)(f), 125c.(8)(d)7, and 162a., to include the requirement for each area office to track the Explosives Magazine ID Number/Sticker. See Magazine Tracking Log.

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 4 of 190 PageID #: 248

## ATF Magazine inspection and notification to local fire authority

Updated Paragraph 162b. to add that during inspections of ATF owned explosive magazines, if the IOI determines that the local Fire Marshal or fire authority was not notified during the original placement of the ATF owned magazine, for the purposes of first responder safety and public safety, the IOI is to notify the special agent magazine custodian who in turn may contact the local fire authority for notification purposes.

## ATF Magazine Inspection – Discrepancy or Loss of Inventory

Updated Paragraph 162d. to address loss or recordkeeping error during an ATF magazine inspection.

The theft or actual loss of any explosives owned or seized by ATF must be reported in accordance with ATF O 1850.2F, Property and Fleet Management, ATF O 3400.1D, Property Taken Into Bureau Custody, and the ATF Property Manual. If the inventory discrepancy was due to a record keeping error, and there were no actual loss of explosives, the records should reflect the correction and the Assistant Special Agent in Charge of the respective field division must be notified through the IOI's chain of command.

## Exception to the weekly submission of Accountability Report (formerly Progress Report)

Updated Paragraph 172a to allow the AS to grant an exception to the weekly submission of accountability reports (formerly progress reports) if the situation dictates (i.e., a criminal investigation with a pending grand jury indictment, emergency leave by the IOI, etc.) by documenting his/her approval and justification in Spartan. The IOI would be required to submit the accountability report monthly until the inspection is submitted.

CHAPTER A.  ADMINISTRATIVE AND GENERAL

| | | |
|---|---|---|
| 1. | Bureau Mission and the IO Investigator's Role | 1 |
| 2. | Bureau Organization | 2 |
| 3. | The Industry Operations Inspection Program | 2 |
| 4. | Legal Authorities for Certain Investigator Actions | 2 |
| 5. | Investigator Liability | 3 |
| 6. | Reporting Motor Vehicle Accidents | 5 |
| 7. | Bribery Attempts | 7 |
| 8. | Conduct and Ethics | 7 |
| 9. | Travel Policy and Claims for Reimbursement | 8 |
| 10. | Carrying Firearms | 10 |
| 11. | Dress and Appearance | 10 |
| 12. | Itineraries | 10 |
| 13. | Driver's License | 10 |
| 14. | Traffic and Parking Citations | 10 |
| 15. | Care of Government-Owned and Leased Property | 11 |
| 16. | Vehicle Usage Log | 11 |
| 17. | NON-LE MONTHLY HTW TRANSPORTATION LOG | 11 |
| 18. | Transportation of Non-ATF Employees in ATF Vehicles | 11 |
| 19. | Vehicle Utilization | 11 |
| 20. | Suppressed/Fictitious Motor Vehicle Registration/Plates for POV | 13 |
| 21. | Telework | 13 |
| 22. | Senior Industry Operations Investigator | 13 |
| | 23 – 30. Reserved | 14 |

CHAPTER B. FIREARMS APPLICATION INSPECTIONS (FAI)

| | | |
|---|---|---|
| 31. | General | 15 |
| 32. | Purpose | 15 |
| 33. | Statutory Requirements | 16 |
| 34. | Conducting Firearms Applications Inspections | 17 |
| 34a. | General Pre-Inspection Procedures | 17 |
| 34b. | Spartan Pre-Inspection Procedures | 18 |
| 34b. | (1) Review Assignment | 18 |
| 34b. | (2) Eligibility Verification | 19 |
| 34b. | (3) Plan Onsite Visit | 20 |
| 34c. | General Onsite Procedures | 21 |
| 34d. | Spartan Onsite Inspection Procedures | 25 |
| 34d. | (1) Persons Present at Interview | 25 |
| 34d. | (2) Review Application with Applicant | 25 |
| 34d. | (3) Business Premises Details | 28 |
| 34d. | (4) Complete Questionnaire | 28 |
| 34d. | (5) Complete Supplemental Questionnaire (Optional) | 30 |
| 34d. | (6) Suspicious Activity Report (SUS)/Referrals | 31 |
| 34d. | (7) Variance Requests | 31 |
| 34d. | (8) Closing Conference | 32 |
| 34d. | (9) Thefts/Losses | 32 |
| 34e. | Post Inspection | 33 |
| 34f. | Snapshot Review | 33 |

34g.   Final Recommendation                                              34
35. – 60. Reserved                                                       34

CHAPTER C. FIREARMS COMPLIANCE INSPECTIONS (FCI)

61.    General                                                           35
62.    Firearms Disposition Emphasis Inspection Program                  36
63.    Issuance of Assignments                                           37
64.    Conducting Firearms Compliance Inspections (FAI)                  38
64a.   General Pre-Inspection Procedures                                 38
64b.   Spartan Pre-Inspection Procedures                                 42
64b.   (2)(a) Review Assignment                                          42
64b.   (2)(b) Eligibility Verification                                   42
64b.   (2)(c) Location Preparation                                       43
64c.   General Onsite Inspection Procedures                              44
64c.   (7) Perform Onsite Work                                           46
64c.   (7)(a) Conduct of Business Review                                 46
64c.   (7)(b) Internal Controls Review                                   48
64c.   (7)(c) Records Review                                             49
64c.   (7)(d) A&D Records Review                                         50
64c.   (7)(e) ATF Forms 4473 Review                                      52
64c    (7)(f) Inventory Verification                                     57
64c.   (7)(g) Other Licenses                                             59
64d.   Spartan Onsite Inspection Procedures                              59
64d.   (1) Onsite Interview To-Do List                                   60
64d.   (2) Onsite Work To-Do List                                        63
64d.   (3) Closing Conference To-Do List                                 65
64e.   Review Snapshot                                                   66
64f.   Final Recommendation                                              66
65.    NFA Firearms                                                      67
66.    Gunsmith                                                          69
67.    Pawnbroker                                                        69
68.    Firearms and Ammunition Manufacturers                             70
69.    Importers                                                         71
70.    Collectors                                                        73
71.    Armor Piercing Ammunition                                         73
72.    Discontinued Business                                             74
73.    Theft Loss Investigations                                         76
74. – 90. Reserved                                                       76

CHAPTER D. EXPLOSIVES APPLICATION INSPECTIONS (EAI)

91.    General                                                           77
92.    Purpose                                                           77
93.    Safe Explosives Act (SEA) Requirements                            78
94.    Other Statutory Requirements                                      78
95.    Conducting Explosives Application Inspections (EAI)                79
95a.   General Pre-Inspection Procedures                                 79
95b.   Spartan Pre-Inspection Procedures                                 81
95b.   (1) Review Assignment                                             81
95b.   (2) Eligibility Verification                                      82

| | | |
|---|---|---|
| 95b. | (3) Plan Onsite Visit | 83 |
| 95c. | General Onsite Procedures | 85 |
| 95d. | Spartan Onsite Procedures | 86 |
| 95e. | Spartan Onsite Interview To-Do List | 86 |
| 95e. | (1) Persons Present at Interview | 86 |
| 95e. | (2) Review Application with Applicant | 87 |
| 95e. | (3) Business Premises Details | 89 |
| 95e. | (4) Complete Questionnaire | 89 |
| 95e. | (5) Complete Supplemental Questionnaire | 89 |
| 95e. | (6) Complete Site Inspection | 90 |
| 95e. | (7) Closing Conference | 94 |
| 96. | Miscellaneous Inspection Related Information | 97 |
| 97. | Security Considerations | 98 |
| 98. | Signature Authority | 98 |
| 99. | Variance Requests | 98 |
| 100. | Suspicious Activity Report/Referrals | 99 |
| 101.– 120. Reserved | | 99 |

## CHAPTER E. EXPLOSIVES COMPLIANCE INSPECTIONS (ECI)

| | | |
|---|---|---|
| 121. | General | 100 |
| 122. | Purpose | 101 |
| 123. | Safe Explosives Act (SEA) Requirements | 102 |
| 124. | Inspection of ATF Magazines | 103 |
| 125. | Conducting Explosives Compliance Inspection (ECI) | 103 |
| 125a. | General Pre-Inspection Procedures | 103 |
| 125b. | Spartan Pre-Inspection Procedures | 104 |
| 125b. | (1) Review Assignment | 105 |
| 125b. | (2) Eligibility Verification | 105 |
| 125b. | (3) Location Preparation | 106 |
| 125c. | General Onsite Procedures | 107 |
| 125c. | (8) Perform Onsite Work | 108 |
| 125c. | (8)(a) Conduct of Business | 108 |
| 125c. | (8)(b) Safety Measures | 111 |
| 125c. | (8)(c) Internal Control Review | 111 |
| 125c. | (8)(d) Storage Examination | 111 |
| 125c. | (8)(e) Records Review | 116 |
| 125c. | (8)(f) Workback | 118 |
| 125c. | (8)(g) Inventory Verification | 120 |
| 125c. | (8)(h) Variances (Active) | 122 |
| 125d. | Spartan Onsite Inspection Procedures | 122 |
| 125d. | (1) Onsite Interview To-Do List | 122 |
| 125d. | (2) Onsite Work To-Do List | 125 |
| 125d. | (3) Closing Conference To-Do List | 127 |
| 125e. | Review Snapshot | 128 |
| 125f. | Final Recommendation | 128 |
| 125g. | Variance Request | 130 |
| 125h. | Emergency Storage Requirements | 131 |
| 125i. | Referral/Suspicious Activity Reports | 131 |
| 126. | Investigations Reporting Theft/Loss | 131 |
| 127. | Tracing of Explosives | 132 |

128. Explosives Importers                                132
129. Explosives Manufacturers                            132
130. Black Powder Dealers                                133
131. Fireworks                                           133
132. Explosives Pest Control Devices                     133
133. – 160. Reserved                                     134

## CHAPTER F. RELATED INSPECTION INFORMATION

161. Hazardous Duty Pay                                  135
162. ATF Magazines                                       136
163. ATF Measuring Equipment                             137
164. Willfulness                                         139
165. Citing Inspection Violations                        140
166. Collateral Inspections                              141
167. Photocopying and Removing Records                   141
168. FFLs or FELs/FEPs Videotaping Inspections           142
169. IO Investigators Videotaping Inspections            142
170. Operational Security                                143
171. Inspections During Actual Business Hours            143
172. Inspection Assignment Accountability Reports        143
173. External Referrals/SUS                              143
174. i-Note                                              147
175. Special Attention Flag (SAF)                        148
176. Documentation of Significant Conversations          149
177. Restrictions on Release of GCA Information          149
178. Websites for IO Investigators                       151
179. Acting Area Supervisor (AS) Guidelines              151
180. Business Structures                                 151
181. TSA Airport Explosives Magazine Inspection Program  151
182. Monitored Case Program (MCP)                        151
183. Self-Reporting of Violation by FFL                  152
184. Major Inspection Team (MIT)                         152
185. - 190. Reserved                                     153

## CHAPTER G. N-SPECT

191. N-Spect                                             154
192. General Information                                 155
193. Violation Record                                    159
194. Recommendation Record                               160
195. Referrals                                           160
196. Inspection Documents                                161
197. Inspection Spreadsheets                             161
198. Investigative Participants                          161
199. Explosives Storage Locations                        161
200. Related Inspections                                 161
201. Post Inspection Information (PII) Folder            161
202. Forms Explorer                                      161
203. Investigator Diary                                  162
204. – 220. Reserved                                     162

CHAPTER H. Spartan

221. General                                                                          163
222. – 230. Reserved                                                          167

CHAPTER I. INSPECTION SAFETY PROCEDURES

231.   General                                                                      168
232.   Firearms Inspections                                                 168
233.   Explosives Inspections                                              168
234. – 240. Reserved                                                          176

CHAPTER J. INTERNAL CONTROL GUIDELINES

241.   Evaluation of Licensee's or Permittee's Internal Controls      177
242.   Documentation and Review of Internal Controls              178
243.   Computerized System                                                 178
244.   Sampling Methods                                                       179
245. – 250. Reserved                                                          180

CHAPTER A.  ADMINISTRATIVE AND GENERAL

1.    BUREAU MISSION AND THE INDUSTRY OPERATIONS INVESTIGATOR (IOI) ROLE.

a.    ATF's mission statement reflects the intent of the laws and policies under its jurisdiction. This mission is subject to review and may be changed whenever Congress or the DOJ adds new responsibilities or alters the priorities of existing ones. A statement of mission and objectives is published when such a change is made.  ATF's current mission is to:

   (1)    Reduce violent crime, prevent acts of terrorism, and protect our Nation.

   (2)    Enforce Federal criminal laws and regulate the firearms and explosives industries.

   (3)    Work directly and through partnerships to investigate and reduce crime involving firearms and explosives, acts of arson, and illegal trafficking of alcohol and tobacco products.

b.    To carry out these mission-related objectives, ATF's management develops long-range goals designed to keep pace with statutory changes, as well as changes occurring within the regulated industries. To meet short-term goals, field resources are concentrated to meet specific program objectives.

c.    The IOI workforce is ATF's investigative arm responsible for carrying out its regulatory mission. With limited staffing resources and increasing regulatory responsibilities, ATF focuses its resources on operations that have the greatest impact on reducing violent crime and protecting the public. This approach requires a high degree of analytical ability, judgment and resourcefulness on the part of the IOI workforce.

   (1)    While carrying out ATF's various inspection programs, IOIs should use their own initiative, creativity, and judgment to uncover regulatory violations. An IOI should take an open-minded approach to all IO inspections, draw conclusions based on relevant and sufficient evidence, and guard against preconceptions and arbitrary opinions.

   (2)    This manual, divided by specific program area, is designed to provide the IOI workforce with procedures to follow in preparing for and conducting firearms and explosives inspections.

d.    In addition to monitoring the activities of regulated industry members, the IOI must be constantly alert to possible violations of criminal law. IOIs may encounter violations that may warrant criminal prosecution.  If so, they shall forward the information in Spartan through a Suspicious Activity Report (SUS) to the field division's Crime Gun Intelligence Center (CGIC) or through a referral to State or local law enforcement agencies (directed through the CGIC) as appropriate. Any disclosure of information to such officials must comply with all applicable laws,

1

such as the Privacy Act, 5 U.S.C. § 552a; 18 U.S.C. § 1905 (relating to confidential information and trade secrets); the Right to Financial Privacy Act, 12 U.S.C. § 3401; and 26 U.S.C. § 6103 (relating to tax return information).

2.    BUREAU ORGANIZATION.

   a.    Headquarters Organization. The Director of ATF, in conformity with policies and delegations made by the U.S. Attorney General, establishes ATF's policies and administers its activities. The Deputy Director reports to the Director and is designated as the Chief Operating Officer for ATF. He or she is responsible for implementing the President's and the Director's goals and ATF's mission, as well as incorporating the principles of the National Performance Review into day-to-day management. Both the Director and the Deputy Director are responsible for ATF's enforcement of the Federal firearms, explosives, and arson laws, as well as its jurisdiction relative to the Federal alcohol and tobacco diversion laws. The Chief Counsel reports to the Director and eight assistant directors report to the Deputy Director.

   b.    Industry Operations (IO) (Field Operations). The Deputy Assistant Director for IO (Field Operations) is responsible for managing ATF's various IO inspection programs. This responsibility is delegated through the Special Agents in charge (SACs) to the Directors of IO (DIOs).

3.    THE INDUSTRY OPERATIONS INSPECTION PROGRAM. This manual is designed to provide the IOI workforce with a comprehensive guide to the inspection procedures and techniques for each of the affected IO program areas.

4.    LEGAL AUTHORITIES FOR CERTAIN INVESTIGATOR ACTIONS.

   a.    The IOI is authorized, as stated on the pocket commission, "to investigate, to require and receive information, and to perform such other duties as authorized by law."

   b.    IOIs have the authority (during business hours) to enter the premises of a regulated industry member for the purpose of examining inventory and records. This authority is derived from 18 U.S.C. Section 923 (g) for firearms licensees and from 18 U.S.C. Section 843(f) for explosives licensees and permittees.

   c.    IOIs do not have the statutory authority to take an affidavit (sworn statement) in firearms and explosives matters. However, IOIs may take a written statement from a licensee or permittee in certain circumstances, such as to document the theft or loss of firearms or explosives.  The written statement (oath-like statement) can be taken under the provision of 28 U.S.C. Section 1746;  unsworn declarations under penalty of perjury: Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an

2

oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1)     If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on (date). (Signature)".

(2)     If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date). (Signature)".

5.     INVESTIGATOR LIABILITY. If an IOI is sued in an individual capacity for actions performed within the employee's scope of employment, representation by DOJ may be requested.  The steps necessary to obtain this representation are outlined in ATF O 1840.1A, Claims and Judicial Actions, subparagraph 10(b)(2). The Office of Chief Counsel has observed the following regarding claims brought against ATF employees:

a.     The Supreme Court has held that, although a suit can be brought against Government employees in their individual capacities for violation of an individual's constitutional rights, employees are shielded from liability if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. This qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.

b.     With respect to common law torts such as negligence (driving/investigation), malicious prosecution, libel, and slander, the Government employee is immune from liability under the Federal Tort Claims Act, which provides that the exclusive recovery for such torts is against the United States Government.

c.     DOJ has adopted an indemnification policy under which it can indemnify an employee who suffers an adverse judgment or verdict, provided the following conditions are met:

(1)     The employee's conduct giving rise to the judgment or verdict was within the scope of employment.

(2)     Indemnification is in the best interest of DOJ.

(3)     Appropriated ATF funds are available.

d.     IOI Safety and Judicial Actions - When Federal employees (special agents or otherwise) are sued for damages for actions taken in the scope of their employment, the law provides appropriate protections.  In the case of tort

3

claims, the Federal Tort Claims Act provides for substitution of the United States as the defendant in the place of any individually named Federal defendant, thereby insulating the employee from personal liability.

In the case of constitutional (Bivens) claims, the DOJ by regulation provides for the defense and indemnification of any individually named Federal defendant, provided that the actions were in the scope of employment, that providing a defense or indemnification is in the interests of the United States, and (in the case of indemnification) funds are available. In addition, while special agents (and other law enforcement officers) are privileged under law to use reasonable force to make arrests and execute warrants, everyone is privileged under law to use reasonable force to defend oneself from a criminal attack.

In the course of an IOI's official duty, he or she may encounter situations that pose an endangerment to their personal safety and wellbeing. Victimization can occur while in the line of duty. IOIs are encouraged to use their discretion and remove themselves from the hostile/aggressive/imposing or dangerous situations.

If an IOI, who during the course of an inspection, used reasonable force to defend him or herself from an attack by the licensee, and who was later sued by the licensee, would be able to rely on having the United States substituted as the defendant in the case of tort claims, and to have a DOJ-provided legal defense (and indemnification) for any constitutional claims. There is no law, policy or precedent whatsoever for the expressed fear that an IOI would somehow lose his or her job in such a situation. However, if ATF/DOJ concluded that, the IOI in fact used unreasonable force (or instigated the fight or disruption); there may not be federal protection/DOJ representation. This limitation applies equally in the case of an SA who ATF/DOJ concluded used unreasonable force to effect an arrest.

The incident should be documented and reported through the IOI's chain-of-command. The Area Supervisor (AS) should submit a written report of the incident to the Director, Industry Operations (DIO) and to the Security and Emergency Programs Division for a Threat Assessment. The DIO is required to report the incident to the Special Agent in Charge and forward a summary to the IOI Safety Mailbox. If criminal action took place, the AS should contact the ATF Victim Witness Assistance Program (VWAP). The VWAP is available to provide mandated victim rights and services. The ATF Peer Support Program and the Employee Assistance Program (EAP) are available to provide immediate and on-going mental health referrals and assistance.

An off-duty IOI, like any other person, still enjoys the privilege to use reasonable force to fend off a criminal attack. However, if lawsuits were to follow, he or she would be on his or her own, as would an off-duty agent. Unlike an IOI, an off-duty agent sometimes switches back into scope of employment, because he or she sees a crime and, as a law enforcement officer, intervenes. This would not occur in the case of an IOI, nor should it.

IOIs must communicate any concerns they have with their AS. A mailbox

4

IOISAFETY@atf.gov has been established for IOIs to report safety issues or communicate safety concerns with HQ management.

*While laws vary somewhat between jurisdictions, the laws of every state recognize that a person confronted by a criminal assailant may use reasonable force in self-defense. Furthermore, to the extent that an IOI employed reasonable force in self-defense in response to a criminal attack occurring in the course of his or her official duties, the protections of the Federal Tort Claims Act and the program for DOJ legal representation, described in the ATF 1840.1A, Claims and Judicial Actions, para. 11, Judicial Actions Against the Bureau and/or Employees would apply to any resulting legal claims against the IOI.*

6. REPORTING MOTOR VEHICLE ACCIDENTS.

   a. If an IOI is involved in a motor vehicle accident while operating a Government Furnished Automobile (GFA) while on official business, he/she should refer to ATF O 1850.2F, Property and Fleet Management Program.

   b. IOIs are responsible for keeping copies of SF 91, Motor Vehicle Accident Report and SF 94, Statement of Witness, (see http://www.gsa.gov/portal/forms/type/SF) readily available in all vehicles used for official business, and for:

      (1) Operating a GFA in a safe and defensive manner and in accordance with all State and local laws.

      (2) Wearing a seatbelt at all times.

      (3) Reporting any allegations or knowledge of misconduct to the Office of Professional Responsibility and Security Operations (OPRSO)/Internal Affairs Division upon awareness of such.

      (4) Reporting within 2 hours, to their first-line supervisor or designee, any accident or occurrence of damage involving a GFA.

      (5) Providing the supervisor with the information he/she requests in order for timely submission of the preliminary notification to the Office of Management, Materiel Management Branch, Property and Fleet Management Section (PFMS).

      (6) Providing complete and accurate information related to the accident on the SF 91 and associated forms.

      (7) Providing any witness with the SF 94 for their voluntary completion and ensuring submission of such to the PFMS.

      (8) Notifying the local police department and obtaining a written accident/damage report.

5

**Note:** Police reports are required when reporting a vehicle accident AND for report of damage ONLY.

(9)   Employees are strongly encouraged to make every effort to obtain photographs of all affected vehicles (and other property) as well as the accident scene and surrounding area.

(10)   Submitting two estimates of property damage for the GFA.

**Note:** If actual repair costs exceed $3,000, consultation with the Logistics and Acquisition Division, Acquisition Branch prior to authorization of repairs is required.

(11)   Submitting a full motor vehicle accident report package in duplicate (hard copies) to the first-line supervisor within the required timeframes.

(12)   Immediately referring any potential claimant to division counsel.

(13)   Refraining from making written or oral statements to anyone other than the investigating officer at the scene.

(14)   Clearly explaining in section VIII of the SF 91 any failure to obtain police report, photographs, or witness' statement(s), as required by ATF O 1850.2F.

(15)   Entering into the Safety & Health Management Information System (WC / OSH MIS), any injury information associated with the accident.

c.   Area Supervisors (AS) are responsible for:

(1)   Fostering safe driving habits through employee awareness and appropriate accountability measures.

(2)   Electronically completing and transmitting to the Chief Property and Fleet Management Section (PFMS) the ATF F 1870.4, Supervisor's Preliminary Accident and Damage Notification Report, on the same business day as when the accident is reported by the employee. In cases where the accident occurred after 4 p.m. or on a non-business day, the transmission shall take place by 9 a.m. local time on the next business day.

(3)   Notifying the second-line supervisor of the incident within 2 hours.

(4)   Reviewing subsequent accident packages for completeness and accuracy prior to signing and transmitting such to the field division for supervisory signature. At the field division level, forms must be signed by the Special Agent in Charge (SAC) or designee, Assistant Special Agent in Charge (ASAC), Director, Industry Operations (DIO), or by the division chief for employees assigned to Headquarters.

(5)   Designating personnel to act on behalf of the employee in order to meet

6

reporting requirements if the employee is incapacitated as a result of the accident/incident.

(6) Ascertaining possible misconduct on the part of the employee. This includes, but is not limited to, asking the involved employee if he or she consumed any alcohol, or if he or she was under the influence of any controlled substance at the time of the accident.

(7) Ensuring that any allegations or indications of misconduct involving GFAs are reported to the OPRSO/Internal Affairs Division within two (2) hours of the incident.

(8) Ensuring that employees are made aware of the reporting procedures and of the requirement to refer all claimants to division counsel. (See ATF O 1840.1A, Claims and Judicial Actions, paragraph 5 f.)

7. BRIBERY ATTEMPTS. Any bribery attempt must be reported promptly (within 24 hours) to the OPRSO, Personnel Security Branch (PSB) by completing ATF F 8620.51, Notification of Reporting Requirement, and sending it via email to PSBVerification@atf.gov. Any doubt about whether an incident constitutes an act of bribery should be resolved by consulting with the PSB. Upon receipt of such information, the PSB will provide instructions regarding any further actions to be taken.

8. CONDUCT AND ETHICS. ATF employees are subject to standards of conduct set out in 5 CFR Part 2635, Standards of Ethical Conduct for Employees of the Executive Branch; 5 CFR Part 3801, Supplemental Standards of Ethical Conduct for Employees of the Department of Justice; ATF O 2130.1B, Conduct and Accountability; and ATF O 2130.2A, Employee Ethics and Responsibilities, and ATF O 8610.1C, Integrity and Other Investigations. Standards of conduct and ethics for IOIs include the following:

   a. ATF personnel shall refrain from acting in a manner that will give the appearance of the following improprieties: (1) using public office for private gain; (2) giving preferential treatment to any person; (3) impeding Government efficiency or economy; (4) losing complete independence or impartiality; (5) making a Government decision outside official channels; or (6) adversely affecting public confidence in the Government's integrity.

   b. ATF personnel may not solicit contributions from other employees for gifts for persons in superior official positions. Exceptions are discussed in 5 CFR Part 2635 subpart C and ATF O 2130.2A.

   c. ATF personnel may never solicit anything of monetary value, including food and refreshments, from any person who has or is seeking official action from ATF or DOJ. ATF personnel generally may not accept anything of monetary value, including food and refreshments, from any person who has or is seeking official action from ATF or DOJ, but limited exceptions include:

      (1) Gifts, entertainment, and food offered an investigator where circumstances make it clear that obvious family or personal relationships,

7

rather than business concerns, provide motivation for the gift.

    (2)    Food and refreshments that may be accepted with prior appropriate approval if an employee is attending a conference, banquet, or seminar (not related to any investigation) as an official representative of ATF and the food and refreshments are part of the overall function and available to all participants.

    (3)    Unsolicited promotional material of nominal intrinsic value.

d.    ATF personnel may accept gifts from foreign governments in accordance with <u>ATF O 2130.2A</u>.

e.    ATF personnel generally are prohibited from participating in any financial transaction resulting from information obtained through employment in DOJ. Employees should consult with the Office of Chief Counsel for any questions regarding the applicability or scope of this prohibition.

f.    ATF personnel are prohibited from accepting employment (compensated or non-compensated) outside ATF, without first obtaining Bureau approval, as described in <u>ATF F 2131.1</u>, Request to Engage in Outside Employment.

g.    ATF personnel may not obtain a Federal firearms license or explosives license. See <u>ATF O 2130.2A</u>.

h.    With minor exceptions, ATF personnel are prohibited from using Government automobiles for other than official purposes. See <u>ATF O 1850.2F</u> and <u>ATF O 2130.1B</u>.

9.    <u>TRAVEL POLICY AND CLAIMS FOR REIMBURSEMENT</u>. Refer to <u>ATF O 1500.3A, Temporary Duty (TDY) Station Travel Policy Manual,</u> for detailed information on travel policy and procedures. SF 1012 created in N-Spect based on diary entries will no longer be used.

DOJ Policy Statement 1400.04 (Temporary Duty Travel) requires mileage offset be taken when using a privately owned vehicle (POV) for official business. DOJ policy requires that reimbursement for local travel (within 50-mile radius) is limited to the individual's out of pocket expenses in excess of those normal-commuting expenses to and from work. The policy does not provide exceptions for 50 percent or more telework or for pending fulfillment of a GOV request. For further information, see "<u>Requirement for Mileage Offset Clarification, Chart and DOJ Policy Statement 1400.04</u>".

The E2 Travel system shall be used to request approval and claim reimbursement for mission related travel expenses that require lodging and/or per diem. IOIs shall ensure their E2 system profile is accurate and update it as needed. Supporting documents, such as receipts, must be scanned and attached to the electronic voucher before submitting to the approving official. For additional information, see the <u>E2 Solutions</u> page on the ATF Portal.

8

a.  The SF 1164, Claim for Reimbursement for Expenditures on Official Business, is used to claim reimbursement for certain local expenses; (e.g., cash expenditures for street car, subway, bus, taxi cab fares) or for limited use of a personally owned vehicle (POV) on a mileage basis for local travel. The FCAAA will enter information in the financial system (UFMS) for processing and reimbursement.

In accordance with the ATF O 1500.3A, Temporary Duty (TDY) Station Travel Policy Manual, POV mileage for local travel beyond the 50-mile radius, does not require offset and can be claimed on the SF-1164. Column (b) must be marked with code "C" – Other Expenses (itemized), and the accounting classification block at the bottom of the form must contain the entire classification code plus (SOC) Code: 21015. For local travel within the 50-mile radius, offset must be taken and normal commuting expenses deducted. For this mileage, the SF 1164 column (b) must be marked with "A – Local Travel".

b.  Failure to include and submit all required information will result in return of the E2 electronic voucher or SF1164 and delay in the reimbursement. IOIs must include the following receipts with travel voucher submissions:

(1)  Common carrier fares such as airfare, rail, or bus. Identify travel service fee when applicable.

(2)  All lodging expenses (identify lodging taxes in the continental United States.

(3)  Rental cars and all cash purchases of gasoline.

(4)  Registration fees.

(5)  Individual travel expenses $75 and above, such as parking, shuttle or taxi.

(6)  Baggage and excess baggage fees.

c.  Receipts must be retained for 6 years and 3 months. A copy of voucher and attachments must be retained for potential audit.

**Note:** If receipts are lost and a duplicate cannot be obtained from the vendor, the IOI shall prepare a memorandum detailing the expense (item or service purchased, date, amount and vendor) and submit the memo with the required documents for reimbursement. (Refer to Lost Receipt Memorandum.) If an SF 1164 is submitted, receipts must be provided for everything except for tolls and subway.

d.  When IOIs are traveling, and cause an alarm while undergoing the TSA explosives trace detection screening, the IOI should present their credentials and explain their duties to help clarify the possible cause of the alarm. IOIs can expect to undergo additional screening of their person and property to resolve the alarm. Such additional screening measures could include a pat down and additional

9

property searches. IOIs are expected to remain professional and cooperative throughout all levels of the screening process.

10.   CARRYING FIREARMS.

    a.    IOIs do not have authority to carry a firearm while on official duty. This prohibition applies to IOIs while they are working in the office, working in the field, utilizing Government-owned vehicle (GOV) and utilizing a personally owned vehicle (POV) while on duty. IOIs who possess a State permit to carry a concealed weapon are not exempt from this prohibition.

    b.    Statutory authority to carry firearms while on official duty has been assigned to the GS-1811 special agent and GS-1801 explosives enforcement officer (EEO) series. IOIs do not have the statutory authority to affect arrests, make seizures or to carry firearms, and any IOI who operates outside the scope of his/her authority would be potentially subject to disciplinary action, criminal liability, and/or civil liability. (See ATF O 3020.1B, Firearms and Weapons Policy, Chapter A, and Unauthorized Carrying of Firearms While on Official Duty memo.)

    c.    If there are serious safety concerns regarding a particular assignment such that protection is deemed necessary, the IOI should request, through the AS, the presence of a special agent.

11.   DRESS AND APPEARANCE. IOIs are expected to present a professional appearance that reflects personal as well as Bureau integrity. Business attire is considered the normal dress for IOIs. Deviations from normal business attire may be appropriate in some instances, such as during a physical inventory. IOIs must wear ATF-issued clothing during explosives inspections, specifically while conducting explosives inventories and inspecting magazines or as appropriate when assisting law enforcement. IOIs shall wear ATF-issued 511 khaki pants and the black collared shirt with the ATF seal during firearms outreach events, including gun shows. Clothing with ATF identification should not be worn while off-duty or in public settings, such as restaurants. (Refer to Chapter I, Inspection Safety Procedures.)

12.   ITINERARIES. IOIs are required to keep their AS apprised of the location of their work and the nature of their duties in advance. Work assignments shall **always** be scheduled in the Government's best interest. Itineraries shall be submitted by prescribed form acceptable to the AS (i.e., electronic calendar, email, etc.)

13.   DRIVER'S LICENSE. Every IOI must maintain a valid State issued motor vehicle driver's license. If this license is revoked or suspended by the State motor vehicle authorities, this action must be reported immediately to the IOI's AS. Revocation or suspension of the IOI's motor vehicle driver's license may be grounds for ATF to institute administrative action against the employee.

14.   TRAFFIC AND PARKING CITATIONS. Traffic citations obtained while driving a GFA will be reported to the AS within 4 hours of receiving the citation. In each instance, the circumstances causing the citation will be reviewed by the AS. IOIs will immediately report to their AS if they have been charged with Driving Under the Influence (DUI),

10

Operating Under the Influence (OUI) and Driving While Intoxicated (DWI) - whether on or off duty. If the AS's review discloses evidence of employee negligence or abuse of authority, the AS will report the incident to the OPRSO for further investigation.

**Note:** The IOI is responsible for paying for all traffic and parking fines incurred while on official ATF business.

15. <u>CARE OF GOVERNMENT-OWNED AND LEASED PROPERTY</u>. IOIs have a responsibility to protect and care for all Federal property entrusted or issued to them. They must use the property for official purposes and operate such property in a safe manner. When required, IOIs will make all individually assigned property available for inventory or inspection. The IOI will immediately report all incidents of lost, damaged, destroyed, or stolen property to his or her AS. Improper care or use of Government property may subject the employee to monetary liability and/or disciplinary action. (Refer to <u>ATF O 1850.2F</u>, Property and Fleet Management Program.)

16. <u>VEHICLE USAGE LOG</u>. An <u>ATF F 1871.1</u>, Vehicle Usage Log is required to be used by IOIs to document the use of GSA leased vehicles. This form ensures that an accurate accountability of the vehicle usage is being maintained by the IOI. This form also provides managers the ability to identify the operator during a particular time period, and may be beneficial should traffic citations or other events occur relating to the vehicle.

17. <u>NON-LAW ENFORCEMENT MONTHLY HOME TO WORK TRANSPORTATION LOG.</u> An <u>ATF F 1871.2</u>, Non- Law Enforcement Monthly Home-To-Work Transportation Log (Exhibit 19 of <u>ATF O 1850.2F</u>) is required to be completed by all non-law enforcement personnel authorized HTW/WTH transportation.

18. <u>TRANSPORTATION OF NON-ATF EMPLOYEES IN ATF VEHICLES</u>. Bureau personnel driving GFAs will provide transportation only to those persons whose presence is deemed essential to the successful completion of an official mission. This would normally be restricted to ATF employees but could include others; e.g., other Federal officers, State officers, local government representatives, industry members and their representatives.

19. <u>VEHICLE UTILIZATION</u>.

   a. If an IOI requests a vehicle, ATF is required to provide one to him or her. The DIO and SAC would have discretion on whether to provide a vehicle to an employee while in training status. The GFA size should be similar to the Chevrolet Malibu or equivalent compact sedan model. Compact four-wheeled drive vehicles may be leased if warranted. All requested vehicles supplied by ATF should be the most fuel efficient and economical models available.

   b. An employee may be authorized to use his or her own POV instead of a GSA leased vehicle only with AS approval. However, it is more cost effective to use a GSA leased vehicle when mileage is over 12,500 miles per year. Federal travel regulations require that an employee be reimbursed at a reduced rate if he or she uses his or her own POV in lieu of an available GFA.

11

**Note:** DOJ Policy Statement 1400.04 requires mileage offset be taken when using a POV for official business, and reimbursement for local travel is limited to the individual's out of pocket expenses in excess of those normal commuting expenses to and from work. For further information, see Requirement for Mileage Offset Clarification, Chart and DOJ Policy Statement 1400.04.

c. If an IOI is assigned a Government vehicle and wants to store the vehicle at his/her residence, he/she must adhere to the following conditions:

    (1) The vehicle shall be stored within a 50-mile radius of the IOI's official duty station unless justification is provided to the DAD (IO) and approval is granted.

    (2) The vehicle will not be used for commuting between the IOI's residence and the area office on days when the IOI plans to work in the office all day.

    (3) The IOI may not regularly begin and/or end his or her workday at the office since this is contrary to the justification for storing the vehicle at the IOI's residence (41 CFR 102-5.75).

    (4) If under a telework agreement, the IOI shall report to his/her normal worksite (the office) at least twice per pay period. Exceptions must be approved by the DAD (IO) in consultation with the Office of Chief Counsel.

d. Any IOI using a GFA must obtain a completed ATF F 1870.3 authorizing the use and storage of the vehicle at his/her residence. This form must be approved and signed by the SAC. (Refer to Authorization to Use Government Owned or Leased Vehicle, ATF F 1870.3.)

e. All GFAs are assigned to the AS who, through the DIO and through the SAC, may authorize the IOI to store the motor vehicle at his/her residence.

f. The advantage or "break-even point" for using a GSA vehicle versus a POV depends upon the GSA mileage rate, the GSA rental rate, the POV mileage rate, and the number of miles driven. The GSA mileage and rental rate varies depending on the size and type of the vehicle. A listing of the current GSA rental and mileage rates can be obtained from the Chief, Property and Fleet Management Section. These rates are subject to change throughout the year. It should also be noted that a GSA vehicle lease covers all gas and maintenance costs. GSA vehicles are generally replaced every 3 years.

    (1) The formula for determining the breakeven point (i.e., the number of miles driven per year beyond which it is more cost-efficient to drive a GSA vehicle instead of a POV) is as follows:

        (X miles driven) x (GSA mileage rate) plus (GSA rental rate x 12 months) =

.555 x (X miles driven).

(2)    For example, the breakeven point for a compact sedan (with a monthly rental rate of $172, and mileage rate of .23) would be about 6,600 miles per year:

$$(6,600 \text{ miles})(\$.23) + (\$172X12) = (6,600 \text{ miles})(\$.555)$$
$$(\$1,518) + (\$2,064) = \$3,663$$
$$\$3,582 = \$3,663$$

GSA leased vehicle versus POV Vehicle
GSA Lease is $81 less than POV

20.    <u>SUPPRESSED / FICTITIOUS MOTOR VEHICLE REGISTRATION / LICENSE PLATES FOR POV USED FOR OFFICIAL BUSINESS</u>

For safety or security reasons, an IOI may deem it appropriate or necessary to apply for a suppressed or fictitious motor vehicle registration and/or license plates for their POV used for official business. While some State law permits the use of suppressed or fictitious motor vehicle registration and/or license plates by employees of Federal law enforcement agencies, an IOI must get approval from the AS and division management, both the DIO and SAC, prior to submitting such an application.

21.    <u>TELEWORK</u>.

a.    <u>Prerequisite Training</u>. Field IOIs who wish to participate in telework must complete the Office of Personnel Management on-line telework training course for employees (Telework 101 for Employees: Making Telework Work For You). Employees may access the course by logging onto LearnATF.gov. Immediate supervisors of employees who request telework participation are required to complete a similar course (Telework 101 for Managers: Making Telework Work For You). This course is also available at LearnATF.gov. (See <u>ATF O 2600.2C</u>)

b.    <u>Application Procedures</u>. Participation in telework is voluntary. An employee who wishes to participate in a telework arrangement must initiate the request by completing and submitting the <u>ATF Telework Request Form 2221.1</u> to his/her immediate supervisor along with the certificate of completion of the OPM training course.

c.    <u>Approval Procedures</u>. Participation in any form of telework must have documented supervisory approval.

d.    <u>WebTA</u>. When preparing time and attendance for the pay period, IOIs must record time spent teleworking in WebTA using the appropriate transaction code from the drop-down menu.

22.    <u>SENIOR INDUSTRY OPERATIONS INVESTIGATOR </u>- After five (5) years in grade as a GS-13 IOI, investigators can pursue a Senior Industry Operations Investigator (SIOI) designation. SIOIs are expected to demonstrate professionalism, function as leaders in their division, and serve as role models for all IOIs, particularly for the newest IOIs. The SIOI designation marks a career achievement. This designation is earned by an

13

employee's commitment to personal development and accountability as well as to the development of others in the overall execution of the mission. As such, those with senior designations would require enhanced credentials as "Senior Industry Operations Investigator (Regulatory). See <u>ATF O 2311.5A, Industry Operations Investigator Career Plan</u>, for SIOI specific requirements.

23. – 30.  RESERVED

14

CHAPTER B. FIREARMS APPLICATION INSPECTIONS (FAI)

31.   GENERAL

a.   This chapter establishes guidelines and procedures for conducting firearms application inspections. Unless otherwise directed, all procedures contained in this chapter pertinent to the applicant's operations must be followed. However, this chapter is not meant to preclude the use of other inspection techniques that are necessary to accomplish the purpose of the inspection. The Firearms Application Inspection Quick Reference Guide may be used to assist in conducting firearms application inspections. Regardless of the other techniques implemented, the guidelines and procedures outlined in this Chapter must be followed.

b.   All firearms inspections should be preceded by an opening conference with the industry member at the proposed business premises. The opening conference will provide the applicant or licensee with an explanation of the inspection process; the intended scope; an estimated timeframe; and any other additional information and resources needed. The opening conference is used to develop rapport with the industry member while confirming that ATF's presence is intended to assist and educate them in complying with Federal firearms regulations.

c.   Application inspections are only conducted for original applications. Renewal applications are considered firearms compliance inspections and completed in accordance with the requirements in Chapter C, Firearms Compliance Inspections. Spartan provides the applicable recommendations possible based on the kind of inspection and type of assignment issued to the IOI.

d.   Untimely renewal applications require that a new application be filed. In these instances, past compliance history is a factor to be taken into consideration when recommending approval or denial of the application.

32.   PURPOSE

a.   The purpose of a firearms application inspection is to:

(1)   Verify the accuracy of the information provided on the application.

(2)   Ensure the application is for the proper type of license for the proposed business activity.

(3)   Ensure the applicant and all RPs are qualified to obtain an FFL.

(4)   Determine if the applicant has a suitable premises from which to conduct business. (See Section 34 c (7) in this Chapter, 27 CFR 478.11.)

(5)   Determine the applicant's ability to comply with Federal law and regulations, as well as State and local laws.

15

(6)     Educate the applicant in Federal laws, regulations, and compliance responsibilities as they relate to the proposed business activity.

(7)     Minimize the possibility of firearms being obtained by prohibited persons.

(8)     Reduce illegal diversion of firearms.

(9)     Ensure the integrity of computerized records systems (ATF Ruling 2016-1) to facilitate the tracing of firearms.

(10)    Reduce violent crime and protect the public.

## 33.     STATUTORY REQUIREMENTS

a.     All firearms licenses must be issued or denied within 60 days of ATF's receipt of a perfected application (27 CFR § 478.47(c)). The FFLC will not issue a license to an applicant prior to receiving a recommendation from the responsible area office. ATF is mandated by statutory requirements to issue a Federal firearms license (FFL) if:

(1)     The applicant has submitted a properly executed application with the required photograph(s), fingerprint card(s), and correct fee(s);

(2)     The applicant is 21 years or more of age;

(3)     The applicant, including in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association, is not prohibited from shipping, transporting, receiving, or possessing firearms or ammunition;

(4)     The applicant has not willfully violated the Gun Control Act (GCA) or its regulations;

(5)     The applicant has not willfully failed to disclose material information or willfully made false statements concerning material facts in connection with the application;

(6)     The applicant has a premises from which it conducts business subject to license under the GCA or from which it intends to conduct such business within a reasonable period of time, and the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premises is located;

(7)     The applicant will comply with the requirements of State and local law applicable to the conduct of the business within 30 days of the issuance of the license. The applicant may not conduct business activities under the license until the requirements of State and local law applicable to the

16

business have been met.

(8)     The applicant sent or delivered a form, to be prescribed by the Attorney General, to the chief law enforcement officer of the locality in which the premises is located indicating that the applicant intends to apply for a Federal firearms license.

(9)     The applicant certifies that secure gun storage or safety devices will be available at any place in which firearms are sold under the license to persons who are not licensees.

Exception: In any case in which a secure gun storage or safety device is temporarily unavailable because of theft, casualty loss, consumer sales, backorders from a manufacturer, or any other similar reason beyond the control of the licensee, the dealer shall not be considered to be in violation of the requirement under this subparagraph to make available such a device.

(10)    The applicant has a premises from which it conducts its collecting subject to license under the GCA or from which it intends to conduct such collecting within a reasonable period of time if the applicant is applying as a collector.

## 34.    CONDUCTING FAI

a.    General Pre-Inspection Procedures

(1)     Review the assignment, any special instructions and attachments noted in Spartan and perform appropriate queries. Query FLS and Spartan to determine if the applicant had or has any other licenses or permits. Be alert for the applicant's association with previous or current administrative actions under other Federal firearms licenses. Any derogatory information identified should be addressed with the area supervisor. Check for special attention flags in FLS. The IOI must log into FLS to the view the special attention flag since it is not visible if FLS is accessed using Spartan. For querying FLS while using Spartan, see "Search FLS Using Spartan" and "Using the N-Spect Lookback" to view N-Spect while in Spartan.

(2)     Query N-Force or Spartan, as applicable, for any open or previous Criminal Enforcement (CE) investigations involving the applicant. If there is an open CE investigation, the IOI should contact the AS and case agent prior to taking any further action on the application.

(3)     Request information from the field division's Crime Gun Intelligence Center (CGIC), as necessary.

(4)     Verify the FFLC has initiated FBI criminal history checks and NICS checks on all responsible persons listed on the application. The IOI cannot submit the assignment or make a final recommendation until the

17

responsible persons have cleared an FFLC initiated FBI criminal history check and NICS check. Once the FBI checks are finalized, the FFLC examiner will update FLS to reflect that information in the clearance status field. The IOI must document the clearance date of the FBI criminal history conducted by the FFLC in Spartan.

Note: OpenFox is DOJ's portal for accessing National Law Enforcement Telecommunication Systems (NLETS) and National Crime Information Center (NCIC).

If the applicant or location is a known security risk, contact the AS to determine the appropriate course of action.

b.      Spartan Pre-Inspection Procedures

    (1)     Review Assignment

        (a)     Review the ATF F 7 (5310.12) and required supporting documentation for completeness, accuracy, and proper execution and compare it to the information that was copied from FLS and entered by the AS or IA (Investigative Analyst) in Spartan to ensure everything matches. If needed, edit the information in Spartan, for more information see Editing or Sending Work for In-Progress Inspections.

        It is suggested that the IOI save the attached ATF F 7 from Spartan to their laptop for future use. This ensures the document is available for review and amendments during the onsite interview with the applicant even if the IOI is unable to access it in Spartan.

        (b)     Review special instructions noted in the assignment. The AS may provide additional information or request specific tasks so IOIs should always review them. Special Instructions can be accessed from the Initial Assignment Overview Screen in Spartan.

        (c)     In accordance with 33 U.S.C. §1341, ATF F 5000.29, Environmental Information and ATF F 5000.30, Supplemental Information on Water Quality Considerations are required to be included with the ATF F 7 (5310.12) only for those applicants/licensees whose activity may result in a discharge into navigable waters. The determination of whether the forms are required is the responsibility of the applicant, but may be verified by ATF during the application or compliance inspection or other times. Not all applicants will need to submit the forms. Generally, the forms will be required for manufacturers and only if the activity may result in a discharge into navigable waters. If applicable, the forms will be collected by field office investigators during the inspection. The applicant may face consequences for non-compliance. Once an applicant has provided these forms to ATF, they must maintain current and valid forms with the ATF or risk

18

revocation under 18 U.S.C. §923(e). The IOI shall ensure that any required environmental information forms are uploaded in Spartan.

(2)   Eligibility Verification

    (a)   Documentation and confirmation of the eligibility verification information is required in Spartan, and IOIs shall attempt do this before the actual field visit to meet with the applicant.

    (b)   Research and verify all applicable eligibility items such as: Business Information, Property Ownership, Trade Name/DBA, Rental/Lease, and Zoning. The IOI must enter contact information or upload a verification document for all applicable eligibility items. If verification was not confirmed, enter contact information for whom eligibility information was attempted. Verification should be from external sources and not solely derived from the applicant. See Completing Eligibility Verification.

        1.   Business Information/Structure - Verify the existence and validity of the corporation, LLC or partnership with the appropriate State agency. Review copies of application documents, such as partnership agreements and State registration documents. The IOI can query the applicable Secretary of State's official website.

        2.   Property Ownership – Verify ownership of the proposed business premises by utilizing city or county property tax records, as applicable.

        3.   Trade Name/DBA (Doing Business As) – Verify registration of proposed trade name with either the State, city or county office, as applicable.

        4.   Lease/Rental Information – Review the lease or rental agreement and verify the applicant's proposed business activities are authorized and permissible.  If necessary, verify the relationship between the lessor and property owner, if different, to ensure the lessor is authorized to lease the property. See Paragraph 34c (7)(c).

            **Note**: The IOI can skip the lease/rental portion until they are onsite with the applicant if the information was not submitted with the application or is not available elsewhere. Spartan will create a follow-up, which the IOI will need to address onsite.

        5.   Zoning Compliance - Determine if there are State and/or local zoning ordinances that may affect or prohibit the business activity from the proposed location. The IOI should

19

utilize State, city, county and other government websites to determine if the proposed business premises complies with zoning ordinances. If zoning cannot be determined using those websites, the IOI should call the appropriate governmental entity and document the contact in Spartan.

(c)     If the IOI has indicated that the applicant has not met an application requirement in Spartan (e.g., applicant never registered LLC with Secretary of State and must do so for eligibility verification, etc.), an Action Item is generated in Spartan. The IOI cannot submit and close the inspection if there are any Action Items with an "open" status. The IOI must resolve all action items; see Completing Action Items for Inspections.

(3)   Plan Onsite Visit

(a)     Advance notification should be provided to the applicant for application inspections. The IOI must document the interview details (date and time of inspection) in Spartan prior to initiating the onsite visit. Refer to Chapter I, Inspection Safety Procedures, for additional preplanning procedures.

(b)     The IOI must make at least three attempts in establishing contact with the applicant. All attempts by the IOI must be documented in Spartan using the plan onsite interview function during the pre-inspection phase. If, after three attempts, the IOI is unsuccessful in establishing contact, the IOI may initiate the abandonment process by selecting "Start Abandonment Request". For more information, see Requesting and Documenting Abandonment.

(c)     The AS will receive notification in Spartan and provide a decision on the abandonment request. If the AS does not approve, the IOI will receive an explanation and instructions to take further steps before submitting the request to abandon again. If the AS approves the abandonment process, the AS will generate the Abandonment Notice in Spartan.

(d)     The IOI will mail the applicant the Notice of Abandonment by certified mail with a return receipt addressed to the IOI. The IOI can enter the tracking number and the date sent then select "Save". The IOI can select "Track Letter" to go directly to USPS from Spartan for tracking and obtain update on the delivery status. Once the notice is delivered, the IOI shall enter the delivery date and attach the certified mail return slip electronically in Spartan. See "How to Attach Files" for details.

(e)     The applicant has 30 days from the delivery date to respond to the notice and contact the IOI. If the applicant does not respond, the "Confirm Abandonment" task will appear in Spartan. Spartan will not

20

allow the IOI to confirm abandonment until 30 days after the delivery date. The IOI must select "Submit" to go to the Snapshot Report. After the IOI reviews the snapshot report, the recommendation defaults to "Application Abandoned."

(f)     If applicant responds to Abandonment Notice and wants to proceed with the application, the IOI should schedule the field visit and proceed with the application inspection.

(g)     The IOI should conduct a thorough pre-inspection interview of the applicant prior to the onsite visit to effectively prepare and plan for the field visit.  The IOI should ask the applicant about the proposed business operations to ensure that they have applied for the correct type of license. If it is determined that the applicant did not apply for the correct type of license, the IOI should contact the AS and FFLC to get a new license number and have the AS issue a new application assignment prior to initiating the field visit. The IOI should advise the applicant to contact the FFLC regarding payment of any additional fees or receiving a refund for overpayment.

During this contact, the IOI should verify with the applicant any licenses or permits that are required (State, city, county or other local), or that selling black powder also requires a Federal explosives license.

c.     General Onsite Procedures

(1)     The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the applicant. The IOI will identify himself or herself by displaying their Bureau issued credentials. **Note**: Credentials shall not be photocopied.

(2)     Telephone contact in lieu of an onsite, (face-to-face) application inspection shall only be utilized in extenuating circumstances and require AS justification and DIO approval.  Spartan has a telephone inspection option that the IOI can select. The emails documenting the justification and approval shall be saved as attachments in Spartan.  If telephone contact is made in lieu of an application inspection, then an onsite inspection must be conducted within the next 12 months (telephone contact does not constitute an inspection).

(3)     Determine the applicant's business structure. (See Business Structures Document.)

(4)     The IOI shall verify ownership and control of the business by examining available documents (e.g., corporate documents, deeds, rental agreements, loan agreements, etc.)

The IOI shall obtain documented signature authority, if necessary, and

21

upload it in Spartan. Documented signature authority for applications is not necessary if the signer is identified in the application as a corporate officer, corporate general manager, partner, or as the owner (sole proprietor). Documented signature authority such as Power of Attorney, or appropriate corporate documents disclosing the person's authority, is required for any other person to sign the application, to represent an applicant or licensee in administrative conferences or hearings, to sign correspondence, or to receive information on behalf of the applicant or licensee. Documented signature authority is not required for a licensee

(5)    Inquire about how the firearms business will be conducted and how the firearms will be ordered, received, and sold. The IOI should consider the following:

    (a)    A collector may acquire curios and relics at any location and make an occasional disposition of a curio or relic to enhance his or her collection. This license does not allow the holder to engage in the business as a dealer.

    (b)    Information concerning financial status and sources of supply, both of which are not requirements for approval of an application.

    (c)    A franchise to distribute firearms or inventory on-hand would be an indication that the applicant intends to engage in business.

    (d)    How the applicant intends to obtain firearms for resale.

    (e)    Does the applicant have the proper tools for the proposed operations; e.g., gunsmithing?

        **Note:** Current appropriation restrictions prohibit ATF from denying the issuance of an FFL for an applicant or a renewal of said license due to a lack of business activity provided that the applicant is otherwise eligible to receive an FFL. Whether the applicant intends to engage in business is irrelevant.

(6)    Evaluate the applicant's procedures for ordering, receiving, distributing, and storing firearms to determine whether the applicant's controls ensure that operations will be conducted in accordance with Federal law and regulations, are properly reflected in the required records, and provide for the safety and security of the firearms. Discuss with the applicant any weak internal controls and recommend corrective action. (This is voluntary when not specifically covered by a regulation.) For specific security measures to help FFLs safeguard their firearms refer to ATF P 3317.2, Safety and Security Information for Federal Firearms Licensees, available through the ATF Distribution Center.

(7)    Determine if the applicant has suitable premises from which to conduct the proposed business within a reasonable amount of time. (Refer to 18 U.S.C.

Section 923(d)(1)(E).). Below are some items to consider when determining the applicant has a suitable premises:

(a)     The premises must be a permanent location where the applicant intends to operate the firearms business, maintain the required firearms records, and where the firearms license will be posted.

(b)     The premises must be controlled by the applicant and accessible to ATF IOIs for inspection purposes. Notify the applicant of ATF's right of entry and advise the applicant that the records, inventory, and premises are subject to inspection without advance notice during posted business hours.

(c)     Determine if the applicant owns or rents the premises. If the applicant does not own the proposed business premises, review the lease or rental agreement to determine if the proposed business activity violates the agreement. If during the course of an application inspection the IOI is considering contacting the landlord or property owner without the applicant's consent, the IOI should consult with the AS and division counsel prior to contacting the landlord or property owner. See also FFL   Applications at Leased Premises memo dated March 11, 2019.

(d)     ATF generally will not issue a firearms license for the following types of premises:

    1.     Military installations where no permission to operate a firearms business has been granted, in writing, by the base commander.

    2.     Hotels or other transient types of residential property where the applicant has no continuing interest in the property.

    3.     The property is owned by a third party and the applicant is merely a guest without control over the property and does not have clear authorization from the property owner to conduct a firearms business at the location (e.g., the home of a parent or relative).

    4.     Some forms of public housing where the tenants occupy the premises under rigid restrictions against use of the property for conducting a firearms business. (Public housing in particular can present a problem since it can include everything from subsidized rent for commercial rental property to temporary shelters. Who controls the premises and its accessibility to ATF IOIs for inspection purposes must be established in determining the premises' suitability. The Department of Housing and Urban Development should be contacted to assist in this determination.

23

5. Determine if the premises is within a restricted zoning area. **Note**: Provisions of the Violent Crime Control and Law Enforcement Act of 1994 require applicants to comply with State and local law within 30 days of issuance of the FFL.

(e) If an applicant's premises is within a restricted zoning area, inform the applicant of options such as determining whether the applicable jurisdiction would issue a variance for the proposed activities or withdrawing the application until the zoning issue is resolved. If the inspection discloses that the applicable jurisdiction does not enforce their own zoning restrictions for firearms businesses, Federal firearms licenses will usually be issued.

(f) If an applicant's premises fall within 1,000 feet of a school, advise the FFL of the specific means by which they can ensure that their customers are not in violation of 18 U.S.C. Section 922(q) (e.g., firearm must be unloaded and in a locked container or locked firearms rack on a motor vehicle, customer possesses a valid State license or permit to carry a firearm, etc.)

(g) Internet Firearms Business – Based on previous rulings and court cases, ATF's policy is that a business need only be accessible to the particular clients the business is set up to serve, whether or not those clients actually come to the premises. They need not be open to the general public, and ATF will not deny a license on the basis that they do not constitute a "business premises."

(h) A firearms dealer may lawfully conduct an Internet-only type of firearms business without physically transferring firearms at the licensed premises, assuming zoning restrictions do not disqualify this limited form of business. If the zoning restrictions only apply to "foot traffic" for example, further investigation may be needed to determine if the particular internet business would be acceptable. Where business may lawfully be conducted from the premises, a license should be issued if the applicant otherwise meets licensing requirements.

(i) Primarily Gun Show Business Only – ATF's policy is that licensees may lawfully conduct business primarily at gun shows whether or not they transfer firearms at their licensed premises, provided that the licensee maintains a business premises at which ATF can inspect records and inventory, and local zoning restrictions do not prohibit this limited form of business. See the February 21, 2017 memorandum titled "Federal Firearms Licenses for Dealers to Primarily Conduct Business at Gun Shows" from DAD (IO). (See also Important Notice to Dealers and Other Participants at this Gun Show ATF I 5300.23A for guidelines regarding permissible activities at gun shows.)

24

d.     Spartan Onsite Inspection Procedures

IOIs are required to bring their laptop and use Spartan while conducting the inspection onsite. Upon arrival at the proposed business premises, the IOI should tether the laptop to their iPhone and log into Spartan to ensure connectivity before meeting with the applicant. In very few exceptions such as very poor, sparse or no connectivity; Spartan technical or laptop hardware problems, or DOD inspections where electronic equipment is prohibited, IOIs may utilize Spartan offline functions for field work. For more information, see "Use an iPhone as a Mobile Wi-Fi Hotspot".

Spartan utilizes an onsite interview to-do list or guide, and the IOI can complete them in any order. There is also an additional text box that the IOI can use to document additional relevant information disclosed during the interview. The IOI must document, in Spartan, the responsible persons and non-responsible persons who were present during the interview.

SPARTAN ONSITE INTERVIEW TO-DO LIST

(1)     Indicate Persons Present at Interview

    (a)     Using a valid government-issued photo identification, verify the name of the responsible person(s) interviewed, date of birth and residence, and record the identification type and number. If the person is already entered in the Spartan assignment, the IOI can select the person and add the government identification information. The IOI can also add and document other ATF issued licenses or permit where the applicant is a responsible person. (For a definition of a responsible person, refer to Definition of "Responsible Person, dated December 22, 2005, Supplement to Memorandum "Definition of Responsible Person, dated February 28, 2006, and the September 2011 FFL Newsletter.)

    (b)     For non-responsible persons interviewed, the only required fields are the first and last name, and a phone number (business number may be used); however, any additional identifying information the IOI can obtain should be documented (e.g., title, date of birth, driver's license number).

        **Note:** Under certain conditions, an alien with a nonimmigrant visa can obtain an FFL. For example, a nonimmigrant alien who has a valid hunting permit may obtain an FFL provided the hunting permit remains current during the term of the license. An applicant who is not a United States citizen must have an alien number or admission number from the U.S. Citizenship and Immigration Services which must be verified with the issuing agency.

(2)     Review Application with Applicant

25

(a) Verify that all responsible persons are listed on the ATF F 7 (5310.12). Determine the level of each responsible person's involvement in the business.

(b) Conduct criminal history checks and query FLS for any responsible persons added to the application. Query N-Force for any open CE investigations. Additional responsible persons must complete Part B of the ATF F 7 and submit fingerprint cards (ORI- WVATF1100) and photographs to the FFLC. Check local law enforcement or court records if requested by the FFLC or if a disabling conviction is suspected. (Refer to Use of TECS/NCIC/NLETS and NICS in FEL Inspections for procedures in conducting background checks. Though drafted to provide guidance in connection with explosives inspections, the same procedures should be followed for firearms inspections.)

The IOI cannot submit the assignment and recommend approval in Spartan until any added responsible persons have been cleared by the FFLC through the FBI NICS system. Once the FFLC completes the FBI NICS check, it will be documented in the clearance status field that a Criminal History Check (CHC) and NICS clearance has been conducted and cleared. The IOI must document date the CHC is cleared in Spartan. For more information, see Adding and Editing Responsible Persons in Spartan

The IOI should maintain communication with the FFLC and monitor FLS to determine when the FBI CHC is cleared or denied so a recommendation can be made and the assignment submitted. For querying FLS while using Spartan, see "Search FLS Using Spartan".

(c) Document in Spartan if it appears that any responsible persons may be prohibited. The issuance of the license is contingent upon a successful background check conducted by the FFLC on all responsible persons.

(d) Verify that the applicant has removed any prohibited individual(s) from a position in which he or she may receive or possess (constructive or actual) firearms.

**Note:** The FFLC, not the IOI, must notify the applicant that an individual is prohibited. IOIs may not disclose the reason that an individual is prohibited.

(e) Review the application and proposed operations with the applicant or responsible person to verify that the information on the application is correct. Have the applicant initial and date any amendments to the application. In Spartan, the IOI will select the application (attached

26

PDF) in their assignment, download the file and save it. The IOI can then open the saved PDF in Adobe, select comment tool, and then select the pencil option to allow for edits. The applicant can amend the original application PDF by using touch screen or a stylus. The applicant must certify changes with their initials and date of amendment. The IOI must save the perfected application with new file name ("RDS – Applicant name – Perfected Application – Date Amended"). The IOI has to upload the perfected application PDF as an attachment. The IOI must update Spartan and thoroughly document the required changes that need to be made by the FFLC. For more details, see "Perfecting the Original Application PDF".

If further amendments are needed after the onsite inspection, the IOI shall forward the document to the applicant via fax, email, or mail. The applicant will make the necessary amendments, initial and date them, and return the perfected application to the IOI. The IOI shall ensure the recently amended document is uploaded in Spartan and any information that was revised is corrected in Spartan.

(f)     If it appears the applicant has willfully omitted or falsified any material information, the IOI will develop data on these willful misrepresentations and document them in writing to sustain denial proceedings. If willful omission or falsification is suspected, **do not** allow the applicant to make any changes or amendments to the application. Contact the AS. When IOIs develop information of a potential criminal nature, a suspicious activity report must be generated in Spartan.

(g)     In the case of a CE investigation of an applicant, IOIs shall discuss the matter with the ATF case agent and AS to determine the most effective course of action. When appropriate, do not delay submission of the inspection due to a pending criminal investigation, but note that there is an ongoing investigation.

**Note:** The IOI and AS shall discuss the inspection findings with the DIO, Counsel, and appropriate CE personnel.

(h)     Verify that the correct business hours are listed on the application. If the applicant does not intend to maintain weekday business hours, inquire as to the applicant's availability for inspection purposes. The ATF F 7 asks for at least one hour during the week, when the applicant may be contacted by ATF personnel. If the applicant intends to conduct business by appointment only, the IOI should ask on which days the applicant would be taking appointments, completing required paperwork, ordering products or advertising to get a sense of their proposed business' hours of operations. The IOI should enter the business hours in Spartan through the "Business Calendar, Business Hours." For more information, see Page 4 and 5 of "Completing Onsite Work for

27

Inspections: Interview To-Do List."

(3)     Business Premises Details

    (a)     Inspection area description: The IOI must record premises information to include inspection area details (the areas where the inspection takes place on the premises – office, warehouse, outdoor building, etc.) Where will records be maintained, and firearms transfers conducted?

    (b)     Physical security measures: The IOI shall assess the applicant's physical security measures for the business premises and document the measures in Spartan. For details, see Page 7 and 8 of Completing Onsite Work for Inspections: Interview To-Do List.

        If the applicant intends to maintain an inventory, the IOI shall discuss voluntary physical security measures to adopt to prevent the theft of firearms. Additionally, the IOI may:

        1.     Recommend that the applicant conduct regular inventories. IOIs can refer the applicant to ATF P 5380.2 How to Conduct Firearms Inventory to advise them of the proper procedures in conducting a firearms inventory.

    (c)     Advise the applicant to report any suspicious activity to the local law enforcement authorities and to ATF by calling 1-800-800-3855.

(4)     Complete Questionnaire

    (a)     Describe the applicant's proposed business activity. Determine if the proposed activity requires a license and if the application is for the proper type of license.

    (b)     Determine if additional ATF licenses/permits are needed.

        1.     Determine if the applicant intends to manufacture, deal in, or import National Firearms Act (NFA) weapons. If so, advise the applicant that the business operations are subject to the Special Occupational Tax (SOT).  Advise the applicant to contact the Internal Revenue Service (IRS) for an Employer Identification Number (EIN), if necessary.

        2.     If the applicant intends to deal in black powder, advise the applicant that a Federal explosives license must be obtained. This fact should be noted in Spartan. Advise the applicant of the explosives application process. Refer to ATF F 5400.13/ 5400.16, Application for Explosives License or Permit, and Chapter D, Explosives Application Inspections.

28

3.      Determine if the applicant intends to manufacture or import firearms or manufacture, import, or sell armor piercing ammunition. If so, advise the applicant of the Federal law and regulations pertaining to this activity. (See Chapter C, Firearms Inspections.) Advise the applicant of potential excise tax liability with the Alcohol and Tobacco Tax and Trade Bureau's (TTB) National Revenue Center (NRC). Refer to www.TTB.gov Official Site.

**Note**: Certain reloaders of ammunition may incur an excise tax liability for ammunition produced and sold by them. Additionally, an importer may incur an excise tax liability on ammunition imported and sold under 26 U.S.C. Section 4181. For specific return and deposit requirements, recommend that the manufacturer contact TTB.

4.      Be aware of gunsmithing activities that may constitute manufacturing, requiring a type 07 manufacturer of firearms license and possibly incurring excise tax liabilities. (See ATF Rulings 2009-01, 2009-05, 2010-10 and 2015-1).

5.      Determine if the applicant will import or export firearms and advise the applicant of the requirements of the Arms Export Control Act (AECA), if applicable. Determine the products to be imported or exported and the countries involved.

**Note:** A Federal firearms license is not required to export firearms. All manufacturers, exporters, and brokers of defense articles, defense services, or related technical data, as defined on the United States Munitions List, are required to register with Directorate of Defense Trade Controls (DDTC). This would include type 06, 07 and 10 firearms licenses. Registration is primarily a means to provide the U.S. Government with necessary information on who is involved in certain manufacturing and exporting activities. Registration does not confer any export rights or privileges, but is a precondition for the issuance of any license or other approval for export. Helpful hints on submitting a complete registration package with DDTC can be found at http://www.pmddtc.state.gov/registration. A complete registration package consists of a DS-2032, Statement of Registration, a transmittal letter, a legal documentation and other attachments as needed. Current ATF policy is to advise applicants of DDTC requirements

6.      If the IOI determines that a different type of license is required than originally applied for, the original application and assignment will need to be withdrawn. Spartan has a withdrawal letter that the applicant can sign electronically.

29

See Requesting and Documenting Withdrawal of an Application.

The IOI can still proceed with the inspection for the required type of license. The inspection will need to be conducted offline because the AS will have to issue a new assignment, and more importantly, the FFLC will have to assign a new number for the new type of license. The applicant can amend the necessary information on the ATF F 7 (5310.12) by initialing and dating the changes. The IOI should obtain any supporting documents required and advise the applicant to contact the FFLC regarding payment of any additional fees or receiving a refund for overpayment. For information on working offline, see Documenting Inspection Steps Conducted Offline.

(c)     The IOI shall identify any suppliers the applicant intends to utilize. If the applicant has not identified who its primary supplier will be, the IOI will document this in Spartan.

(d)     If the applicant is a successor, advise the applicant to properly maintain the prior records or forward them to the ATF National Tracing Center (NTC), Out-of-Business Records Center (OOBRC) in Martinsburg, West Virginia. If the previous licensee surrendered their records to ATF, the IOI update their OOB status in Spartan, see "How to Manage a License or Permit in Spartan."

(e)     Verify that the required State and local permits have been applied for or obtained. The IOI may document, in Spartan, any non ATF issued permits or licenses held by the applicant.

(f)     Indicate if the licensee has any operational security measures in place. If so, select the applicable measures.

(5)     Complete Supplemental Questionnaire (Optional)

(a)     Pay particular attention to any indications of fronting or hidden ownership. There are also Hidden Ownership Guidelines built in Spartan under the Pre-Inspection, and the Assignment Review task. Hidden Ownership questions is available in the Optional Supplemental Questionnaire if the IOI suspects hidden ownership. (Refer to Indicators of Hidden Ownership for areas to explore in identifying fictitious applications, and Completing Pre-Inspection in Spartan.) Indicators of hidden ownership include:

1.      Application fee is paid by someone other than the applicant.

2.      Applicant has little to no knowledge of the firearms industry or the laws and regulations, and cannot answer business

30

IO Manual
(October 2019)

questions.

3. Writing on application appears to be completed by more than one individual (e.g., signature is different than other parts of application).

4. A lease agreement that includes names other than those on the application would indicate an undisclosed interest or share in the business.

5. The business premises is the same as a former FFL who had a license revoked or surrendered in lieu of revocation, a former applicant who was denied, or a present licensee who is under indictment or with revocation or denial proceedings pending.

6. The applicant is a past employee of, successor to, or connected with (family member, responsible person, etc.) a former FFL who had a license revoked or surrendered in lieu of revocation.

7. The last name of the applicant is the same as a former licensee, former applicant, or present licensee under indictment or with revocation or denial proceedings.

8. An individual who is not listed as an RP on the application, but appears to meet the definition of RP and further investigation discloses possible prohibition or reason the individual is not identified.

(b) Notify Area Supervisor in Spartan (if applicable) if hidden ownership is suspected.

(6) Suspicious Activity Reports and Referrals

(a) Suspicious activity reports are created in Spartan for recording information that will be forwarded to the Crime Gun Intelligence Center (CGIC). Referrals are generated in Spartan for recording information to be sent outside of ATF, such as other Federal (MSHA, State Department), State and local agencies. For more information, see Completing Suspicious Activity Reports, Sending Referrals to Outside Agencies, and Paragraph 173a.(6).

(7) Variance Requests

(a) Requests for variances from the requirements of regulations must be submitted in accordance with 27 CFR 478.22. A variance request should not be submitted with the application inspection in Spartan because the inspection cannot be closed until HQ has

31

IO Manual

addressed the variance request. This could delay the submission and completion of application inspection unnecessarily. The IOI should advise the applicant to submit a variance request separately once the license has been issued.

(8) Closing Conference

    (a) Hold a closing conference with the applicant and provide the applicant with the address and telephone number of the local ATF IO and CE offices. Advise the applicant of the following:

        1. Publications and forms can be ordered via the ATF Internet at www.atf.gov or by calling the ATF Distribution Center.

        2. Information regarding Federal firearms laws and regulations can be obtained by visiting the ATF Internet site at www.atf.gov.

        3. Applicant may sign up to receive firearms industry news updates.

        4. Discuss the need to train employees who will be handling firearms and/or records on appropriate conduct of business and Federal firearms regulations. Further, explain that violations of Federal law committed by employees acting on an FFL's behalf will result in a violation against the licensed business.

    (b) The IOI shall thoroughly review the Acknowledgment of Federal Firearms Regulations with the applicant. Have the applicant sign and date the acknowledgement electronically in Spartan. If the applicant refuses to sign the acknowledgment, their refusal can also be documented in Spartan. If the IOI has to conduct the review offline, the IOI may bring a hard copy of the acknowledgement form, review it with the applicant, have the applicant sign, date it and upload the acknowledgement to Spartan once back online. See page 3 of Documenting Inspection Steps Conducted Offline. Provide the applicant with ATF P 5300.15, FFL Quick Reference and Best Practices Guide.

    (c) Relief from Disabilities. If requested, the IOI may advise the applicant on how to apply for relief from Federal firearms disabilities. However, current appropriation restrictions prohibit the expenditure of funds from ATF's appropriations for investigating or acting upon relief applications from individuals. Check with the AS or Counsel for the status of this provision.

(9) Theft and Losses

(a)     IOIs shall advise the applicant of the following action to be taken in connection with the theft or loss of firearms:

     1.     Report any theft or loss of firearms within 48 hours of discovery to ATF by calling 1-888-930-9275. Written notification also must be provided to ATF by completing the ATF EF 3310.11, Federal Firearms Licensee Firearms Inventory Theft/Loss Report as required by 27 CFR 478.39a.

     2.     Report the theft or loss of firearms to local law enforcement authorities within 48 hours of discovery.

     3.     Report the theft or loss of NFA firearms immediately to the National Firearms Act Branch, as required by 27 CFR 479.141. Recommend that the theft or loss also be reported to the local ATF office.

     4.     When a theft or loss of firearms is discovered, recommend that the applicant take a complete inventory. Be sure to notify him or her that this is a voluntary procedure.

     5.     Enter "stolen" or "missing" as appropriate, the date of theft or loss, and the ATF Incident Report number in the disposition column of the A&D record.

     6.     Retain copies of the written notification (ATF EF 3310.11, as well as the local law enforcement agency report) to serve as documentation of the incident.

e.     Post-Inspection

     (1)     Resolve Action Items

f.     Snapshot Review

     (1)     Spartan compiles all the information entered by the IOI into a snapshot report. The snapshot report only displays applicable sections of the work conducted by the IOI. For example, if the applicant decides to withdraw the application prior to the IOI completing any work, there would only be one section displayed. The IOI is able to review and edit the work prior to submitting it to the AS by selecting the blue link "Click here to edit snapshot information." For application inspections, depending on the actions taken and selected by the IOI, Spartan will default to either abandoned or withdrawn. However, the IOI is required to select for recommendations of Approval or Denial.

           The IOI shall ensure that all pertinent information received during the application process is included in the Spartan snapshot report to verify the accuracy of the application and ensure that any issues that could cause

33

problems or concerns for future compliance inspections are fully documented.

g.    Final recommendation

(1)    The IOI shall enter the final recommendation regarding the issuance of the license. If the IOIs final recommendation is denial of application, obtain the necessary documentation to support the denial and upload them in Spartan.

If issuance appears unlikely, advise the applicant of the reasons why the application may be denied and discuss voluntary withdrawal option, unless such action could compromise a pending criminal investigation or it appears that the applicant has willfully omitted or falsified any material information (Refer to 27 CFR 478.71).

Withdrawal of an application must be voluntary. If the applicant wishes to withdraw the application, the IOI can access the withdrawal of application letter and have the applicant sign it electronically in Spartan. The IOI can email an electronic copy to the applicant, or mail a printed copy if preferred. The IOI should advise the applicant that the FFLC will be notified and the license fee will be refunded if the application is withdrawn. See Requesting and Documenting Withdrawal of an Application.

35. – 60. RESERVED

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 44 of 190 PageID #: 288

CHAPTER C. FIREARMS COMPLIANCE INSPECTIONS (FCI)

61.    GENERAL

    a.    This chapter establishes guidelines and procedures for conducting firearms compliance inspections of Federal firearms licensees. All firearms compliance inspections shall be conducted in accordance with the FIREARMS DISPOSITION EMPHASIS (DE) INSPECTION PROGRAM. DE inspections require 100% inventory verification and 100% ATF Fs 4473 review.

        Note: Theft/Loss and Special Request inspections are not DE inspections. Renewals are considered to be low priority and should not be conducted without a compelling reason, such as renewals flagged in FLS, as requested by the AS, and those requiring inspection prior to renewal.

        Firearms compliance inspections are conducted for any of the following reasons and may focus on one or more of these specific areas:

        (1)    Detect and prevent illegal diversion of firearms by FFLs;

        (2)    Determine if a licensee is complying with Federal laws and regulations;

        (3)    Ensure the integrity of the required records in order to facilitate firearms tracing;

        (4)    Detect and prevent the possibility of firearms being obtained by prohibited persons and straw purchasers (refer to Diversion Indicators);

        (5)    Educate the licensee in Federal firearms laws and regulations as they relate to the business activity.

    b.    Prior to conducting an inspection, IOIs should:

        (1)    Be familiar with the terminology commonly used in the firearms industry before conducting an inspection (See ATF Guidebook, Importation & Verification of Firearms, Ammunition & Implements of War);

        (2)    Be familiar with all relevant Federal, State and local laws and regulations pertaining to the operations of the licensee;

        (3)    Refer to Chapter I, Inspection Safety Procedures;

        (4)    Review the procedures outlined in Firearms Safe Handling Procedures. There is also a mandatory "Firearms Function and Safe Handling for IOIs" training requirement for all IOIs due by September 30th of each fiscal year;

        (5)    Utilize IOIS and the CGIC to gather intelligence and develop leads in identifying firearms trafficking trends and patterns;

62.   FIREARMS DISPOSITION EMPHASIS (DE) INSPECTION PROGRAM

   a.   The DE inspection program is a strategy to detect and prevent the diversion of firearms from legal commerce. The purpose of the DE inspection is to efficiently and effectively manage IO resources and to identify, disrupt and prevent illegal firearms trafficking. ATF firearms trafficking investigations identified straw purchasers, unlicensed sellers and corrupt FFLs as being responsible for diverting the majority of the recovered firearms to the illicit marketplace. Stolen and illegally obtained firearms are recovered from a wide variety of sources, such as violent crime scenes, narcotics traffickers, and even from children at schools. Traffickers play a significant role in making illegal firearms available to those with criminal intent. ATF's statutory authority to regulate the firearms industry uniquely positions IOIs to identify illegal or structured purchases or sales occurring at the retail level. It also ensures licensees are aware of preventive methods to stop such sales.

   b.   The DE inspection program will focus resources to examine licensees where criminal activities or non-compliance would have the greatest potential for harm to the public. The program utilizes investigative techniques tailored to the identification of suspected traffickers. These inspections allow flexibility to focus on specific high-risk areas of business operations which may lead to the discovery of illegal firearms diversion. The DE inspection approach outlined in this manual will be used in programs and other initiatives (e.g., licensees located in crime gun source states and licensees located on Canadian and Mexican borders). IOIs may use the Firearms Disposition Emphasis Inspection Quick Reference Guide to assist in conducting DE inspections; however, this guide must not be used in lieu of the guidelines and procedures contained in this Chapter.

   c.   The DE inspection program is designed to serve as a warrantless annual inspection. A warrantless inspection may not be conducted if ATF has reasonable cause to believe that the FFL has engaged in a criminal violation of the GCA and that evidence thereof may be found on the licensee's premises (in which case a probable cause warrant must be obtained). A warrant also must be obtained if the purpose of the inspection is to assist in the criminal investigation of the FFL. On the other hand, a warrantless inspection may also be conducted to assist during a criminal investigation of someone other than the licensee or to trace a firearm in the course of a bona fide criminal investigation. Additionally, a warrantless inspection may be conducted if the FFL consents to the inspection. Moreover, if you develop reasonable cause that the FFL has violated the GCA during the course of a lawful warrantless inspection, you do not have to stop the inspection and obtain a warrant. (See Important Legal Opinion Pertaining to Firearms Inspections). If the IOI is not certain whether a warrantless inspection may be conducted, he or she shall contact the area supervisor.

   d.   The procedures outlined in this chapter should be accomplished through a

36

combination of observation, testing, and interview. This chapter is not meant to preclude the use of other inspection techniques that are necessary to accomplish the purpose(s) of the inspection.

e.   Many of the inspection steps noted, such as the review of internal controls, deal with voluntary measures that the industry member could take to help reduce violent crime and protect the public through partnership with ATF. (Refer to the Diversion Indicators). Voluntary action(s) on the part of the licensee during an inspection procedure should be noted, see ATF P 5300.15, FFL Quick Reference and Best Practices Guide.

## 63.   ISSUANCE OF ASSIGNMENTS

a.   Inspections should be mission based, intelligence driven, and assigned in accordance with the current domain assessment to identify licensees who exhibit business practices that may contribute to the diversion of firearms.

(1)   Licensees will be identified for inspection based on risk factors identified in the domain assessment, targeted HQ specific programs, and intelligence received from licensees and law enforcement. Field Offices will utilize all available intelligence sources in order to identify licensees for inspection.

(a)   Domain Assessment Risk Factors: Field offices should review available data in their area of responsibility (AOR) in order to compile a list of possible licensees for a DE inspection. To assist in identifying licensees that require a DE inspection, field offices have a number of resources available, such as queries of VCAB, FLS, e-Trace, IOIs experience/history with licensees, and Frontline Analytics derived from the AS.

(b)   Requests by ATF Headquarters or the DIO: Inspection requests such as targeted HQ or DIO specific programs, initiatives, or mandates.

(c)   Intelligence from Other Licensees: Information provided by other licensees will be screened for its authenticity and relevance. An IOI will investigate the information using all available resources. If the IOI believes that the inspection should be initiated, he/she will recommend conducting the inspection to the AS. If the AS concurs, an inspection will be initiated. Any gathered intelligence should be coordinated with the division's Crime Gun Intelligence Center (CGIC).

(d)   Intelligence from Law Enforcement: ATF special agents and other law enforcement officers may have contact with licensees and other individuals who have information regarding a particular business or licensee. Contact should

37

be made with local law enforcement agencies to obtain information on high crime areas, most common crime guns and the current trends. If a law enforcement office has information regarding a licensee that does not merit a criminal investigation (e.g., not keeping all required records or other regulatory violation), the IOI shall recommend to the AS that an inspection of the licensee be conducted.

**Note**: ATF special agents may not send an IOI into a business in order to obtain criminal evidence on the licensee. The inspection cannot be initiated to further a criminal investigation of the FFL.

b.     Under certain circumstances, the IOI may request that the AS consider a team approach to conducting inspections, such as large volume dealers. Consideration should be given to inspecting every FFL in areas where diversion is suspected. When a team of IOIs are inspecting multiple FFLs in a given area, the investigators should communicate intelligence information daily (e.g., compare names and firearms and look for trafficking patterns). Shared intelligence can be used to identify patterns of diversion. In addition, if the focus of an inspection involves an FFL with more than one business location, consideration should be given to utilizing the "team" approach and inspecting each licensed premises, when possible.

## 64.     CONDUCTING FIREARMS COMPLIANCE INSPECTIONS (FCI)

a.     General Pre-Inspection Procedures

(1)     Review the assignment, any special instructions and references noted in Spartan and perform appropriate queries (FLS, NFA, NCIC, NLETS, e-Trace and N-Force for any open CE investigations). Any derogatory information identified should be addressed with the area supervisor.

(2)     Unless otherwise directed, the period of review will be the 12 month period immediately preceding the start of the inspection.

**Note:** The IOI shall verify the onsite end date of the previous inspection to ensure the current inspection is NOT conducted within 12 months of the previous inspection.

(3)     Review the Federal Licensing System (FLS) to determine the length of time the license has been active, the license status, premises location(s), and any other licenses held. Check for special attention flags (SAFs). Notify the FFLC if any of the information is determined to be inaccurate. No information regarding a flagged license will be given outside ATF without approval of the Chief, FESD and the SAC. If the IOI finds the licensee also holds a license as a dealer in black powder, consult the AS to determine if an SEA inspection is due and should be conducted. (Refer to Chapter E,

38

Explosives Full Inspections).

(4)     Review N-Spect or Spartan for the licensee's history of compliance and general business information.

(5)     Acquire an FFL history report from the Violent Crime Analysis Branch (VCAB) for the 12 months preceding the inspection. This report includes the date of the licensee's firearms traces, multiple handgun sales, and theft/loss history. The FFL history report should be requested on the ATF F 3312.3, Crime Gun Analysis - Query Request, and sent via e-mail to the VCAB. Multiple sale and trace information is also available via e-Trace. Review the report for indicators of firearms diversion such as individuals with large numbers of multiple purchases, individual purchasers associated with a firearm trace(s), unsuccessful traces, and stolen firearms. To assist in identifying potential straw purchasers, IOIs can request that the VCAB list be sorted various ways, including in alphabetical order by name of purchaser.

**Note**: Dallas, Houston, Los Angeles, Phoenix and San Francisco Field Divisions IOIs are also required to request multiple sales of long gun history from the VCAB for review.

(6)     Acquire a NICS Audit Log report(s) from FBI LEEP or similar report(s) from the Point of Contact (POC) State Agency. If unable to obtain an audit log through FBI LEEP, an FFL Audit Log may be requested via e-mail at fflaudit@leo.gov. The email only needs to contain a statement requesting the FFL Audit Logs, the RDS keys (no other information is needed - no dashes on RDS keys, no FFL name, no city or State), and time period requested. The FFL Audit Log will contain up to 60 days of comprehensive information for all transactions. For proceed and delayed transactions, the log will only contain the date NICS was contacted, the NICS transaction number (NTN), and the NICS response. NICS will also provide the IOI with any information about problems or discrepancies that have been experienced with the FFL.

(7)     With the increased use of NICS E-Check, IOIs may get questions from FFLs or encounter scenarios while conducting inspections related to its use. See E-Check and Duplicate NTN Guidance document, which explains two scenarios that involve reasons for duplicate NTNs such as an NTN belonging to another account for the same licensee or an FFL self-audits their E-check submission and discovers the purchaser information was erroneously transcribed from 4473 into E-check.

(8)     The IOI may also encounter situations where a NICS check was done incorrectly by the NICS call center and the FFL, who was not at fault, should not be cited for a violation. For example, a NICS check was cancelled by the NICS center because the NICS examiner entered incorrect information during the exchange between the FFL and the call center.  The ATF F 4473 is correct but the name was misspelled, or entered in the wrong order by

39

the call center. The NICS examiner will cancel the NTN, make the correction, and then generate a new NTN on the spot during the call. NICS calls this a REDO cancel.

In case of a REDO by NICS, (the 4473 is accurate and correct but NICS has input incorrect information causing the need for a REDO), ATF recognizes this is an error. The FFL should line through the incorrect NTN and or response on the Form 4473, initial and date the correction(s), and list the correct info in the appropriate section 19 blocks. They should then note the corrective action is the result of a NICS initiated REDO in section 31. **Note**: These REDO cancels are distinguishable on audit logs used during inspections through their purpose code of "Y".

(9)     The IOI may also encounter a situation where after conducting the background check and giving a proceed to the FFL, the NICS receives information that shows the transaction should be denied. The NICS will contact the FFL and advise of the recreation of a check and will generate a new NTN for the subject so that it can be denied and transferred to ATF's DENI Branch. To properly document this, if the firearm has not been transferred, then the FFL would go to 19d., on the ATF Form 4473, and check "Denied" and provide the date that the NICS is contacting them. They should document the new NTN number and provide a brief explanation in item 31. If the firearm has been transferred, then the FFL would go to 19e., on the ATF Form 4473, and check "Denied" and provide the date NICS is contacting them. They should document the new NTN number and provide a brief explanation in item 31.

(10)    Utilize the list of commonly recovered crime guns and known weapons of choice in the local area and compare those firearms to the firearms identified on the licensee's VCAB report and information received from the CGIC and/or local law enforcement.

(11)    Initiate "individual" e-Trace queries for all multiple sale and firearm trace purchasers appearing on the FFL history report. Be alert for purchasers appearing on the FFL history report that appear in e-Trace as either multiple sale purchasers or those involved with a firearms trace (purchaser/associate) from another Federal firearms licensee. The number of traces that are listed and the "time to crime" are helpful in providing an overall picture of the dealer's activities. Document any purchasers of interest.

(12)    Initiate an NCIC stolen firearm query for all firearms described as "stolen" on the FFL history report. Be alert for diversion indications for weapons "recovered" in a different part of the country and record weapons of interest. Consult with division Industry Operations Intelligence Specialist (IOIS) for additional information.

(13)    Share information regarding planned inspections with ATF special agents in accordance with the IOI's field division policy. Special agents often have

40

pertinent information on certain dealers, including suspect purchasers.

(14)     If information or assistance is needed from another ATF jurisdictional area, consult with the AS and request a collateral inspection, as necessary.

(15)     Request information from the division's Crime Gun Intelligence Center (CGIC), as necessary.

(16)     Contact your AS if the licensee or location is a known security risk. Consider the use of a special agent whenever there is a safety concern or issue.

(17)     If conducting an inspection involving NFA firearms, the IOI must request an inventory of NFA firearms by utilizing the posted NFRTR search instructions (Inventory Query) or by contacting the NFA Government Support Branch (GSB) at least seven working days prior to the day of the inspection. The request must be submitted on ATF F 5320.22, NFA Records Search. A Transactional History Report, which details every firearm the licensee has manufactured, received and disposed, is also available.  For large inventories, the IOI can request an excel extraction of the NFA inventory which assists with reconciliation.

(18)     If conducting an inspection of a manufacturer and/or an importer, the IOI should utilize available resources such as Spartan, FLS, and FATD shared drive (\\atfstaas01.ad.msnet.atf.gov\FATD) to determine if the licensee has any active marking variances prior to contacting the Firearms and Ammunition Technology Division (FATD). This shared drive will also be utilized to obtain and research notices required under ATF Ruling 2016-5. You may also reach the FATD at (304) 616-4300 or via email at marking_variances@atf.gov.

**Note**: For other firearms variances IOIs can sent a request to FIPB@ATF.GOV. All requests should be sent at least 30 days prior to the inspection start date.

(19)     If conducting an inspection of a manufacturer, the IOI should request and obtain an Annual Manufacturing and Exportation Report (AFMER) via email at AFMERRequests@atf.gov for the review period.

(20)     If conducting an inspection of an importer, the IOI can retrieve copies of ATF F 6, Application and Permit for Importation of Firearms, Ammunition and Implements of War, and ATF F 6A, Release and Receipt of Imported Firearms, Ammunition and Implements of War, that were submitted electronically via the Firearms and Explosives Import System (FEIS). Licensees may submit ATF Forms 6 and 6A to ATF in two ways: via mail or using the eForms system.  The ATF Forms 6 and 6A submitted via paper from 2013 to the present have been imaged and available for viewing or printing via the Electronic Content Management System (ECM).  The IOI can access FEIS and ECM by submitting eRequest.  For more information,

41

see ECM eRequest, ECM User Manual, FEIS eRequest, and FEIS Introduction.

**Note:** IOIs and IOIS should also have access to the Customs and Border Protection (CBP) Automated Customs Environment (ACE) Database to obtain importation information.

b.    Spartan Pre-Inspection Procedures

   (1)    This chapter is not intended to be a Spartan guidebook. The IOI will utilize all Spartan resources available (e.g., Spartan toolkit, FAQs and field division POCs for guidance).

   **Note:** All information entered into Spartan is retained in the history, even upon deletion. This information could be discoverable or released in a FOIA request.

   (2)    Once the FFL has been selected for an inspection, IOIs will use investigative techniques and resources to develop comprehensive intelligence on the business, licensee, and responsible persons, as well as firearms diversion trends in the area (e.g., types of commonly recovered crime guns in the area). Work conducted by IOIs prior to the onsite inspection is a critical element of any firearms inspection. In preparation, the IOI will:

      (a)    Review Assignment

         1.    Review license information, any attachments and special instructions in Spartan.

      (b)    Eligibility Verification

         1.    Research and verify all applicable eligibility items such as: Business Information, Property Ownership, Trade Name/DBA, Rental/Lease, and Zoning. The IOI must enter contact information or upload a verification document for all applicable eligibility items. Verification should be from external sources and not information derived from the licensee.

         2.    Verify Responsible Persons – Conduct criminal history queries on all responsible persons and document the date conducted in Spartan. Record the FBI and/or SID number in Spartan if a criminal record is disclosed. Notify area supervisor if there is any information that may indicate that an RP is prohibited. Upload the criminal history information in Spartan. If appropriate, complete a Suspicious Activity Report (SUS) and forward it to the CGIC. Background checks that do not result in prohibiting information must be

42

discarded immediately.

**Note:** As another law enforcement investigative tool and in connection with an FFL inspection, the IOI is authorized to use NICS to conduct additional background checks on responsible persons and employees if the IOI has reason to believe that a responsible person or employee, with actual or constructive possession of firearms, is prohibited. For more information, see Use of NICS during FFL Inspections June 6, 2019 and Follow up guidance June 19, 2019.

(c)     Location Preparation

1.     Plan Onsite Visit: Prior to commencing an onsite inspection, the IOI must plan an unannounced visit to the licensee or schedule an interview with a responsible person and document the date and time of the visit/interview in Spartan.

   a.     The IOI will conduct the inspection during actual business hours unless consent is received from the licensee. Generally, if a licensee is conducting business operations at the premises, they are considered to be open for inspection purposes. The actual business hours may be different than the hours of operation stated on the application for the license. For a discussion of "actual" business hours, refer to Chapter F, Related Inspection Information.

   b.     Advance notification will not be given prior to conducting firearms compliance inspections except under extenuating circumstances. When prior notification is necessary, such notification will be made as close to the inspection date as feasible. Prior notification must be approved by the AS and documented in Spartan including the reason it was done.

   Some examples include a firearms dealer who operates a seasonal business or a company with irregular business hours in a rural area that would require several hours of travel. In addition, a Department of Defense (DOD) contractor will generally be given 45 days advanced notification of the inspection. Any deviation from this advanced notification requires DIO approval. For additional information, please refer to the DOD

43

Compliance Inspection Work Program, Acronym and Contact list.

    c.    The IOI should log all unsuccessful attempts to conduct the onsite inspection or contact the licensee. After logging three unsuccessful attempts, Spartan will prompt the IOI to initiate abandonment procedures.

c.    General Onsite Inspection Procedures

    (1)    Once an inspection is initiated, the IOI should complete an inspection without interruption, if at all possible. The timely completion and submission of the inspection is critical. (Refer to Chapter F, Related Inspection Information for required timeframes for completing inspection reports.) This is to preclude any misunderstanding concerning ATF conducting more than one annual inspection of the licensee. A break in the inspection should only occur due to circumstances beyond the IOI's control. If an interruption in the inspection occurs, the licensee should be provided with an approximate date of when the inspection will resume and the reason for the delay. In addition, the AS must be advised of the reason for any delays.

    (2)    The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the industry member. The IOI will identify himself or herself by displaying their Bureau issued credentials. **Note**: Credentials shall not be photocopied.

    (3)    The IOI will not sign any document which releases the licensee from any type of liability; e.g., physical injury sustained at the business premises.

    (4)    A reasonable cause warrant (sometimes referred to as an inspection warrant) is required to conduct an inspection within 12 months of the last inspection without the licensee's permission. Title 18 U.S.C. Section 923(g)(B), which amended the Gun Control Act (GCA) of 1968, placed certain restrictions on ATF's ability to inspect the inventory and records of licensees (See Guidelines for FFL Warrants for more information concerning when a reasonable cause warrant would be required). Under 18 U.S.C. Section 923(g)(1)(A), "The secretary may inspect or examine the inventory and records of a licensed . . . dealer without such reasonable cause or warrant . . . not more than once during any 12 month period." ATF has interpreted this to mean that the 12 month period will commence on the day when the closing conference is conducted, which is the "onsite end date." The closing conference date in Spartan is now synonymous with the "Last Inspection Date" entry in the FLS database. The AS will ensure the FLS database is updated by

44

notifying the Firearms Licensing Center of the last inspection date through a PII entry in Spartan.

(5)    An ATF employee cannot examine an FFL's records if an inspection was conducted in the last 12 months, absent the consent of the licensee, unless certain statutory requirements are met. For example, the IOI is looking for specific names or firearms related to a criminal investigation and the FFL is not the subject of the criminal investigation. A general search of the records for suspicious purchasers, such as searching FFL records for unknown or potential traffickers, constitutes an inspection. If the licensee consents to an inspection within the 12 month period of the last compliance inspection, the IOI must obtain a completed "Consent to Inspection of Records and Inventory". If only records will be reviewed, the IOI must obtain the licensee's approval by securing a completed "Consent to Review Records" as applicable.

(6)    In the event that a licensee denies access to the licensed premises, the IOI must observe the following guidelines:

    (a)    Ensure that the premises to which access was denied is listed on ATF F 7 (5310.12), Application for Federal Firearms License, or is stated by the licensee to be the business premises. The IOI must physically visit the licensed premises, display his or her credentials, state who he or she is and the purpose of the visit. The IOI should make it clear that he or she is requesting access to the business premises pursuant to an official ATF inspection.

    (b)    Once the licensee refuses entry to the business premises during actual business hours, the IOI shall clearly demand entry to the business premises to inspect the required records and inventory. If the licensee continues to deny entry and access to the business premises, the IOI must inform the licensee that the continued denial of entry and access is a violation and legal grounds for revocation of the FFL. The licensee must be provided with the specific law and regulation citations of which the FFL is in violation (See 18 U.S.C. Section 923(g) and 27 CFR 478.23).

            **Note:** If an IOI does not attempt to physically enter the premises during business hours, the IOI could not testify with certainty that the licensee, or the licensee's employee(s), refused to allow the IOI to conduct an inspection at the premises.

    (c)    If the licensee continues to refuse entry to the business premises, the refusal will be considered willful. The IOI will immediately withdraw from the area and contact the AS for

45

the appropriate course of action, such as remaining at the scene, receiving approval of the DIO to obtain a reasonable cause warrant and/or initiating revocation proceedings.

After consulting with the AS, DIO, and division counsel, the IOI shall document, in Spartan, the licensee's refusal to allow entry and access to the business premises. The statement should include the date, time, the name of the person who denied access to the premises, and that person's position. The IOI shall consult with the AS and division counsel to determine whether a copy of the statement of the licensee's denial to the premises should be provided to the licensee.

(7)     Perform onsite work

(a)     Conduct of Business Review

1.      Verify that the license is posted and is the proper type for the licensee's operations.

2.      If the licensee conducts over-the-counter transfers of handguns to non-licensees, ensure that the licensee displays the Youth Handgun Safety Act (YHSA) Poster and distributes the YHSA Notice (Refer to ATF I 5300.2.)

3.      Ensure that the licensee is providing secure gun storage or safety devices for all handgun sales to non-licensees in accordance with the Child Safety Lock Act of 2005.

4.      ATF's appropriations language specifically prohibits ATF from denying the renewal of a Federal firearms license based on zero business activity. For a definition of "engaged in the business," refer to 27 CFR 478.11. For further information, pertaining to the term "engaged in the business" and NFA firearms refer to ATF Ruling 76-22.

**Note:** If the licensee is found to be involved in a criminal activity, such as unlawfully engaging in a firearms business at unlicensed locations, or if traces have been associated with sales made during the inspection period but the licensee indicated there was no business activity, take no further action until consulting with the AS and CE.

5.      Be alert for operations at other locations that require an ATF license or permit.

**Note:** 27 CFR 478.50 should be cited when it is determined that an FFL conducted business away from the licensed premises (e.g., owner of storefront is found to have

46

conducted sales at his residence). This regulation should also be cited where an FFL conducted business at an event that did not meet the definition of a Gun Show or Sporting Event as per 478.100(b) or; the FFL conducted business at a Gun Show or Sporting Event in a State other than the State certified on the actual Federal Firearms License.

27 CFR 478.100(c) should only be cited if the FFL fails to record the gun show or sporting event on the ATF F 4473. Finally, 27 CFR 478.41 should be cited if the licensee conducted business other than that for which the specific type of license for which they have been issued allows (e.g., a Type 01 Dealer is regularly conducting manufacturing operations would be in violation of 27 CFR 478.41(b)).

6.　　Verify compliance with any approved variances, including any stipulations or conditions outlined in the variance. Verify whether the variance is still needed. If the variance is found to hinder effective administration of the regulations or the FFL is failing to comply with the conditions set forth in the variance, the IOI will document the issue in Spartan and notify the appropriate branch (e.g., FIPB and FATD). Additionally, the IOI shall recommend the variance be rescinded, as necessary.

7.　　If the licensee's operations require payment of SOT, examine the special tax stamp or proof of payment to verify proper class and amount of tax. If a discrepancy is found, the IOI will notify the NFA Branch. Refer to the November 2009 Newsletter for additional information.

8.　　Ensure the licensee is not transferring firearms or ammunition to individuals who do not meet the age requirements:

a.　　Long guns and long gun ammunition may be sold only to persons 18 years of age or older;

b.　　Handguns, frames or receivers, "other" firearms, and handgun ammunition may only be sold to in-state residents who are 21 years of age or older.

This also includes certain commercially produced shotguns which come equipped with a pistol grip in place of the butt stock. These firearms are not shotguns and are classified as "firearms" under the GCA. If there are concerns about what constitutes a shotgun, the IOI shall contact FATD.

47

c.    Interchangeable ammunition, such as .22 caliber rimfire, may be sold to a person who is at least 18 years of age or older if the dealer is satisfied that it is for use in a rifle. If the ammunition is intended for use in a handgun, the 21-year-old minimum age requirement must be met.

9.    Antique firearms do not fall under the purview of the GCA (Reference 18 U.S.C.921 (a)(16) and ATF P 5300.4, Federal Firearms Regulations Reference Guide, General Information #7). For a determination of whether a firearm meets the definition of an antique firearm, contact FATD.

10.    If the licensee occasionally imports firearms and ammunition and is not licensed as an importer, verify compliance with the permit requirements by examining the ATF F 6, and ATF F 6A (Refer to ATF F 6 Common Errors). If the licensee is liable for firearms and ammunition excise tax, advise them to contact TTB or generate a referral to TTB, as appropriate.

11.    If the licensee facilitates private party transfers, ensure that the firearms are being entered into the A&D Record, and recording "Private Party Transfer" on the ATF F 4473. See ATF Proc. 2017-1.

12.    Ensure that firearms transferred from the licensee's personal collection are transferred in accordance with 18 U.S.C.923(c) and 27 CFR 478.125a. Under certain circumstances, a licensed dealer (who is also a sole proprietor) is exempt from the requirements to execute an ATF F 4473 and to initiate a background check under the Brady Law when selling a firearm from his or her personal firearms collection (Refer to the March 2006 FFL Newsletter for additional information).

13.    If criminal activity is suspected, take no corrective action and contact the AS.

(b)    Internal Controls Review

1.    Conduct a review and evaluation of the licensee's internal controls. A significant objective of the inspection is to evaluate whether firearms are moving from legal commerce to the illegal marketplace. When using the FFL Internal Control Review Guide, the IOI shall use the following investigative techniques:

a.    Observation during the inspection,

b.    Testing of the proprietor's records and other

48

documents, and

c.     Interviewing the FFL to obtain the required information.

2.     The inventory and records shall be examined and analyzed. Any discrepancies, anomalies or other irregularities must be fully explained and ultimately rectified to prevent future recurrence. The IOI shall fully document any observed internal control weaknesses, including possible corrective action, and steps taken during the inspection to address any concerns. (See FFL Internal Control Review Guide and Chapter J, Internal Control Guidelines).

3.     The IOI should emphasize best practices related to the physical security of firearms as outlined in ATF P 5380.1, Loss Prevention for Firearms Retailers.

(c)     Records Review

1.     Verify that the licensee has and is using current versions of applicable forms and firearms publications.

2.     Ensure the required records are maintained on the licensed premises and are retained for the required period of time.

3.     Examine required firearms records to ensure compliance with the laws and regulations. The IOI should compare required records with one another and with commercial records, if warranted.

**Note:** There is no statutory requirement for the licensee to provide ATF with commercial records for examination. However, IOIs may obtain the FFL's consent to review them. The comparison of records aids in determining their reliability; e.g., ATF F 4473 will be checked against disposition entries and against commercial invoices, where permitted. Also, invoices from suppliers can be used to verify acquisitions are accurately and timely documented in the A&D book.

4.     For dispositions to other licensees, determine if the licensee is obtaining a certified copy of transferee's FFL. Advise the licensee that FFL EZ Check may be used to assist in determining the validity of a certified copy of an FFL. Note: Regulations do not require the licensee to maintain the certified copies of FFLs, but many licensees choose to do so.

5.     The IOI must be alert for altered or fraudulent certified copies

49

of licenses. If the licensee is maintaining certified copies, verify the following:

    a.    The signature is original on a hard copy, or a fax, email, or electronic copy of the license is on file.

    b.    The license was current at the time of purchase.

    c.    The certified copy of the license was not altered.

    d.    The copy is a valid FFL as verified using the FLS database. If it is determined that a certified copy has been altered or is fraudulent, a suspicious activity report shall be submitted to the CGIC.

6.    When a dealer-to-dealer transaction appears to be suspicious, a collateral inspection shall be requested by the appropriate field office for action.

(d)    Review the A&D Records

1.    Verify that the A&D record is maintained in the proper format. Verify entries in the records for accuracy, completeness, and timeliness. Licensees should be told not to use correction fluid/tape. Instead, licensees should be instructed to draw a single line through the incorrect field, record the correct information, and initial and date the change next to the correction. If there is not enough room, the licensee should be instructed to line out the whole entry. A new entry should be created with the correct information on the next available line of the A&D record. Licensees should be made aware that there is no need to wait for an inspection to correct these kind of errors.

2.    IOIs should not cite FFLs for failing to identify the full 15 digit FFL number in the A&D Record (bound book) if the name and first three and last five digits of the FFL (RDS Key) are recorded in the bound book. Although the regulations indicate that the FFL number is required to be recorded in the bound book, field operations has not been enforcing this requirement since 2013. The practice by FFLs of using the RDS key in lieu of the full FFL number is well established. For example, it is acceptable for them to use it on the 4473 (Block 33), for FFL eZ Check, and use of the RDS key is also referenced in the ATF FFL Quick Reference and Best Practices Guide Publication.

3.    Licensed importers manufacturers who maintain A&D records pursuant to ATF Ruling 2016-3 must record their

entire or complete15 digit license number. If IOIs encounter an importer or manufacturer not recording the complete license number, do not cite a violation. Instead, instruct the licensee to start recording the complete number to comply with the conditions of the ruling.

4.    IOIs should not cite FFLs for abbreviating the "firearms type" in the A&D Record. Type is not defined under Federal firearms law. Commonly recorded "types" of firearms are rifle, shotgun, pistol or revolver, which are defined in 27 CFR 478.11. Since "type" is not defined under Federal law, there is no violation of Federal firearms laws or regulations if a licensee elects to abbreviate the type of firearm in the A&D record. ATF has allowed types of firearms to be abbreviated in the A&D record, such as pistol grip firearms. (Reference the March 2013 FFL Newsletter, Volume 2.) It also is not a violation to list a firearm as 'lever action' or 'semi-auto.'

However, if the licensee fails to enter any description of the type of firearm (leaves the applicable field blank), then it is a violation of 27 CFR 478.125(e) (dealers and pawnbrokers), 27 CFR 478.122 (a) (importers), and 27 CFR 478.123(a) (manufacturers) for the A&D book. If the licensee records the type erroneously in the A&D record, there is a violation of 27 CFR 478.125(e), 27 CFR 478.122, and/ or 27 CFR 478.123(a).

When IOIs encounter licensees abbreviating the type of firearm or adding additional descriptors to it on the A&D record, they should instruct the licensee to fully and accurately record the type of firearm and explain why it positively impacts public safety (e.g., it aids ATF in tracing firearms, helps in criminal investigations, etc.). IOIs should not cite a violation.

5.    Review the A&D record for weapons of choice. Note any large shipments and numerous sales taking place in a short time-frame.

6.    Select a sample of disposition entries in the A&D record to verify that the licensee obtained the completed ATF F 4473, FFL information, or law enforcement letterhead authorization for each entry. Ensure that each entry contains all of the required information.

The sample size shall be selected based on the following criteria: If the number of dispositions for the review period is fewer than 25, review all dispositions. If the number of dispositions is more than 25, then review 25. If no discrepancies are noted, no further testing is required. If

51

discrepancies are noted, double the sample size if there are less than 1,000 dispositions for the review period. If there are more than 1,000 dispositions, increase the sample size to 5% of the total number of dispositions. For any dispositions that do not have a corresponding ATF F 4473 or law enforcement letterhead authorization, discuss conducting a forward trace with the AS. Forward traces must be approved by the AS and DIO and documented in Spartan. Document the violations as appropriate.

**Note**: If IOIs discover there is no ATF F 4473 on file (lost, missing or not completed), IOIs are not to instruct the FFL to complete a 4473 after the transaction has occurred. IOIs shall document the violation for failure to complete the 4473 and/or contact NICS and run the transferee through NCIC. If the transferee is prohibited and a NICS was not conducted, the IOI can pursue a fine for this violation. See Guidance on Issuance of a Civil Fine. ATF cannot compel the FFL to contact the transferee to come in and recreate or complete a 4473 nor should the FFL recreate the form. Doing so could be construed as falsifying records. Another NICS check should never be conducted as this could be misuse of the NICS system. Consult with your AS as appropriate for additional guidance.

7.    Verification of ATF Fs 4473 or law enforcement letterhead authorization with A&D disposition entries. Using the sample selection guidelines above, select a sample of ATF F 4473 or law enforcement letterhead authorizations and trace them to the A&D record to verify that the dispositions are properly recorded. Document the violations as appropriate.

      **Note**: If there are discrepancies in the A&D Record or the physical inventory (such as firearms in inventory with no acquisition entry in the A&D Record, or firearms not in inventory with no disposition entry in the A&D Record and no corresponding ATF F 4473 on file), the IOI shall consider examining commercial records if access is granted by the licensee.

(e)   Review ATF Fs 4473

      1.    Review 100% of the ATF Fs 4473 completed during the 12 month review period for accuracy and completeness. These forms must also be reviewed for indications of firearms trafficking, unreported multiple sales, prohibited sales and straw purchasers.

            **Note**: Conducting less than 100% review of ATF F 4473

52

requires AS justification, DIO approval, and DAD (IO) notification. The justification, approval, and notification must be documented in Spartan.

2. Verify that the ATF Fs 4473 are fully and accurately completed and properly filed.

3. When IOIs encounter incomplete or inaccurate information on Sections A, B, or C, the corrective action should be that the FFL attempt contact with the transferee to obtain the missing information. The licensee should document their attempted contact (i.e., noting time and date of phone contact and conversation details, photocopy of letter and envelope prior to mailing, and/or certified copy showing receipt of attempted delivery) as proof of corrective action. IOIs can only request and cannot require the FFL to make the recommended corrective action.

4. If errors are disclosed, do not have the licensee make corrections on the original ATF F 4473. If corrections are needed, a photocopy of the original ATF F 4473 shall be used to annotate corrections and must be attached to the original form (Refer to "Notices, Instructions, and Definitions" on page 3 of the ATF F 4473).

   IOIs should not cite FFLs for abbreviating the "firearms type" in the ATF F 4473. However, if the licensee fails to enter any description of the type of firearm (leaves the applicable field blank), or records the type erroneously (e.g., records a rifle as a shotgun) on the ATF Form 4473, then it is a violation of 27 CFR 478.124(c)(4).

   When IOIs encounter licensees abbreviating the type of firearm or adding additional descriptors to it on the ATF Form 4473, they should instruct the licensee to fully and accurately record the type of firearm and explain why it positively impacts public safety (e.g., it aids ATF in tracing firearms, helps in criminal investigations, etc.). IOIs should not cite a violation.

5. Using the NICS FFL Audit Log, verify that the licensee is complying with the requirement to perform NICS checks and ensure that NICS is not being used improperly.

   **Note**: FFLs who facilitate transfers of firearms between private unlicensed individuals must record "Private Party Transfer" on the ATF F 4473. See ATF Proc. 2017-1.

6. Verify that the licensee has recorded on ATF F 4473 the date NICS was contacted, the NTN, NICS initial response and:

53

a. NICS final response and date, if any. If an initial "delay" response was received and no final response was given, verify that the firearm transfer did not take place within three (3) business days.

7. Verify that the licensee is relying on a NICS check only for use in a single transaction and for a period not to exceed 30 calendar days from the date that NICS was initially contacted. This list will be used onsite to verify that the FFL is conducting these checks and documenting them accurately. Look for suspicious NICS NTNs (refer to NICS Audit Log Procedures) and use the FFL Audit Log to identify the volume of business and suspicious patterns. NICS POC States have the option of either supplying their own FFL Audit Log to ATF or having NICS supply it.

8. If the transferee/buyer has a valid permit from the State where the transfer is to take place, which qualifies as an exemption to NICS, ensure the licensee is recording the permit information on the ATF F 4473 or is attaching a copy of the permit to the form. A list of State permits that qualify as alternatives to a NICS check can be found at Permanent Brady Permit Chart.

9. Verify nonimmigrant aliens receiving firearms possess a valid (unexpired) hunting license or permit lawfully issued by a State or a letter from the United States Attorney General. Otherwise, the nonimmigrant alien is prohibited from receiving a firearm. Refer to 18 U.S.C. 922(y)(2). The IOI shall also verify one of the exceptions detailed above is documented on the ATF F 4473.

10. Verify that the licensee is retaining ATF F 4473 in a separate file, where a NICS check has been initiated, but the transfer of the firearm(s) is not made (e.g., transaction is denied, cancelled, or otherwise not complete).

11. Verify that the licensee is not allowing "straw purchases" when the transferee was denied by NICS, especially for firearms of choice. Compare the denied ATF Fs 4473 to the ATF Fs 4473 documenting transfers. Look for the same last names, addresses, and the same firearms transferred close to the day the initial proposed transfer was denied. Prepare a suspicious activity report disclosing possible straw purchases to ATF CGIC. Refer to Diversion Indicators.

12. Compare a sample of 25 NTNs (proceed, open, or delays) from the NICS audit log with its corresponding ATF F 4473.

54

IO Manual

(October 2019)

All denied NTNs issued within the review period should also be compared. If any problems or errors, such as a missing NTN or a discrepancy in the response provided by NICS, are disclosed among the sampled NTN's, the sample size should be expanded.

13.     If a discrepancy cannot be reconciled between the ATF F 4473 and the FFL Audit Log, and it has been determined that the Audit Log is not in error, appropriate action should be initiated.

14.     Ensure the licensee is familiar with straw purchases and the prohibited person restrictions. Particular attention should be given to transactions involving handguns or firearms that are most commonly used in crimes in the geographic area of the licensee.

15.     Verify the person who actually identifies the buyer or accepts the identification of the transferee is the person who signs the ATF F 4473 as transferor.

16.     Review ATF Fs 4473 to identify potential firearms traffickers and straw purchasers. IOI should be thoroughly familiar with the list of Diversion Indicators.

17.     Attempt to complete unsuccessful traces. Utilizing the VCAB trace reports, complete all unsuccessful traces (annotated by code "D" or "M") requested in the past 12 months. For a complete list of trace completion codes, access e-Trace. Perfected traces will be documented during the onsite work section of Spartan and forwarded to the National Tracing Center.

18.     Look for suspicious NICS NTNs not consistent with the FBI NICS - NTN Sequence Guide. Use the FFL Audit Log to identify the volume of business and suspicious patterns.

19.     Review multiple sales of long guns. Target the rifles and shotguns more frequently used by the criminal element that may be diverted for illegal purposes. Contact the field division's CGIC for a list of these long guns.

20.     Review ATF Fs 4473 and ATF Fs 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers, to identify any unreported multiple sales and multiple handgun sale patterns. If the licensee's records show an individual received more than one handgun within five consecutive business days (excluding pawn redemptions, consignment returns, and gunsmith returns) during the inspection period,

55

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 65 of 190 PageID #: 309

verify with the VCAB or via e-Trace that an ATF F 3310.4 was submitted.

If unreported multiple sales are disclosed, have the licensee complete the required forms and submit the reports in accordance with the instructions on the form. The IOI shall document all discrepancies, cite the licensee accordingly, and verify corrective action.

**Note:** FFLs licensed in the Dallas, Houston, Los Angeles, Phoenix and San Francisco Field Divisions (CA) are required to submit ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles in accordance with the instructions on the form.

21.   Determine whether purchasers of traced firearms have purchased other firearms from the licensee. Verify if those additional firearms purchased have been associated with crimes. Document the purchasers' identifying information along with any other sales made to these individuals prepare a suspicious activity report (SUS) for the CGIC, if warranted.

22.   Verify that the FFL is executing ATF Fs 4473 and conducting a background check for consignment firearms that are returned to the consignee.

23.   If a licensee conducts business temporarily at a gun show located in the same State specified on the license, verify the licensee is properly recording the location of the sale on the ATF F 4473. (Refer to 27 CFR 478.100(c), and Important Notice to Dealers and Other Participants at this Gun Show, ATF I 5300.23A).

        **Note:** It is recommended, but not required, that the location of the sale is also recorded in the A&D Record. The proper cite for failure to record the gun show or sporting event on the ATF F 4473 is 27 CFR 478.100(c).

24.   Conduct criminal history checks and search e-Trace on all suspicious individuals and firearms identified during the inspection. Look at guns that are recovered and identify the possessor to see if his or her name reappears elsewhere in the inspection.

25.   If the inspection is being conducted in a State where concealed weapons permits are accepted as an alternative to NICS, conduct criminal history checks on a sample of permit holders to determine if the transferee is prohibited.

56

**Note**: All criminal history checks must be conducted in accordance with the guidelines prescribed (refer memo dated May 27, 2005, Use of NCIC/NLETS and NICS in FEL Inspections). While this was intended to provide guidance for conducting criminal history checks in connection with explosives inspections, it also applies to firearms inspections.

26. With AS and DIO approval, conduct forward traces on suspicious purchasers. (See Sample Disposition Verification Letter). The IOI shall document the approval and results in Spartan. **Note:** When determining which transactions to conduct forward traces on, it is recommended that the IOI select transactions that occurred at gun shows, transactions in which the initial NICS/State POC response was delayed, and transactions involving the purchase of multiple firearms.

27. With AS approval, contact suppliers if questions arise about number of acquisitions by the licensee.

(f)    INVENTORY VERIFICATION

1.    The objective of taking a physical inventory is to verify the reliability of the records for regulatory and tracing purposes, and to identify potential firearms traffickers. All records should be handled as potential evidence. As such, it is preferable that the IOI not write or mark on the licensee's original records.

In cases in which it is impractical to create a working printout or copy of the licensee's records, the IOI shall limit the markings that he or she makes in the required records (e.g., ticks or check marks in the bound book). The IOI shall never write or mark on the records in such a way that could affect the integrity or authenticity, or alter the material content of the records. The IOI can advise the licensee of the proper procedures in conducting firearms inventory by referring them to ATF P 5380.2 How to Conduct Firearms Inventory.

Note: If a printout of the licensee's inventory is used, the IOI shall retain only those pages or entries that document a violation. IOIs are not authorized to remove a licensee's records (or copies of records) from the licensed premises only for convenience purposes or other reasons lacking a legal basis. (See Photocopying Federal Firearms Licensee Records during Regulatory Inspections/Investigations memorandum dated May 15, 2012.)

2.    A complete (100%) physical inventory must be taken. This

means each firearm in inventory must be physically identified by serial number and matched to the corresponding A&D record entry. The IOI must also account for each open entry in the A&D record.

**Note:** Conducting **less** than a complete (100%) physical inventory requires AS justification, DIO approval, and DAD (IO) notification. The justification, approval and notification must be documented in Spartan.

3.      If it is necessary to determine if a firearm has been converted to a fully automatic weapon or if there are indications of conversion, the IOI should refer to Field Test for Automatic Fire. IOIs are cautioned that they should not classify a firearm without conferring with FATD. The sole responsibility for this type of determination rests with the Chief of FATD. If it is determined that the firearm may possibly be an NFA firearm, contact the AS. Refer to the Firearms Safe Handling Procedures.

4.      Ensure that firearms are marked in accordance with 27 CFR 478.92 (or 479.102 if NFA firearms) and properly described in the acquisition portion of the licensee's A&D record (refer to General Marking Requirements, and Marking Requirements for Manufacturers and Importers).

5.      If an IOI determines that the firearm has an obliterated serial number, he or she should notify the AS to coordinate abandonment of the firearm with CE.

6.      Inquire if any firearms have been reported stolen or lost since the last inspection. If there have been any unreported thefts or losses from the licensee's business inventory or private collection, the licensee must:

   a.      Notify local law enforcement authorities.

   b.      Notify ATF by calling 1- 888-930-9275 (24 hours/ 7 days) and submit ATF F 3310.11, Federal Firearms Licensee Firearms Inventory Theft/Loss Report, within 48 hours. The licensee must retain a copy with his or her permanent records.

   c.      Annotate in the A&D record either "stolen" or "missing," as appropriate, the date theft or loss was discovered, and the ATF incident number.

7.      Review police reports and/or insurance claims (if attached to the police report or provided by the licensee) to substantiate the alleged theft or loss. Ensure that unreported or unrecorded thefts or losses are recorded in the A&D record

58

prior to the conclusion of the inspection. In addition, the licensee should be cited for failure to timely record the disposition of a firearm (27 CFR 478.125(e); for licensed manufacturer 27 CFR 478.123(b); and licensed importer, 27 CFR 478.122 (b), and failure to timely report the theft or loss (27 CFR 478.39a). The licensee should be cited for failure to report the theft or loss of a firearm when it can be shown that the licensee was aware that a firearm was missing but failed to complete the report. The IOI can generate a theft/loss list of missing firearms in Spartan, see Completing Compliance Inspections: Preparing the Theft/Loss List.

8.    If the licensee filed a theft loss report during the inspection period, the IOI shall verify that none of the firearms listed on the theft/loss report are in the licensee's inventory.

9.    All inventory discrepancies should be brought to the attention of the licensee and reconciled with available commercial records and ATF Fs 4473. The licensee must make the appropriate corrections in the A&D record.

10.   Depending on the circumstances, if the licensee has more than 50 unaccounted firearms, the licensee may be given additional time, generally up to two weeks, at AS or DIO discretion, to further determine the disposition of the firearms.  While additional time may be given to reconcile the inventory in cases where a larger inventory discrepancy exists, the IOI should start with the least amount of time, and extend the time as needed, so long as the licensee is showing a conscientious effort in resolving the discrepancy.

(g)    OTHER LICENSES

If the licensee is an SOT holder (NFA), gunsmith, pawnbroker, manufacturer, importer, collector, or dealer of armor piercing ammunition, refer to paragraphs 65 – 71 for additional inspection guidance.

d.    Spartan Onsite Inspection Procedures

IOIs are required to bring their laptop and use Spartan while conducting the inspection onsite.  Upon arrival at the proposed business premises, the IOI should tether the laptop to their iPhone and log into Spartan to ensure connectivity before meeting with the licensee.  In very few exceptions such as very poor, sparse or no connectivity; Spartan technical or laptop hardware problems, or DOD inspections where electronic equipment is prohibited, IOIs are may utilize Spartan offline functions for field work.  IOIs can also utilize available Wi-Fi if permitted. For more information, see "Use an iPhone as a Mobile Wi-Fi Hotspot".

(1)    Onsite Interview To-Do List

(a)    Indicate persons present at interview

1.    The IOI shall verify and document the names and
identification of all responsible persons and non-responsible
persons (if applicable) present.
2.    Document any other ATF licenses or permits held by
responsible persons.

(b)    Review licensee information

1.    Review business information with the licensee or RP. If there
have been any unreported changes in business type,
business name or trade name ensure that the changes are
immediately reported to the FFLC. Record changes to send
to the licensing center and cite as appropriate. Corporations
or associations are required to report change in control within
30 days of change. Upon expiration of the license, a new
ATF F 7 must be filed. (Refer to 27 CFR 478.54).
**Note:** A change in ownership may require the licensee to
obtain a new FFL and to transfer all NFA weapons.

2.    Review contact information with the licensee or RP and
record changes to send to the licensing center. Determine if
the licensee has moved the business premises to a new
location without filing ATF F 5300.38, Application for an
Amended Federal Firearms License. If so, the IOI must notify
the licensee to cease conducting business from the new
unlicensed location or premises. The DIO may issue an
immediate "Cease and Desist" letter to be delivered by the
IOI, and a copy shall be provided to the FFLC. The options
below may be used to resolve the unreported change of
address. It is important to consult with the AS and division
counsel when deciding which option to utilize.

a.    Immediately file the ATF F 5300.38 and cease
business activities until the new FFL is received;

b.    Resume business activities at the originally licensed
premises;

c.    Voluntarily surrender the FFL and file a new ATF F 7
for the new premises; or

d.    Initiate revocation proceedings if the licensee does
not want to or refuses to surrender the FFL for the
previous location.

60

**Note:** The license at the original licensed location shall not simply be considered abandoned. This policy supersedes the memo dated May 24, 2011, "Unreported Changes of Address by Federal Firearms Licensees(FFLs)." The licensee, either before or after receiving the cease and desist letter, could still choose to lawfully operate at his/her original business premises, if requested. ATF should give the licensee the opportunity to explain the situation before simply terminating the license.

For procedures to report changes after original qualification, see <u>Changes To Federal Firearms License after Issuance</u>. For an explanation of the different types of firearms licenses, see <u>Firearms Licensing Activities, and Business Structures.</u>

3.   Review business calendar (days and hours of operation) and make any necessary updates. Add seasonal closing periods, if applicable.

4.   Review responsible person information and edit accordingly. Document any online presence (e.g., Twitter, Facebook, Instagram), if applicable. Add or deactivate responsible persons, as necessary.

(c)   Enter business premises details

1.   Record premises information to include inspection area details (the areas where the inspection takes place on the premises), primary activity, physical security measures and GPS coordinates.

(d)   Complete questionnaire

1.   Licensee Information: Describe the licensee's business activity, indicate if the licensee needs an additional license or permit, list the licensee's primary suppliers and document any other Federal, State or local licenses/permit (other than ATF – e.g., state sales tax, state or local business licenses, pawnbroker licenses, state explosives licenses/permits, home occupational license/permits).

2.   Operational Security Measures: Indicate if the licensee has any operational security measures in place. If so, select the applicable measures.

3.   Business activities: Select all applicable business activities conducted by the licensee (must select at least one). If

61

internet sales/transfers are conducted, the IOI must record
any website(s) utilized by the licensee.

(e)     Complete supplemental questionnaire (optional)

1.     If the IOI suspects hidden ownership or other suspicious
activity, document supporting information in the
supplemental questionnaire. Pay particular attention to those
situations where the licensee's spouse is known to be
prohibited under the law.

Determine any prohibited person's or unreported person's
degree of involvement in the business. This includes, but is
not limited to: reviewing business records such as:
partnership agreements, corporate records, purchase orders
and leases as well as identifying who has access to security
codes, keys, and firearms. Be aware of employees who are
known to be prohibited or associated with a previously
denied, revoked or surrendered license. Contact the AS and
ATF division counsel for guidance. (Refer to Indicators of
Hidden Ownership).

2.     Notify Area Supervisor in Spartan (if applicable) if hidden
ownership is suspected.

3.     Notify CGIC of any suspected criminal activity. If no criminal
activity is suspected, the IOI must advise the licensee that
the prohibited person cannot actually or constructively
possess, receive, ship, or transport firearms.

(f)     Suspicious Activity Reports (SUS)/Referrals.

1.     If information is disclosed during the course of the inspection
involving criminal and/or civil violations, the IOI will verbally
refer the information to the AS and follow up with a
suspicious activity report or referral in Spartan within five
working days, if warranted. (See Chapter F for Suspicious
Activity Report/Referral preparation and submission
guidelines.)

(g)     Requesting Variances

1.     If the licensee's current business activities require a
variance, the IOI shall initiate a variance request in Spartan.

**Note:** if a variance request is initiated in Spartan in
conjunction with an open FCI, the IOI will be unable to close
the FCI until the variance request is approved or denied.
Variance request may be initiated without an open FCI.

62

2. If the licensee anticipates a need for a variance, the IOI shall advise the licensee to submit the variance request in accordance with 27 CFR 478.22.

   a. Except for marking variances, all variance requests are approved by FIPB. The request must be prepared in letter form, from a responsible person, addressed to the Chief, FIPB, and submitted to FIPB@atf.gov. The licensee's request should include the following:

      • Name, address, license number, phone number and email address of the person making the request;

      • Variance request should explicitly describe the proposed alternate method or procedure; and

      • Any other information that could assist ATF's decision with the request.

   b. Marking variance requests are submitted to FATD. FATD recommends the requests are submitted on an ATF F 3311.4, Application for Alternate Means of Identification of Firearms (Marking Variance) by a responsible person and emailed to the FATD at marking_variances@atf.gov. The licensee may contact FATD for alternative submission procedures.

   c. Any variance request received by the area office must be forwarded to either FIPB or FATD. A recommendation must be included when forwarding the variance. If disapproval is recommended, include the reasons for this recommendation.

3. A response will be written by FIPB and first forwarded to the DIO and AS. FIPB will wait three working days before sending the response to the licensee to allow the DIO and AS to express any concerns. If the variance is approved, FIPB will outline the conditions of the variance for the licensee. If the variance is disapproved, FIPB will advise the licensee why the variance cannot be granted.

(2) Onsite Work To-Do List

   (a) Complete Follow-up work, if required by Spartan. Spartan will prompt the IOI to resolve or edit information that was incomplete or incorrect in a previous stage.

63

(b)     Document Discrepancies – this is where the IOI shall record any violations as well as have the ability to create an action item list for the licensee to resolve.

      1.     Reporting Violations. Prepare Report of Violations (ROV), to document the violations disclosed during the inspection. Consult division counsel prior to issuing the ROV if such action would jeopardize a criminal investigation. For big chain FFLs (Dick's, Gander, Cabela's, Academy, Wal-Mart, etc.), provide inspection results by submitting a copy of the ROV to their corporate compliance officer.

         **Note**: If the IOI has to conduct the inspection offline, it is preferred that IOIs generate the ROV in Spartan and not upload a manually completed ATF F 5030.5 (Report of Violations or ROV) in Spartan. IOIs should enter the violations in Spartan and generate the ROV to ensure consistency and accuracy in Spartan. The IOI can either email or print the ROV and mail it to the licensee.

      2.     Documenting Violations. Copies, photos or scans of FFL records, including ATF Fs 4473 must be made to document significant omissions and errors cited on the ROV. If the IOI does not have the ability to copy, photograph or scan at the licensee's premises, the records may be removed for copying with the licensee's permission, utilizing ATF EF 3400.23, Receipt for Property and Other Items. Upon return of the documents to the licensee, the IOI must have the licensee sign and date the ATF EF 3400.23 indicating receipt of the records. For further discussion of photocopying and removal of records from the licensed premises refer to Chapter F, Related Inspection Information, and the "Photocopying Federal Firearms Licensee Records during Regulatory Inspections/Investigations" memorandum dated May 15, 2012.

         If the licensee surrenders the FFL to avoid administrative action, fully document the violations so that any future application could be justifiably denied. The FFLC, based on the AS's recommendation, will assign an SAF code to identify those persons who surrendered their licenses to avoid administrative action.

(c)     Prepare Theft/Loss List – the IOI has the option of creating a list of unreconciled inventory discrepancies for the licensee to use in completion of an ATF F 3310.11, Federal Firearms Licensee Firearms Inventory Theft Loss Report.

(d)  Document Corrective Actions – If discrepancies are documented or violations are cited, the IOI will be required to document corrective actions to be taken by the licensee. If no discrepancies are documented, this option will not appear in the onsite to do list.

(e)  Onsite Summary – the IOI will capture inspection results to include: total # of ATF F 4473 reviewed; total # of open dispositions in A&D record; total # of firearms in inventory; total # of firearms missing after reconciliation; total # of acquisitions in the last 12 months; and total # of dispositions in the last 12 months.

(f)  Send Report of Violations (optional) – at this stage, the IOI has the option to email or print the ROV so the licensee has a copy to review at the closing conference.

(g)  Document Perfected Traces (optional) – if any trace(s) was perfected during the inspection, the IOI must enter the information in this section. The IOI should only attempt to reconcile the traces with a "D" (Dealer) or "M" (Manufacturer) code. Completed trace information entered into Spartan will be automatically forwarded to the National Tracing Center.

(3)  Closing Conference To-Do List

(a)  Hold a closing conference with the licensee or a responsible person. Advise the licensee of the recommendation, if appropriate. Document the names of person(s) attending and the date of the closing conference in Spartan.

(b)  Complete Acknowledgement of Violations, if applicable. The IOI shall review the report of violations (ROV) with the licensee or RP. Upon completion of the review, the licensee shall electronically sign the ROV. A signed copy should be emailed or printed and mailed to the licensee. If the FFL refuses to sign the ROV, the IOI shall state the reason for such refusal.

(c)  Document licensee's response to the violations, if applicable. The IOI will be required to document the licensee's explanation of why the violations occurred, verify the corrective action was completed, and to indicate date and method of verification. Discuss any internal control weaknesses that were noted during the inspection to assist the licensee in preventing repeat violations and the diversion of firearms.

**Note:** The IOI cannot require the licensee to correct any weaknesses identified during the review that are not required by regulation or law.

65

        (d)    Prepare theft/loss list, if applicable.

        (e)    Complete Acknowledgement of Regulations. If the licensee refuses to sign the Acknowledgement of Federal Firearms Regulations, document the licensee's refusal in Spartan.

        (f)    Complete Pending Eligibility Verification Questions, if applicable.

        (g)    Send Acknowledgement of Regulations (optional). As a best practice, the IOI is encouraged to provide a signed copy of the acknowledgement to the licensee.

e.    Review Snapshot

    (1)    The IOI is required to review each section prior to moving forward through the inspection process.

    (2)    This is the IOI's last opportunity to make any changes to information entered into these sections.

f.    Final Recommendation

    (1)    Inspection Findings

        (a)    The IOI should select all applicable inspection findings identified during the inspection.

        (b)    Based on the selections made by the IOI, Spartan will identify the appropriate recommendation based on the ATF O 5370.1D, Federal Firearms Administrative Action Policy. Accordingly, it is important the IOI accurately select the appropriate inspection findings.

                **Note:** If no violations are cited or if violations are cited that do not merit administrative action, "no inspection findings" will generally be selected. Spartan will generate the appropriate recommendation.

    (2)    Recommendation/Administrative Action

        (a)    Document the details of how the violations justify the suggested administrative action or alternate recommendation in this section. If the IOI believes a recall inspection is warranted, the IOI must document the request for recall in the recommendation details.

        (b)    Recall Inspections. Generally, whenever a warning conference is recommended and approved, a recall inspection shall be conducted. Recall inspections made within the 12-month period from the onsite end date of the previous inspection will constitute a second entry for the period and will require either the consent of the licensee or a warrant based upon "reasonable cause." See Consent to Review

Records and Consent to Inspection of Records and Inventory.

     (c)     Close the inspection and submit to Area Supervisor

     (d)     Former FFLs who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in business" of selling firearms without a license. See Important Notice – Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL.

     (e)     If required, prepare an i-Note to report a significant incident in accordance with the guidelines prescribed in Chapter F, Related Inspection Information. Refer to ATF O 3114.1A for additional guidance.

65.    NFA FIREARMS

    a.    Persons conducting business in NFA firearms must be licensed under part 478 of the regulations. Procedural and substantive requirements are contained in 27 CFR Part 479, along with regulations pertaining to transfer tax and SOT.

    b.    Verify that the licensee is dealing in NFA firearms. If a license and Special Tax Stamp were obtained in order to avoid transfer tax on NFA weapons purchased for the licensee's personal collection, IOIs must contact their AS for guidance. These firearms may be subject to seizure or forfeiture for failure to pay transfer tax (Refer to ATF Ruling 76-22, 27 CFR 479.11: Meaning of Terms).

    c.    Verify that the licensee has ATF F 5630.7, Special Tax Stamp, or proof of payment for all periods of liability.

    d.    Inventory all NFA firearms on hand. Reconcile any discrepancies disclosed during comparison of the inventory to the A&D record, the NFRTR and the licensee's file of NFA registration and transfer forms. Document any discrepancies and forward information to the NFA GSB.

    e.    Compare the licensee's NFA transfer file to the A&D record and verify that ATF Fs 4473 are being completed on NFA transfers as appropriate. Be alert for tax errors.

    f.    Verify that NFA firearms are properly marked. If NFA firearms are found to be improperly marked, follow the procedures in the Determination of Improperly Marked NFA Weapons

    g.    If an NFA firearm, registered as unserviceable, appears to be functional, request assistance from FATD for a determination.

    h.    If the IOI questions the registered ownership of any NFA firearm, the NFA GSB shall be contacted for resolution. However, if a negative response is received and the possibility exists that a violation has occurred, this information must be immediately referred to the CGIC.

67

i.     The IOIs shall not seize, detain or accept voluntary abandonment of NFA weapons or destructive devices.

j.     Recordkeeping requirements of 27 CFR Part 478, including the preparation of ATF F 4473, are applicable for NFA special taxpayers. Additionally, approved registration documents must be kept for all NFA weapons registered to the licensee as specified by 27 CFR 479.131.

Under Federal law, a person possessing a NFA firearm registered to him shall retain proof of registration which shall be made available to any ATF officer upon request (reference 27 CFR 479.101(e) and 26 U.S.C . 5841(e)). ATF policy regarding NFA registration paperwork holds that the "original" document, required to be produced for an ATF officer, is the document received in the format received from the NFA Division or FESD.

Therefore, when a licensee or non-licensee submits an electronic version of a form, and receives an approved electronic version back, the electronic version is considered the original document. When a licensee or non-licensee submits a paper version of the form, and receives an approved paper version of the form back, the paper version is considered the original document. At the request of an ATF officer, the original electronic copy must be printed by the person as proof of registration.

For purposes of inspection, when the original NFA registration paperwork is in an electronic format, a request for a printed version should only be made if the electronic version is illegible, not completely visible, insufficient in any way, or if it is needed to document violations or inspection findings.

k.     NFA transfers are exempt from NICS checks because a background check has been completed during the NFA approval process. NOTE: A NICS check must be conducted if an NFA firearm has been approved for transfer to a trust, or to a legal entity such as a corporation, and no background check was conducted as part of the NFA approval process on the responsible person or individual who will receive the firearm. Responsible persons and individuals who have undergone a background check during the NFA application process are listed on the approved NFA transfer form. (See Final Rule 41F, Background Checks for Responsible Persons of a Trust or Legal Entity with Respect to Making or Transferring a Firearm). In addition, see 27 CFR 478.124(g) for licensee disposition requirements for transfers to employees of a legal entity or an individual authorized to act on behalf of the transferee.

l.     The IOI must not disclose any information concerning NFRTR, SOT returns, or excise tax returns outside of ATF without first discussing this matter with ATF Counsel and the AS to determine if the disclosure is lawful.
**Note:** The IOI should be aware that civil and criminal penalties apply to any individual making unauthorized disclosures (Refer to 26 U.S.C. Section 6103).

m.     If assisting governmental entities in verifying an NFRTR, verify these items are in the possession of the law enforcement entity.

68

66. GUNSMITHS

    a. Verify firearms kept overnight are entered into the A&D record.

    **Note:** Gunsmiths need not enter firearms in the A&D record if the gunsmith does not retain the firearm overnight and the firearm is returned to the same person from whom it was received. Also, an ATF F 4473 or NICS check need not be executed when a repaired firearm is returned to the same person from whom it was received.

    b. If the gunsmith's operations appear to constitute manufacturing, determine the need for a manufacturer's license (contact division counsel, FIPB or FATD for clarification as needed). Under certain conditions, a gunsmith may be liable for payment of excise tax as a manufacturer of firearms. Refer the licensee to TTB and Directorate of Defense and Trade Controls (DDTC), for further tax information and/or generate a referrals, as appropriate. The IOI should also be aware that this type of activity may require a license change under the GCA.

    c. Any person who engages in an activity that primarily adds to or changes a firearms appearance by camouflaging or engraving (cosmetic processes or activities) on a firearm should be licensed as a dealer which includes gunsmith under the GCA. Refer to ATF Ruling 2009-1 for additional information.

67. PAWNBROKERS

    a. Verify that the pawnbroker:

      (1) Obtains ATF F 4473 for pawn redemptions.

      (2) Conducts NICS checks for all dispositions, including pawn redemptions.

      (3) Conducts the mandatory NICS check at the time of redemption if an optional NICS check was conducted when then firearm was offered as collateral for a loan.

      (4) Notifies the local law enforcement agency within 48 hours of receiving the denial notice, if the pawnbroker completed an optional NICS check when a firearm was offered as collateral for a loan, and the optional NICS check resulted in a denial. A record of the law enforcement contact should be made on the ATF F 4473.

      (5) Is aware that pawned firearms may not be lawfully returned to a person who is underage or in a prohibited category.

      **Note:** When pawned firearms are returned to a third party because the person who pawned the firearm is prohibited, the licensee may include a statement on the ATF F 4473 indicating that the third party who received the firearm was warned about straw purchases. Licensees may also have the third party sign the statement. However, licensees are not required to include such a statement, and the statement will not necessarily protect them from prosecution. ATF F 4473 contains a general instruction stating that licensees can include any information on the form that is relevant to the

69

transaction.

(6)    Submits reports of multiple handgun dispositions. A report need not be made where pistols or revolvers, or any combination thereof, are returned to the same person from whom they were received.

         **Note:** The Dallas, Houston, Los Angeles, Phoenix and San Francisco Field Divisions (CA) FFLs are required to submit ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles in accordance with the instructions on the form.

68.    FIREARMS AND AMMUNITION MANUFACTURERS

    a.    Verify that the manufacturer is properly marking GCA firearms manufactured (27 CFR 478.92(a)) and NFA firearms manufactured (27 CFR 479.102). (See also Guidance for Requesting Marking Variances, Ruling 2002-6, Ruling 2009-1, Ruling 2009-2, Ruling 2009-5, Ruling 2010-10, Ruling 2012-1, Ruling 2013-3, Ruling 2014-1, Ruling 2015-1 February 2011 FFL Newsletter, September 2013 Vol. 2 FFL Newsletter, Determination of Improperly Marked NFA Weapons, Marking Requirements for Licensees Performing Manufacturing Activities on Unmarked Firearms", and Silencer Parts Policy, Licensing Requirements for Manufacturing NFA, )

    b.    Verify that armor piercing ammunition is only manufactured for authorized purposes and is properly marked (27 CFR 478.37, 478.99(d), and 478.92(b)).

    c.    Determine if the manufacturer is maintaining proper records and accurately accounting for the manufacture and disposition to licensees and non-licensees (27 CFR 478.123(a), 478.123(b), 478.123(d) and 478.125).

         Note: ATF Ruling 2016-3 authorizes licensed manufacturers to consolidate their records of manufacture or other acquisition of firearms and their separate firearms disposition records, provided all of the conditions in the ruling are met.

    d.    Determine if the manufacturer is properly submitting ATF F 5300.11, Annual Firearms Manufacturing and Exportation Report (AFMER) under 18 U.S.C. Chapter 44, Firearms. If not, the IOI will obtain the completed form to be submitted. The AFMER report is due by April 1st for the previous calendar year.

    e.    Advise the licensee to contact TTB to determine excise tax liability. Make referrals as appropriate.

    f.    Advise the licensee to contact DDTC – ITAR to determine registration requirements. Make referrals as appropriate.

    g.    A manufacturer's license allows the licensee to deal in the same type of firearms or ammunition that is covered by such license. For example, a manufacturer of firearms other than destructive devices can deal in any type of firearm other than destructive devices.

69. IMPORTERS

a.   Title 18 U.S.C. 925(d) provides standards for the importation of firearms and ammunition into the United States. In particular, 18 U.S.C. 925(d)(3) provides that the Attorney General shall authorize a firearm to be imported if it meets several conditions: (1) it is not defined as a firearm under the NFA; (2) it is generally recognized as particularly suitable for or readily adaptable to sporting purposes; and (3) it is not a surplus military firearm. However, this subsection of the regulations further provides that "in any case where the Attorney General has not authorized the importation of the firearm pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled."

b.   ATF has determined that the language of 18 U.S.C. 925(d)(3) permits no exceptions that would allow frames, receivers, or barrels for otherwise non-importable firearms to be imported into the United States. Accordingly, ATF will no longer approve ATF F 6 of any frames, receivers, or barrels for firearms that would be prohibited from importation if assembled. There are no exceptions to the statutory language. However, ATF recognizes that certain firearm barrels may be used to assemble either an importable or a nonimportable firearm. With this fact in mind, ATF believes that such "dual use" barrels would be eligible for importation under section 925 (d)(3) for commercial purposes, provided prospective importers of such barrels make representations indicating that neither the importer nor subsequent purchasers of the barrels will use the barrels to assemble non-importable firearms.

c.   Under the Arms Export Control Act (AECA) of 1976, persons engaged in the business of importing articles enumerated on the U.S. Munitions Import List (27 CFR Part 447) must register with the Director of ATF (this authority has been delegated to the Chief, Firearms and Explosives Imports Branch). The IOI shall verify registration by examining an approved application, ATF F 5330.4 (4587), Application to Register as an Importer of U.S. Munitions Import List Articles. Also, IOIs may verify an importer's registered status by contacting the Firearms and Explosives Imports Branch.

d.   An ATF F 6 is required to import defense articles enumerated in the U.S. Munitions Import List. This requirement includes any firearm manufactured after 1898 for which no fixed cartridge ammunition is readily available, except for antiques/replicas as defined in the GCA.

e.   Verify that imported firearms in inventory are marked with the name of the country in which they were manufactured, the city and State of the importer, as well as other required markings (27 CFR 478.92, see Determination of Improperly Marked NFA Weapons). Instances of marking violations are to be reported to the Firearms and Explosives Imports Branch.

f.   Verify that importation A&D records are properly maintained. See 27 CFR 478.122 and ATF Ruling 2016-3. Verify the information (ATF F 6 and 6A) obtained from the Firearms and Explosives Import System (FEIS) or the Electronic Content

Management System (ECM) with the importer's records (27 CFR 478.122).

g.    ATF F 6A (5330.3C) is used to effect the release of the imported firearms from U.S. Customs and Border Protection (CBP). Select a sample of ATF Fs 6 and ATF Fs 6A and verify that the firearms are properly entered in the required acquisition records (27 CFR 478.122(a) and ATF Ruling 2016-3). For firearms that are initially entered into a Customs Bonded Warehouse (CBW) for subsequent entry into an importer's premises, the FFL must complete two ATF Fs 6 (one for entry into the CBW, and one for the release from the CBW) and 6A.

h.    Determine whether the importer is forwarding properly completed ATF Fs 6A via FEIS and ECM to the Firearms and Explosives Imports Branch within 15 days after release from CBP's custody (27 CFR 478.112).

i.    Determine if dispositions made by the importer to other licensees are properly recorded in the required records and separately maintained (27 CFR 478.122).

    **Note**: Importers are required to maintain separate records for dispositions to licensees and non-licensees per 27 CFR 478.122(b) and (d). However, these records can be consolidated if the requirements of ATF Ruling 2016-3 are met.

j.    Determine if transfers are made to non-licensees and verify that separate records are being maintained (27 CFR 478.122(d)). (See ATF Ruling 2016-3 for consolidation of disposition records noted above.)

k.    For a licensee who makes more than an occasional importation of a firearm for a specific person as outlined in 27 CFR 478.113, the IOI shall determine whether the licensee is engaging in the business of importing firearms for resale, which requires a Type 08 importers license and registration under Part 447. ATF F 6 and ATF F 6A are required for occasional importations.

    **Note**: If questions arise involving engaging in the business of importing in relation to occasional importations, the IOI shall seek guidance from the AS, DIO, and counsel.

l.    A licensed importer is allowed to deal in the same type of firearms or ammunition authorized to be imported under his or her license. For example, an importer of firearms other than destructive devices can deal in any type of firearm other than destructive devices. Verify that the licensed importer is following all applicable recordkeeping requirements. If the licensee's operations require payment of SOT, examine the special tax stamp or proof of payment to verify proper class and amount of tax. If a discrepancy is found, the IOI shall contact the NFA Branch, as necessary.

m.    Verify that records of A&D and disposition of articles enumerated in the U.S. Munitions Import List (other than firearms and ammunition) are maintained for a period of six years, in accordance with 27 CFR 447.34, and are reconciled to commercial records (i.e. import manifest).

n.      An importer may incur a liability for excise tax on various firearms, including
        antiques or replicas of antiques, and ammunition imported and sold under 26 USC
        4181. The IOI shall direct the licensee to contact TTB.

o.      Verify that armor piercing ammunition is imported for authorized purposes and that
        it is properly marked.

70.     COLLECTORS

        a.      Verify that the licensed collector is not engaged in business as a dealer in any
                firearms, including curios and relics.

        b.      A licensed collector may acquire and dispose of curios and relics in interstate
                commerce (if the transaction is not contrary to State or local law). The IOI must
                verify that dispositions of curio and relic (C&R) handguns to non-licensees have
                only been made to residents of the same State in which the collector is licensed (if
                the transaction is not contrary to State or local law).

        c.      Verify that the collector is only conducting transactions in firearms classified as
                curios and relics (see definition: 27 CFR 478.11). The licensed collector has the
                same status as a non-licensee with respect to transactions involving firearms that
                are not classified as curios and relics. Verify that licensed collectors:

                (1)     Maintains A&D records in the proper format. (There is no requirement for
                        licensed collectors to obtain a completed ATF F 4473 prior to the sale of a
                        C&R firearm to a non-licensee).
                (2)     Submits reports of multiple handgun dispositions.

        d.      If a collector desires to have a firearm classified by ATF as a curio or relic, instruct
                the collector to submit a written request to the Chief, FATD, outlining the historical
                significance, along with a complete description of the firearm to be classified.

        e.      At the election of a licensed collector, the annual inspection of records and
                inventory may be performed at the ATF IO office closest to the collector's licensed
                premises where the inventory and records are maintained.

        f.      Each licensed collector who delivers a handgun to a non-licensee shall provide
                written notification as described in 27 CFR 478.103 (see ATF I 5300.2, Youth
                Handgun Safety Act Notice). Collectors are not required to display the ATF I
                5300.1, Youth Handgun Safety Act Poster.

        g.      If the collector makes dispositions of armor piercing ammunition that was acquired
                prior to August 28, 1986, verify that accurate records are maintained in the proper
                format (27 CFR 478.125(a), 478.125(b), and 478.125(d).

71.     ARMOR PIERCING AMMUNITION.

        a.      Verify that the licensed dealer is not transferring armor piercing (AP) ammunition,
                except for AP ammunition received and maintained as business inventory prior to
                August 28, 1986 that is transferred only to any department or agency of the United

States or any State or political subdivision thereof. (See Armor Piercing Ammunition Inspection Guidelines)

**Note:** Any licensed dealer who fails to abide by those conditions is subject to revocation of the FFL [27 CFR 478.99(e)].

b.    Verify that AP ammunition is properly marked (27 CFR 478.92(b) and ATF Rul. 2002-6). Verify that packaging of AP ammunition is properly marked (27 CFR 478.92(b)(2)).

c.    Verify that the licensee is accurately maintaining a separate record of armor piercing ammunition dispositions (27 CFR 478.122(b), 478.123(b), 478.125(a), 478.125(b), 478.125(c) and 478.125(d), when applicable).

**Note:** The definition of armor piercing in the GCA only applies to handguns. Some rifle ammunition can be used in handguns but ammunition that cannot be used in a handgun is not "armor piercing ammunition" as defined.

The definition of AP ammunition is:

(1)    **Projectiles or projectile cores** which may be used in a **handgun** and which are constructed entirely (excluding the presence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or

(2)    **Full jacketed projectiles** larger than .22 caliber designed and intended for use in a **handgun** and whose jacket has a weight of more than 25 percent of the total weight of the projectile.

d.    The term does not include shotgun shot required by Federal or State environmental or game regulations for hunting purposes, frangible projectiles designed for target shooting, projectiles which the Director finds are primarily intended to be used for sporting purposes, or any other projectiles or projectile cores which the Director finds are intended to be used for industrial purposes, including charges used in oil and gas well perforating devices.

72.    DISCONTINUED BUSINESS.

a.    If the IOI determines that the licensee is no longer actively engaged in the business, the IOI may ask the licensee if he or she wants to surrender the license. If the licensee does not wish to surrender the license, the IOI may **not** pursue this issue.

**Note:** Current appropriations prohibit ATF from denying any license solely on the basis of the licensee not having any business activity (i.e., zero acquisitions and/or dispositions). However, this restriction does not preclude license or renewal denials when other bases exist. For example, licensees who have zero business activity may also lack a business premises that complies with local zoning law.

b.    If the licensee is out of business, the following actions must be taken:

(1)    The IOI will make every attempt to locate the licensee and obtain a letter

74

surrendering his or her license, and ensure that all required records are forwarded to the ATF National Tracing Center (NTC), Out-of-Business Records Center (OOBRC), 244 Needy Road, Martinsburg, WV 25405.

    (a)    Send an e-mail to NTC at obrshipping@atf.gov with the number of boxes and the weight of each box. The IOI will receive FedEx shipping labels via email for each box to be shipped to the NTC, OOBRC or instructions on how to set up a pick-up with the freight carrier.

    (2)    If the license has not expired, initiate a discontinuance in Spartan indicating the reason for discontinuance.

    (3)    Prior to forwarding the records to NTC, OOBRC, the required records shall be examined for completeness and the IOI should make every effort to ensure that the acquisition and disposition of all of the licensee's firearms have been properly annotated in the records.

c.    In the event the licensee succeeded another licensee, the IOI shall:

    (1)    Ensure that the predecessor's records were either forwarded to the NTC OOBRC or are being properly maintained by the successor

            **Note:** If the records are being maintained by the successor, verify that the succession of records is reflected in FLS

    (2)    Ensure that the predecessor's firearms were properly recorded as transferred to the successor.

    (3)    If the licensee deals in NFA firearms, the IOI shall ensure that all NFA firearms have been properly identified.

        (a)    An NFA licensee, operating as a sole proprietor, partnership, or corporation, who discontinues business and provides notification to ATF, may retain all firearms, including sales samples (other than machine guns manufactured or imported on or after May 19, 1986). NFA firearms may be retained by the partnership or corporation until the entity dissolves, whether or not engaged in the business.

              **Note:** Possession by the individual partners or corporate officers is regarded as a taxable transfer.

        (b)    If the person or entity discontinuing the NFA business resides in a State where the continued possession as an individual places them in violation of State law, the firearms must be transferred pursuant to applicable law prior to the lapse of the special tax status. If State law prohibits possession of the NFA firearms, they may be transferred or arrangements made for their storage in a State where possession is allowed. If the tax status has lapsed, the transfer will require either

payment of the transfer tax or transfer to a law enforcement agency or other Government entity.

(c)     If the person or entity has possession of machineguns which were manufactured or imported on or after May 19, 1986, transfer of these firearms must be completed prior to the lapse of the FFL and SOT to avoid illegal possession under 18 U.S.C. 922(o). The licensee must transfer the NFA firearms to a Government agency or to a qualified Federal firearms licensee who can provide the documentation required by 27 CFR 479.105.

## 73.     THEFT/LOSS INVESTIGATIONS

a.     A compliance inspection will not be initiated in response to a reported theft or loss of firearms unless CE is contacted. Generally, all investigations of thefts or losses of firearms will be conducted jointly by CE and IO. A separate theft/loss inspection can be generated in Spartan.

b.     The IOI shall conduct an internal control evaluation and review security measures. If circumstances warrant doing so, the IOI shall conduct a full 100% inventory verification (unless a lesser inventory is justified by the AS and then approved by the DIO). The IOI shall ensure the FFL submits an ATF F 3310.11 in accordance with ATF theft/loss reporting procedures. (See ATF O 3310.7A Stolen Firearms Program.)

c.     If during a theft/loss inspection an IOI uncovers a violation, the IOI should take that opportunity to educate the licensee and advise them on how to correct and prevent the violation from occurring again. The purpose of a theft/loss inspection is to determine the actual firearms that are missing or stolen. It is not a compliance inspection, and an ROV shall not be issued. However, in situations where the violation(s) disclosed during a theft/loss are egregious, the AS can decide that a compliance inspection should be conducted. The compliance inspection should be conducted at a later date, keeping in mind that the licensee has been robbed or burglarized, and is a victim of crime. The DIO should issue a memorandum to the licensee identifying the violations disclosed during the theft/loss inspection and corrective action that was discussed with and taken by the licensee, and noting that a compliance inspection will be conducted at a later date. The memo should be sent via certified mail, and the DIO may use the self-reporting violation memorandum as a guide.

74. – 90.  RESERVED

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 86 of 190 PageID #: 330

CHAPTER D. EXPLOSIVES APPLICATION INSPECTIONS (EAI)

91.  GENERAL.

   a.  Unless otherwise directed, the guidelines and procedures outlined in this chapter must be followed. This is not meant to preclude the use of other inspection techniques that are necessary to accomplish the purpose(s) of the inspection.

   b.  IOIs may use Explosives Application Inspection Quick Reference Guide, to assist in conducting explosives qualification inspections. (Also refer to Explosives Limited Permit (Actual Storage) Application Inspection Quick Reference Guide and Explosives Limited Permit (Contingency Storage) Application Inspection Quick Reference Guide. **Note:** To prepare for these types of assignments, IOIs should refer to Chapter I, Inspection Safety Procedures, and Explosives Definitions and Terms.

92.  PURPOSE. The purposes of an explosives application inspection are to:

   a.  Verify the accuracy of the application.

   b.  Ensure that the application is for the proper type of license/permit for the proposed business activity.

   c.  Ensure that only qualified applicants enter the industry and that only qualified individuals receive, possess and handle explosive materials. (See Background Check Guidelines.)

   d.  Inform and educate the applicant about Federal laws and regulations and compliance responsibilities as they relate to the proposed business activities.

   e.  Determine if the applicant has premises in a state from which to conduct, or intends to conduct, business.

   f.  Ensure the integrity of record systems to facilitate the tracing of explosives.

       **Note:** Explosives may be traced for various reasons (e.g., to determine the source of misused explosive materials, to identify suspects of stolen explosive materials, to detect diversion of explosive materials to prohibited persons, etc.)

   g.  Ensure the safe and secure storage of explosives.

   h.  Prevent criminal misuse of explosives and protect the public.

   i.  Identify areas of weakness and vulnerability in security and safety measures in order to prevent prohibited persons from obtaining explosive materials.

   j.  Ensure premises and storage are adequate for the type of operations to be

77

conducted.

93.     SAFE EXPLOSIVES ACT (SEA) REQUIREMENTS.

a.      The SEA amended the Federal explosives laws to require that ATF must verify "by inspection" that applicants for user permits and licenses have places of storage for explosive materials that satisfy the standards of safety and security set forth in the regulations. The SEA requires an onsite inspection of places of storage of all new and renewal applicants for user permits and licenses, but not for limited permit applicants.

b.      In order to ensure compliance with the requirements of the SEA, a field explosives application inspection (EAI in Spartan) must be conducted on every new explosives license and user permit applicant, but not on limited permittee applicants.

**Note:** Application inspections are conducted only for original applications. Renewal applications are considered explosives (full) inspections and must be completed in accordance with Chapter E, Explosives Compliance Inspections. Generally, a full inspection will be conducted at the time of renewal.  Inspections conducted up to 12 months prior to the renewal date meet this requirement. These inspections will include verification of storage as required by the SEA and all other aspects of a full inspection.  However, inspection of fireworks licensees, if conducted during the industry's "busy season," that typically occurs around the Fourth of July, may be completed in two separate inspections as described more fully in Chapter E.

c.      Inspection procedures are different with respect to limited permittees. Upon receipt of an original application, or at the time of renewal, ATF may verify proper storage via telephone conversation, letter, or other means deemed appropriate. Places of storage for limited permit applicants can be physically inspected only at the time of the original application or at the time of renewal. Such visual inspection may take place only once every 3 years. Inspection of the renewal applicant's records may be conducted on a voluntary basis only.

94.     OTHER STATUTORY REQUIREMENTS. Due to statutory requirements, all licenses and permits must be issued or denied within 90 days of ATF's receipt of a perfected application. The Federal Explosives Licensing Center (FELC) is to be notified of inspections that will exceed the 90 day period. The FELC will not issue a license or permit to an applicant prior to receiving a recommendation from the responsible area office. ATF is required by statutory/regulatory requirements to issue a license or permit to any person who has filed a proper application and paid the prescribed fee provided the following requirements of 18 U.S.C. § 843 are met:

a.      The applicant is not a prohibited person as described in 18 U.S.C. § 842(i).

b.      The applicant has not willfully violated any of the provisions of Federal explosives law or the regulations issued thereunder.

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 88 of 190 PageID #: 332

c.   The applicant has a premises in a state from which he/she conducts or intends to conduct business.

d.   The Attorney General verifies by ATF inspection, or, if the application is for an original limited permit or the first or second renewal of such a permit, by such other means as the Attorney General determines appropriate, that the applicant has a place of storage for explosive materials which meets such standards of public safety and security against theft as the Attorney General by regulations shall prescribe.

**Note:** This does not apply to an applicant for the renewal of a limited permit if the Attorney General has verified, by ATF inspection within the preceding 3 years, that the applicant has a place of storage for explosive materials which meets such standards of public safety and security against theft.

e.   The applicant has demonstrated and certified in writing that he/she is familiar with all published State laws and local ordinances relating to explosives materials for the location in which he/she intends to do business.

f.   None of the employees of the applicant who will be authorized by the applicant to possess explosives materials is any person described in 18 U.S.C.§ 842(i).

g.   In case of a limited permit, the applicant has certified in writing that the applicant will not receive explosive materials on more than six separate occasions during the 12-month period for which the limited permit is valid.

**Note:** Being under 21 years of age no longer prohibits a person from obtaining an explosives license or permit. However, it is unlawful for any person to knowingly distribute explosive materials to anyone under 21 years of age.

Consequently, a person under 21 years of age can possess/handle explosive materials but cannot acquire them. Also, ATF cannot deny a license or permit where employee possessors (EPs) are prohibited. Rather, the Federal explosives licensee or permittee has to remove the prohibited EPs from duties that require possession of explosives.

95.   CONDUCTING EAI

a.   General Pre-Inspection Procedures

(1)   Review the assignment, any special instructions, attachments, business information and references noted in Spartan.

(2)   Review the ATF F 5400.13/5400.16, Application for Explosives License or Permit under 18 U.S.C. Chapter 40, Explosives, for completeness, accuracy, and proper execution. Review the plat plan drawing which should have been submitted with the application.

(3)   Verify if the FELC has completed the background checks and issued Notices of Clearance on all responsible persons and EPs submitted with

the application. The IOI cannot submit the assignment or make a final recommendation until the responsible persons have cleared an FELC initiated FBI criminal history check and NICS check. Once the FBI checks are finalized, the FELC examiner will update FLS to reflect that information in the clearance status field. The IOI must document the clearance date of the FBI criminal history conducted by the FELC in Spartan. The IOI shall conduct OpenFox criminal history checks to ensure applicants/responsible persons are not prohibited. (See Background Check Guidelines.)

Note: OpenFox is DOJ's portal for accessing National Law Enforcement Telecommunication Systems (NLETS) and National Crime Information Center (NCIC).

(4)     Review FLS to determine if the applicant has any other licenses or permits, or was a licensee or permittee in the past. Check for special attention flags (SAFs), which can only be viewed by logging into FLS. Be alert for the applicant's association with previous or current administrative actions under other Federal explosives licenses or permits. (See ATF O 5440.1 Federal Explosives Administrative Action Policy and Procedures.)

(5)     Query N-Spect / Spartan to review previous inspection reports associated with the applicant/responsible persons. For querying FLS while using Spartan, see "Search FLS Using Spartan" and "Using the N-Spect Lookback" to view N-Spect while in Spartan.

(6)     Query N-Force for any open CE investigations. If found, determine if a SAF is needed.  Be alert for recent or ongoing criminal investigations of applicants/ responsible persons previously associated with an administrative action.

(7)     Request information from the field division's CGIC as necessary.

(8)     If the applicant or location is a known security risk, contact the AS to determine the appropriate course of action.

(9)     Determine if the applicant intends to engage in the explosives business. Although the term "engaged in the business" is not susceptible to a rigid definition within 18 U.S.C. Sections 841 - 848, it is interpreted to imply an element of continuity or habitual practice. If the IOI believes that the applicant may not be engaged in the business, this must be stated in the report so that specific inquiry can later be made as part of a compliance inspection.

        **Note**:  An application cannot be denied for failure to engage in the business.

(10)    If there are indications that the applicant does not intend to engage in the business, the IOI shall determine if there is a need for the license/permit.

80

IO Manual
(October 2019)

(11)     The IOI should be aware that financial status, sources of supply, and need for the enterprise, are not requirements for approval of an application.

(12)     Determine if the applicant will export explosives and advise the applicant of the requirements of the Arms Export Control Act (AECA), if applicable. Describe the products expected to be exported and the countries to which the products will be exported in the narrative report. (See 27 CFR 555.129.)

(13)     If the applicant is succeeding a licensee/permittee, advise the applicant to properly maintain the previous owner's records or to forward them to the ATF NTC, OOBRC.

(14)     Verify that the correct business hours are listed on the application. If the applicant does not intend to maintain normal business hours, inquire as to the applicant's availability during the normal work day.

(15)     Verify that the required State and local permits have been applied for or obtained. Record permit/license numbers or the date the application was filed with the State or local entity.

**Note**: An application cannot be denied for failure to comply with State and local requirements, e.g., licensing and zoning. However, the IOI should advise the applicant that State and local authorities will be notified that the proposed operations may be in violation of licensing, zoning, or other laws. The applicant may wish to voluntarily withdraw his or her application. If the applicant does not withdraw the application, details of the possible violations of State and local requirements must be included in the inspection report. The IOI shall make a formal referral to the State or local authorities through the AS.

b.     Spartan Pre-Inspection Procedures

(1)     Review Assignment

(a)     Review the ATF F 5400.13/5400.16, Application for Explosives License or Permit and required supporting documentation for completeness, accuracy, and proper execution. Compare the application with the information that was copied from FLS and entered by the AS or IA (Investigative Analyst) in Spartan to ensure everything matches. If needed, edit the information in Spartan, for more information see Editing or Sending Work for In-Progress Inspections.

It is highly recommended that the IOI save the attached ATF F 5400.13/5400.16 from Spartan to their laptop for future use. This ensures the document is available for review and amendments during the onsite interview with the applicant even if the IOI is unable to access it in Spartan.

81

**Note**: For manufacturer of explosives license application, the IOI must ensure that the applicant completes ATF F 5000.30, Supplemental Information on Water Quality Considerations - in accordance with 33 U.S.C. §1341(a), and ATF F 5000.29, Environmental Information, and that these forms are included with the application and uploaded in Spartan.

(b)     Review special instructions noted in the assignment.  The AS may provide additional information or request specific tasks so IOIs should always review them.  Special Instructions can be accessed from the Initial Assignment Overview Screen in Spartan.

(c)     If the applicant has explosives storage magazine(s), ensure an explosives site inspection (SI) is created for each location. See How to Add a Magazine Site Location for more information.

(d)     Verify the applicant has notified the appropriate fire safety authority having jurisdiction in the locality where explosive materials are being stored per 27 CFR 555.201(f).

(2)     Eligibility Verification

(a)     Documentation and confirmation of the eligibility verification information is required in Spartan, and IOIs shall do this before the actual field visit to meet with the applicant.

(b)     Research and verify all applicable eligibility items such as Business Information, Property Ownership, Trade Name/DBA, Rental/Lease, and Contingent Storage if applicable. The IOI must enter contact information or upload a verification document for all applicable eligibility items. Verification should be from external sources and not solely derived from the applicant. See Completing Eligibility Verification.

1.      Business Information/Structure - Verify the existence and validity of the corporation, LLC or partnership with the appropriate State agency.  Review copies of application documents, such as partnership agreements and State registration documents. The IOI can query the applicable Secretary of State's official website.

2.      Property Ownership – Verify ownership of the proposed business premises by utilizing city or county property tax records, as applicable

3.      Trade Name/DBA (Doing Business As) – Verify registration of proposed trade name with either the State, city or county office, as applicable.

82

4.    Lease/Rental Information – Review the lease or rental agreement and verify the applicant's proposed business activities are authorized and permissible. If necessary, verify the relationship between the lessor and property owner, if different, to ensure the lessor is authorized to lease the property.

**Note:** The IOI can skip the lease/rental portion until they are onsite with the applicant if information was not submitted with the application or is not available elsewhere. Spartan will create a follow-up, which the IOI will need to address onsite.

5.    Contingency Storage (if applicable) – the IOI must enter the RDS key of the contingency storage provider in Spartan, and contact the person providing the contingency storage to verify the arrangements.

The IOI shall verify that contingency storage has been inspected and approved within the past 3 years. If not, it must be inspected. Determine if multiple licensees or permittees are using the same contingency storage and ensure that the total amount of explosives that could be stored would be in compliance with the Tables of Distances.

(c)    If the IOI has indicated that the applicant has not met an application requirement in d (e.g., applicant never registered LLC with Secretary of State and must do so for eligibility verification, etc.), an Action Item is generated in Spartan. The IOI cannot submit the inspection if there are any Action Items with an "open" status. The IOI must resolve all action items; see Completing Action Items for Inspections.

(3)    Plan Onsite visit

(a)    Advance notification should be provided to the applicant for application inspections. The IOI must document the interview details (date and time of inspection) in Spartan prior to initiating the onsite visit. Refer to Chapter I, Inspection Safety Procedures, for additional preplanning procedures.

(b)    The IOI must make at least three attempts to establish contact with the applicant. All attempts by the IOI must be documented in Spartan using the plan onsite interview function during the pre-inspection phase. If, after three attempts, the IOI is unsuccessful in establishing contact, the IOI may initiate the abandonment process by selecting "Start Abandonment Request". For more information, see Requesting and Documenting Abandonment.

83

(c)     The AS will receive notification in Spartan and provide a decision on the abandonment request. If the AS does not approve, the IOI will receive an explanation and instructions to take further steps before submitting the request to abandon again. If the AS approves the abandonment process, the AS will generate the Abandonment Notice in Spartan.

(d)     The IOI will mail the applicant the Notice of Abandonment by certified mail with a return receipt addressed to the IOI. The IOI can enter the tracking number and the date sent then select "Save". The IOI can select "Track Letter" to go directly to USPS from Spartan for tracking and obtain update on the delivery status. Once the notice is delivered, the IOI shall enter the delivery date and attach the certified mail return slip electronically in Spartan. See "How to Attach Files" for details.

(e)     The applicant has 30 days from the delivery date to respond to the notice and contact the IOI. If the applicant does not respond, the "Confirm Abandonment" task will appear in Spartan. Spartan will not allow the IOI to confirm abandonment until 30 days after the delivery date. The IOI must select "Continue" to go to the Snapshot Report. After the IOI reviews the snapshot report, the recommendation defaults to "Application Abandoned."

(f)     If applicant responds to Abandonment Notice and wants to proceed with the application, the IOI should schedule the field visit and proceed with the application inspection.

(g)     The IOI should conduct a thorough pre-inspection interview of the applicant prior to the onsite visit to effectively prepare and plan for the field visit. The IOI should ask the applicant about the proposed business operations to ensure that they have applied for the correct type of license/permit. If it is determined that the applicant did not apply for the correct type of license/permit, the IOI should contact the AS and FELC to get a new license/permit number and have the AS issue a new application assignment prior to initiating the field visit. The IOI should advise the applicant to contact the FELC regarding payment of any additional fees or receiving a refund for overpayment.

Licensees need a separate license for each business location for which they intend to manufacture (except for onsite manufacturing), import, or distribute explosives. The IOI should be aware of all locations where explosives may potentially be stored and the business activity conducted at each location. A separate license is not required for locations which serve only as storage sites or delivery depots. In this instance, all sales would have to be consummated from the same licensed premises. A licensed manufacturer or a licensed importer does not need a separate

84

license to deal in explosives from their licensed premises.

An explosives permit is required for each person who intends to acquire not for resale explosives materials in interstate, intrastate or foreign commerce. A limited permit is valid for up to six explosives purchases from a licensee located in the same State as the purchaser. (Refer to Explosives Licensing, for a more detailed description of the different types of explosives licenses/permits.)

(h)     The IOI should verify with the applicant any licenses or permits that are required (State, city, county or other local) for the proposed business activity.

c.     General Onsite Procedures

(1)     The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the applicant. The IOI will identify himself or herself by displaying their Bureau issued credentials.

**Note**: Credentials shall not be photocopied.

(2)     The IOI must not sign any document which releases the applicant from any type of liability (e.g., physical injury) sustained at the business premises.

(3)     Telephone contact in lieu of an onsite, (face-to-face) application inspection shall only be utilized on EPCD (explosives pest control devices) applications. Spartan has a telephone inspection option that the IOI can select. Telephonic inspection of other types of license/permit applications require AS and DIO approval. The emails documenting the justification and approval shall be saved as attachments in Spartan. If telephone contact is made in lieu of an application inspection, then an onsite inspection must be conducted within the next 12 months (telephone contact does not constitute an inspection).

(4)     Determine the applicant's business structure, and address any action items or follow up tasks that were generated during the pre-inspection phase. (See Business Structures Document.)

(5)     Verify ownership and control of the business by examining available documents (e.g., corporate documents, deeds, rental agreements, loan agreements, etc.)

(6)     Determine if the applicant has premises from which to conduct business or operations and whether it is in compliance with State and/or local requirements. (See 27 CFR 555.11 and 555.49).

(7)     Determine if the applicant owns or rents the premises and address any action items or follow up tasks that were generated during the

85

preinspection. If the applicant does not own the proposed business premises, review the lease or rental agreement to determine if the proposed business activity violates the agreement. If during the course of an application inspection, the IOI is considering contacting the landlord or property owner without the applicant's consent, the IOI should consult with the AS and division counsel prior to contacting the landlord or property owner.

(8) Determine if any other type of business will be operated from the premises and document it in Spartan.

d. Spartan Onsite Procedures

(1) IOIs are required to bring their laptop, or other ATF issued device, and use Spartan while conducting the inspection onsite. Upon arrival at the proposed business premises, the IOI should tether the laptop to their iPhone and log into Spartan to ensure connectivity before meeting with the applicant. In very few exceptions such as very poor, sparse or no connectivity, Spartan technical or laptop hardware problems, or DOD inspections where electronic equipment is prohibited, IOIs may utilize Spartan offline functions for field work. For more information, see "Use an iPhone as a Mobile Wi-Fi Hotspot".

**Note:** Laptops and other electronic devices shall not be used inside an explosives magazine.

(2) Spartan utilizes an onsite interview to-do list or guide, and the IOI can complete them in any order. There is also a text box that the IOI can use to document additional relevant information disclosed during the interview. The IOI must document in Spartan the responsible persons and non-responsible persons who were present during the interview.

e. Spartan Onsite Interview To Do List

(1) Indicate Persons Present at Interview

(a) Using a valid government-issued photo identification, verify the name of the responsible person(s) interviewed, date of birth and residence, and record the identification type and number. If the person is already entered in the Spartan assignment, the IOI can select the person and add the government identification information. The IOI can also add and document other ATF issued licenses or permits where the applicant is a responsible person. (For a definition of a responsible person, refer to Definition of "Responsible Person, dated December 22, 2005, Supplement to Memorandum "Definition of Responsible Person, dated February 28, 2006.

(b) For non-responsible persons interviewed, the only required fields are the first and last name, and a phone number (business number

86

may be used); however, any additional identifying information the IOI can obtain should be documented (e.g., title, date of birth, driver's license number).

(2)    Review Application with Applicant

    (a)    Verify that all responsible persons are listed on the ATF F 5400.13/5400.16. Determine the level of each responsible person's involvement in the business.

    (b)    For any responsible persons added to the application, conduct background (OpenFox) checks and query FLS. Query N-Force for any open CE investigations. Additional responsible persons must complete Block 11 of the ATF F 5400.13/5400.16 and submit fingerprint cards (ORI- WVATF1100) and photographs to the FELC. Check local law enforcement or court records if requested by the FELC or if a disabling conviction is suspected. (Refer to Use of TECS/NCIC/NLETS and NICS in FEL Inspections for procedures in conducting background checks).

        The IOI cannot submit the assignment and recommend approval in Spartan until all responsible persons have been cleared by the FELC through the FBI NICS system. Once the FELC completes the FBI NICS check, it will be documented in the clearance status field that a Criminal History Check (CHC) and NICS clearance has been conducted and cleared. The IOI must document in Spartan the date the CHC is cleared. For more information, see Adding and Editing Responsible Persons in Spartan.

        The IOI should maintain communication with the FELC and monitor FLS to determine when the FBI CHC is cleared or denied so a recommendation can be made and the assignment submitted. For querying FLS while using Spartan, see "Search FLS Using Spartan".

    (c)    Document in Spartan if it appears that any responsible persons may be prohibited. The issuance of the license/permit is contingent upon a successful background check conducted by the FELC on all responsible persons.

    (d)    Review the application and proposed operations with the applicant or responsible person to verify that the information on the application is correct. Have the applicant initial and date any amendments to the application. In Spartan, the IOI will select the application (attached PDF) in their assignment, download the file and save it. The IOI can then open the saved PDF in Adobe, select comment tool, and then select the pencil option to allow for edits. The applicant can amend the original application PDF by using touch screen or a stylus. The applicant must certify changes

87

with their initials and date of amendment. The IOI must save the perfected application with new file name ("RDS – Applicant name – Perfected Application – Date Amended"). The IOI has to upload the perfected application PDF as an attachment. The IOI must update Spartan and thoroughly document the required changes that need to be made by the FELC. For more details, see "Perfecting the Original Application PDF".

If further amendments are needed after the onsite inspection, the IOI shall forward the document to the applicant via fax, email, or mail. The applicant will make the necessary amendments, initial and date them, and return the perfected application to the IOI. The IOI shall ensure the recently amended document is uploaded in Spartan and any information that was revised is corrected in Spartan.

(e)     If it appears the applicant has willfully omitted or falsified any material information, the IOI will develop data on these willful misrepresentations and document them in writing to sustain denial proceedings. If willful omission or falsification is suspected, **do not** allow the applicant to make any changes or amendments to the application. Contact the AS. When IOIs develop information of a potential criminal nature, a suspicious activity report must be generated in Spartan.

(f)     In the case of a CE investigation of an applicant, IOIs shall discuss the matter with the ATF case agent and AS to determine the most effective course of action. When appropriate, do not delay submission of the inspection due to a pending criminal investigation, but note that there is an ongoing investigation.

        **Note:** The IOI and AS shall discuss the inspection findings with the DIO, Counsel, and appropriate CE personnel.

(g)     Employee possessors must complete ATF F 5400.28, Employee Possessor Questionnaire. If it appears that the responsible person and/or employee possessor may be prohibited, document that in Spartan. Notify FELC of any possible prohibited persons by using the Post Inspection Information (PII) folder in Spartan. The issuance of the license or permit is contingent upon a successful background check conducted by the FELC on all responsible persons.

(h)     Verify that the applicant has removed any prohibited individual(s) from a position in which he/she may receive or possess (constructive or actual) explosive materials. The prohibited person must immediately be removed from the list of authorized individuals who may receive explosive materials. Advise the applicant that persons who are prohibited from possessing

88

explosive materials may request relief from the Federal explosives disability by filing an <u>ATF F 5400.29</u>, Application for Restoration of Explosives Privileges. However, filing an application for relief does not give the employee the right to possess explosives. Employees must wait for a determination from the Explosives Relief of Disabilities (EROD) Program. The IOI shall direct all inquiries regarding relief of explosives disabilities to the EROD Program at (256) 261-7640. **Note**: IOIs may not disclose the reason that the individual is prohibited. The FELC must be the entity to notify the applicant that an individual is prohibited, not the IOI.

    (i)    Advise the applicant that any new responsible persons must be reported to ATF within 30 days of the change and that notification must include appropriate identifying information. The FELC will then contact the licensee/permittee in order to obtain fingerprint cards and photographs. Newly hired employee possessors must submit a completed ATF F 5400.28 to the FELC within 30 days of employment. Unless the FEL knows or has reason to believe that a new EP is prohibited, the EP may possess explosives unless and until otherwise notified by ATF.

(3)    Business Premises Details

    (a)    Inspection area description – The IOI must record premises information to include inspection area details, primary business activity and GPS coordinates.

    (b)    Physical security measures – The IOI shall assess the applicant's physical security measures for the business premises and document them in Spartan. For details, see Page 7 and 8 of <u>Completing Onsite Work for Inspections; Interview to do List</u>.

(4)    Complete Questionnaire

    (a)    Describe the applicant's proposed business activity and determine if the applicant has applied for the correct license/permit or if additional license is required. Determine if the applicant is succeeding another licensee/permittee. If they are, the applicant may succeed the prior business' records or surrender records to ATF. The IOI can assist with submission of records.

    (b)    Discuss operational security measures and provide the applicant with <u>ATF P 5400.15, Safety and Security Information for FEL/P</u>.

    (c)    Discuss the type or kinds of explosives and potential suppliers.

(5)    Complete Supplemental Questionnaire (Optional)

    (a)    The IOI shall verify ownership and control of the business by

89

examining available documents (e.g., corporate documents, deeds, rental agreements, loan agreements, etc.) with the consent of the applicant. Pay particular attention to any indications of fronting or hidden ownership. (Refer to Indicators of Hidden Ownership for areas to explore in identifying applications filed by someone other than the true applicant.) Some examples of indications of hidden ownership include:

1. Application fee paid by someone other than the applicant.

2. Applicant has little or no knowledge of the explosives industry or the laws and regulations, and cannot answer business questions.

3. No hours of operations are given.

4. Writing on application appears to be completed by more than one individual (i.e., signature is different other parts of applications).

5. The business premises is the same as a former FEL/FEP who had the license revoked or surrendered in lieu of revocation, a former applicant who was denied, or a present FEL/FEP under indictment or with revocation or denial proceedings.

6. Applicant is a successor to or connected with (e.g., family member, responsible person, etc.) a former FEL/FEP who had a license/permit revoked or surrendered in lieu of revocation.

7. The last name of the applicant is the same as a former licensee/permittee, former applicant, or present licensee/permittee under indictment or with revocation or denial proceedings.

(b) If hidden ownership is suspected, notify the AS, document all evidence and relevant circumstances, including statements, by the applicant, to sustain denial proceedings if appropriate. Document all findings in Spartan. **Note**: Selecting "Notify Area Supervisor" while on the onsite interview to do list, will initiate the hidden ownership process in Spartan.

(6) Complete Site Inspection

(a) Determine the type and location of all explosives storage magazines. The applicant must provide one of the following: their own storage magazine, a written contingency agreement for explosives storage or a business plan. The business plan

90

is a process whereby the applicant may submit an alternate plan to maintaining explosives storage, which requires approval by the DIO. **Note**: The Business Plan option shall be used only in very limited circumstances.

(b) Ensure that the applicant has notified the appropriate fire safety authority having jurisdiction in the locality where explosive materials will be stored per 27 CFR 555.201(f). Notification includes the type, capacity, and location of each magazine on commencement of storage of explosive materials. The IOI shall ensure that the required notification has been documented in Spartan to include the name, address, and phone number of the local fire department having jurisdiction where the magazine is located.

(c) Verify that all magazines meet storage requirements and document information, including GPS coordinates, magazine identification number, for each magazine in the magazine examination section in Spartan. Enter magazine custodian information for each site (name, date of birth, identification, phone, etc.)

(d) For indoor magazines, obtain GPS coordinates for the structure housing the magazines. Enter GPS coordinates in Spartan in decimal format carried up to 5 decimal places (e.g., 32.12345 N). GPS coordinates are not required for Type III magazines (day boxes).

(e) Obtain photographs of all magazines and upload them to Spartan. If there are several identical magazines, it is only necessary to photograph one of the magazines. Photographs of other structures, such as process and non-process buildings/areas should be taken to further depict the premises.

(f) Assign unique ID numbers to magazines using labels provided as part of Magazine ID Program. With the consent of the applicant, IOIs shall place the labels with assigned unique ID number on the interior walls of industry owned magazines (except Type 3 day boxes). These magazine ID numbers will be tracked by each area office. See Magazine ID Program Phase 2 and Magazine Tracking Log.

(g) Upload a plat plan for the storage site location. Ensure that all buildings and storage facilities are identified on the plat plan of the premises. Plat plans provided should include distances between all storage magazines, inhabited buildings, public highways, passenger railways, fireworks plant buildings, fireworks process buildings, fireworks non-process buildings, fireworks shipping buildings, and other facilities which could

91

be damaged if the magazine exploded. Barricades should be depicted on the plat plan.

(h)     Although not required by the regulations, the plat plan should include a complete description of the entire area surrounding the magazine (e.g., a wooded area located north of the magazine may not contain any magazines or inhabited buildings, but should still be identified on the diagram) even if the area surrounding the magazine is not the applicant's premises. Provide a description of public facilities (e.g., gas stations, fast food restaurants, churches, etc.) in the general area, even if outside the Table of Distance (TOD) requirements. For outdoor storage, this information is useful in the event the applicant exceeds the maximum amount allowed by the TOD.  (For indoor storage, if the building containing the magazine is in compliance with Federal regulations, but is located adjacent to other businesses and poses a threat to public safety, contact State and/or local authorities.) The plat plan shall include the following certification statement, "This is a true and accurate drawing of my premises."  The applicant must sign and date the certification.

(i)     Physically measure all distances between magazines and exposed sites to verify that all outdoor magazines meet the TOD requirements. Document the means of measurement. (Refer to paragraph 163, Chapter F, Related Inspection Information.)

(j)     Determine the maximum quantity of explosives allowed to be stored in each magazine according to the submitted plat plan and the appropriate TOD.

(k)     If the applicant plans to store explosives at another site location, the IOI shall create a Site Inspection in Spartan for AS approval and assignment.

(l)     If explosive materials are present, be alert for storage in adjoining structures and process areas. Also, be alert for any new inhabited building construction in the area and if necessary verify with local authorities. Document any storage that is not in a compliant magazine. If explosive materials are being improperly stored, notify AS, as appropriate, and if the violations are determined to be willful, recommend denial of the application.

(m)     If the applicant conducts mining operations, the storage of explosives may also be regulated by the Mine Safety and Health Administration (MSHA). Prepare a referral to MSHA, if appropriate. See ATF MSHA MOU.

**Note**: IOIs shall not inspect underground explosives magazines. MSHA will inspect underground explosives storage at mines.

(n)     If a magazine does not meet the minimum construction and/or the prescribed TOD requirements, and if the deficiencies cannot be corrected, the IOI will advise the applicant of the following options:

If the quantity of explosive materials exceeds the amount allowed by the TOD, it may be possible to correct the problem by limiting the amount of explosives in the magazine.  It may also be possible to correct the problem by relocating the magazine to another position on the property.

If the magazine does not meet the required construction standards, the materials must be removed to a storage magazine that is in compliance with regulations until the deficiency is corrected.

The applicant may withdraw the application and re-apply when the magazine deficiency is corrected, or ATF will consider denial of the application if deficiency is not corrected in a reasonable amount of time.

If a magazine does not meet construction requirements, but does not yet contain explosive materials, then the proprietor may opt to apply for a variance, provided that the magazine substantively meets the standards in the regulations. Note: If the magazine contains explosives materials, the IOI shall consult with the AS.

The applicant can also amend their storage plan and provide contingency storage and/or a business plan as applicable. If this occurs, the IOI should cancel site inspection and upload the contingency storage agreement or business plan.

The applicant shall be advised that approval cannot be given until any necessary corrections have been made to the storage facility, or until a variance has been approved.

**Note:** A variance cannot be approve until the license or permit is issued.

(o)     If deteriorated explosives are found, do not request that the deteriorated explosives be moved.  The IOI must move immediately to a safe distance from the magazine and contact the AS to determine the appropriate course of action (e.g., notify CE and State and/or local authorities or an ATF Certified Explosives Specialist (CES) for technical assistance regarding

93

suspected deteriorated explosives). The IOI will advise the applicant to consult with the manufacturer or distributor for advice on proper and safe disposal procedures.

**Note:** All Public Safety Violations involving explosives must be corrected before submission of the inspection report. (See Public Safety Violations.)

(p)   Spartan requires the completion of site inspection and the correction all disclosed deficiencies prior to completion of the inspection.

(7)   Closing Conference

   (a)   Hold a closing conference with the applicant, and provide the applicant with the address and telephone number of the local ATF IO and CE offices.

   (b)   Provide the applicant with forms or publications information and refer the applicant to the ATF website, www.atf.gov.

   (c)   If the applicant makes an inquiry concerning when the license or permit will be issued, advise the applicant that ATF acts on applications within 90 days of receipt of a properly executed application. (Refer to 27 CFR 555.49.)

   (d)   If the applicant applied for a Limited Permit, explain the proper use and completion of ATF F 5400.30, Intrastate Purchase of Explosives Coupon, and ATF F 5400.4, Limited Permittee Transaction Report.

   (e)   If the applicant has an explosives magazine (site inspection), the IOI will need to complete the site summary. The IOI will advise and review with the applicant the maximum quantity of explosives materials that can be stored on each magazine/site inspection. The IOI must document the date reviewed and method of review.

   (f)   Review the "Acknowledgment of Federal Explosives Regulations" with the applicant. Have the applicant sign and date the acknowledgment document in Spartan or upload document if conducted offline.

      The IOI shall review in detail with the applicant the following:

      1.   The proper preparation of acquisition and disposition (A&D) records, daily summary of magazine transactions, and ATF F 5400.5, Report of Theft or Loss - Explosive Materials.

      2.   The requirement to report the theft or loss of explosive materials within 24 hours of discovery to ATF.

94

3. Magazine construction regulations, housekeeping requirements, the need to inspect all magazine(s) every 7 days, and the Table of Distances.

4. The reporting requirements with the addition of new magazines or a change in construction of existing magazines.

5. The provision that allows keeping acquisition, disposition, and magazine records for fireworks by quantity and size instead of weight (27 CFR 555.122, 555.123, 555.124 and 555.127).

6. Manufacturers and importers marks of identification.

7. The exemption for distributions of commercially manufactured black powder in quantities of 50 lbs. or less for sporting, recreational or cultural purposes in antique firearms and antique devices. All other distributions of black powder may only be made to persons holding valid Federal explosives licenses or permits.

8. The right of entry for ATF officers to business premises (including places of storage) and explosives records:

    i. For licensees and user permittees, inspections can be conducted anytime during hours of operation with no annual restriction.
    ii. For limited permittees, an onsite storage inspection is allowed once every 3 years without the permittee's consent. ATF has no authority to inspect records without the permittee's consent.

9. The restriction that explosives sales may be made only from the licensed premises and that any additional location from which sales are to be made requires another license.

10. The stipulation that a Federal explosives license or permit does not confer any rights or privileges to conduct business contrary to any State or other law.

11. The procedures for renewing the license or permit.

12. The proper procedures for reporting changes and/or discontinuance of business (including disposition of discontinued business records).

13. If the applicant is succeeding another licensee/permittee,

95

advise the previous licensee/permittee and the successor that the explosives records must be annotated to reflect the transfer and turned over to the successor (refer to 27 CFR 555.128).

(8) Snapshot Review

    (a) Spartan compiles all the information entered by the IOI into a snapshot report. The snapshot report only displays applicable sections of the work conducted by the IOI. For example, if the applicant decides to withdraw the application prior to the IOI completing any work, there would only be one section displayed. The IOI is able to review and edit the work prior to submitting it to the AS. For application inspections, depending on the actions taken and selected by the IOI, Spartan will default to either abandoned or withdrawn. However, the IOI is required to select for recommendations of Approval or Denial.

    (b) The IOI shall ensure that all pertinent information received during the application process is included in the Spartan snapshot report to verify the accuracy of the application and ensure that any issues that could cause problems or concerns for future compliance inspections are fully documented.

(9) Final Recommendation

    (a) The IOI shall enter the final recommendation regarding the issuance of the license. If circumstances indicate there is an absolute bar to issuance of a license, obtain the necessary documentation to support the denial and upload them in Spartan.

    (b) If issuance appears unlikely, advise the applicant of the reasons why the application may be denied and discuss the voluntary withdrawal option, unless such action could compromise a pending criminal investigation or it appears that the applicant has willfully omitted or falsified any material information. (Refer to 27 CFR 555.72.)

    (d) If circumstances indicate that the application for a license and/or permit will be denied, obtain the necessary documentation and report all details in Spartan.

    (e) Withdrawal of an application must be voluntary. If the applicant wishes to withdraw the application, the IOI can access the withdrawal of application letter and have the applicant sign it electronically in Spartan. The IOI can email an electronic copy to the applicant, or mail a printed copy if preferred. The IOI should advise the applicant that the FELC will be notified and the license fee will be refunded if the application is withdrawn. See Requesting and Documenting Withdrawal of an Application.

96

96.     MISCELLANEOUS INSPECTION RELATED INFORMATION

   a.   For explosives importers:

        (1)   Determine if articles on the U.S. Munitions Import List will be imported
              and verify that the applicant has filed for registration on ATF F 5330.4,
              (4587) Application to Register as an Importer of U.S. Munitions Import
              List Articles. Advise the applicant that records of munitions list articles
              other than firearms and ammunition must be maintained for 6 years.

        (2)   Make applicants aware of the provisions for submitting samples to ATF
              for analysis and identification (including ammonium nitrate). (Refer to 27
              CFR 555.110.)

        (3)   Discuss marking requirements for imported explosive materials.

   b.   For explosives manufacturers:

        (1)   Determine the method of accounting for explosives manufactured onsite if
              those explosives are not used on the same site within 24 hours. If
              explosives manufactured onsite are not used within 24 hours, they must
              be entered into the required DSMT records and properly stored (i.e., the
              exemption in the regulations is only for recordkeeping requirements for
              use, not for manufacture or storage; see exception at 27 CFR 555.123
              (d)).

        (2)   Make applicants aware of the provisions for submitting samples to ATF
              for analysis and identification (including ammonium nitrate). (Refer to 27
              CFR 555.110.)

        (3)   Ensure that the applicant completes ATF F 5000.30, Supplemental
              Information on Water Quality Considerations - in accordance with 33
              U.S.C. §1341(a), and ATF F 5000.29, Environmental Information, and
              that these forms are included with the application.

   c.   For fireworks manufacturers:

        (1)   Advise the applicant of quantity limitations on explosives in fireworks
              process buildings. (Refer to 27 CFR 555.221.)

        (2)   Advise the applicant of applicable Tables of Distances. (Refer to 27 CFR
              555.218 through 555.224.)

        (3)   Make the applicants aware of the provisions for submitting samples to ATF
              for analysis and identification. (Refer to 18 U.S.C. § 843(i).)

        (4)   Advise manufacturers of requirement to remove finished product to
              storage. (Refer to 27 CFR 555.221)

97

97.   SECURITY CONSIDERATIONS. Discuss with the applicant that explosives are of interest to criminals and terrorists. Refer to ATF P 5400.15, Safety and Security Information for Federal Explosives Licensees and Permittees. The IOI shall:

    a.   Provide the applicant with a copy of the ATF P 5400.15.

        **Note:** Use of the Security Checklist is voluntary on the part of the applicant.

    b.   Encourage the applicant to restrict the use of preload variances and to take added measures for security at times of terrorist threats as information is communicated by the National Terrorism Advisory System.

    c.   Evaluate the applicant's procedures for ordering, receiving, distributing, storing, accounting for, and using explosives to determine whether the applicant's controls ensure that operations will be conducted in accordance with Federal law and regulations, that acquisitions and dispositions are properly reflected in the required records, and that explosive materials are properly safeguarded. Discuss any internal control weaknesses identified with the proprietor.

        **Note:** The IOI cannot require the proprietor to make any changes not mandated by law or regulation.

    d.   Advise the applicant to report all thefts or losses of explosives and any suspicious activity to the local law enforcement authorities and to ATF by calling 1-800-800-3855. Thefts or losses must be reported to ATF within 24 hours of discovery. The licensee and permittee must complete the ATF F 5400.5, Report of Theft or Loss - Explosive Materials.

98.   SIGNATURE AUTHORITY. The IOI shall obtain documented signature authority, if necessary, and upload it in Spartan. Documented signature authority for applications is not necessary if the signer is identified in the application as a corporate officer, corporate general manager, partner, or as the owner (sole proprietor). Documented signature authority such as Power of Attorney, or appropriate corporate documents disclosing the person's authority, is required for any other person to sign the application, to represent an applicant or licensee in administrative conferences or hearings, to sign correspondence, or to receive information on behalf of the applicant or licensee.

99.   VARIANCE REQUESTS. Variances from the requirements of regulations must be submitted in accordance with 27 CFR 555.22. All variance requests, including those for recordkeeping, must be prepared in letter form, from a responsible person, addressed to the Chief, EIPB and submitted directly to EIPB via e-mail at eipb@atf.gov. If the area office receives the variance, the IOI may provide a recommendation channeled through their AS and, if appropriate, DIO, and submit the variance request through Spartan. The IOI will not be able to submit the assignment in Spartan until the variance request has been addressed by EIPB. When storage magazines do not meet the standards prescribed by the regulations, but are constructed substantially equivalent to the standards, the applicant may submit a request for a variance in accordance with 27 CFR 555.22. A variance cannot be approved until after the license or permit has been issued.

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 108 of 190 PageID #: 352

(a) **Note**: If the magazine meets one of the construction standards outlined in ATF Ruling 76-18, 27 CFR 555.207 for Construction of Type 1 Magazine, and 22 CFR 55.208 for Construction of Type 2 Magazine, no variance is needed.

(b) The variance request must explicitly describe the proposed alternate method or procedure and the reasons for such. The applicant should provide the following:

Name, address, license or permit number, phone number, and email address of the person making the request.

Any other information that could assist ATF's decision with the request.

If the request is storage related, pictures that address the specific storage method involved in the request, e.g., magazine, locks, location, surrounding structures, etc.

(c) EIPB has final decision making authority over variance requests. IO field personnel do not have the authority to issue any variance approval letters. A response will be written by EIPB and sent to the applicant with copies forwarded directly to the DIO, and Chief, FELC. If the variance is approved, EIPB will outline the conditions of the variance for the applicant. If the variance is disapproved, EIPB will advise the applicant as to why the variance cannot be granted. Explosives cannot be stored in a non-compliant magazine while the variance is being considered.

100. <u>SUSPICIOUS ACTIVITY REPORT/REFERRALS</u>. Suspicious Activity Report (SUS) and Referrals must be generated in Spartan. SUSs are for use to forward information to CGIC for further review and dissemination. Referrals are for use to forward information to outside agencies (local, state and other Federal agencies). SUS and referrals will be generated in accordance with <u>Chapter F, Related Inspection Information</u>, and in this manual.

101. – 120. RESERVED

CHAPTER E. EXPLOSIVES COMPLIANCE INSPECTIONS (ECI)

121.  GENERAL. This chapter establishes guidelines and procedures for conducting
      explosives compliance inspections (ECI). A compliance inspection is conducted to
      determine if a licensee/permittee is complying with Federal laws and regulations and to
      detect and prevent the diversion of explosive materials from legal to illegal commerce.
      IOIs should seek to maintain a cooperative relationship with industry members. This
      relationship will help the IOI gain valuable information concerning operations and
      activities. This is not meant to detract from the focus of ATF's mission to reduce violent
      crime and protect the public. Many of the inspection steps noted, such as the review of
      internal controls, deal with voluntary measures that the industry member could take to
      help reduce violent crime and protect the public through partnership with ATF.

      a.  IOIs may use the Explosives Licensee Inspection Quick Reference Guide and
          the Explosives Permittee Inspection Quick Reference Guide to assist in
          conducting inspections of explosives licensees and permittees. However, the
          guidelines and procedures outlined in this chapter must be followed. (Also, refer
          to Fireworks Inspection Quick Reference Guide.)

          **Note:** Before conducting these inspections the IOI should review Chapter I,
          Inspection Safety Procedures, and Chapter J, Internal Control Guidelines. In
          addition, IOIs must be familiar with the terminology commonly used in the
          explosives industry before conducting a compliance inspection. (See Explosives
          Definitions and Terms.)

      b.  Unless otherwise directed, all of the inspection procedures contained in this
          chapter must be followed.

      c.  Assignment of a compliance inspection is based upon:

          (1)  The statutory requirements of the Federal explosives laws, as amended
               by the SEA;

          (2)  Established priorities in the current domain assessment;

          (3)  The Area Supervisor's (AS's) judgment; or

          (4)  A request by the SAC, DIO, ATF Headquarters, or another field division.

      d.  When IO is notified by CE that a licensee or permittee is under investigation, the
          following actions will be taken:

          (1)  IOIs shall verify through the FLS that a Special Attention Flag (SAF)
               has been placed on the license/permit. If the licensee or permittee is
               under the Mine Safety and Health Administration (MSHA) jurisdiction,
               the DIO will consult with the SAC and determine whether MSHA will be
               notified.

          (2)  The SAC, DIO, and/or AS will be consulted before the FELC takes final

100

action on issuing a renewal license/permit.

(3)     No information regarding a flagged license will be provided outside of ATF without approval of the Chief, FELC and the division SAC.

(4)     IOIs may not conduct any inspection of a licensee or permittee who is under investigation by CE without the concurrence of the SAC.

e.     MSHA conducts inspections of mine and quarry operators holding Federal explosive licenses or permits. MSHA has agreed to inspect the underground storage at these facilities for compliance with storage regulations pertaining to safety and security. MSHA will cite operators for violations of 27 CFR 555, and provide violation information to ATF. ATF will inspect above- ground storage and associated DSMT records, as well as all other remaining parts of the explosives operations. ATF is responsible for any license or permit action under 18 U.S.C. Chapter 40. See ATF MSHA MOU.

**Note:** MSHA will not examine any records pertaining to acquisitions or dispositions, nor any information pertaining to Conduct of Business regulations prescribed in 27 CFR Part 555 Subpart F.

MSHA provides inspection results information to EIPB, which in turn, will forward the information to the applicable DIO.  ATF shall ensure the violations cited were corrected by contacting the licensee or permittee if MSHA does not document that the violations have been corrected. If the MSHA inspection was result of a referral from ATF, the violations cited by MSHA shall be entered into the site inspection section in Spartan. If MSHA initiated the inspection on their own, the DIO shall make a determination if the results of the MSHA inspection would warrant or mandate an ATF inspection. If an assignment is issued, the MSHA violations shall be entered in the site inspection section in Spartan of the assigned ECI. Refer also to the ATF MSHA MOU.

It is important that ATF ensures that all violations are corrected. For example, if MSHA cites an underground storage violation, verification that the violation has been corrected can be accomplished by one of the following procedures:

(1)     Request that MSHA re-inspect the underground magazine to confirm correction;
(2)     If (1) is not possible, ask the licensee/permittee to take a photograph to show the violation has been corrected;
(3)     If (1) and (2) are not possible, a responsible person of the licensee or permittee shall provide a written statement certifying that the violation has been corrected and, if applicable, attach any work order or invoices for parts or equipment received or used to correct the violations.

122.   PURPOSE.  The purposes of an explosives inspection are to:

a.     Determine if a licensee or permittee is complying with Federal laws and regulations.

101

b.    Ensure the integrity of record systems to facilitate the tracing of explosives.

c.    Ensure the safe and secure storage of explosives.

d.    Prevent and detect criminal diversion and misuse of explosives.

e.    Investigate and detect thefts and illegal diversion of explosives.

f.    Identify areas of weakness and vulnerability in security and internal controls in order to prevent prohibited persons and terrorists from obtaining explosive materials.

**Note:** Many of the security and internal control measures are voluntary and not required by regulation. (Refer to Chapter J, Internal Control Guidelines.)

123.    SAFE EXPLOSIVES ACT (SEA) REQUIREMENTS.

a.    Federal explosives laws, as amended by the SEA, require that ATF must verify "by inspection" that applicants for user permits and licenses have places of storage for explosive materials that satisfy the standards of safety and security set forth in the regulations. The SEA also requires onsite inspection of places of storage of all new and renewal applicants for user permits and licenses, but not of limited permittees.

b.    In order to ensure compliance with the SEA requirements, a full inspection will be conducted at renewal time. Inspections conducted up to 12 months prior to the renewal date meet this requirement. These inspections will include verification of storage as required by the SEA and all other aspects of a full inspection.

c.    If a full inspection has been conducted within the 12 months prior to the renewal date of the license or permit and no significant violations are disclosed, the field office should recommend approval of the renewal application upon receipt from the FELC and no inspection should be initiated. If there is a need to verify the status of responsible persons or employee possessors, a "recall inspection limited scope" may be conducted prior to approval of the renewal. In cases in which the recent SEA compliance inspection resulted in significant findings or violations, a recall inspection should be conducted at the time of renewal or earlier, as appropriate.

**Note:** There is no 12-month mandatory waiting period for conducting an explosives recall inspection as there is with firearms.

d.    Inspection procedures are different with respect to limited permittees. Upon receipt of an original application, or at the time of renewal, ATF may verify proper storage via telephone conversation, letter, or other means deemed appropriate. Places of storage for limited permit applicants can only be physically inspected either at the time of the original application or at the time of renewal. Such visual inspection may take place only once every 3 years. Inspection of the renewal

102

applicant's records may be conducted on a voluntary basis only.

e.  When fulfilling the SEA requirements of fireworks licensees and permittees (3-year cycle), a SEA compliance inspection is required. However, during peak seasons of high production and inventory (i.e., May, June, and July), these inspections should primarily focus on safe storage along with a cursory records review. This review would include Table of Distances, magazine construction, and inventory verification. Inventory verification encompasses the reconciliation of DSMT records with the physical inventory. If there are indications of public safety issues or a history of noncompliance (i.e., a previous warning letter or warning conference), a full compliance inspection may be conducted. During the off-season, a recall inspection limited scope must be issued and an extensive recordkeeping examination and internal control evaluation conducted as this is not done during peak season. This process allows ATF to focus on public safety issues and meet the SEA requirements. It is also less intrusive to the industry members' business operations during their busy season.

124. INSPECTION OF ATF MAGAZINES. Refer to Chapter F, Related Inspection Information, for guidance.

125. CONDUCTING ECI

    a.  General Pre-Inspection Procedures

        (1)  Review the assignment, any special instructions, attachments, business information and references noted in Spartan.

        (2)  The IOI shall review the licensee's or permittee's compliance history to include variances in N-Spect or Spartan. Plat plans of the licensee's or permittee's premises should also be reviewed. Original applications and subsequent amendments may provide background information on hours of business, responsible persons, etc. If needed, the IOI should contact the FELC for pertinent background information.

        (3)  Query the FLS database to ensure that the licensee or permittee is currently active and to check for any special attention flag (SAF).

        (4)  Query N-Force and contact the appropriate CE office for any open CE investigations.

        (5)  Query the Automated Customs System through the contact person in the field division or the Firearms and Explosives Import Branch to determine if the licensee or permittee has imported any explosive materials.

        (6)  Review the United States Bomb Data Center, National Explosives Tracing Center report to determine whether the licensee or permittee reported any thefts or losses. For assistance on how to request an explosives trace refer to USBDC Explosives Tracing.

103

(7)    A review of past inspections and current operations shall be conducted to determine if an early morning inspection is necessary and if additional IOIs are needed. If the licensee/permittee or location is a known security risk, contact the AS to determine the appropriate course of action.

(8)    At times, it may be necessary to determine if product is being improperly stored overnight in a manufacturing or processing area, on trucks, or in an unapproved storage facility. When an explosive licensee or permittee is known to begin operations early in the morning, prior to the stated business hours, the IOI may begin an early morning inspection with the approval of the AS. When this occurs, the IOI should arrive at the premises early in the morning and commence the inspection when the proprietor begins operations. Generally, if a licensee or permittee is conducting operations at the business premises, they are considered to be open for inspection purposes. An early morning inspection should verify the following:

   (a)    Pre-loaded trucks are not being left unattended overnight not in compliance with ATF Ruling or variance.

   (b)    No finished products are left overnight in a process building or area.

   (c)    Explosives removed from magazines are properly accounted for in the DSMT records as required by regulations.

(9)    Determine the proximity of any safe havens. Refer concerns about the misuse of safe havens to the EIPB.

(10)   Under certain circumstances, the IOI may request that the AS consider a team approach to conducting inspections, such as industry members with large, complex, or sensitive operations. The exact number of team members will be determined by the AS based on the industry member's operations. Conducting a team inspection should reduce the timeframe in which the field work is conducted, as well as facilitate a more thorough physical inventory and review of records. Additionally, this type of inspection provides a training opportunity for less experienced IOIs.

(11)   Verify the licensee/permittee has notified the appropriate fire safety authority having jurisdiction in the locality where explosive materials are being stored per 27 CFR 555.201(f). **NOTE:** If the IOI has concerns that contacting the local fire safety authority may affect the unannounced ECI, the IOI can just select continue in Spartan and skip this step. However, the IOI must complete the verification with the fire safety authority before the IOI can submit the site inspection in Spartan.

b.    Spartan Pre-Inspection Procedures

This chapter is not intended to be a Spartan guidebook. The IOI will utilize all Spartan resources available (e.g., Spartan toolkit, FAQs and field division POCs for guidance).

104

**Note**: All information entered into Spartan is retained in the history, even upon deletion. This information could be discoverable or released in a FOIA request.

(1) <u>Review assignment</u>

    a.    Review assignment and special instructions noted in the assignment. The AS may provide additional information or request specific tasks so IOIs should always review them. Special Instructions can be accessed from the Initial Assignment Overview Screen in Spartan.

    b.    If the licensee/permittee has explosives storage magazine(s), ensure an explosives site inspection (SI) is created for each location.

(2) <u>Eligibility Verification</u>

    a.    Documentation and confirmation of the eligibility verification information is required in Spartan, and IOIs shall do this before the actual field visit to meet with the licensee/permittee.

    b.    Research and verify all applicable eligibility items such as: Business Information, Property Ownership, Trade Name/DBA, Rental/Lease, and Contingency Storage if applicable. The IOI must enter contact information or upload a verification document for all applicable eligibility items. Verification should be from external sources and not information derived from the licensee.

    c.    For Contingency Storage, the IOI must enter the RDS key of the contingency storage provider in Spartan. The IOI may delay contacting the person providing the contingency storage to verify arrangements, particularly if there is concern that the licensee/permittee may get advance notice of the upcoming inspection. The actual verification of contingency is not required until the final audit stage in Spartan. At that time, the IOI is required to enter a contact (company, name and phone number of person) or upload an attachment (contingency agreement) in Spartan. The IOI shall verify that the contingency storage has been inspected and approved within the past 3 years. If not, it must be inspected. Determine if multiple licensees or permittees are using the same contingency storage and ensure that the total amount of explosives that could be stored would be in compliance with the Tables of Distances.

    d.    If the IOI does not confirm eligibility verification, an action item is created. The IOI cannot submit the inspection if there are any Action Items with an "open" status. The IOI must resolve all action items. See <u>Completing Action Items for Inspections</u>.

e.  Verify Responsible Persons – Conduct NCIC and NLETS queries on all responsible persons and document the date conducted in Spartan. Record the FBI and/or SID number in Spartan if a criminal record is disclosed. Notify area supervisor if there is any information that may indicate that an RP is prohibited and upload the criminal history information in Spartan. If appropriate, complete a Suspicious Activity Report and forward it to the CGIC. Background checks that do not result in prohibiting information must be discarded immediately.

(3)  Location Preparation

a.  Plan Onsite Visit

(1)  Prior to commencing an onsite inspection, the IOI must plan an unannounced visit to the licensee/permittee or schedule an interview with a responsible person and document the date and time of the visit/interview in Spartan.

(2)  The IOI will conduct the inspection during actual business hours unless consent is received from the licensee/permittee. Generally, if a licensee or permittee is conducting business operations at the premises, they are considered to be open for inspection purposes. The actual business hours may be different than the hours of operation stated in FLS. For a discussion of "actual" business hours, refer to Chapter F, Related Inspection Information.

(3)  Advance notification will not be given prior to conducting explosives compliance inspections except under extenuating circumstances. When prior notification is necessary, such notification will be made as close to the inspection date as feasible. Prior notification must be approved by the AS and documented in Spartan including the reason it was done.

Some examples include licensee/permittee who operates a seasonal business or a company with irregular business hours in a rural area that would require several hours of travel. In addition, a Department of Defense DOD) contractor will generally be given 45 days advanced notification of the inspection. Any deviation from this advanced notification requires DIO approval. For additional information, please refer to the DOD Compliance Inspection Work Program, Acronym and Contact list.

106

(4)     The IOI should log all unsuccessful attempts to conduct the onsite inspection or contact the licensee. After logging three unsuccessful attempts, Spartan will prompt the IOI to initiate abandonment procedures.

c.     General Onsite Procedures

(1)     The IOI shall conduct himself or herself in a professional manner at all times and seek to maintain a cooperative relationship with the industry member. The IOI will identify himself or herself by displaying their Bureau issued credentials. **Note**: Credentials shall not be photocopied.

(2)     Once an inspection is initiated, the IOI should complete an inspection without interruption, if at all possible. The timely completion and submission of the inspection is critical. (Refer to Chapter F, Related Inspection Information for required timeframes for completing inspections.)

(3)     A break in the inspection should only occur due to circumstances beyond the IOI's control. If an interruption in the inspection occurs, the licensee/permittee should be provided with an approximate date of when the inspection will resume and the reason for the delay. In addition, the AS must be advised of the reason for any delays.

(4)     The IOI must not sign any document which releases the licensee or permittee from any type of liability (e.g., physical injury) sustained at the business premises.

(5)     In the event a licensee/permittee denies access to the licensed premises, the IOI will observe the following guidelines:

(a)     Ensure that the premises to which access was denied is listed on the ATF F 5400.13/5400.16, Application for Explosives License or Permit, stated by the licensee or permittee to be the business premises. The IOI must physically visit the business premises, display his or her credentials, state who he or she is and the purpose of the visit. The IOI must make it clear that he/she is requesting access to the business premises pursuant to an ATF inspection. The business premises include places where records are stored. (See definition in 27 CFR 555.11.)

(b)     Once the licensee or permittee refuses entry to the business premises, including places of storage, during business hours, the IOI must clearly request entry to the business premises to inspect the required records and inventory. If the licensee or permittee continues to deny entry and access to the business premises, the IOI must inform the licensee or permittee that the continued denial of entry and access is legal grounds for revocation of the license or permit. The licensee or permittee must be provided with the specific law and regulation citations that have been violated (i.e.,

107

27 CFR 555.24).

(c) If the licensee or permittee continues to refuse entry and/or access to the business premises, the refusal will be considered willful. The IOI will immediately withdraw from the premises and contact the AS for the appropriate course of action, such as obtain approval from the DIO to obtain an inspection warrant or initiate revocation proceedings. The IOI must write out a short statement that documents the licensee's refusal to permit entry and/or access to the business premises. The statement must reflect the date, time, the licensee's or permittee's name, address and license or permit number. The IOI will sign the statement, give a copy to the licensee or permittee and upload the statement in Spartan. Depending on the circumstances (e.g., a hostile licensee), the licensee's or permittee's copy may be sent via certified mail. In addition, the IOI must contact his/her AS for instructions on whether to remain near the site to observe any possible illegal operations.

(6) If an inspection remains open 30 days after the field work is completed, the lead IOI will submit a status report to the AS. Thereafter, this status report will be submitted on a weekly basis until the inspection is completed. The AS may grant an extension for a status report update to be every 30 days. The status report must include the reason(s) for delay and the anticipated completion date.

(7) Generally, the period of review will be the 1-year period from the start of the inspection. In the case of a recall inspection, the review period shall always begin with the end date of the last inspection.

(8) Perform Onsite Work

(a) Conduct of Business

1. Verify the license or permit is posted and is of the proper type for the operations conducted.

2. Obtain a list from the licensee or permittee (FEL or FEP) of all responsible persons (RPs) and employees who are authorized to possess explosive materials (employee possessors/EPs). Compare this list with all persons cleared by ATF to possess explosives and note any discrepancies. Refer to Background Check Guidelines and the Mary 27, 2005 memorandum titled Use of TECS/NCIC/NLETS and NICS in FEL Inspections for guidance on conducting OpenFox queries.

a. If additional RPs are identified, ensure that the licensee or permittee provides written notification to the FELC of all required identifying information. A copy of the notification shall be obtained and

108

IO Manual
(October 2019)

uploaded in Spartan.

**Note:** Fingerprints cards and photographs must be submitted upon renewal. Conduct preliminary OpenFox queries and if prohibitive information is disclosed, notify FELC and CE as appropriate, after consultation with the AS.

b.    Ensure that all EPs are reported upon renewal. Ensure that the proprietor is aware that if additional EPs are added after renewal, ATF Fs 5400.28, Employee Possessor Questionnaire, must be submitted within 30 days of the EP's employment date. Conduct preliminary OpenFox queries and if prohibitive information is disclosed, notify FELC and CE as appropriate, after consultation with the AS. Copies of completed forms must be uploaded in Spartan. Under no circumstances may an IOI disclose to a licensee or permittee the reasons why an EP is prohibited.

c.    If a RP or EP has been removed by the FEL/FEP, ensure that the licensee or permittee notifies FELC in writing and obtain a copy of the notification, and upload it in Spartan.

d.    Conduct random OpenFox queries on all RPs and/or EPs to determine if any individuals have become prohibited since the last background check was completed by ATF. If prohibitive information is disclosed, notify FELC and CE, as appropriate, after consultation with the AS.

e.    If information is obtained during the inspection that a RP or EP may be prohibited, conduct OpenFox queries to ensure that no disabling factors have developed since issuance of the license or permit.

f.    If you encounter a RP or EP who may be a prohibited alien, initiate a Citizenship and Immigration Services query through OpenFox (IAQ query) to determine the person's immigration status. If it is unclear whether a person's status makes him/her a prohibited person, contact your field division's coordinator, who will follow up with the EIPB.

3.    As appropriate, persons observed handling or possessing explosive materials should be compared to the list of personnel authorized to possess explosives. Verify that each is a RP or is on the current list of EPs.

4.    Ask the licensee or permittee to voluntarily disclose whether there have been any suspicious job applicants or

109

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 119 of 190 PageID #: 363

employees leaving employment under suspicious circumstances. With consent, obtain identifying information about these individuals, consult with the AS, and prepare a suspicious activity report to CE as appropriate.

5.   For explosives permittees, verify that no explosives are being distributed except transfers of surplus stock.

6.   For explosives licensees, verify that the licensee is obtaining certified copies of licenses or permits prior to distributing explosives.

   **Note:** Although not required to be maintained, the IOI should examine these copies, if available. Verify that the signature is original and that the license was current at the time of purchase. Examine the copy to determine if it has been altered in any way. If it is determined, or appears that a certified copy has been altered or is fraudulent, refer to CE after consulting with the AS.

7.   For licensees, verify that a certified statement of intended use is being obtained from purchasers prior to distributing explosives to licensees or permittees in accordance with 27 CFR 555.103(b)(2)(iii).

8.   Verify that licensees are properly identifying individuals prior to distributing explosive materials.

9.   Verify that the licensee is obtaining a list of employees authorized to receive explosive materials. Verify that the licensee or permittee is retaining this list as required by 27 CFR 555.103(b)(2)(ii) and 555.105(b)(5).

10.   Verify that the person accepting delivery of explosives is on the list of persons authorized to accept delivery, and that the person's identity has been verified using a Government-issued photo ID in accordance with 27 CFR 555.11, 555.103 (b)(2)(ii), and 555.105 (b)(6)(i).

11.   For explosives licensees, verify that the licensee is obtaining, completing, and submitting ATF F 5400.4, Limited Permittee Transaction Report, for all distributions of explosives to limited permittees in accordance with 27 CFR 555.105(b)(2). Verify that such distributions have only been made to limited permittees located in the same State. Utilize FLS queries to obtain information about permittee coupon usage, licensee coupon redemption, monthly and daily flagged coupon usage, and lost or

110

stolen coupons by State or by county.

12.   If unusual or suspicious activity is suspected, select a sample of explosives purchasers who had explosive materials delivered to them by common or contract carrier. Conduct a forward trace inspection on these purchasers to ensure that transactions have been made in compliance with the laws and regulations. Obtain approval from both the AS and DIO prior to conducting any forward trace inspections. Document the approval in Spartan. Remember that onsite inspections for limited permittees are limited to once every 3 years. Therefore, inform any limited permittee that any response to a forward trace is voluntary and not part of a mandatory inspection. (Check Department of Transportation (DOT) regulations for common contract carriers.)

(b)   Safety Measures. When inventorying explosive materials, IOIs must follow the safety procedures outlined in Chapter I, Inspection Safety Procedures.

**Note:** IOIs who have not completed the explosives handling training course must not physically handle any explosive material or device. Unless the IOI has received this training, all explosive materials are to be handled only by the licensee or permittee, their representative, or other IOIs who have received the training.

(c)   Internal Controls Review. Discuss security measures as appropriate. Encourage the proprietor to keep all magazine keys in a secure area and determine if the licensee or permittee can account for all of the magazine keys.  Security of keys is a voluntary internal control.

Review the Safety and Security Information for Explosives Licensees and Permittees. (See ATF P 5400.15.)

(d)   Storage Examination

1.   Determine the classes of explosives that the licensee or permittee manufactures, imports, distributes, and/or uses.

2.   Ensure that all explosive storage facilities are inspected (including magazines not currently in use) for compliance with 27 CFR Part 555, Subpart K – Storage, and ATF applicable storage-related rulings.

**Note:** The storage facilities of a limited permit holder cannot be physically inspected upon renewal if within the preceding 3 years ATF has verified that the magazine(s) meets the requirements of 27 CFR 555 subpart K.

111

However, if there is reason to believe that there is a problem with storage by the limited permit holder, ATF may physically inspect the storage facilities with the approval of the limited permittee. Alternatively, a warrant could be obtained to inspect the premises.

3.　Other than general use buildings, examine **all** possible storage areas and onsite structures. Be alert for storage in adjoining structures and processing areas.

4.　Record the type and location of all off-site storage locations. This should include construction sites and shot site services, if appropriate. Inspect the, or create a, site inspection (SI) for all off-site storage locations.

5.　Verify that the licensee or permittee inspects each magazine at least once every 7 days.

6.　The IOI shall ensure that all magazines comply with the requirements in Subpart K – storage. (Consider using magnets or mirrors to ensure that the underneath of type 4 and type 2 magazines are not constructed of wood, and use thickness gauges, ultrasonic or manual, to accurately measure steel thickness. If you cannot determine the number of tumblers in a padlock, ask the licensee or permittee for documentation. Measure the diameter of the padlock shackle and ensure that it is case hardened or boron alloy).

**Note:** When a storage magazine does not meet the standards prescribed by the regulations, but is constructed substantially equivalent to the standards, the licensee or permittee may request a variance in accordance with 27 CFR 555.22. If the magazine meets one of the construction standards outlined in ATF Ruling 76-18, no variance is needed.

7.　With the consent of the licensee or permittee, the IOIs shall place labels with unique ID numbers on the interior walls of industry owned magazines, except Type 3 day boxes. These magazine ID numbers will be tracked by each area office. (See Magazine ID Program Phase 2 and Magazine Tracking Log.)

8.　Obtain GPS coordinates for each magazine (excluding day boxes) or building containing a magazine.

9.　Ensure that all buildings and storage facilities are reflected in the plat plan provided by the licensee or permittee.

112

a.  Plat plans provided shall include distances between all storage magazines, inhabited buildings, public highways, passenger railways, fireworks plant buildings, fireworks process buildings, fireworks non-process buildings, fireworks shipping buildings, and other facilities which could be damaged if the magazine exploded.

b.  Verify the accuracy of the distances stated on the licensee's or permittee's plat drawing for compliance with TOD requirements and document the means of measurement. (See Table of Distances Chart, and paragraph 164 ATF Measuring Equipment, located in Chapter F, Related Inspection Information.)

c.  Barricades should be depicted on the drawing. Ensure that barricades meet the definition of barricade per 27 CFR 555.11, if used in applying TOD.

d.  The drawing should include a complete description of the entire area surrounding the magazine even if the area surrounding the magazine is not part of the licensee's or permittee's premises (e.g., wooded area located north of the magazine may not contain any magazines or inhabited buildings, but should still be identified on the drawing). Provide a description of all public facilities (e.g., gas stations, fast food restaurants, and churches) in the immediate area that could potentially be damaged by an explosion (even if outside TOD requirements).

e.  For manufacturers, the IOI shall identify "in process" and manufacturing areas. Verify that the proprietor is not using these areas for storage.

f.  The drawing must include the following certification statement: "This is a true and accurate drawing of my premises." The licensee or permittee must sign and date the certification.

10. If the IOI determines the existing drawing is accurate, have the licensee or permittee re-certify the plat with a current date and signature. If corrections to the plat are required, have the licensee or permittee make the necessary corrections and re-certify the drawing with a current date and signature.

11. If the licensee or permittee is using a magazine acquired

113

since the last inspection, except for magazines used for other than temporary (under 24 hours) storage and mobile or portable type 5 magazines, determine whether the proper notification was made to ATF. (See 27 CFR 555.63.) If the licensee or permittee has not notified ATF, the IOI shall obtain a notice from the licensee or permittee and include this violation on the Report of Violations.

12.     Determine what inventory controls are in place to ensure that quantity and TOD restrictions are not exceeded.

13.     Verify that all outdoor magazines meet TOD requirements. (See 27 CFR 555.218 – 555.224, and when blasting agents or ammonium nitrate is located near high explosives, see Open Letter to Federal Explosives Licensees and Permittees Table of Distance Requirements dated September 17, 2012.)

**Note**: When citing TOD violations, use 27 CFR 555.206 and **not** the tables of distances in 555.218, 555.219, and 555.220. The only exception would be fireworks processing buildings distances in 555.222 and 555.223; those violations shall be cited using 555.221(a).

14.     Determine the maximum quantity of explosives allowed to be stored in each magazine according to the appropriate TOD.

a.     If TOD violations are identified, it may be possible to correct the violation by limiting the amount of explosives stored to the amount allowed by the TOD as opposed to moving the magazine.

b.     If any two or more magazines are separated by less than the minimum distance specified by the applicable TOD, such magazines will be considered as one magazine. The shortest distance from any point of the combined magazines to any other feature will govern the quantity restriction using the applicable TOD.

c.     The quantity of explosives materials stored in a detonator magazine will govern the distance required between detonator magazines and other magazines containing explosive materials.

15.     When explosives storage violations are found, the IOI must:

a.     Document any storage that is not in a compliant magazine.  If the licensee or permittee refuses to

114

IO Manual
(October 2019)

allow access to any structure on the premises, document the refusal and contact the AS. The IOI may inspect any building/structure that constitutes the business premises. This can be gleaned from the application and through an interview of the licensee or permittee. If there is a question as to what constitutes the business premises, the IOI shall contact the AS and division counsel. When the business premises include a residence, a clear delineation as to what constitutes the business premises needs to be established. Any questions in this area shall be addressed to division counsel.

b.    Advise the licensee or permittee to take immediate corrective action. Contact the AS for guidance, if corrective action is not or cannot be taken immediately.

c.    Dynamite containing nitroglycerin may deteriorate with age. If dynamite sticks show obvious beading or are sweating, **do not** request that deteriorated explosives be moved. The IOI must immediately move to a safe distance from the magazine and contact the AS to determine the appropriate course of action, (e.g., notify CE and/or State or local authorities). The IOI will advise the proprietor to consult with the manufacturer or distributor for advice on proper and safe disposal procedures.

**Note:** All public safety violations involving explosives must be corrected before the completion of the inspection. (See Public Safety Violations.)

16.    Unsafe Storage and Seizure of Explosives Materials

a.    If explosives are being stored in a manner that places the public at risk and all attempts to reduce that risk have been exhausted (e.g., moving the excess explosives to an alternative storage site), and an assessment of the risk of moving the explosives has been made, seizure action and possible emergency destruction may be necessary. Field division management will contact local division counsel and the Asset Forfeiture and Seized Property Division (refer to ATF O 3400.1D, Property Taken into Bureau Custody and ATF Property Manual) regarding seizure and contact the Explosives Enforcement and Training Division with NCETR for guidance regarding possible emergency

115

destruction actions. If explosives are seized, generally the recommended administrative action will be revocation.

**Note:** IOIs are **not** authorized to seize or to take abandonments of explosive materials.

(e)   Records Review

1.   IOIs will conduct an examination of the required explosives records and inventory to determine if the inventory is properly accounted for and to determine whether the licensee or permittee is in compliance with the pertinent laws and regulations.

2.   The examination should also verify that storage limits were not exceeded during the inspection period and that product was not lost, stolen or diverted, and any missing or stolen product was properly documented and reported to ATF.

> **Note:** For limited permit holders, there is no authority to review the required records. However, if the permittee gives voluntary consent to review the records, ensure that voluntary consent is documented. If consent is not obtained, ATF F 5400.30, Intrastate Purchase of Explosives Coupons, and ATF F 5400.4, Limited Permittee Transaction Reports documenting sales to the limited permittee, may be examined at the premises of the supplier.

3.   IOIs must review the required records to ensure that they contain all required information and are completed in a timely manner. Required records include the following:

   a.   Acquisition, importation and manufacturing records.

   b.   ATF F 5400.4 forms.

   c.   Statements of intended use of explosives.

   d.   Distribution records.

   > **Note:** Permittees are required to maintain records of distributions of surplus stocks.

   e.   Record of explosives manufactured for own use (Exception: A licensed manufacturer is exempt from the recordkeeping requirements of 27 CFR 555.123(d) if the explosives materials are

116

manufactured for his/her own use and used within a 24 hour period at the same site.)

     f.     Separate DSMT records for each magazine.

4.     Verify that the required records are maintained on the business premises for at least 5 years from the date of the transactions. If records are being maintained for more than 5 years, encourage the licensee or permittee to surrender the records that are more than 5 years old to the IOI. The IOI shall then forward those records to the NTC.

5.     If the DSMT records are kept at a central location, verify that separate records are maintained for each magazine.

6.     Verify that the acquisition and disposition records agree with the DSMT records and instruct the licensee or permittee to resolve any discrepancies. Use other source documents to verify receipt and usage, if access is granted by the licensee or permittee.

7.     Verify that the licensee or permittee is taking an annual inventory, recording the results in the DSMT, and resolving any discrepancies.

8.     Using accurate DSMT records and/or a current physical inventory, determine whether the licensee or permittee has exceeded the amount of explosives allowed by the appropriate TOD during the inspection period.

9.     Verify that the ATF Fs 5400.4 are being retained in chronological or alphabetical order.

10.    Select a sample of ATF Fs 5400.4 and verify proper execution. Be alert for indications of prohibited transactions, such as out of State distributions, more than six distributions to the same permittee, and no attached ATF F 5400.30. If prohibited activity is suspected, query the FLS database for coupon usage or theft and prepare referrals as appropriate.

11.    If the inspection is of a permittee, determine whether a distribution of surplus stock of explosive materials has occurred. If appropriate, verify the licensee or permittee to whom surplus stock was sold or returned, the quantity of explosive materials involved, and the date of the transactions. Discuss with the AS whether an inspection of the distributee is necessary.

117

12.     Select a sample of commercial records, with the consent of the licensee, to verify proper receipt and disposition entries in required records.

        **Note:** If commercial records are being used as the required ATF records, the licensee would be required to grant access.

13.     Determine if the licensee exports explosives, and verify that exports were properly recorded and in compliance with the Arms Export Control Act. If diversion is suspected, verify the explosives products exported, the quantities exported in the last year, and the countries to which they were exported.

14.     Document any unusual purchases or dispositions for possible inclusion in the forward trace program. These would include the following:

        a.     Fireworks picked up prior to the Fourth of July that were purchased by licensees/permittees who have only contingency storage; and

        b.     Large sales of display fireworks to user-limited permittees.

15.     Verify that any thefts or losses were properly reported to ATF, and correctly recorded in the required records. Compare the records with the report generated by the USBDC. Advise the licensee or permittee that a theft or loss must be reported within 24 hours of discovery. If a theft or loss was not reported, have the licensee or permittee immediately contact ATF by calling 1-800-800-3855, prepare and submit ATF F 5400.5, Report of Theft or Loss – Explosive Materials, and contact State or local authorities. Ensure the theft or loss is recorded in the DSMT records, and prepare a suspicious activity report to the appropriate CE field office.

16.     Utilize the internal control guidelines in Chapter J of this handbook to evaluate the licensee's/permittee's procedures for the ordering, receiving, selling, and accounting of explosives to determine whether transactions are properly reflected in the required records.

(f)     Workback

        1.     A workback must be conducted to verify the accuracy of the licensee's or permittee's record

118

system. A workback is a simple way to verify the totals presented. For example, start from a previously known figure, such as:

a. An ATF conducted inventory.
b. The required annual inventory.
c. The last purchase of an item or set of items.
d. Entry documents for imports.
e. Production reports for manufacturing operations.

**Note:** A workback is not required if the licensee or permittee did not have inventory at the beginning of the inspection and did not have inventory during the entire inspection period. However, if the industry member had any inventory at any time during the inspection period, regardless whether or not they had inventory at the beginning of the inspection, a workback must be conducted.

2. Add all validated acquisitions to the "previously known figure" to arrive at "a total to account for" amount. Next, add the physical inventory taken on the date of the inspection to all validated dispositions to arrive at a "total accounted for." Compare the "total to account for" to the "total accounted for" amount. These figures should agree if the records are accurate. If the figures do not agree, additional work must be performed to identify errors in the records. Another method of conducting a workback accounting is to add all validated acquisitions to the "previously known figure" (as previously described) to obtain a "total to account for" figure. Next, subtract all dispositions (including recorded losses) from the "total to account for" to arrive at the "total accounted for" figure. This number ("total accounted for") must agree with the physical inventory.

**Note:** There is no set number on how many workbacks should be conducted. Factors to consider include licensee's or permittee's internal controls, compliance history, number of suppliers, size of inventory (different kinds or types of products), unusual or large orders/shipments, products susceptible to theft/loss and that present higher risk for use by criminals/terrorists, and if inspection will result in administrative action. Consult with the AS as appropriate.

3. Spartan automatically saves the workbacks conducted if a discrepancy is disclosed, which results in a violation. For workbacks that do not disclose a discrepancy, the IOI is

119

not required to but may save it in Spartan. However, if not saved in Spartan, the IOI must document that the workbacks conducted (number of workbacks, products involved, etc.) in Spartan.

(g)     Inventory Verification

The objective of taking a physical inventory is to ensure that the materials or products in question actually exist and to test the accuracy of the records.

1.     One hundred percent inventory verification shall be conducted on all inspections where the quantity of explosives in inventory is **10,000 pounds or less** for high explosives and blasting agents (excluding detonators), and **1,000 pounds or less** for low explosives. For high explosives, 10,000 pounds equals approximately 180 cases (10,000 pounds/55 pounds per case). For fireworks, 1,000 pounds equals approximately 2,000 3-inch shells (72 per case); 1,100 4- inch shells (36 per case); 128 10-inch shells; or 83 12-inch shells.

**Note:** These values are approximate industry averages and reflect the composition found in both domestic and imported aerial shells. Variations will occur from manufacturer to manufacturer, as well as from item to item. For detonators, a minimum sample of 1,000 should be selected for verification.

2.     For inventories of high explosives and blasting agents **greater than 10,000 pounds** and for inventories of low explosives **greater than 1,000 pounds**, the IOI may select a sample of explosives for verification. The sample size should be equal to the greater of 10,000 pounds or 10 percent of the product on hand for high explosives and blasting agents, and the greater of 1,000 pounds or 10 percent of the inventory for low explosives. The sample should be based on an entire product line or type of explosives product, e.g., for display fireworks, the sample could be all 3-inch shells. Alternatively, all of the explosives within a magazine could be selected for verification.

3.     If any of the selected explosives sampled cannot be located or the required records cannot be reconciled, an expanded sample equal to twice the size of the original sample must be conducted to fully determine the extent of the inventory discrepancies. Some products will be very difficult if not impossible to reconcile, e.g., bulk inventory,

120

detonator cord, etc. Judgment must be exercised when expanding a sample based on apparent discrepancies with these products. If it is determined that the expanded sampling approach is not sufficient to identify the extent of the proprietor's inventory deficiencies, the IOI shall conduct 100 percent inventory verification.

4.      Also 100% inventory verification shall be conducted for all recall inspections where the licensee or permittee was cited for inventory discrepancies or TOD violations in the previous inspection. In addition, a full inventory generally should be conducted on all inspections that warrant a "team approach."

5.      When selecting explosives for inventory verification, consideration should be given to those explosive products that are more susceptible to being lost or stolen and which present a high risk of use by terrorists or other criminals. These products include detonators, boosters, and bags of Ammonium Nitrate Fuel Oil (ANFO), among others.

6.      When fireworks are present, refer to ATF I 5400.29, Explosives Conversion Chart for standard percentages used in determining the net weight of explosive materials in fireworks. (Under 27 CFR 555.127, fireworks quantity entries may be recorded in the DSMT by the number and size of individual display fireworks in a finished state or as the number of packaged display segments or packaged displays instead of weight.)

7.      Instruct the licensee or permittee to reconcile all inventory discrepancies against available records. This should be recorded by entering the overage or shortage in the DSMT record, entering "Per ATF Inspection," the date, and the correct balance.

8.      If an inventory discrepancy is the result of a theft or loss, verify that it is properly reflected in the licensee's or permittee's records and ensure that it is properly reported.

9.      Determine what inventory controls are in place to ensure that quantity and TOD restrictions are not exceeded.

10.     Select a representative sample of explosives on hand and verify that they have the proper manufacturer's or importer's markings. Document how the sample was derived in the narrative report. (Refer to 27 CFR 555.109.)

11.     For additional guidance on calculating explosives weights,

121

refer to <u>ATF I 5400.29, Explosives Conversion Chart.</u>

    12.    If criminal activity is suspected, the IOI shall contact the AS for guidance. The AS will consult with the DIO and appropriate CE personnel.

    13.    All thefts and losses will be investigated jointly by IO and CE.

(h)    Variances (Active)

Verify compliance with any approved variances. Verify whether the variance is still needed. If the continued approval of the variance is found to hinder effective administration of the regulations or to be a threat to public safety, recommend to EIPB that the variance be rescinded and document the reasons in Spartan.

d.    Spartan Onsite Inspection Procedures

IOIs are required to bring their laptop and use Spartan while conducting the inspection onsite. Upon arrival at the proposed business premises, the IOI should tether the laptop to their iPhone and log into Spartan to ensure connectivity before meeting with the licensee. In very few exceptions such as very poor, sparse or no connectivity; Spartan technical or laptop hardware problems, or DOD inspections where electronic equipment is prohibited, IOIs are may utilize Spartan offline functions for fieldwork. IOIs can also utilize available Wi-Fi if permitted. For more information, see "<u>Use an iPhone as a Mobile Wi-Fi Hotspot</u>".

**Note**: Laptop and other electronic equipment shall not be used inside an explosives magazine.

(1)    Onsite Interview To-Do List

a.    Indicate Persons present at interview

    1.    Make positive identification of the licensee, permittee or the responsible person and verify identifying information. Indicate responsible and non-responsible persons present at interview.

    2.    The IOI shall verify and document the names and identification of all responsible persons and non-responsible persons (if applicable) present.

    3.    Document any other ATF licenses or permits held by responsible persons.

122

4. Determine if the licensee or permittee has any other ATF licenses or permits.

b. Review Licensee/Permittee Information

1. Interview the licensee, permittee or a responsible person to determine whether there have been any changes to the business structure, trade name, control, responsible persons, employee possessor, class of explosives, or qualifying documents and operations. For procedures to report changes after original qualification and for an explanation of the different types of business entities, see Explosives Licensing, and Business Structures.

2. The IOI should ask for consent to review business records, such as partnership agreements, corporate records, leases, and purchase orders. If evidence is uncovered, that confirms the existence of hidden ownership, contact the AS for further guidance.

    **Note**: Pay particular attention to those situations where the licensee's or permittee's spouse, former business associates, etc., are known to be prohibited under the law. Document the prohibited person's degree of involvement in the business. Determine if they take an active part in conducting the business or signing business records. Refer any suspected criminal activity to CE. If no criminal activity is suspected, the IOI will advise the licensee or permittee that the prohibited person cannot possess, receive, ship, or transport explosive materials.

3. Determine if the licensee or permittee is complying with other Federal, State, and local laws, such as permitting and zoning. Refer any violations to the proper authorities in Spartan.

4. If any unreported changes are disclosed, ensure that the proprietor immediately reports such to the FELC. (Refer to 27 CFR 555.54, 555.56, and 555.57.) Provide assistance regarding the filing of any required applications or notices.

5. Determine if the licensee or permittee has moved the business or operations to a new address without properly amending the license or permit as required under 27 CFR 555.54. Advise the licensee or permittee that a change of address notification to amend the license must be submitted immediately to the FELC.

6. Review responsible person information and edit accordingly.

123

Document any online presence (e.g., Twitter, Facebook, Instagram), if applicable. Add or deactivate responsible persons, as necessary.

7.     Review business calendar (days and hours of operation) and make any necessary updates. Add seasonal closing periods, if applicable.

8.     If it is determined that the licensee or permittee is inappropriately operating at a location other than the licensed or permitted premises, and that an additional license is required for these operations, notify the AS immediately (see Explosives Licensing for guidelines). The proprietor shall be advised to cease operating from the unlicensed location.

c.     Business Premises Details

1.     Record premises information to include inspection area details (areas where the inspection takes place on the premises), primary activity, physical security measures and GPS coordinates.

d.     Complete Questionnaire

1.     Licensee or Permittee Information: Describe the business activity, indicate if additional license or permit is needed, list their primary suppliers, and document any other Federal, State or local license/permit (other than ATF – e.g., state sales tax, state or local business permit, state explosives license/permit, etc.).

2.     Operational Security Measures: Indicate if the licensee or permittee has any operational security measures in place. If so, select the applicable measures.

3.     Business activities: Select all applicable business activities conducted by the licensee or permittee (must select at least one).

e.     Complete Supplemental Questionnaire (Optional)

1.     If the IOI suspects hidden ownership or other suspicious activity, document supporting information in the supplemental questionnaire. Pay particular attention to those situations where the licensee's spouse is known to be prohibited under the law.

2.     Determine any prohibited person's or unreported person's degree of involvement in the business. This includes, but is

124

not limited to: reviewing business records such as: partnership agreements, corporate records, purchase orders and leases as well as identifying who has access to security codes, keys, and firearms. Be aware of employees who are known to be prohibited or associated with a previously denied, revoked or surrendered license. Contact the AS and ATF division counsel for guidance. (Refer to Indicators of Hidden Ownership).

3. Notify Area Supervisor in Spartan (if applicable) if hidden ownership is suspected.

4. Notify CGIC of any suspected criminal activity. If no criminal activity is suspected, the IOI must advise the licensee or permittee that the prohibited person cannot actually or constructively possess, receive, ship, or transport explosives.

f. Suspicious Activity Report/Referrals

1. If information is disclosed during the course of the inspection involving criminal and/or civil violations the IOI will verbally refer the information to the AS and follow up with a suspicious activity report or referral in Spartan within five working days, if warranted. (See Chapter F for SAR/Referral preparation and submission guidelines.)

g. Requesting Variances

4. If the licensee's current business activities require a variance, the IOI shall initiate a variance request in Spartan.

   **Note:** If a variance request is initiated in Spartan in conjunction with an open FCI, the IOI will be unable to close the FCI until the variance request is approved or denied. A variance request may be submitted in Spartan without an open FCI.

5. If the licensee or permittee anticipates a need for a variance, the IOI shall advise the licensee to submit the variance request in accordance with 27 CFR 555.22. See Paragraph 125 g. for more information.

(2) Onsite Work to do List

a. Follow up / Action Items – Complete any follow up work if required by Spartan. Spartan will prompt the IOI to resolve or edit information that was incomplete or incorrect in a previous stage.

b. Complete Site Inspection (Storage)

125

1.   Enter GPS coordinates for the site location.

2.   Document if licensee/permittee provides contingency for other industry members.

3.   Document Magazine Custodian (name, government issued ID, address online presence, email, etc.)

4.   Complete magazine examination document (ME) for each magazine to include identifiers, structure, locks, and findings. Upload photograph for each magazine in Spartan.

5.   Review inventory for each magazine and document net explosives weight. Determine maximum inventory during inspection period and any inventory discrepancy.

6.   Enter any new magazine the licensee/permittee wants qualified as new storage.

7.   Ensure that all buildings and storage facilities are accurately depicted in the drawing provided by the licensee or permittee.

8.   Determine all storage locations have been documented on this site. If there are other storage locations, the IOI shall ensure a site inspection (SI) is created for each location. See How to Add a Magazine Site Location for more information.

9.   Verify and document that the licensee or permittee has notified the authority having jurisdiction for fire safety of any storage facilities per 27 CFR 555.201(f). Note the name and phone number of the person contacted.

(c)   Document Discrepancies

1.   The IOI shall document discrepancies (violations) disclosed during the inspection.  Spartan generates the report of violation (ROV) based on the discrepancies entered by the IOI.

2.   If the IOI has to conduct the inspection offline, it is preferred that IOIs generate the ROV in Spartan and not upload a manually completed ATF F 5030.5 (Report of Violations or ROV) in Spartan. IOIs should enter the violations in Spartan and generate the ROV to ensure consistency and accuracy in Spartan. The IOI can either email it or print the ROV and

126

mail it to the licensee or permittee. The licensee, permittee or responsible person must sign and date the ROV.

**Note:** At no time may the IOI issue an ROV if the information contained could jeopardize a pending criminal investigation.

3.      All violations must be documented in detail on the ROV to convey the specific problem areas to the licensee or permittee, and to support any future administrative or criminal proceeding that may result. If discrepancies are documented or violations are cited, the IOI will be required to document corrective action to be taken by the licensee or permittee, and the date by which the correction has to be made. If not corrected immediately, follow-up action must be initiated to ensure that the violations were corrected and to document the date of the correction. If corrected immediately, the current date should be shown.

**Note:** All public safety violations must be corrected prior to closing the inspection.

4.      The IOI has the option to email or print the ROV so the licensee has a copy to review at the closing conference. If licensee doesn't have access to email, the ROV may be assigned to another user in Spartan for it to be printed and mailed to the licensee.

5.      Prepare Theft/Loss – The IOI has the option of creating a list of unreconciled inventory discrepancies for the licensee/permittee to use in completion of an ATF F 5400.5, Reporting Thefts or Losses of Explosives.

6.      For best evidence, copies of records should be made to document omissions and errors cited, uploaded in Spartan, on the ROV. If the IOI is not able to photograph or scan the records, or does not have access to a copier at the industry member's premises, the records may be removed from the business premises with the FELs/FEPs consent for copying utilizing ATF EF 3400.23, Receipt for Property and Other Items. Upon return of the documents, the IOI must have the industry member sign and date the ATF F 3400.23 indicating receipt of the records.

(3)     Closing Conference To Do List

a.  Hold a closing conference with the licensee or permittee. Advise the licensee or permittee of the recommendation, if appropriate. Note the names of persons attending and the date of the closing

127

conference and document that in Spartan.

b.  A recall inspection will be recommended when significant public safety violations are disclosed by the inspection or there is a concern that the licensee or permittee is either unwilling or unable to take proper corrective action.

c.  Discuss the violations cited and recommend methods of compliance to avoid recurrence and the consequences of repeated violations.

    1.  The FEL/FEP or responsible person shall be given a copy of the Report of Violations (ROV). The IOI shall ensure that all corrective actions have been completed before submitting the assignment for review.

        **Note:** If the FEL/FEP refuses to sign the ROV, the IOI shall document that in Spartan.

    2.  Discuss with the FEL/FEP or responsible person the specific actions to be taken, to ensure the operations remain in compliance with the regulations.

    3.  Spartan generates the Acknowledgment of Federal Explosives Regulations. The IOI should review the form with the FEL/FEP. Have the FEL/FEP sign and date the Acknowledgment, provide them a copy. If the FEL/FEP refuses to sign, document their refusal in Spartan.

    4.  The IOI should ensure that the licensee or permittee is aware of and has access to <u>ATF P 5400.7, Federal Explosives Laws and Regulations</u>.

    5.  Provide the applicant with the address and telephone number of the local ATF IO and CE offices.

    6.  Recommend that the licensee or permittee report any suspicious activity to the local ATF field office at 1-800-800-3855 after gathering as much information as possible.

e.  Review Snapshot

    (1)  The IOI is required to review each section prior to moving forward through the inspection process.

    (2)  This is the IOI's last opportunity to make any changes to the information entered into these sections.

f.  Final Recommendation

128

(1)     Inspection Findings

    (a)     The IOI should select all applicable inspection findings identified during the inspection.

    (b)     Based on the selections made by the IOI, Spartan will identify the appropriate recommendation based on the ATF O 5440.1, Federal Explosives Administrative Action Policy and Procedures. Accordingly, it is important the IOI accurately select the appropriate inspection findings.

            **Note**: If no violations are cited, or if violations are cited that do not merit administrative action, "no inspection findings" will generally be selected. Spartan will generate the appropriate recommendation.

(2)     Recommendation/Administrative Action

    (a)     Document the details of how the violations justify the suggested administrative action if alternate recommendation in this section. If the IOI believes a recall inspection is warranted, the IOI must document the request for recall in the recommendation details.

    (b)     Recall Inspections. Generally, whenever a warning conference is recommended and approved, a recall inspection shall be conducted.

    (c)     Complete the inspection and submit to the AS.

    (d)     If required, prepare an i-Note to report a significant incident in accordance with the guidelines prescribed in Chapter F, Related Inspection Information. Refer to ATF O 3114.1A for additional guidance.

(3)     Discontinued Business

    (a)     If it is determined that the licensee or permittee is no longer engaged or is not actively engaged in business, the IOI shall determine if there is an intent to resume business in the future. If the proprietor has no intent to actively engage in the business, they should be encouraged to surrender their license or permit.

    (b)     When notification is received that a licensee or permittee intends to discontinue business operations, the proprietor should be contacted and notified about the requirements of 27 CFR 555.61 and 27 CFR 555.128. The IOI shall also inquire about the disposition of any remaining explosive materials.

    (c)     If a licensee or permittee intends to discontinue business operations, the IOI shall:

129

1.   Obtain a letter voluntarily surrendering the license or permit in Spartan.

2.   Email ATF NTC, OBRR at obrshipping@atf.gov for shipping information and forward the required records. The scope of any records examination and possible corrections to the records will be determined by the AS, prior to their submission to the NTC, OBRR. The licensee or permittee has 30 days following discontinuance of business or operations to deliver records to ATF.

(d)   If explosives are still in inventory, advise the licensee or permittee that prior to the surrender of the license or permit, the explosives materials should be consumed or transferred to another licensee or permittee. If they elect to maintain their inventory, they must continue to properly store and may not transport explosives.

(e)   In the event the licensee or permittee is succeeded by another licensee or permittee, verify the maintenance of the required records by the successor or their submission to the ATF NTC, OBRR.

g.   VARIANCE REQUEST

(1)   Variances from the requirements of regulations may be submitted in accordance with 27 CFR 555.22. All variance requests, including recordkeeping, must be prepared in letter form, from the licensee, permittee, or responsible person, addressed to the Chief, EIPB submitted via email EIPB@atf.gov. If the area office receives the variance request, the area office may submit a recommendation and forward it along with the variance request to EIPB through the AS.

**Note**: If the variance is submitted with an inspection in Spartan, the inspection cannot be closed until the variance has been addressed and resolved.

(2)   When storage do not meet the standards prescribed by the regulations, but are constructed substantially equivalent to the standards, the applicant may submit a request for a variance in accordance with 27 CFR 555.22.

**Note:** If the magazine meets one of the construction standards outlined in ATF Ruling 76-18, no variance is needed.

(a)   The variance request should explicitly describe the proposed alternate method or procedure. The applicant should provide the following:

130

1. Name, address, license or permit number, phone number, and email address of the person making the request.

2. Any other information that could assist ATF's decision with the request.

3. If the request is storage related, pictures that address the specific needs for the request, e.g., magazine, locks, location, surrounding structures, etc., and the name, address, and phone number of the local fire department having jurisdiction where the magazine is located.

(b) The IOI shall include a recommendation for approval or disapproval of the variance request. If disapproval is recommended, include the reasons for this recommendation. For additional information, see How to Request Variances, Exemptions and Determinations. A copy of the variance should be uploaded in Spartan.

(c) A response will be written by EIPB and sent to the licensee or permittee, with copies forwarded directly to the DIO and Chief, FELC. If the variance is approved, EIPB will outline the conditions of the variance. If the variance is disapproved, EIPB will advise the licensee or permittee why the variance cannot be granted.

h.   EMERGENCY STORAGE REQUEST
The primary concern in all storage matters is public safety. Before any product is moved, an assessment must be made to determine if moving the product poses a greater risk to the public than granting an emergency storage variance. ATF will only consider approving an emergency variance request if the variance provides for sufficient protection to public safety. When evaluating these requests, ATF's primary concern is the public's safety. The division management team (SAC, ASAC, and DIO) is responsible for recommending the appropriate course of action to the EIPB.

i.   REFERRALS/SUSPICIOUS ACTIVITY REPORT (SUS)

Any referrals to other Federal, State, and local agencies, and SUS to ATF CE will be made in accordance with Chapter F, Related Inspection Information in this manual.

126.   INVESTIGATIONS/REPORTING OF THEFT/LOSS.

a.   Criminal investigations initiated as a result of a reported theft or loss by an industry member must be conducted jointly with CE. The IOI will conduct an internal control review, inventory verification, and a review of the security checklist. The IOI shall include the CE investigation number and address all relevant information about how the theft or loss occurred or could have been prevented. This should include a discussion about mode of entry, how security was defeated or compromised; model and make of locks compromised, and

131

photos of the entry, including cut locks, hasp, door removals, etc.

    b.    On every inspection, it is important to advise industry members to report all thefts and losses to the Joint Support Operations Center by calling 1-800-800-3855.

127.    TRACING OF EXPLOSIVES. IOIs may be required to assist CE in the tracing of recovered explosives. These inspections should include an internal control review, inventory verification, and a review of the security checklist, when applicable.

128.    EXPLOSIVES IMPORTERS. In addition to the compliance work steps outlined in this chapter, when investigating an explosives importer, the IOI must:

    a.    Verify the accuracy of the licensee's importation records utilizing the results of U.S. Custom and Border Protection's Automated Customs Environment database query.

    b.    Determine if articles on the U.S. Munitions Import List are imported and verify that the importer is registered on an approved ATF F 5330.4 (4587).

        **Note:** Records of Munitions List articles other than firearms and ammunition must be maintained for 6 years.

    c.    Ensure that explosive materials imported into the United States have the required marks of identification prescribed under 27 CFR 555.109.

129.    EXPLOSIVES MANUFACTURERS. In addition to the other guidance in this chapter, when investigating an explosives manufacturer, IOIs must:

    a.    Examine the explosive materials manufactured to determine whether the manufacturer is placing the required marks of identification on explosives for sale or distribution.

        **Note:** Do not confuse marks of identification with the product identification codes. Proper markings include the name and location of the manufacturer as well as the date and shift of manufacture. (Refer to 27 CFR 555.109.)

    b.    Determine the manufacturer's method of accounting for explosives manufactured on site if those explosives are not used within 24 hours. If explosives manufactured onsite are not used within 24 hours, they must be entered into the required DSMT records and properly stored (i.e., the exemption in the regulations is only for recordkeeping requirements for use, not for manufacture or storage; see exception at 27 CFR 555.123 (d). Be aware that explosives manufactured for the licensee's own use and used within 24 hours at the same site are exempt from marking requirements.

    c.    With the proprietor's consent, determine if precursor chemicals (i.e., raw materials) have been properly accounted for and can be reconciled to the manufacturer's records.

132

130.  BLACK POWDER DEALERS. In addition to the compliance work steps outlined in this chapter, when investigating a black powder dealer, IOIs must:

    a.  Keep in mind that Public Law 93-639 (1975) allows non-licensees/non-permittees to purchase commercially manufactured black powder, in quantities of 50 pounds or less, solely for sporting, recreational, or cultural purposes for use in antique firearms or antique devices. Verify that dispositions of black powder in excess of 50 pounds or for use other than for sporting, recreational, or cultural use in antique firearms or antique devices have been made only to persons holding valid Federal explosives licenses or permits.

    b.  Inspect all storage magazines for compliance with construction requirements (type 4 minimum). The DSMT records of indoor type 4 magazines must be inspected to ensure that no more than 50 pounds of black powder have been stored in the magazine at any one time during the inspection period.

    c.  Verify that the licensee is maintaining DSMT records in compliance with the regulations.

    d.  Verify that black powder dealers are completing ATF F 5400.28, Employee Possessor Questionnaire, for their employees.

131.  FIREWORKS.

    a.  Review the definitions in 27 CFR 555.11 as they relate to the fireworks industry. (See Explosives Definitions and Terms.)

    b.  Verify that only licensed manufacturers are making or assembling fireworks for sale or distribution. Manufacturers may make explosives from component chemicals or assemble fireworks products from existing explosive materials. In either case, highly sensitive explosive materials such as flash powder and black powder will be present.  (Refer to Chapter I, Inspection Safety Procedures.)

    c.  Determine, with the proprietor's consent, if precursor chemicals (i.e., raw materials) have been properly accounted for and can be reconciled to the manufacturer's records.

    d.  Ensure that fireworks are stored with marks visible for inspection. (See ATF Ruling 2010-2 Visibility of Marks on Explosives Containers Stored in Magazines.)

    e.  Use the appropriate tables for fireworks when making TOD determinations.

    f.  For bulk salute classification and weight determination for TOD, refer to Clarification of Bulk Salute Regulation.

132.  EXPLOSIVE PEST CONTROL DEVICES (EPCD) - EPCD inspections including renewals are generally conducted telephonically. On-site inspections are required if other classes of explosives materials have been purchased during the last 3 years, are being used, or will

133

be used. In all cases, the IOI will follow the steps in <u>Chapter D, Explosives Applications</u>, including securing photographs of the proposed storage magazines, plats, etc. Some EPCDs have been exempted as special explosives devices under 27 CFR 555.32, contact EIPB for more information.

The IOI will question the applicant, licensee, or permittee as to whether other classes of explosives have been purchased during the past three (3) years, identify the explosives material, and determine if they are stored in compliance with Part 555. Where it is revealed that other classes of explosives were purchased or are in use, an onsite inspection is required due to increased risk of use of FEL/P for purchases of other than EPCDs. The IOI shall request the applicant, licensee or permittee to provide clear photographs of sufficient quality to accurately depict and show the magazine in its entirety, to include the front, sides, and back of the magazine as applicable. The applicant shall include on the magazine photographs the following certification (signed and dated), "This is a true and accurate representation of my magazine. I do not store and will not store any explosives other than EPCDs on my premises." Photographs of other structures, including inhabited buildings, roadways, other magazines, etc. should be included. The use of panoramic photographs is recommended. The IOI shall complete an explosives magazine worksheet by requesting the information needed from the applicant, licensee, or permittee. GPS coordinates should be requested and verified using Google Earth.

133. - 160.  RESERVED.

CHAPTER F.  RELATED INSPECTION INFORMATION.

161.    HAZARDOUS DUTY PAY. Hazardous duty pay differential is paid subject to 5 CFR Part 550, and Appendix A to Part 550 requirements. Under this part, hazardous duty pay is authorized when personnel are assigned and perform work with or in close proximity to exposed explosives or incendiary materials that are "highly sensitive and unstable."

   a.    The following two categories fall within the definition of "highly sensitive and unstable" for purposes of qualifying for hazardous duty pay:

      (1)    Loose stores (not in original shipping container) and/or spills of bulk black powder or flash powder found in the storage facilities or processing areas at the premises of any licensee or permittee.

      (2)    Deteriorated explosive materials that pose an immediate danger of physical harm to ATF employees or other personnel, such as deteriorating sticks of nitroglycerine-based dynamite when the nitroglycerin has leaked through the packing materials and has crystallized, or when electric detonator caps have metal connectors that are badly corroded with rust.

   b.    If employees encounter a hazardous situation, they should contact their AS. The AS will consult with the DIO, Chief Counsel, and the Management Division to make an initial determination whether a situation warrants hazardous duty pay differential. Hazardous duty pay is computed based on the total number of hours that the employee is in a pay status on the day on which hazardous duty was performed, regardless of the actual amount of time he/she was exposed to the hazardous duty. The total hours that an employee is in pay status includes any overtime hours worked and any annual or sick leave taken on the day that the hazardous duty was performed. For public safety reasons, employees should make every effort to rectify any hazardous duty situations as quickly as possible.

   c.    The authority to approve hazardous duty pay has been delegated to the Chief, Human Resources. (Refer to ATF O 1100.168C.) The approval process is as follows:

      (1)    The AS will submit a cover memorandum and hazardous duty pay worksheet (see Worksheet for Requesting Hazardous Duty Pay Compensation) to the DIO for approval.

      (2)    The SAC will initial off and send the package to the Chief, Field Management Staff (FMS).

      (3)    The Chief, FMS will provide oversight for consistency of application and route the worksheet to the Chief, Human Resources Operations Division (Payroll Processing and Operations) for payment.

         **Note**: IOIs are not able to enter time and Hazardous Duty Pay code in WebTA.  FMS will request HQ Payroll manually enter and code the

135

additional pay after receiving and ensuring the required documentation and approval process have been met.

162. **ATF MAGAZINES.**

    a.    Magazines used to store ATF explosive materials must be examined by IO annually. IOIs will place labels with a unique ID number on the interior walls of all ATF magazines. These magazine ID numbers will be tracked by each area office. See Magazine ID Program ATF Magazines and Magazine Tracking Log.

    b.    If the IOI determines that the local Fire Marshal or fire authority was not notified during the original placement of the ATF owned magazine, for the purposes of first responder safety and public safety, the IOI is to notify the special agent magazine custodian who in turn may contact the local fire authority for notification purposes.

    c.    Inspections of ATF magazines are still being documented in N-Spect and shall be titled with the name "ATF Magazine" followed by the name of the group primarily using the magazine; e.g., ATF Magazine - New Orleans II. ATF magazine inspections shall be documented on the Explosives Inspection Report Format in N-Spect. When conducting examinations of ATF magazines, the IOI must ensure that ATF-owned explosives are entered into the DSMT records and the quantities for both ATF-owned explosives and seized regulated explosives are used to verify compliance with TOD requirements. It is not necessary to verify the accuracy of seized evidence records. Instead, the recorded quantity can be accepted for TOD determinations. ATF-owned explosive materials, on the other hand, must be verified against the DSMT records. A complete inventory must be conducted. In addition, a workback shall be performed to ensure accuracy of the records and inventory. The magazine custodian must be present during the inspection. See ATF O 3320.7A, Explosives Programs and Operations for additional information.

    d.    The theft or actual loss of any explosives owned or seized by ATF must be reported in accordance with ATF O 1850.2F, Property and Fleet Management, ATF O 3400.1D, Property Taken Into Bureau Custody, and the ATF Property Manual. If the inventory discrepancy was due to a record keeping error, and there were no actual loss of explosives, the records should reflect the correction and the Assistant Special Agent in Charge of the respective field division must be notified through the IOI's chain of command.

    e.    If ATF owns the explosives magazine, any exceptions noted must be corrected immediately. All other non-Bureau-owned explosives magazines where ATF has explosive materials stored must be examined by ATF IOIs for compliance with regulations and safety standards. If exceptions are discovered, the IOI will notify the owner of the magazine of the exceptions and will make recommendations to bring the magazine into compliance. In some instances, the magazine owners may be exempt from storage requirements and choose to remain noncompliant. In order to exemplify the safe storage and use of explosives materials, ATF field offices will not use a non-Bureau-owned explosives magazine that is not in compliance. If necessary, field offices will make arrangements to find a more suitable location that will be in compliance.

163.    ATF MEASURING EQUIPMENT.

a.    Laser Range Finder.

   (1)    Before using the range finder on an inspection the IOI must have received training in the proper use of this device.

   (2)    When verifying TOD using the laser range finder, the IOI must ensure that the equipment has been tested for accuracy in accordance with the guidance provided in Laser Range Finder Calibration Instructions and Laser Range Finder Calibration Log. A separate record for each range finder shall be maintained in the area office to document the tests performed. If based on the test conducted it is determined that the unit is not functioning properly, the IOI must immediately stop using the device and request a replacement unit.

   (3)    If feasible, the accuracy of the range finder will be verified using a second measuring device, such as a measuring wheel or tape measure, during any inspection where a TOD violation exists. If possible, the verification process should be accomplished prior to citing the violation. If this is not feasible, the accuracy of the range finder should be tested as soon as possible upon completion of the inspection and documented in Spartan. This will reduce the risk of the accuracy of the range finder being called into question at a hearing or court proceeding.

   (4)    IOIs **must** perform calibration testing on the equipment in any instance where distances measured solely by the range finder may result in an administrative action pertaining to TOD. This test should be conducted as close to the time of inspection as possible, preferably before or at the time of inspection, but it may be done after the inspection. Otherwise, calibration or testing should be performed at least twice per year. (See ATF F 3000.5, Laser Range Finder Calibration Log)

b.    GPS Devices

   (1)    ATF has absolute jurisdiction and is responsible for accurately accounting for all licensed and permitted explosive magazine storage sites.

   (2)    IOIs must obtain the GPS coordinates of all explosives magazines (excluding day boxes). For the purposes of this chapter, a GPS device includes the Garmin GPS device or any GPS related application found on the IOI's iPhone. The GPS coordinates collected by IOIs will be used for life-threatening situations and will support ATF's role in ensuring national security. GPS coordinates for explosives magazines must be accurately acquired, verified and correctly entered into Spartan and/or N-Spect (for ATF magazine assignments). ATF will compile and maintain this data for all explosive magazine storage nationwide. Capturing accurate GPS

137

coordinates for explosive magazines is paramount to national security.

(3)     Generally, GPS devices are not to be used to verify TOD requirements. Measuring tapes, a measuring wheel, or a laser range finder must be used if possible. Google Earth Ruler is the <u>preferred alternate</u> procedure in lieu of GPS devices for IOIs to use in determining distances when conducting explosives inspections. (See Paragraph 163 d.) However, if a GPS device is used to verify TOD requirements, terrain features or other reasons that necessitated using a GPS unit must be documented in Spartan.

     (a)     A licensee/permittee should not be cited if the distance calculated using the GPS device meets the TOD requirements after taking into account the margin of error of the GPS coordinates. For example, if the TOD require that a magazine be 650 feet away from a private dwelling and the GPS device indicates the magazine is only 645 feet away before taking into account a degree of accuracy of plus or minus 10 feet for the GPS coordinates at the time the reading was taken, the licensee should not be cited for a TOD violation.

     (b)     If the GPS device is used to cite a licensee/permittee for a TOD violation, the IOI must document all variable GPS settings/options used in determining coordinates and/or location; e.g., position format, map datum, input/output settings. The IOI must also document the weather conditions or foliage condition, accuracy rate measurement displayed on the GPS.

(4)     IOIs **must** perform calibration testing on the equipment in any instance where distances measured solely by the GPS may result in an administrative action pertaining to TOD.  This test should be conducted as close to the time of inspection as possible, preferably before or at the time of inspection, but may be done after the inspection. Otherwise, calibration or testing should be performed at least twice per year. (See <u>ATF F 3000.6</u>, GPS Receiver Calibration Log, and Inspection GPS Distance Calculator Worksheet)

c.     <u>iPhone</u> – IOIs are authorized to use their iPhones to obtain GPS coordinates for explosives magazines during inspections.  IOIs can use the "maps" application already installed in their iPhone. See <u>GPS Coordinates using iPhone Map</u>.

Open the map application.  It should pinpoint your exact location.
Select the icon where your location is marked.
A "My Location" screen will appear.  Pull up the screen and you will see the Latitude and Longitude readings for the GPS of your exact location.  These readings show four digits after the decimal point.  You can just add zeroes to the end if additional digits are necessary to enter it into Spartan and/or N-Spect.

d.     <u>Google Earth Ruler</u>.

(1)    The Google Earth Ruler (GER) is a virtual globe map, and geographical
information program. It maps the Earth using satellite imagery and aerial
photography. As stated previously in paragraph 163 b (4), GER is the
preferred alternate procedure for IOIs to use in determining distances
when conducting explosives inspections. Each set of GPS coordinates
can have a margin of error of several feet, depending on weather
conditions. That margin of error is compounded as multiple coordinates
are taken to measure distances between magazines, inhabited buildings,
highways, etc. Therefore, the GER is recommended as a better
alternative for distance determination when direct line-of-sight
measurements are not possible.

(2)    IOIs will determine the distance by obtaining GPS coordinates of all
explosives magazines (excluding day boxes). IOIs must follow and apply
all the steps on proper use of the GER before using it during an
inspection. Generally, the GER should be used only as an alternative
method to verify TOD requirements. Measuring tape, a measuring wheel,
or a laser range finder must be used if possible. If the GER is used, the
reason why must be documented in the worksheets and in the inspection
report. If the GER is used to cite a licensee or permittee for a TOD
violation, the IOI must document all the measurements (e.g., length and
heading) used in determining coordinates and locations at the time the
reading was taken.  GER coordinates for explosives magazines must be
accurately acquired, recorded, verified, and correctly entered in Spartan
and/or N-Spect. Capturing accurate GER coordinates for explosive
magazines is a matter of national security. (See Google Earth Ruler
Measurement Information for instructions and sample measurements and
results.)

164.   WILLFULNESS. Willfulness means the intentional disregard of a known legal duty or
plain indifference to the licensee's or permittee's legal obligations. ATF is not required to
prove that the licensee or permittee intended to violate the law. There is no set formula
for establishing willfulness; e.g., a percentage of violations per total transactions. While
large numbers of violations may establish willfulness, courts have also upheld revocations
based on a single violation, such as a straw sale or a sale to a prohibited person.  Courts
have also upheld revocations where there was no prior history of violations but there was
other evidence of willfulness. ATF Counsel is a resource available for determining
whether willfulness has been established. Willfulness may be proved in a number of
ways, including:

a.    A history of similar, repeat violations.

b.    Statistical evidence; e.g., number of incorrect ATF Fs 4473.

c.    Blatant disregard for storage and Table of Distance requirements.

d.    General compliance history, including any efforts by ATF personnel to educate
and inform the licensee or permittee as to his/her legal responsibilities (e.g., the
review of the Acknowledgment of Rules and Regulations during the qualification

139

and subsequent inspections).

e.    Licensee or permittee, employee, or third party statements and admissions.

f.    Actions by a licensee or employee during the inspection that hindered or obstructed the inspection.

g.    Violations that clearly indicate intentional disregard of the law, such as a licensee or permittee knowingly entering false information in the required records.

In an administrative matter, generally the Government must present sufficient evidence to support the alleged violation. There is no requirement to prove an allegation beyond a reasonable doubt, which is the standard reserved for criminal matters.

165.    CITING INSPECTION VIOLATIONS

a.    Definitions.

(1)    Violation - failure to comply with a **specific** section of the regulations.

(2)    Instances - the number of times a **specific** section of the regulations was violated.

b.    Technical Correctness.

(1)    Violations, where there is no corresponding regulation, shall be cited using the statute (e.g., 18 U.S.C. § 922(z)).

(2)    Violations, where there is both a statute and a corresponding regulation, shall be cited using the regulation citation only; e.g., 27 CFR 478.125(e).

(3)    Regulatory provisions that are State or local violations can be cited (e.g., 27 CFR 478.99(b)(2)). However, local ordinances can only be cited if they are published by ATF (ATF P 5300.5, State Laws and Published Ordinances – Firearms). In addition, violations shall be referred to the appropriate State or local agency; e.g., State or local waiting periods.

(4)    When citing TOD violations, use 27 CFR 555.206 and **not** the tables of distances in 555.218, 555.219, and 555.220. The only exception would be fireworks processing buildings distances in 555.222 and 555.223; those violation shall be cited using 27 CFR 555.221.

(5)    Violations are specified to the appropriate subsection, such as 27 CFR 478.124 (c). Example below shows three separate cited violations.

| | | |
|---|---|---|
| 1 | 27 CFR 478.124(c)(1) | Failure to obtain a properly completed ATF F 4473. On four occasions, the licensee transferred firearms after the purchaser had left a blank in prohibiting questions – one blank in #10, one blank in #12J, one blank in 12K, and one blank in 12L. |
| 2 | 27 CFR 478.124(c)(3)(iv) | Failure to record the NICS transaction number on ATF F 4473 on three occasions. |
| 3 | 27 CFR 478.124(c)(5) | Failure to sign ATF F 4473 when transferring a firearm on four occasions. |

    (6)    Violations shall not be **"stacked."** Stacking is using the same citation multiple times for the same violation; it is also using two different citations for the same violation. For example, a violation of any provision of 27 CFR 478.125(e), will always be recorded as one violation regardless of how many provisions of this section of the regulations are violated. In this example, citing 27 CFR 478.121(c) as a separate violation for recordkeeping violations would be considered stacking. (However, 27 CFR 478.121(c) may be cited as well if the FFL "knowingly" made "any false entry.")

c.    Report of Violations.

    (1)    Use photocopies and photographs for documentation of violations, when available.

    (2)    Do not cite licensees for using commonly accepted State and/or identification abbreviations, such as D.L. for driver's license. Instructions on the ATF F 4473 specifically allows for those abbreviations.

    (3)    If the IOI has to conduct the inspection offline, it is preferred that IOIs generate the ROV in Spartan and not upload a manually completed ATF F 5030.5 (Report of Violations or ROV) in Spartan. IOIs should enter the violations in Spartan and generate the ROV to ensure consistency and accuracy in Spartan. The IOI can either email or print the ROV and mail it to the licensee or permittee.

166.    COLLATERAL INSPECTIONS The IOI in Spartan can request through the AS a collateral site inspection be conducted. Once the receiving office completes the collateral site inspection and populates the information in Spartan, the site inspection of the originating office is automatically updated with the inspection results information. Violations disclosed at the collateral site inspection is cited at the originating office's assignment. The requesting office/division shall include those findings when contemplating the appropriate administrative action to pursue.

167.    PHOTOGRAPHING, PHOTOCOPYING AND REMOVING RECORDS

For best evidence of a violation, IOIs should use their iPhones to photograph records used to document omissions and errors cited on the report of violations (ROV). If it becomes necessary to remove records from the licensed premises, the IOI may, with the

141

proprietor's consent, remove the records for copying or other lawful purposes using ATF
F 3400.23. Upon return of the documents, the IOI must have the industry member sign
and date the ATF F 3400.23 indicating receipt of the records.

a.   IOIs are not authorized to remove an FFL's records (or copies of those records
     including computerized printouts) from the licensed premises only for
     convenience purpose or other reasons lacking a legal basis. **(Only records that
     document violations shall be photocopied or scanned.)** Refer to ATF
     Memorandum dated May 15, 2012, Photocopying Federal Firearms Licensee
     Records during Regulatory Inspections/Investigations.

b.   A representative sample should be photocopied, photographed, or scanned, and
     attached in Spartan to document the violation. For inspections that do not result in
     recommendation of revocation or denial (e.g., ROV, WL, WC, etc.), a minimum
     sample of five photocopies of instances of each type of violation is sufficient for
     demonstrating the violation. However, all instances of the violation must be
     documented in Spartan. For inspections resulting in revocation, every record in
     which a violation is cited must be photocopied, photographed, or scanned and
     attached in Spartan unless otherwise stipulated by the DIO. Division counsel
     should be consulted regarding the number of forms needed as evidence.

c.   Photocopies of FFL and FEL A&D records must be made prior to the
     licensee/permittee making any corrective notations on them, for documentary
     purposes. Further, an FFL or FEL should not make amendments to transaction
     records, such as the ATF F 4473. Rather, if it is necessary, due to traceability of
     the firearm for a purchaser to return to the premises to add or correct information
     on a firearms or explosives transaction record, you should advise them to make a
     photocopy of the record and have amendments made to the photocopy.

d.   Refer to Advisory on Safe Photography for guidance when taking photographs
     around explosives.

168.  FFLs or FELs/FEPs VIDEOTAPING INSPECTIONS Unless there is some State law
      protection, there is no restriction on the licensee or permittees videotaping the inspection.
      However, videotaping in a manner that makes the inspection more difficult or time-
      consuming could be construed as a willful failure to permit inspection. In such cases, an
      IOI must contact the AS and ATF Counsel for further guidance. Furthermore, IOIs
      commonly must confer with each other and discuss issues to which the proprietor should
      not be privy. Under such circumstances, the IOIs must ensure that such discussions are
      not subject to videotaping or any other recording.

169.  IOIs VIDEOTAPING INSPECTIONS Taping of industry members or others by IOIs is not
      a standard inspection technique. If an IOI believes that it is necessary to tape an
      inspection, an industry member, or someone else, he or she shall get approval from the
      DIO through the AS. Prior to granting approval, the DIO will consult division counsel,
      and if needed Headquarters counsel, in making a determination of both the legality and
      appropriateness of taping based upon the unique factors in each situation. In addition,
      any taped record must be retained in the area office until such time as the case is finally
      resolved (through all appeals).

170.    OPERATIONAL SECURITY

    a.    Laptop Computers on Inspections.

        (1)    IOIs shall use laptops when conducting inspections at the licensee's or permittee's premises. The laptop must not be left unattended in an unsecured environment.

        (2)    Laptops must not be used inside any magazine or room containing explosives.

    b.    Sensitive Information. ATF sensitive information, such as applications, and background information, must be kept in a briefcase or other secured container that is only accessible to the IOI or other authorized ATF personnel.

171.    INSPECTIONS DURING ACTUAL BUSINESS HOURS Inspections must be conducted during the licensee's or permittee's actual business hours (27 CFR 478.23(b)). Actual business hours are not necessarily limited to the hours stated on the application and have been interpreted to include those times when business operations are being conducted. Review of the hours listed on the subject's application is one factor in determining the FFL's actual business hours, but other factors that affect whether ATF has a right to inspect include: are the premises open to the public; are customers in the store; are employees inside working; does the FFL raise any objection about not being open for business, etc. If there is any question about the FFL's actual business hours, IOIs should contact ATF Counsel.  A warrantless inspection may be conducted outside of actual business hours with the licensee's consent. (Refer to Consent to Inspect Outside Business Hours.)

172.    INSPECTION ASSIGNMENT ACCOUNTABILITY REPORTS

    a.    Once an onsite inspection commences, timely completion and submission of the inspection is critical. Spartan automatically generates an accountability report if the inspection is not submitted by the due date, or within 30 days of completing the closing conference.  The IOI would have to complete the accountability report every week until the inspection is submitted to the AS.  The AS may grant an exception to the weekly submission of accountability reports if the situation dictates (i.e., a criminal investigation with a pending grand jury indictment, emergency leave by the IOI, etc.) by documenting his/her approval and justification in Spartan.  The IOI would then be required to submit the accountability report monthly until the inspection is submitted.

    b.    Division management must ensure that recommendations for revocation/denial, as well as other administrative actions, are initiated and completed in a timely manner. Cases recommending warning letters or warning conferences must be finalized within 90 days from the beginning of DIO review; i.e., a warning letter issued or a warning conference held.

173.    EXTERNAL REFERRALS / SUSPICIOUS ACTIVITY REPORT (SUS).

    a.    General.

        (1)    Spartan has two methods by which IO may share information that involves

143

a potential criminal and/or civil violations. All external referrals/SUS must be generated in Spartan and submitted for approval to the AS. A suspicious activity report (SUS) is the official method for IO to record and report suspicious activity of a potential criminal activity for internal ATF action. An external referral is used by IO for recording and sharing information to be sent outside of ATF such as other Federal (MSHA, State Department), State and local agencies. Both an external referral and SUS may be used in conjunction with an inspection or stand-alone outside of an inspection.

(2)     After identifying a potential criminal violation, the IOI will preliminarily investigate the subject with all available tools (Etrace, OpenFox, Courtlink, etc.). This preliminary investigation should center on determining if the target has a link to violent crime, is a threat to public safety, or falls within the office's specific area of responsibility (AOR) enforcement objectives. If no visible link is found, then no SUS or external referral should be made. However, if the initial investigation indicates a potential link to violent crime, public safety or the AOR enforcement objectives, the IOI should contact the IOIS and request additional assistance, such as completing queries accessible to CGIC personnel. If after this additional analysis is completed, no link to violent crime, public safety or AOR enforcement objectives is found, the external referral/SUS should be not investigated further nor submitted. See SOP IO Referrals Memorandum June 11, 2018 for more information.

(3)     During the course of an inspection, if information is disclosed involving criminal and/or civil violations that require immediate action, the IOI will verbally refer this information to the AS and follow up with an external referral/ SUS in Spartan as applicable. External referrals/SUS involving criminal and/or civil violations that do not require immediate action shall be documented and completed within 5 working days and forwarded to the AS for review and approval. The SUS is forwarded by the AS to the Crime Gun Intelligence Center (CGIC) for an evaluation and decision. The CGIC will respond to the SUS and may close it with no further action, but a reason must be provided. The CGIC may disseminate it to a CE group, or may close it and create an intelligence product.

        (a)     Generally, the 5 working days timeframe does not commence until the information has been verified or confirmed and the external referral/suspicious activity report is perfected. For example, if a prohibited person is being referred (SUS) and confirmation of the person's conviction requires securing certified copies of court documents, the 5 working days timeframe does not begin until the IOI has received the court documents.

        (b)     The IOI shall thoroughly document external referral/SUS in Spartan including additional steps or procedures taken to justify necessary delays. The date a verbal external referral/SUS is made is considered the actual date of the external referral for the

144

purposes of meeting the 5 working days submission requirement.

(4)   After approval, the AS will forward the external referral/suspicious activity report, to the CGIC through the Spartan email system within the previously mentioned 5 working days.

(a)   Where unforeseen or other extenuating circumstances may delay the external referral/SUS from meeting the 5 working day timeframe (e.g., illness, unscheduled leave, travel, etc.), the AS may grant an extension if all the following guidelines are met:

1.   IOI must request approval from the AS within the 5 working day timeframe AS must document approval in Spartan, provide justification and indicate the expected date of the external referral/SUS completion.

2.   AS extension cannot be more than 15 working days from the approval date.

3.   Any additional extension can only be granted and approved by the DIO and approval documented in Spartan.

(b)   External referral/suspicious activity reports are an invaluable tool for our law enforcement partners and timeliness is essential; therefore, extensions to the 5 working days requirement should be the exception and not the norm.

(5)   A separate external referral/suspicious activity report will be made for each unrelated item of information. For example, information concerning violations by unrelated individuals will not be combined even though the information is to be referred to the same agency.

(6)   External referrals will be reviewed/approved by the DIO, reviewed by Division Counsel, for transmittal to outside agencies with an accompanying memorandum signed off by the SAC.

(7)   The field division's CGIC will analyze the suspicious activity reports and determine the proper reporting procedures as outlined in ATF O 3270.10D, The Disclosure, Documentation, and Handling of Investigative Information (Office of Field Operations). Within 10 working days, the field division's CGIC will generate an initial response to the SUS and notify the IO office who initiated it so the status of the SUS can be documented in Spartan.

(8)   The IO office receiving the suspicious activity report from the CGIC will within 30 working days notify the field division's CGIC of the status of the SUS (e.g., the SUS resulted in an inspection, and if applicable, the inspection number). The CGIC will notify the IO office initiating the SUS

145

to enter the status of the suspicious activity report in Spartan.

b.   Coordination of SUS. Division management will meet and establish criteria for the type and scope of criminal information, which is of interest to both ATF CE and the U.S. Attorney's Office. On a quarterly basis, the DIO (along with the ASACs), will review all SUSs submitted from the previous quarter to include an evaluation of the quality of the SUS and enforcement action as a result of the SUS. The DIO will meet with the AS to disseminate the results of the quarterly review.

   (1)   Referrals Outside ATF.

      (a)   Referrals concerning illegal aliens to the DHS, Citizenship and Immigration Services (CIS).

      (b)   Corporate irregularities; e.g., a discovery that a corporation was not properly incorporated and authorized to issue stock. Such a referral should be made to the State authority that regulates corporations.

      (c)   Violations of State and/or local firearms and explosives laws. This also includes State and local zoning and fire prevention laws and ordinances; e.g., violations concerning prohibited businesses being conducted in residential areas, and violations of licensing, storage and sales.

      (d)   All firearms and ammunition excise tax issues should be referred to TTB.

      (e)   Issues regarding safe havens and transportation of explosive materials should be referred to DOT.

   (2)   Disclosure Restrictions (Referrals Out of Bureau). Before making any referrals outside of ATF, IOIs should be thoroughly familiar with the guidelines contained in ATF O 9000.1B, Public and Governmental Affairs. The Privacy Act of 1974 does not prohibit the referral of possible violations of law to the appropriate agency that is responsible for investigating or prosecuting such violations or that is charged with enforcing or implementing the law under which the violation arises. However, ATF personnel are restricted from making law enforcement disclosures contrary to the sections of law referred to below. In addition, personnel may be subject to dismissal, fines, and criminal prosecution for violating those restrictions. When an IOI has doubt as to whether or not these apply to information he/she feels should be referred to other Federal, State, or local law enforcement or regulatory agencies, the referral must be cleared through the DIO and division counsel.

      (a)   Title 26 U.S.C. § 5848. This section of law restricts the use of information or evidence obtained from an application, registration,

146

or records required to be submitted or retained by an individual in order to comply with the NFA or the regulations issued thereunder. Disclosure of such documents or information will be made **only** through the Office of Public and Governmental Affairs with appropriate coordination with division counsel.

(b)  Title 26 U.S.C. § 6103. This section of law prohibits the disclosure of any tax "return" or "return information" unless it falls within a specific exception. In conjunction with their official duties, investigators may disclose "return information" to the extent that such disclosure is necessary in obtaining information which is not otherwise reasonably available for enforcing the provisions of Title 26. However, prior to making any disclosure of "return" or "return information," IOIs must obtain the approval of the AS and DIO, with appropriate coordination with division counsel. "Return" information includes the transfer taxes associated with the NFA; therefore, information regarding NFA transfers cannot be disclosed.

(c)  Title 26 U.S.C. § 7213. This section of law sets forth the penalties for violation of the Tax Reform Act of 1976, including 26 U.S.C. Section 6103. In addition, it establishes sanctions against Government employees who make known the operations, style of work, or apparatus of any manufacturer or producer visited by them in the discharge of their official duties except as otherwise provided by law.

(d)  Title 18 U.S.C. § 1905. This section of law provides sanctions against Government employees who divulge information relating to trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of income, projects, losses, or expenditures of any person, firm, partnership, corporation, or association except as authorized by law. This section also provides penalties for Government employees who disclose any returns or return information to any person except as provided by law.

(e)  ATF budgetary restrictions on disclosure, as described in Paragraph 178, Restrictions on Release of GCA Information.

174.  i-NOTE

The ATF O 3114.1A provides instructions and guidelines and establish reporting protocols. IOIs will promptly complete incident notification for any significant, sensitive, or critical situations through their chain of command (field division executive staff) via the i-Note. The i-Note report narrative will be a concise, event driven, executive summary of the incident, and narrative space is limited to 500 characters.

A license revocation or denial does not automatically require that an i-Note report be

147

generated. The creation and distribution of an i-Note in such cases will be at the discretion of the AS/DIO/ASAC/SAC.

A license fine, suspension, revocation, or denial i-Note should be filed only after the DIO has issued the final notice of revocation or denial and either the licensee or permittee files an appeal, or the time period for filing an appeal has elapsed. The i-Note should not be filed early in the administrative action process, such as when the recommendation for denial or revocation is made.

Thefts of firearms from a licensee involving one or more firearms shall be reported. Thefts of firearms from a common carrier involving one or more firearms is required when ATF responds to the theft.

A significant loss of firearms (greater than 50), i.e., the discovery that firearms are missing without an apparent criminal cause such as discovery of an inventory shortage exceeding 50 firearms after reconciliation, shall be reported.

Explosives thefts, as well as attempted thefts, i.e., the actual breaking into a magazine or storage facility without taking any products, shall be reported.

A significant loss of explosives (greater than 250 pounds), i.e., the discovery that explosives are missing without apparent criminal cause shall be reported.

For additional guidance and further information, please refer to ATF O 3114.1A i-Note Incident Notification System.

175.    SPECIAL ATTENTION FLAG (SAF)

   a.    An SAF allows ATF personnel the opportunity to request that the FFLC and the FELC "flag" a firearms or explosives licensing system record with a special code, known as "SAF," when an administrative action against the licensee or permittee is pending or when the licensee or permittee is under investigation. This notification shall be made using the e-mail functionality (PII) in Spartan.

   b.    The following are examples of when an SAF should be initiated:

      (1)    CE Investigation.

      (2)    Inspection Needed.

      (3)    Problem Dealer.

      (4)    Pending Denial.

      (5)    Pending Revocation.

      (6)    Charged by Information (State).

      (7)    License suspension action.

148

(8)     Under Indictment.

(9)     Do not contact.

(10)    Do not renew without contacting area office.

## 176. DOCUMENTATION OF SIGNIFICANT CONVERSATIONS

a.      ATF field personnel are required to document all conversations with industry members or their representatives, or others (i.e., a citizen complaint) that involve sensitive or potentially sensitive or problematic issues. This is particularly critical in situations where the industry member is under investigation for civil or criminal violations.

b.      A record of conversation (ROC) shall include at a minimum:

(1)     The name and title of the person involved in the conversation.

(2)     The date, hour, and location when the conversation took place.

(3)     The purpose of the conversation; and

(4)     A summary of significant facts and conclusions reached.

c.      A MOC (Memorandum of Conversation) shall be documented in Spartan if the significant conversation is not part of an inspection. The IOI can attach the MOC to the licensee's record.

## 177. RESTRICTIONS ON RELEASE OF GCA INFORMATION

a.      Since Fiscal Year 2003 ATF's annual budget has contained various restrictions relating to the disclosure of GCA information. These restrictions cover disclosure to the public of **any** information required to be kept as a record by FFLs or reported to ATF under the GCA (trace requests and multiple sales reports), 18 U.S.C. § 923(g). The restriction does not apply to information maintained solely under the NFA.

b.      The nondisclosure language is not intended to interfere with disclosures by ATF routinely made during the course of fulfilling ATF's statutory mission to provide assistance to Federal, State, local, and international law enforcement. Thus, ATF may provide restricted data:

(1)     In civil and administrative litigation initiated by ATF or concerning an ATF enforcement action;

(2)     Disclosures of statistical information concerning total production, importation, and exportation by each licensed importer and licensed manufacturer;

149

(3)    Upon request, to law enforcement agencies and prosecutors in connection with a criminal case within their jurisdiction.

c.    The restriction clearly prohibits disclosures to the public through the Freedom of Information Act (FOIA), press releases, or subpoena. Disclosures of this nature are no longer authorized.

d.    The below list includes the Office of Chief Counsel's understanding of the restriction the Disclosure Division, Public information officers, and ATF personnel are required to abide by.

    (1)    <u>Information that may continue to be disclosed to the public</u>.

        (a)    FFL list or portions thereof.

        (b)    FFL applications and licenses.

        (c)    Inspection reports to the extent that information was not extracted from prohibited records. Copies of prohibited records that are part of the inspection report would be withheld; release would consist of violations cited and other ATF observations not from dealer records.

        (d)    Information, other than data contained in dealer records, provided to ATF by law enforcement agencies in requests to trace a firearm, so long as it is not contained in the Firearm Tracing System (FTS).

    (2)    <u>Prohibited disclosures to the public</u>.

        (a)    Information from OOB records.

        (b)    ATF F 4473.

        (c)    Firearm licensee A&D records, and data compiled from such records (e.g., inventory loss data).

        (d)    Firearms trace data reported by dealers and any 923(g) information retrieved from dealer records.

        (e)    Any data contained in the FTS.

        (f)    Multiple Sales Reports and any 923(g) information retrieved from dealer records.

        (g)    <u>ATF F 3310.11</u>, FFL Firearms Inventory Theft/Loss Report.

        (h)     Records of transactions of semiautomatic assault weapons.

        (i)     Law enforcement certification letters.

        (j)     Record of approved variances.

        (k)     ATF Fs 6 and 6a (importation) and supporting documentation.

   e.     Questions regarding the restriction requirements outlined in the paragraph shall be directed to Associate Chief Counsel (Disclosure & Forfeiture), Office of Chief Counsel.

178.   WEBSITES FOR IOIs Refer to Websites for IO Investigators, IOI Virtual Library, and the Virtual Intelligence Guide that may be helpful in conducting inspections.

179.   SPARTAN FOR AREA SUPERVISOR (AS) Refer to Spartan Area Supervisory Training.

180.   BUSINESS STRUCTURES (Refer to Business Structures.)

181.   TSA AIRPORT EXPLOSIVES MAGAZINE INSPECTIONS For basic procedures and guidance for inspecting explosives storage magazines at airports upon the request of the TSA, see ATF O 5400.12A, TSA Airport Explosives Inspection Program.

182.   MONITORED CASE PROGRAM (MCP). The MCP focuses on the prompt identification of inspections that have the potential to pose significant risk to the Bureau or public safety. Its effectiveness relies upon the self-reporting, at the field office/division level, of the Bureau's most critical or sensitive inspections supplemented by HQ efforts to identify industry operations investigations that should be evaluated for inclusion in the MCP. (See ATF O 3200.1A)

   a.     The AS will promote, encourage, and ensure ongoing dialogue at all levels of their office aimed at identifying inspections meeting the criteria as well as ensure all provisions of the ATF O 3200.1A are fully implemented and effectuated.

   b.     IOIs must ensure that all inspections that meet the MCP criteria or guidelines are communicated to the AS for review and consideration.

   c.     The AS, with the lead IOI if deemed necessary, will provide an initial briefing to the division management team on the status of each case meeting the MCP criteria so the SAC can assess the merits of the case for inclusion in the MCP

   d.     The briefing shall include the progress, plans, and problems, and provide an opportunity for the division management team to provide guidance, assess risks, and address potential issues or concerns.

   e.     The AS will ensure a Post Inspection Information (PII) entry is made using the "Monitored Case" drop down in the Action Type entry in Spartan. The entry should note that the briefing was completed. (See ATF O 3200.1A, for AS Responsibilities.)

f.  Upon the SAC's determination, with input from the DIO, that the inspection meets the MCP criteria, the AS shall ensure that the Monitored Case Summary IO Initial Submission Template (Exhibit 8C of ATF O 3200.1A) is completed and forwarded to the division management team for review, and submitted to the FMS-ISB distribution list within 5 business days. Updates will be entered as a PII in Spartan by the AS and sent electronically to the DIO before the 10th day of each month. Following review and approval by the SAC, the DIO will forward the PII update to the FMS-ISB via Spartan. (See MCP Document Library)

g.  In addition to the documents listed in the IO Source Document Reference Guide (Exhibit 4 of ATF O 3200.1A), and the Monitored Case Summary IO Initial Submission Template (Exhibit 8C of ATF O 3200.1A) must be inserted as an attachment in Spartan. (Refer to ATF O 3200.1A for additional information.)

183.  SELF-REPORTING OF VIOLATION BY FFL – An FFL self-reporting a violation can be an effective way for the industry member to convey that they had no intent to violate and intend to comply with the GCA. Self-reporting a violation does not negate the fact that a violation did in fact occur and in no way grants a pass or waiver from a citation. Every situation must be evaluated on its own merit. Self-reported violations that impact public safety or ATF's enforcement priorities should generally result in a follow-up inspection being initiated.

Some questions to ask when an FFL contacts you might include the following: What is the violation (statute or regulation)? How and when was the violation discovered? What is the scope or extent of the violation (how widespread)? What corrective actions or steps have been taken to prevent future occurrence?

To document the self-reporting conversation, an Acknowledgment Letter was developed. This letter should be sent via certified mail to the FFL with a copy attached in the licensee's record in Spartan to track the licensee's knowledge of the violation. See email dated February 14, 2017 titled "Acknowledgment of FFL Self Disclosure Violation FD Response Letter" and sample acknowledgment letter.

184.  MAJOR INSPECTION TEAM (MIT) - The MIT provides support and assistance to field divisions with complex firearms and explosives inspections involving large inventories, sites, and/or other factors. The MIT will concentrate ATF's investigative resources and expertise on inspections where there is a clear need for additional resources while minimizing the time IOIs are on the licensee's or permittee's premises during large-scale inspections.

Generally, field divisions will identify those inspections requiring MIT support during the drafting of their Domain Assessment. This will allow the MIT program manager to work proactively with field divisions to coordinate MIT activations for inspections well in advance of the anticipated onsite start date of the inspection, and ensure MIT resources are activated in an efficient manner throughout the year. If an unanticipated need for MIT assistance arises during the fiscal year the DIO should submit a request to the DAD (IO) and MIT program manager as soon as possible.

MIT applicants and members must meet all of the following requirements:

- Be a GS-13 IOI assigned to the Office of Field Operations. Generally, IOIs occupying specialized positions are not eligible at this time.

- Have a current performance appraisal of at least "Exceeds Fully Successful."

- Not be the subject of a current or pending integrity or performance disciplinary action or investigation, not have received discipline in the form of a suspension of 5 days or more during the past 2 years, and must not have had an official finding of engaging in illegal discrimination.

- Must have the concurrence of his/her area supervisor, Director, Industry Operations (DIO), and Special Agent in Charge.

MIT members' duration of expected service will be 3 years. This term may be extended if necessary based on operational needs with field division management concurrence and DAD (IO) approval. This term may also be curtailed based on performance issues, participation levels, and other factors.

To request MIT support, the DIO must submit an email at least 45 days prior to the anticipated on-site start date of the inspection to the DAD (IO) and MIT program manager in the Frontline Investigative Support Branch, Field Management Staff. The lead IOI and area supervisor will manage and direct the inspection, provide guidance to the MIT members, and oversee the MIT members during the actual inspection.

Field Operations will provide the funding for MIT activations, and all MIT supported inspections will be conducted in accordance with the procedures outlined in the IO Manual. The lead IOI or the area supervisor should provide advance notification of inspections to the licensee or permittee due to the amount of resources and logistics involved. Advance notice provides an opportunity for the lead IOI and area supervisor to work with the industry member to develop an efficient plan to utilize the MIT and lessen the impact of the inspection on their operations. For additional guidance and detailed information on the MIT program, please see "Major Inspection Team Operating Procedures and Guidelines."

185.– 190. RESERVED

CHAPTER G. N-SPECT

191. <u>N-SPECT</u>. N-Spect is an Oracle database application that enables field personnel to capture, organize, and retrieve all inspection related information. As a single-point of data entry, inspection information is entered once and can be used in multiple areas throughout the system. Each assignment generated in N-Spect is identified with a unique identification number (UI). N-Spect automatically generates and formats reports and forms by extracting data previously entered into the system. N-Spect is designed to adhere to ATF business rules, thus increasing the productivity of IOIs. It is imperative that IOIs make every effort to ensure that **all** the data collected in N-Spect is accurate and that **all** relevant and mandated data fields are completed. The IOI must ensure that data entered in N-Spect is consistent with that entered in all other areas of the inspection report, e.g., inspection documents, ATF F 5030.5, Report of Violations, narrative report, etc. It is the supervisor's responsibility to review and verify the accuracy and completeness of information entered into the system. In addition, reports can be generated in N-Spect, and forms can be extracted from data previously entered into the system. This chapter outlines additional required information and further defines certain data fields.

<u>Electronic Investigative File Management System</u> (EIFMS) – Under this paperless system, N-Spect is utilized as the archive for all inspection reports, related exhibits and attachments. IOIs combine inspection documents into Inspection Documents Folder or a Portfolio in accordance with field division policy. Exhibits and other documents are combined into a single (or multiple, if applicable) source document. See EIFMS Manual <u>Non-Portfolio</u> or <u>Portfolio</u> Version for more detailed instructions.

Once approved by the AS, and the UI is closed, the Portfolio and Source Documents will be extracted and inserted into an inspection storage folder, sorted and organized before being combined into a single PDF. This single PDF is converted into a TIF for electronic transmission to the Licensing Center's share drive. This is done by the IA, IOA, or the person designated by the AS.

a.  Documents inserted into the Portfolio include:

   (1)  Narrative report with electronic signature of lead IOI (WORD)
   (2)  Worksheets workbook, if applicable (EXCEL)
   (3)  Report of Violations, if applicable (PDF)
   (4)  ATF F 5700.14 Assignment and Report (with final recommendation and electronic signature of AS or last reviewer) (PDF)
   (5)  Attachments (Application, with amendments, if applicable referrals) (PDF)

b.  Documents inserted as Source Documents include:

   (1)  Exhibits such as magazine photos or ATF F 4473, if applicable contain exhibit stamps with discrepancies electronically circled in red.
   (2)  Documents submitted as part of qualification, if applicable business license, etc.
   (3)  Signed acknowledgement of the regulations

154

c.  Hard or Paper Documents to be placed into office file include (list is not all inclusive):

    (1)   Acknowledgement of Regulations (signed)

    (2)   Application (with applicant changes)

    (3)   ROV (signed and dated by both IOI and licensee/permittee or responsible person)

    (4)   Other documents as determined by AS (referrals, FLS printout, trace history and audit log of current assignment, corporate documents, copies of business license(s), work-notes generated by IOI during assignment, etc.)

192.   GENERAL INFORMATION.

    a.   General Inspection Information.

        (1)   Onsite Start – Enter the date that the inspection started onsite. (It is important to ensure compliance with GCA 12-month inspection requirements.)

        (2)   Onsite End – For both FIREARMS and EXPLOSIVES inspections, the onsite end date is the date when the closing conference is conducted.

            Date Application Perfected (DAP) – This field shall be completed on original and renewal qualification inspections. If there are no corrections or amendments required during the licensing center review or field inspection, the DAP field shall be populated with the date stamp/received by the licensing center. If there are corrections or amendments required as a result of the licensing center review and/or field inspection, enter the date the corrections or amendments were made. In cases where the licensing center has the applicant correct an application, the information can be obtained from the Federal Licensing System (FLS) comments section.

            **Note**: In instances, where the application is perfected or properly executed, even if it is eventually withdrawn, the DAP field should still be populated. If an application is withdrawn and was not perfected or properly executed, then do not populate the DAP field. However, when the DAP field is left blank, the reason must be documented in the narrative report. For example, the applicant decided to withdraw the application prior to reviewing and verifying the information on the application with the IOI. The DAP field is not populated for inspections involving an Application for an Amended FFL.

        (3)   If phone contact is made in lieu of an in-person interview of a firearms applicant, then a firearms inspection must be conducted within 12 months of issuance. On the "Profile" tab, under "Insert Field Activities," select

"Qualification New Telephone." Selecting this option in N-Spect indicates that an in-person interview has not occurred.

(4)     Explosives qualifications, with the exception of users limited (type 60) with contingency storage, require an in-person inspection prior to the issuance of the license or permit.

(5)     Last Inspection Date – populate this field with the onsite end date of the last or previous compliance inspection. If no compliance inspection has been conducted, you may leave the field blank.

b.     Results Record.

(1)     General Tab. For additional information, refer to the IOI Quick Reference Guide.

(a)     Violations – N-Spect automatically provides the total number of violations cited by the investigator in the violations folder. **Note:** If two or more citations apply to the same violation, this will be entered as a single violation. The number of instances of a violation will be fully and accurately documented in the narrative report of inspection. "Instances" refers to the number of times a specific section was violated. For example, if a licensee fails to timely record the acquisition of a firearm on five occasions and the disposition of a firearm on 14 occasions, the following section would be cited, 27 CFR 478.125(e) and would be counted as one violation with 19 instances. Refer to Chapter F, Citing Inspection Violations, for a further explanation.

(b)     Referrals – N-Spect automatically provides the total number of referrals generated in the referrals folder. This number includes referrals to Federal, State and/or local agencies.

(c)     NICS/POC – Compared to 4473's – Total number of NICS/POC checks that were verified from the "Gun Audit Log" provided by the FBI NICS section or the State POC, including any denied transactions that were verified. Generally, this will be the number of NICS checks performed by the FFL within the last 60 days.

(d)     ATF Forms 4473 on file (last 12 months) – Total number of ATF Forms 4473 on file for the licensee in the 12 months immediately preceding the inspection. This may not be the same as the number of ATF Forms 4473 reviewed.

(e)     Computerized Criminal History (CCH) (Guns and Persons) – Total number of CCH checks conducted on individuals and firearms during the inspection. If CCH, NLETS and NCIC checks are conducted on the same individual, only count this as one CCH check.

156

(f)     CCH Hits (Guns and Persons) – Total number of hits obtained from CCH checks conducted on firearms and individuals during the inspection. A hit is: (1) a felony or prohibiting misdemeanor taken as far as you are permitted to proceed under local guidelines to determine actual disposition, (2) any conviction of any lesser crimes which CE requests be referred to them, or (3) any information which indicates that a firearm was stolen.

> **Note:** Do not include any stolen firearms with a date of theft occurring after the date of disposition. Record multiple felonies disclosed on a check as one hit.

(g)     Trace – Successful – Total number of successful traces which begin with an "S" (successful) code, for the licensee in the 12 months immediately preceding the inspection.

(h)     Trace – Unsuccessful – Total number of unsuccessful traces for the licensee in the 12 months immediately preceding the inspection. The IOI should only attempt to reconcile the traces with a "D" (Dealer) or "M" (Manufacturer) code.

(i)     Trace- Resolved by the IOI –Number of "D" and "M" traces that were resolved by the IOI.

> **Note:** Trace data can be obtained from the VCAB or e-Trace. Access e-Trace for a complete list of trace completion codes.

(2)     Firearms Tab. For further information see the IOI Quick Reference Guide.

(a)     Total number of firearms traced to this licensee in the past 12 months regardless of when the firearms were sold – Total number of firearms traced (both successful and unsuccessful) to the dealer in the 12 months immediately preceding the inspection regardless of when they were sold. This number can be obtained from the VCAB, trace history or e-Trace.

(b)     Total number of firearms reported stolen/missing in the last twelve months – Total number of firearms reported to the NTC either stolen or missing from inventory in the 12 months immediately preceding the inspection. This number can be obtained from the VCAB, trace history or e-Trace.

> **Note:** Do not include firearms disclosed as stolen or missing from inventory as a result of the current inspection.

(c)     478.99 Total Transactions with Violations/Prohibited Sales – Total number of forms with violations of 27 CFR 478.99, certain prohibited sales or deliveries (i.e., felons, dishonorable discharge).

157

**Note**: This also includes "Yes" answers to questions 11 b-k on the ATF Forms 4473.

(d)     478.100 Total Number of Transactions with Violations/Business Away From Premises – Total number of forms where the licensee violated 27 CFR 478.100, conduct of business away from licensed premises. This should not include qualifying gun shows or sporting events. For additional information see paragraph 67f.

(e)     478.102 Total Number of Transactions with Violations/NICS Requirements – Total number of forms where the licensee failed to conduct a NICS background check and the firearm was transferred in violation of 27 CFR 478.102.

(f)     478.124 Total Number ATF Forms 4473 Reviewed – Total number of ATF Forms 4473 reviewed.

(g)     478.124 Total No. With Violations on ATF F 4473 Certification – Total number of forms reviewed with blank or erroneous responses on the ATF Forms 4473 questions 11a-11l, 16 and/or 17.

   **Note**: Some violations cited may not be 27 CFR 478.124.

(h)     478.124 Total No. With Violations on ATF F 4473 Section A – Total number of forms with errors or omissions on the ATF Forms 4473 in Section A, other than questions 11a-11l, 16 and/or 17.

   **Note**: Some violations cited may not be 27 CFR 478.124. See Firearms Worksheet Workbook.

(i)     478.124 Total number with other violations – Total number of ATF Forms 4473 with errors or omissions in sections B, C and/or D.

   **Note**: Some violations cited may not be 27 CFR 478.124. See Firearms Worksheet Workbook.

(j)     478.125 Number of Firearms in Inventory – Total number of firearms in the physical inventory.

(k)     478.125 – Number of Open Disposition in A&D Records – Total number of open dispositions in the A&D Records.

(l)     478.125 – Number of Inventory Discrepancies – Total number of inventory discrepancies. This includes firearms acquisitions not recorded in the A&D Records prior to the inspection, firearms recorded as disposed of when found in inventory, dispositions not recorded but reconciled, duplicate entries, and firearms missing from inventory. This also includes 478.122 (importers) and 478.123 (manufacturers) discrepancies.

(m)    478.125 – Firearms Missing/Stolen after Reconciliation – Total

158

number of missing or stolen firearms that are unaccounted for after the inventory reconciliation is final. Any unaccounted for firearms **must** be reported on an ATF F 3310.11, Federal Firearms Licensee Inventory Theft/Loss Report.

(n)     478.125 – Firearms transactions completed but not recorded in ANY required records – Total firearm(s) never recorded in the A&D Records prior to transfer.

(o)     478.126a Total Number Unreported Multiple Sales – Total number of unreported multiple handgun sales by the licensee for the inspection period. This does not include multiple rifle sales.

(p)     478.126a Total Number of Guns Involved – Total number of handguns involved in the unreported multiple sales. This does not include multiple rifle sales.

(3)     Explosives Tab – This field should reflect any improperly stored explosive materials during the course of the inspection.

(4)     Outreach Tab – This field should be completed when conducting seminars or training classes to persons/organizations outside of ATF.

## 193.   VIOLATION RECORD.

a.     Violation Tab Creates a record of violations to be cited for the inspection. The ATF F 5030.5 is created and imported into the inspection documents folder. The data entered populates the violations field. The ATF F 5030.5 signed and dated by both the IOI and licensee/permittee or responsible person shall be entered in N-Spect including evidence of correction action(s) taken.

(1)     Violation Type – Select the correct "type" of violation and identify the corresponding subpart in the regulations under which the violation falls. For example, a firearms violation in 27 CFR 478.41 through 27 CFR 478.60 would fall under Subpart D-Licenses and therefore be entered into N-Spect as a "Licensing/Permit" type of violation.

(2)     Public Safety Violation – An explosives violation shall be referenced as a public safety violation. Only explosives violations shall be entered as public safety violations.

(3)     Number of Instances – Enter the number of times a specific section was violated. For example, if a licensee fails to timely record the disposition of a firearm on 14 occasions, this should be entered as 14 instances. For ATF F 4473 violations, this would be the number of forms.

(4)     Corrective Action – Explain the recommended corrective action to be taken by the proprietor.

159

(5)    Licensee Response - Note the licensee's/permittee's response for each violation cited. Describe in detail the actions taken and relevant statements made concerning each specific violation – for example "I record the serial numbers from the box, not the actual firearm". The response can be added and/or edited even after the ATF F 5030.5 has been issued since the response is not printed on the ATF F 5030.5. The IOI can modify the response even after the closing conference has been held and prior to the submission of the assignment to the AS.

(6)    Corrected Immediately – Any violations that are corrected by the closing conference will be considered to have been corrected immediately.

(7)    Date to be Corrected – Any violation not corrected immediately, must be given a target date for completion of the corrective action.

(8)    Date Corrected – If the violation is not corrected immediately, the IOI must enter the date the licensee or permittee corrected the violation.

(9)    Date System will notify investigator that violation has not been corrected – This is the target date assigned by the investigator for the completion of the corrective action.

(10)    Violation Uncorrectable/Preventative Action Discussed – If the violations occurred in the past and is not continuing, or by their very nature, cannot be corrected, and the licensee or permittee is given specific and detailed instructions on how those violations can and should be prevented in the future, the IOI must select this field and check the box.

b.    Citation Tab. Regulation citations must be entered into N-Spect. Law citations should only be used when there is no corresponding regulation.

194.    RECOMMENDATION RECORD. The most appropriate inspection recommendation must be selected from the drop down menu in the Recommendation Record. Only one recommendation shall be entered in N-Spect.

195.    REFERRALS. All referrals must be generated in N-Spect and, after the AS's approval, forwarded in hard copy form on ATF F 5000.21, Referral of Information, to the CGIC within 5 days. However, IOIs discovering information that requires immediate action will verbally refer this information to the AS with a follow-up written referral. (Refer to Chapter F, paragraph 174 for additional information on referrals.)

a.    A separate referral will be made for each item of information. For example, information concerning violations by unrelated individuals will not be combined even though the information is to be referred to the same agency.

b.    The IO office receiving the referral will enter within 30-days the status of the referral (e.g., the referral resulted in an inspection and if applicable the inspection number) in the "Referrals Information Response" tab in N-Spect.

c.   If a referral not associated with an actual inspection needs to be generated (e.g., a phone tip about suspected criminal activity by a nonlicensee), a general assignment, such as "FY-05 Firearms Referrals," can be created for this purpose.

d.   While N-Spect archives referrals electronically, hard copies of attachments to referrals should be retained in the originating office.

e.   The CGIC will provide on a quarterly basis the status of a referral to the IO office that initiated the referral. The IO office that initiated the referral will update this information in the "Referral Information Response" tab in N-Spect.

f.   It is important to note, that once approved, a referral record is locked to all users except those with supervisory access.

196.   INSPECTION DOCUMENTS. Narrative reports, worksheets that document a violation, explosives magazine worksheets, and acknowledgement of regulations must be imported into N-Spect.  Worknotes workbooks are not required to be imported into N-Spect.

197.   INSPECTION SPREADSHEETS. Any spreadsheets created during the course of an inspection that support a violation must be imported into N-Spect.

198.   INVESTIGATIVE PARTICIPANTS. If assistance is received from anyone other than an assigned inspection user, the investigator must complete all fields in the "Investigative Participant's Record."

199.   EXPLOSIVES STORAGE LOCATIONS. Enter explosives storage locations, magazine types, owner information and GPS coordinates. (Add full address of storage, not just GPS coordinates.) The GPS readings can be verified using mapping software or a website such as http://boulter.com/gps. (*GPS coordinates are not required for day boxes so populate this field with all 9's, 1's or 0's until N-Spect can be revised.)*

200   RELATED INSPECTIONS.  These are used to link the current assignment with previous inspections.

201.   POST INSPECTION INFORMATION (PII) FOLDER.  These are used by the AS and DIO to notify FFLC & FELC on issuance/renewal of license(s) and permit(s), administrative actions, changes involving licensee or permittee information, and to track action taken after the field work is completed. (Refer to Post Inspection Information Memorandum)

202.   FORMS EXPLORER. The following ATF forms and letters must be generated in or imported into N-Spect, when required:

a.   ATF F 5000.21, Referral of Information.

b.   ATF F 5030.7, Inspection Assignment Progress Report (see Chapter F).

c.   ATF F 5030.5, Report of Violations. (Signed and dated by both the IOI and

161

licensee/permittee or responsible person.)

    d.    Notice of Abandonment.

    e.    Warning Letter.

    f.    Warning Conference Letter.

    g.    Warning Conference Follow-Up Letter.

    h.    Request for Withdrawal of Firearms/Explosives License/Permit Qualification.

    i.    Request for Withdrawal of Firearms/Explosives Renewal Application.

    j.    Notice of Discontinuance of Business.

    k.    i-Note

203.    INVESTIGATOR DIARY. With the implementation of N-Spect electronic diaries, IOIs are required to maintain the following information in N-Spect.

    a.    Daily Information.

        (1)    Odometer start**

        (2)    Odometer stop**

        (3)    Day Start time

        (4)    Day Stop time

        **Odometer start and stop mileage information is only required to document mileage for use of a POV for official business. It is not required for GOV/GSA vehicles.

    b.    Hours Worked. The hours worked each workday; UI number, if applicable; PPC Code (will self-populate if UI number is entered, as will title); and transaction code (e.g., regular time). Non-UI-specific hours shall be entered, along with a PPC code and transaction code. Remarks can be added to any entry for clarification purposes.

    c.    AS are required to review N-Spect diary entries for each IOI under their supervision at least twice a year.

204. – 220. RESERVED

162

CHAPTER H. SPARTAN

221.    GENERAL. Spartan is a state-of-the-art case management system developed as a replacement to the previous legacy system (N-Spect) used by Field Operations to manage field resources, document inspections findings and track all field activities conducted by IOIs. Spartan has been programmed to interface with other ATF stakeholders so that there is a direct line of communication between the field offices, licensing centers and various headquarters divisions that require accurate and real time data. Spartan will streamline the IOI's inspection activities by requiring IOIs to enter all inspection findings directly in the program, thus increasing efficiency and accuracy of documentation in a timely manner. Most importantly, Spartan has a level of logic that will partner more closely with the criminal enforcement groups by associating industry operations inspections to ongoing criminal enforcement activities. Spartan will be able to directly communicate any suspected criminal activities or any significant information that needs to be shared with our criminal enforcement groups to help carry out the mission of the ATF.

   a.    Spartan is designed as a mobile application to be used to document inspection findings in real-time. IOIs are required to bring their laptop and use Spartan while conducting the inspections onsite. Upon arrival at the business premises to be inspected, IOI's will turn on their computer and connect to the internet utilizing a Wi-Fi connection or tether their laptop to iPhone and log into Spartan to ensure connectivity (Using their ATF issued iPhone as a Mobile Wi-Fi hotspot). In the instance that the IOI cannot connect to Spartan during an inspection (no cell signal, no Wi-Fi, no power source etc.), IOI's may conduct inspection activities off-line and enter all findings in Spartan once they get connected at a later date.

       **Note:** Laptops and other electronic devices shall not be used inside explosives magazines.

   b.    Spartan was designed to eliminate the duplication of effort documenting inspection results. All inspection findings, business entity information, business activities, suspicious criminal activities and violations can be documented real-time thus eliminating the need for Narrative Reports and Worksheets used in the past. IOIs will **NOT** create and/or upload separate Narrative Reports any longer.

   c.    This chapter referencing Spartan is not meant to be a user manual. The entries listed are for basic reference only. For all Spartan frequently asked questions (FAQ's), the Spartan Toolkit, and instructional videos, go to the Spartan IO webpage.

   d.    Inspection types

       (1)    FAI – Firearms Application Inspection

       (2)    FCI – Firearms Compliance Inspection

       (3)    FTL – Firearms Theft/Loss Inspection

       (4)    EAI – Explosives Application Inspection

163

(5)    ECI – Explosives Compliance Inspection

(6)    ETL – Explosives Theft/Loss Inspection

e.    Task Types

    (1)    ES – Site Inspection – A site inspection is a task to physically inspect an explosives storage site and any magazines that exist within that site. A site inspection may be done as a larger inspection assigned to you, a collateral request or an independent task.

    (2)    A – Special Assignments – Non-inspection tasks to include: Assist ATF Criminal Enforcement, Audit Agent Cashier Fund, Outreach to Industry, Outreach to Public, Outreach Gunshow, Special Request Headquarters.

    (3)    BP – Business Plan – A process in which an industry member may submit an alternate plan to maintaining explosives storage. This process will be routed for approval by the DIO.

    (4)    R - Referral – A referral is the transfer of investigative information from the ATF to an outside agency. The key difference between a referral and suspicious activity is that a referral is going outside the ATF and a suspicious activity is remaining in the ATF.

    (5)    SUS - A report of potential criminal activity sent to the CGIC for further review and dissemination to ATF CE when an investigation is merited.

    (6)    V - The process in which a Spartan user may submit a variance request from an industry member to be reviewed by the corresponding HQ branch for approval or denial.

f.    Records - A record is how a user can obtain descriptive and historical information of a specific item that ATF has interacted with to include people, firearms, locations, or business entities. Records are automatically generated during assignments or may be created manually.

    (1)    B - Business Entity

    (2)    F- Firearm

    (3)    P - Person

    (4)    L – Location

    (5)    Li – License

    (6)    M –Magazine

164

g.     Inspection Stages and Steps

    (1)     Intake - Steps taken by Area Supervisor or IA to create and assign inspection

        (a)     Contact Information - Address, mailing address, phone number, online presence.

        (b)     Online Presence – An area where the business can be found online such as a website or social media page. Includes twitter, Facebook, website, Instagram.

        (c)     Business Calendar – Hours of Operation of licensee/permittee.

        (d)     Special Instructions - Supervisors are able to provide additional details to an IOI regarding the assignment and what needs to be done using this field.

        (e)     Responsible Persons - All active RPs from FLS auto populate at first creation in Spartan. Users can activate/add new and deactivate RPs in the system during inspections.

    (2)     Pre-Inspection - Steps taken by the assigned IOI that are required to be done before the onsite inspection is initiated.

    (3)     On-Site task checklist – These are the tasks that will be conducted while on-site and the findings and discrepancies will be documented directly into the program.  Some of these tasks include, interview, inventory documentation, record keeping documentation and the Acknowledgement of Federal Regulations.

    (4)     Review Assignment - No data is entered in this step. Contains all information entered during the intake. The same information can always be found in the Overview.

    (5)     Eligibility Verification - Steps of verification that are taken to establish compliance. Each process requires an attachment or contact. Only applicable steps appear on IOI screen based on licensee info.

        (a)     Business information - Verification of a LLC or Corporation.

        (b)     Trade name / DBA - Verification of registered trade name.

        (c)     Property Ownership - Verification of actual property owner with local or state government.

165

      (d)     Lease Rental Information - Verification that they have a rental agreement.

      (e)     Zoning Information - Verification of zoning compliance with local or state government.

      (f)     Contingency Storage - verification of existing contingency agreement with other licensee.

(6)     Verify Responsible Person – Step that IOI documents they ran a criminal history check on the RPs listed and provide results of the check.

(7)     Plan Onsite Visit - Step where IOI documents inspection plans

      (a)     Unannounced Visit - IOI makes inspection without advanced notification

      (b)     Interview with Responsible Person - IOI provided advanced notification for inspection

      (c)     Unsuccessful Attempt - IOI attempted to inspect but was not successful.

h.    Other Terminology

(1)     Record of Conversation - A record of conversation is how an IOI can document any conversations or interviews conducted outside of the traditional workflow of an inspection. This feature is similar to the former "memo of conversation."

(2)     Tasks - A changing list of actions the IOI can do during specific phases of an inspection such as reporting suspicious activity or initiating a withdrawal.

(3)     Questionnaire - an onsite interview of the applicant or licensee to discuss their current or proposed business activities needed to complete the inspection. More in-depth questions may be found in the supplemental questionnaire, which can be used to apply additional scrutiny during an inspection.

(4)     Review Regulations - Similar to the former Acknowledgement of Regulations form, this process will be done online with new features such as on-screen signatures. Completing this stage auto generates an attached document called Closing Conference Summary.

(5)     Site– A site is a property that contains a magazine or magazines. Example: An explosive company has a group of magazines at their primary location. In addition, they keep two additional magazines at a construction yard 40

166

miles away from their primary location. This would result in two separate sites.

(6)     Snapshot- A summary of a specific work object such as a referral or inspection.

(7)     Summary Report - A PDF formatted report of the entire inspection that can be provided to non-Spartan users.

(8)     Supplemental Questionnaire - An optional questionnaire beyond the required questionnaire that may be conducted during the onsite inspection providing additional questions to apply additional scrutiny during an inspection.

(9)     Post Inspection Information (PII) – The PII is a communication tool within the program to send critical information or status updates to other ATF stakeholders. It works similarly to an email message and pre-populates the assignment information and licensee/permittee information automatically. Additionally, the user can attach a file to the message before it is sent.

i.     Utilities

(1)     Timeline - A timeline is a linear listing of events related to a specific business object such as an inspection or referral. An example of an event would be when the assignment was issued or when an applicant signed the regulations form.

(2)     Links - The links tab will provide the user with an interactive visual image of relationships between various records and cases. For example, if a responsible person of a current licensee worked for another business entity previously investigated by ATF, a linked relationship may appear. A user may also manually create links between objects.

(3)     History - A detailed list recording the various tasks completed by the assigned users in a specific case. Historical information on the licensee or person can be found under the records tab.

222. – 230. Reserved

167

CHAPTER I.  INSPECTION SAFETY PROCEDURES

231.  GENERAL.

    a.    This chapter identifies policies and procedures that are intended to minimize risks of workplace illnesses and injuries to IOIs. It also provides requirements and technical guidance for the IOIs to help recognize, evaluate, and control workplace safety and health hazards during explosives inspections. Each IOI shall observe the following safety guidelines to ensure that explosives inspections are conducted safely.

    b.    It is noted that licensees/permittees are subject to a number of Occupational Health and Safety Administration (OSHA) regulations that are intended to protect employees from workplace exposures and hazards. Although licensees/permittees are obligated to comply with these regulations to protect their own workers, some may not be in compliance or recognize any duty to protect Government IOIs. IOIs should not assume that such protective measures are in place or will protect them during inspections. IOIs have the right to refuse entry and request that the licensees/permittees abate significant hazards should unsafe/unhealthy conditions be encountered.

232.  FIREARMS INSPECTIONS. In preparation for a firearms inspection, the IOI shall adhere to the following procedures:

    a.    Review Safety Profile from previous inspection, if available.

    b.    Verify that applicant/licensee is not under investigation by CE.

    c.    Review previous inspection reports, if available.

    d.    If applicant/licensee is located in high risk area or if there are other unsafe conditions, consider requesting the assistance of an ATF special agent.

233.  EXPLOSIVES INSPECTIONS. In preparation for conducting an explosives inspection, the IOI shall adhere to the following procedures:

    a.    Pre-inspection Preparation and Planning.

        (1)    Safe Handling of Explosives Training. All IOIs conducting an explosives inspection or assisting in an explosives criminal investigation shall have attended the mandatory ATF Safe Handling of Explosives training before being permitted to touch or otherwise move any explosives. IOIs must always be familiar with the characteristics of the explosive product and ensure that safety measures are in place prior to handling.

        (2)    Licensee/Permittee Safety Policies. Prior to conducting inspections, IOIs shall familiarize themselves with any existing licensee/permittee safety and

health policies/procedures that may pertain to explosives inspections. IOIs shall comply with any such policies/procedures. However, **do not** sign any document that releases the licensee/permittee from any type of liability (e.g., physical injury) sustained at the business premises.

(3) Clothing. Bureau-issued clothing has been designed to reduce the risks posed by static electricity and electric sparks as well as to present a professional appearance. The issued clothing has approved ATF indicia that are critical when conducting early morning inspections or assisting with investigations of accidental explosions or other enforcement actions with ATF special agents. Where static is a potential hazard, outer clothing made of wool, silk or synthetic blends or use of non-electrostatic dissipative boots may pose a safety hazard due to a potential accumulation of a static charge or other reasons and **must not be worn**. Therefore, it is ATF policy that the following requirements be met:

(a) Wear only Bureau-issued 100 percent cotton pants and shirts, boots and coat (if applicable) will be worn when conducting explosives inspections (except black powder inspections at a firearms dealer's premises).

(b) Bureau-issued clothing shall only be worn during official duty hours.

(c) Efforts shall be made to conceal ATF indicia when wearing Bureau-issued clothing in public.

> **Note:** An exception to the above clothing requirements is made for inspection of black powder dealers at firearms dealer's premises. See also ATF O 3320.7A, Explosives Programs and Operations, for protective equipment and procedures when conducting range operations during training.

(4) Equipment. IOIs shall have with them the following Bureau-issued, safety-related equipment for use when conducting an explosives inspection:

(a) Protective helmet.

(b) Eye protection.

(c) Intrinsically safe flashlight.

(d) Non-spark producing metal thickness gauge.

(e) Plastic measuring tape (non-sparking/non-metallic).

(f) Full-face, air-purifying respirator with combination chemical cartridges (See memorandum dated March 16, 2012, Policy

169

Statement –Medical Surveillance/Respiratory Protection
Program).

    (g)    Cotton and/or anti-static, penetration-resistant nitrile gloves (to be
provided).

    (h)    Mirrors (nonsparking/nonmetallic) (to be provided).

    (i)    Aluminum or wooden ladders.

(5)    Personal Electronic Devices. All electronic devices (e.g., cellular
telephones, pagers, GPS devices, cameras, electronic gauges) shall be
removed prior to entering any explosives storage facility. All two-way
communications equipment shall be turned off in any blast or storage
area. Refer to Advisory on Safe Photography.

(6)    Jewelry. All spark-producing jewelry or accessories shall be removed
prior to entering any explosives storage facility.

(7)    Emergency Contingencies. Prior to beginning an inspection, IOIs shall
establish contingencies in the event of an emergency such as a fire or
explosion, incapacitation/ unconsciousness, confrontation, etc. Such
contingencies shall include methods of signaling alarm, identifying rally
points and paths of egress, confirmation of contact numbers for
emergency response personnel, and possible use of a "buddy system."

(8)    Parking. IOIs shall park at a safe distance from explosives storage
facilities facing the nearest exit. Avoid parking in areas of high and/or
dried grass and brush. Leave vehicle doors unlocked and ensure that
keys are immediately accessible.

(9)    Respirator Usage. Certain activities (e.g., inspection of walk-in magazines
containing nitroglycerin (NG)-based dynamite) require the use of
respirators as a means of controlling potential exposures to airborne
chemical vapors. Any use of respirators requires advance screening,
qualification, and training. At the discretion of the SAC or his/her
designee, up to three 1801 Industry Operations Investigators (IOI) per
Division can remain in the Respiratory Protection Program (RPP) (See
memorandum dated March 16, 2012, Policy Statement –Medical
Surveillance/Respiratory Protection Program).

b.    Initial Hazard Assessment.

    (1)    Hazard Identification. Upon arrival at an explosives magazine or
processing area, immediately examine the interior for unsafe conditions
such as residue powders on the floor, spillage, or deteriorated explosive
materials. If conditions are encountered that pose an immediate threat to
safety, the inspection shall be terminated and all IOIs shall immediately

170

proceed to a safe location. If any such situation is encountered, IOIs shall request that the licensee/permittee take corrective action to eliminate the hazardous situation. This may include the destruction of the explosive materials by the entity storing the materials or removal by the manufacturer or distributor of the product for destruction (e.g., if loose stores of black powder and/or flash powder are found in a storage facility, the licensee/permittee shall be required to take immediate corrective action to rectify the situation). The inspection shall be resumed only when the hazards have dissipated or have been corrected. Examples of unsafe conditions which may pose an immediate threat include:

(a)   Deteriorated explosives, residue powders on the floor, or spillage. Never handle damaged, leaking, or deteriorated explosives. Signs of deteriorated explosive materials may include crushed boxes, stains or discoloration on boxes or explosives, leakage, and crystallization. **Do not** enter a magazine or processing area with these materials present.  Instead, leave the area immediately and contact the AS. Instruct the licensee/permittee to consult with the manufacturer or distributor for advice on proper safeguarding and disposal.

**Note:** An exception to this requirement would include loose stores of explosives powder in a processing facility to the extent that such materials are being used in the assembly process.

(b)   Broken or inappropriate explosives packaging.

(c)   Detonators stored with other explosives.

**Note:** Detonators that will not mass detonate (i.e., detonators designated 1.4 by DOT and in the original packaging, not loose) may be stored with electric squibs, safety fuse, igniters and igniter cord in a type 4 magazine.

(d)   Detonators stored with explosives other than delay devices and electric squibs, safety fuse, igniters and igniter cord in a type 1 or type 2 magazine.

(e)   Bulk quantities of combustible materials and chemicals stored in magazines with explosives.

(f)   Illegal Explosives. DO NOT handle illegal explosive devices. Contact your AS immediately.

(g)   Static/spark/shock sensitive areas. Working in areas where explosives are located (e.g., magazines, process buildings, explosive materials-related facilities) may present significant hazards from static electricity, sparks, or shock waves. **It is**

171

**imperative** that IOIs recognize situations that may result in a potential static/spark/shock sensitive area, and take full precautions. Flash powder, black powder, and pyrotechnic compositions are generally the most sensitive materials. **Use extreme caution** when handling or working around these materials, particularly if loose powder or opened or improperly packaged explosives are present, or if the relative humidity in the work area is below 20 percent. Information regarding the presence of these materials and the location of any static/spark/shock sensitive areas should be solicited from the licensee/permittee during the pre-inspection discussions. See Explosives Magazine Pre-Entry Safety Guidelines, for additional information.

(h)     Nitroglycerin (NG)-Based Explosives.

     1     Working in areas where NG–based dynamite is located may present special health concerns due to potential chemical exposures. Such exposures may result from inhalation of NG vapors or from inhalation of the related chemical, ethylene glycol dinitrate (EGDN). Typically, the most notable symptom of exposure due to inhalation and/or skin absorption is a severe headache. However, other noticeable health effects may also occur (e.g., lightheadedness, nausea, vomiting) depending on factors such as airborne concentration, degree of skin contact, individual susceptibility, prescription medications being taken, etc.

     2     Hazard identification associated with NG-based dynamite may require soliciting advance inventory information and material safety data sheets (MSDSs) from the licensee/permittee, an assessment of the feasibility of acceptable passive magazine ventilation, individual susceptibilities, apparent symptoms, etc.

(i)     Heat Stress.  Be prepared to recognize the signs and symptoms of heat stress and to respond effectively. Heat stress may be a particular risk when the weather is hot and humid and you are not acclimatized (i.e., have not spent 2 weeks in similar weather conditions). Under such conditions, be prepared to monitor for signs and symptoms of heat stress, take frequent breaks, and drink plenty of fluids. Refer to Chemical Exposure and Heat Stress Signs and Symptoms, to become more aware of possible signs/symptoms of heat stress.

(2)     Supervisor Contact. Contact your immediate supervisor and report any unsafe conditions as soon as possible. If the immediate supervisor is unavailable, then the second-level IO supervisor, or the RAC, duty agent,

172

or division office supervisor, as appropriate, shall be contacted.

(3) Technical Support. For technical support dealing with the identification of potential hazards during such inspections, the IOIs shall contact his/her immediate supervisor. For additional technical information, contact the EIPB and Explosives Technology Branch.

c. Conducting the Inspection.

(1) Access to Explosives. **Do not** walk or crawl on the top of explosive materials or containers. Use wooden or aluminum ladders (if necessary) to examine explosive materials inventories. Another method, when practical, is to use mirrors to view the product. As a last resort, remove the containers of explosive materials for better visibility.

(2) Handling Explosives. Always be familiar with the characteristics of the explosive product prior to handling. Explosive products shall only be carried in the original packaging or appropriate cartons or boxes. **Do not** drag, push, drop, or toss explosives or packages of explosives. **Do not** pick up display fireworks by the attached fuse or quick match. **Never** tamper with, or attempt to remove, the contents of any detonator, fireworks, or other explosive product.

(3) Lifting. IOIs should handle, lift, and carry explosive products only when necessary, and ensure that the following proper lifting techniques are used:

(a) Bend your knees, not your back.

(b) For stability, keep your feet wide apart; in this way you are using your strong leg muscles and not straining your back.

(c) As a rule, keep your hips aligned under your shoulders to keep your back straight.

(d) Carry the object against your body (so that its center of gravity is closer to yours).

(e) Bend at the knees to put the object down.

(4) Tools Used for Opening/Closing Containers. Tools used for opening or closing containers of explosive materials are to be of nonsparking materials, except that metal slitters may be used for opening fiberboard containers. When opening containers, **do not** create sparks or static hazards. Do **not** allow slitters (such as box cutters and knives) to touch metal box fasteners or the explosive materials inside the containers. Metal objects, other than nonsparking transfer conveyors, are not to be stored in any magazine containing high explosives.

173

(5)     Placement of Explosive Materials.  Explosive materials shall not be placed directly against the interior walls or configured such that ventilation does not occur.

(6)     Smoking and Open Flames. Smoking, or any open flames, shall not be permitted within 50 feet of a storage facility or building where explosives are handled, stored or used, or in any room containing an indoor magazine.

(7)     Sparking Materials. No sparking materials (e.g., exposed metal, ferrous metal nails in the floor or side walls, etc.) shall come in contact with the stored explosive materials.

    **Note:** This is not a requirement for all magazines, such as a Type 2.

(8)     Packaging of Explosives. Explosive materials are not to be packed or repacked inside or within 50 feet of a magazine, except with respect to fiberboard or other nonmetal containers. Containers of explosive materials must be closed while being stored unless the requirements in ATF Ruling 2012-2 are met. Licensees and permittees who comply with all the conditions set forth in the ruling at all times are not required to obtain a separate, individual variance approval from ATF pursuant to the regulations at 27 CFR 555.214(b) and (c).

(9)     Skin Exposure. Avoid getting explosive materials or chemicals on exposed skin or in eyes. Wear a long-sleeve shirt to avoid skin absorption of chemicals found in explosives. Use cotton and/or anti-static, penetration-resistant nitrile gloves, as applicable.

(10)    Inhalation Exposure. As circumstances dictate, only a Bureau-issued respirator shall be used by IOIs to protect against potential harmful airborne dusts and vapors. It is currently ATF's policy that qualified IOIs wear respirators when conducting inspections of all walk-in type magazines containing NG-based explosives. (Refer to ATF O 1600.5B, Safety, Health and Environmental Programs).

(11)    Decontamination. Always wash or sanitize hands following examination of explosives or other related chemicals. If any other bodily areas are exposed, flush the contact areas with water.

(12)    Insects/Animals/Plants. Be cautious of insects, animals and poisonous plants in the area (e.g., dogs, snakes, rodents, bees, spiders, poison ivy);

(13)    Volatile Materials. All volatile materials shall be kept a distance of at least 50 feet from outdoor magazines.

(14)    Housekeeping. Licensees/permittees are required to keep the areas where explosive materials are located clean, dry and free of grit, paper, empty packages and containers, and rubbish. Floors shall be regularly swept. No spark-producing metal brooms or utensils shall be used in the cleaning and maintenance of magazines or kept in the magazines. Areas

174

surrounding magazines shall be kept clear of rubbish, brush, and dry grass, or trees (except live trees more than 10 feet tall) for more than 25 feet in all directions. Living foliage which is used to stabilize the earthen covering of a magazine need not be removed.

d. Special Hazards and Controls.

    (1) Static/Spark/Shock-Sensitive Environments. Working in areas where explosives are located (e.g., magazines, process buildings, explosive materials-related facilities) may present significant hazards from static electricity, sparks, or shock waves. **It is imperative** that IOIs recognize such potential static/spark/shock-sensitive areas and take full precautions prior to entry. Flash powder, black powder, and pyrotechnic compositions are generally the most sensitive explosive materials. **Use extreme caution** when handling or working around these materials, particularly if loose powder or opened or improperly packaged explosives are present. Special precautions to be taken in such situations include:

        (a) **Ground yourself immediately prior to entering sensitive areas** by touching an unpainted metal exterior of the magazine or the ground prior to entering.

        (b) Ensure that you are wearing the appropriate Bureau-issued clothing and boots, and that any equipment brought into the sensitive area is approved for such use.

        (c) Check your shoes and magazine floors for rocks, sand, or grit that could cause a friction spark.

    (2) Chemical Hazards - NG-based Explosives. As previously noted, working in areas where NG–based dynamite is located presents special concerns due to potential chemical exposure. As a result, the following precautions shall be taken prior to entering explosives magazines known to contain NG-based explosives:

        (a) Air-out (ventilate) the magazine so that accumulated vapors are dispersed. Ventilation should occur for at least 30 minutes immediately prior to entry.

        (b) Wear Bureau-issued clothing, including a long-sleeve BDU shirt, to minimize skin contact with NG or EGDN vapors.

        (c) Wear a Bureau-issued, full-face air-purifying respirator with the appropriate combination cartridges when working in enclosed areas (e.g., walk-in magazines). All respirator wearers must first be screened, trained, and qualified by the Office of Management, Policy and Safety Branch. (Refer to ATF O 1600.5B). At the discretion of the SAC or his/her designee, up to three 1801 Industry Operations Investigators (IOI) per Division can remain in

the Respiratory Protection Program (RPP). See memorandum
dated March 16, 2012, <u>Policy Statement –Medical
Surveillance/Respiratory Protection Program.</u>

e.   <u>Explosives Magazine Pre-Entry Safety Guidelines</u>. This safety awareness list
shall be reviewed by IOIs prior to entry into any walk-in type explosives
magazine. The purpose of this awareness list is to focus attention on ways to
mitigate safety/health risks due to potential exposure to static/sparking hazards
and/or NG or EGDN vapors.

f.   <u>Respiratory Protection Program (RPP).</u> ATF O <u>ATF O 1600.5B</u>, Safety, Health
and Environmental Programs provide information and mandatory procedures for
required respirator use. All IOIs must thoroughly familiarize themselves, and
ensure full compliance with the above referenced materials, especially relating to
fit-testing, respirator restrictions, equipment maintenance and care, and training
requirements, ensuring full compliance. At the discretion of the SAC and their
management team, up to three IOIs per Division, will remain in the RPP (See
memorandum dated March 16, 2012, Policy Statement –Medical
Surveillance/Respiratory Protection Program). Although not required to complete
annual medical examinations, all IOIs must be medically cleared prior to wearing
a respirator as outlined in Chapter D of <u>ATF O 1600.5B</u>. The Office of
Management, Policy and Safety Branch shall be responsible for the development
and implementation of procedures for the inclusion of IOIs in the Bureau's
Respiratory Protection Program, as applicable.

234.– 240.  RESERVED

Case 3:23-cv-00544   Document 1-8   Filed 05/26/23   Page 186 of 190 PageID #: 430

CHAPTER J. INTERNAL CONTROL GUIDELINES

241.   EVALUATION OF LICENSEE'S OR PERMITTEE'S INTERNAL CONTROLS. The
       evaluation of a licensees or permittees existing internal controls is the basis for
       determining the extent of testing or detail work to be done. Internal controls describe the
       business organization and procedures that provide reasonable assurance that errors or
       irregularities are prevented and timely detected and that objectives are achieved. Internal
       control evaluations have limitations. Such evaluations are conducted by the IOI to provide
       ideas for investigative avenues to pursue. Understanding a business from an internal
       control standpoint also will provide IOIs with a better understanding of whether violations
       found are isolated or systemic, and whether they are likely to recur in the future. An IOI's
       concern with internal controls is to determine whether industry members have procedures
       in place to ensure that inventory is accounted for; entries are accurately and timely made
       in required records; commodities are not transferred to persons who are prohibited by law
       from receiving or possessing them; and inventory is safeguarded from theft or loss.

       a.    Characteristics of a Sound System of Internal Controls.

             (1)   Segregation of functions or division of duties. Optimally, no one person
                   should have controls over more than one functional responsibility,
                   unless, the business is a sole proprietor. There are three general duties
                   that should be performed by either different departments or, at a
                   minimum, three different employees.

                   (a)   Authority to execute a transaction (i.e., conducting a sale or
                         ordering from suppliers).

                   (b)   Recording the transaction.

                   (c)   Custody of the assets involved in the transaction (i.e., inventory
                         control).

             (2)   A sound system of policies and practices which is demonstrated by the
                   consistent application of formal and informal procedures. These include
                   the error-checking routines performed to verify the accuracy of the
                   recordkeeping system.

             (3)   Periodic comparisons of records with actual quantities (e.g., regular
                   inventories).

             (4)   Employees have duties and responsibilities in line with their qualifications,
                   training and experience.

             (5)   Independent review or oversight functions.

       b.    Internal Controls in Small Businesses. Usually large businesses will have
             detailed procedure manuals, specialized employees, and separation of duties.
             Small businesses may not give as much consideration to internal controls, as
             they may not have the staff or the time to set up internal controls procedures.

                                          177

(1)     Many smaller businesses have only a few individuals who function in many capacities, therefore, it is impossible to provide many of the required checks through segregation of operations.

(1)     The key person in most of these businesses is the owner/manager who may or may not be able to supervise all the important transactions and assure recordkeeping accuracy.

242.   DOCUMENTATION AND REVIEW OF INTERNAL CONTROLS.

a.     For specific internal control procedures pertaining to firearms refer to "FFL Internal Control Review Guide"

b.     For specific internal control procedures pertaining to explosives refer to Security Considerations (ATF P 5400.15, Safety and Security Information for Federal Explosives Licensees and Permittees.)

c.     Company manuals may contain a description of procedures or record systems that may be useful in documenting the internal controls system.

d.     Evaluation of previous inspections may be useful in assessing the reliability of the system of internal controls.

243.   COMPUTERIZED SYSTEM. Information systems may often produce reports containing operational and compliance related information that makes it possible for an entity to control a commodity. Most large companies use a computerized recordkeeping system. Large computerized systems have controls that should prevent or detect processing errors that might occur.

a.     The following controls should be in place:

(1)     Procedures to detect the failure to properly capture transactions for ATF required records.

(2)     A back-up procedure to minimize information loss.

(3)     Procedures to correct input errors. (Access to make corrections, or manually override the system should be restricted to one or two employees). The employees inputting data should not have access to override the system entry.

(4)     Procedures to prevent processing invalid transactions.

(5)     Procedures to fully document any manual overrides. There should be a log of all corrections and manual overrides with detailed explanations and copies of supporting records.

b.     Computerization can lead to tasks being centralized (e.g., one person may be responsible for making all computer entries) which could adversely

impact internal controls.

    c.    If source documents are filed in several locations, making access to those files difficult, and if the data is not readily available electronically, the steps of tracing source documents may be eliminated.

244.    SAMPLING METHODS. For a detailed discussion of sampling and sampling methods, see Sampling in Auditing, Hill, Roth, Arkin.

    a.    The IOI should use sampling whenever testing of less than 100 percent (requires AS justification, DIO approval, and DAD (IO) notification for firearms inventories and ATF F 4473 only). There are three objectives when using sampling techniques in the field:

        (1)    To evaluate the effectiveness of internal controls to determine the scope and extent of testing necessary.

        (2)    To test for compliance with ATF requirements.

        (3)    To check the accuracy of inventory and related records.

    b.    The following issues should be considered when evaluating whether sampling should be used:

        (1)    Sampling can be extremely time consuming, especially when the population is large and dynamic and is not readily adaptable to such procedures.

        (2)    If the records are not sequentially numbered, they should not be sampled by statistical methods unless the records can be easily recapped or numbered with an artificial numbering system. If the records cannot be numbered, the IOI can use systematic sampling. (see below)

        (3)    The reliability of the industry member's records is determined through the use of testing. It is used to determine whether the industry member's records are reliable. The appropriate degree of testing is that level which can logically be relied upon to reveal errors in nearly the same proportion as would exist in the total area tested; however, there is always some risk in any sampling process.

    c.    The three major sampling techniques are statistical sampling, judgment sampling and systematic sampling.

        (1)    Judgmental sampling is selected on the basis of the IOI's opinion of the best items to examine and not based on random sampling or other factors. An example of judgmental sampling is selecting ATF F 4473s of weapons of choice to review rather than all 4473s or every nth 4473. Judgmental sampling has some limitations in that the results cannot be projected to all transactions, however, judgmental sampling will show

compliance with internal control procedures, and it can be used to good advantage in the following situations:

(a) When testing small populations.

(b) When verifying an inventory if an industry member has good internal controls and a favorable compliance history.

(c) When examining records prepared during periods of unusual or seasonal activity.

(2) Statistical sampling is a scientific method to sample an entire population and project the results with known precision. Statistical sampling may be used to test large populations, to verify inventories at large industry members, or to test those with a poor compliance history or weak internal controls. The facts surrounding each examination must be evaluated to determine whether it is cost effective to complete a statistical sample. High risk areas, such as inventory verification, require a minimum of 95 percent confidence level with a +/- 2 percent error rate.

(3) Systematic Sampling is a method of drawing every "Nth" item beginning with a random start. Obtain the sampling interval "N" by dividing the field size by the sample size. Use systematic sampling with caution because the sample result may be biased and it may not be apparent that a bias exists. For example, if a sample of 200 4473s out of 4,000 is desired, every 20th 4473 may be selected provided all 4,000 forms are covered and the starting point is a random selection.

245. – 250. RESERVED