U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Order

ATF O 5370.1D

SUBJECT: FEDERAL FIREARMS ADMINISTRATIVE ACTION POLICY AND PROCEDURES

DATE: 10/02/2019
OPI RECERTIFICATION DATE: 10/02/2024
OPI: 700000

TO:  All ATF Industry Operations Offices

1. <u>PURPOSE</u>. This order provides fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of Federal firearm licensees (FFLs).

2. <u>CANCELLATION</u>. This order cancels ATF O 5370.1C, Federal Firearms Administrative Action Policy and Procedures, dated February 21, 2017.

3. <u>AUTHORITIES</u>.

    a. Title 28 U.S.C. § 599A.

    b. Title 28, CFR, Sections 0.130 and 0.131.

4. <u>DISCUSSION</u>. This order identifies the minimum guidelines for administrative action but does not address every potential scenario or violation. Each field division's Director, Industry Operations (DIO) should take the appropriate actions to ensure licensee compliance, protecting the public through proper application of this order. While it is desirable to have definitive guidelines in this area, every inspection is unique.

    a. Administrative action is defined as a warning letter, warning conference, revocation, imposition of civil fine, and/or suspension of a Federal firearms license, including a recommendation of denial of an original or renewal application, and alternate action to revocation. The issuance of ATF F 5030.5, Report of Violations, is not an administrative action but rather a documentation of inspection findings.

    b. This policy is for internal guidance only and is law enforcement sensitive. It is not intended—and should not be construed—to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees.

5. <u>BACKGROUND</u>. This order sets forth the general policy guidelines for administrative action recommendations for FFLs.

    a. This is a national policy for determining administrative actions to promote consistent and equitable resolutions of violations of the Gun Control Act (GCA). The field should pursue all administrative actions in relation to the cited violations and their circumstances. The nature of the violations and their impact on public safety and the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) ability to reduce violent crime are significant considerations for the appropriate administrative action. ATF may also consider mitigating factors. This order will allow for the most efficient use of ATF resources while maintaining the goal of compliance throughout the industry.

Case 3:23-cv-00544    Document 1-9    Filed 05/26/23    Page 1 of 11 PageID #: 435

b. ATF inspects licensees to ensure compliance with Federal firearms laws by educating licensees on their responsibilities, verifying they are complying with the provisions of the GCA and its implementing regulations, and analyzing operations to detect possible diversion of firearms from legal commerce through regulatory inspections. Compliance with the GCA by the firearms industry is an essential part of addressing nationwide crime control and public safety efforts as outlined in ATF's Strategic Plan.

c. Pursuant to 18 U.S.C. 923(e), ATF may only revoke a Federal firearms license for willful violations of the GCA and its implementing regulations. The term willfulness means a purposeful disregard of, a plain indifference to, or reckless disregard of a known legal obligation. ATF may also revoke or suspend a license, or impose a civil fine for certain violations of the Brady Handgun Violence Act and the Child Safety Lock Act of 2005. ATF may revoke for any willful violation of the GCA including all of the violations discussed in this order and any other violation of the GCA.

6. REFERENCES.

   a. ATF O 1100.168C, Delegation Order—Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, dated 11/5/18.

   b. ATF O 3200.1A, Monitored Case Program, dated 3/19/15.

   c. ATF O 5000.19A, Industry Operations Manual, dated 4/4/18.

   d. Title 27 CFR Part 478.

   e. Title 18 U.S.C. 922.

   f. Title 18 U.S.C. 923.

   g. Title 18 U.S.C 924.

7. POLICY.

   a. Unified Administrative Action Policy and Procedures.

      (1) This order establishes a unified plan of action for resolution of violations through administrative action. The plan groups types of violations into categories for which specific administrative actions are recommended.

      (2) This national policy will assist Special Agents in Charge (SACs), DIOs, field counsel, Area Supervisors (ASs), and Industry Operations Investigators (IOIs) in making appropriate recommendations.

      (3) Each inspection has unique and sometimes complex circumstances. Therefore, even in cases where violations appear willful, the field should consider the following questions when recommending administrative action:

         (a) Is the FFL willing/able to achieve and maintain voluntary compliance?

         (b) Will the continued operation of the FFL pose a threat to public safety or contribute to violent crime and other criminal activities?

         (c) Is the FFL taking responsibility for violations and willing to work with ATF to correct them?

         (d) Is the FFL's failure to properly complete and maintain records directly impacting the traceability of firearms.

    (e)    Do violations have a nexus to persons prohibited from possessing firearms?

b.   Report of Violations. The field will issue an ATF F 5030.5, Report of Violations, to the FFL for all violations identified during the inspection. This action does not require a determination of willfulness.

c.   Warning Letter. The field may issue a warning letter (WL) when violations of 27 CFR, Part 478; require a formal documented action on the part of ATF beyond the Report of Violations. The AS may decide that a WL is not necessary based on the nature and number of violations, improvement in business operations, record keeping, etc., since the previous inspection, FFL's compliance history, time elapsed since previous inspection and other relevant factors may be considered. Sending a WL to a FFL does not require a determination of willfulness. Violations that generally merit a WL as the minimum administrative action include—but are not limited to—the following:

    (1)    Failure to timely and/or correctly maintain records of receipt, manufacture, importation or other acquisition on 5 percent or more of the licensee's total acquisitions during the inspection period, with a minimum of 10 instances.

    (2)    Failure to timely and/or correctly maintain records of sales or other dispositions on 5 percent or more of the licensee's total dispositions during the inspection period, with a minimum of 10 instances.

    (3)    Failure by the licensee to obtain complete and accurate information for any item(s) on Forms 4473, questions 11 and 12, or failure to ensure the buyer signs and dates the Form 4473 (to include failing to have the buyer recertify their answers if the transfer takes place on a different date than the original signature) on 5 percent or more of the Forms 4473 examined except when any purchaser is prohibited - refer to subparagraph 7.e.(5)(a).

    (4)    Failure to record valid and complete transferee identification on 10 percent or more of the Forms 4473 examined.

    (5)    Failure to record any transferee identification on 10 percent or more of the Forms 4473 examined.

    (6)    Failure to file ATF F 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required and with a minimum of five instances.

    (7)    Missing firearms after inventory reconciliation (e.g., no records of disposition, required or otherwise).

    (8)    Failure to retain required GCA records for transferred firearms for period of time specified by regulation.

    (9)    Transfer of a rifle/shotgun to a resident of another State that violates State law.

    (10)    Failure to execute a Form 4473 for:

        (a)    The return of a firearm that was consigned to the licensee;

        (b)    The transfer of a firearm to a law enforcement officer for personal use; or

        (c)    The transfer of a firearm out of the business inventory to an FFL

Case 3:23-cv-00544    Document 1-9    Filed 05/26/23    Page 3 of 11 PageID #: 437

responsible person (other than a sole-proprietor), if the transferee is not prohibited.

(11) Failure to conduct a National Instant Criminal Background Check System (NICS) check or obtain alternative permit for:

(a) The return of a firearm that was consigned to the licensee;

(b) The transfer of a firearm to a law enforcement officer for personal use; or

(c) The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole-proprietor), if the transferee is not prohibited.

(12) Failure to retrieve a NICS (or equivalent State background check system) e-check response prior to the transfer of a firearm, and the transferee is not prohibited.

(13) FFL transfers a firearm prior to receiving a final NICS response (or applicable State background check system) and 3 business days (or the state waiting period) have not elapsed, and the person is not prohibited.

(14) FFL fails to notify ATF about a change of control.

(15) FFL is engaged in an activity not authorized by the Federal firearms license (e.g., engaging in manufacturing firearms without a manufacturer's license).

(16) Failure to initiate a new NICS check when a transaction is not completed within the 30-day period from the date NICS was initially contacted provided that the person is not prohibited.

(17) Failure to timely report upon discovery of the theft or loss of a firearm to either ATF or local law enforcement.

(18) Failure to record NICS or Point of Contact background check information on 10 percent or more of Forms 4473 examined, with a minimum of 10 instances.

(19) ATF has previously cited the FFL in a Report of Violations within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

d. Warning Conference. A warning conference (WC) lets a DIO or AS assess the FFL's potential to achieve compliance and determine any potential risks to public safety and firearm traceability. It does not require a determination of willfulness.

(1) It is generally appropriate when the FFL has previously been the subject of a WL or WC, and the current inspection indicates similar repeat violations, though it may be appropriate to hold a WC for an FFL without a history of previous violations or a WL in certain circumstances. The DIO may decide that a WL or no administrative action is appropriate based on the nature and number of violations, improvement with business operations since the previous inspection, compliance history, time elapsed since any previous administrative action, and other relevant factors.

(2) If the violations involve a corporation, ATF must invite a corporate responsible person to the WC. (Ensure a copy of the WC notification letter is sent to the FFL's corporate office.)

(3) During the WC, ATF should provide the FFL with specific instructions to achieve GCA compliance, and emphasize the mutual goal of ATF and the industry to safeguard the public.

(4) Examples of violations that generally merit a WC as the minimum administrative action, include but are not limited to the following:

    (a) Transfer of a firearm (including lower receiver) other than a rifle or shotgun to an out-of-state resident.

    (b) Failure to mark imported or manufactured firearms appropriately.

    (c) Failure to execute a Form 4473, exception use WL for:

        (1) The return of a firearm that was consigned to the licensee;

        (2) The transfer of a firearm to a law enforcement officer for personal use; or

        (3) The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole-proprietor), if the transferee is not prohibited. – see paragraph 7.c.(10).

    (d) Failure to conduct a NICS check or obtain an alternate permit, exception use WL for:

        (1) The return of a firearm that was consigned to the licensee;

        (2) The transfer of a firearm to a law enforcement officer for personal use; or

        (3) The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole-proprietor), if the transferee is not prohibited. – see paragraph 7.c.(11).

    (e) Failure to report theft or loss to both ATF and local law enforcement.

    (f) Conducting business at locations not authorized as an extension of the licensed business premises.

    (g) FFL has previously been the subject of a WL or WC within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

(5) If the FFL does not respond to the WC notification letter and there is evidence that the violations are willful, the DIO may revoke (or deny a renewal application for) the Federal firearms license.

(6) Additionally, the DIO may decide after meeting with the FFL, or after offering opportunity for compliance, to proceed with revocation (renewals/denials) if the DIO believes the public interest is best served by revoking or denying renewal of the Federal firearms license, the DIO will proceed accordingly. In any situation in which the DIO seeks revocation or denial of renewal, notification of the proposed course of action must be made through Field Management Staff, Frontline Investigative Support Branch (FISB) (fmsisb@atf.gov).

(7) In instances in which it is determined that the violations were not willful and/or the FFL is likely to come into compliance, the WC shall be the final administrative action.

(8) The WC may include ATF Counsel and will discuss means to achieve compliance, the AS or DIO may request written proposals designed to achieve GCA compliance.

e. Revocation Under 18 U.S.C. 923(e).

(1) It is necessary to establish willfulness— the field division must prove that the licensee knew its legal obligations under the GCA and either purposefully disregarded or demonstrated a plain indifference or a reckless disregard to them—to proceed with revocation under 18 U.S.C. 923(e). Not every repeat violation is per se a willful violation. A single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the FFL knew of the legal requirement to complete the forms. However, if such errors continue or even increase after repeated warnings and explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. The failures then show the FFL's plain indifference and therefore become willful.

(2) ATF does not have to establish a history of prior violations to demonstrate willfulness. Accordingly, ATF may revoke a Federal firearms license under appropriate circumstances based on an initial set of violations, if it meets the elements of willfulness, such as an intentional straw sale or knowingly transferring to a prohibited person, refusing ATF right of entry and inspections during hours of operation at the licensed premises, discontinuing use of GCA required records, knowingly entering false information or intentionally making false statements involving required records under the GCA.

(3) ATF can establish the knowledge element of willfulness in several ways:

(a) Establish the FFL has a history of similar, repeat violations, and the inspection report documents that an IOI discussed them with the FFL. The FFL's compliance history can include other efforts by ATF (including qualification inspections) to inform the FFL about its legal responsibilities.

(b) Use inspection reports to establish willfulness even if the inspection found no violations (i.e., acknowledgment of Federal firearms regulations).

(c) Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that hindered or obstructed the inspection, or other evidence, can also establish willfulness.

(4) ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed if the field division decides not to pursue Monitored Case Program (MCP) actions. (See 10.e.(3) for Regional Associate Chief Counsel (ACC) concurrence)

(5) Revocation is an appropriate licensing action under section 923(e) and is strongly recommended in response to the discovery of the following willful violations which

Case 3:23-cv-00544     Document 1-9     Filed 05/26/23     Page 6 of 11 PageID #: 440

10/02/2019

directly impact the public:

(a) Transfer of a firearm to a prohibited person while knowing or having reasonable cause to believe that the transferee is a prohibited person.

(b) Allow an employee who is a prohibited person to have actual or constructive possession of a firearm while knowing or having reasonable cause to believe that the employee is a prohibited person.

(c) Actively engage in a straw purchase transaction (i.e., the licensee knows or has reasonable cause to believe that the transferee of record is not the actual buyer.)

(d) Falsify records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license.

(e) Withhold or misrepresent material information in applying for a license after being provided education and opportunity to correct the misrepresented information.

(f) Failure to conduct a NICS check or obtain alternative permit or fail to retrieve a NICS (or equivalent State Point of Contact background check system) response prior to the transfer of a firearm and the purchaser is prohibited.

(g) Transfer of a firearm prior to receiving a final NICS response (or applicable State POC background check) and 3 days have not elapsed since the FFL contacted the system and the purchaser is prohibited.

(h) Failure to create or discontinue use of required GCA records.

(i) Failure to account for acquired firearms which records indicate were in inventory within the previous 5 years after reconciliation for which disposition could not be accounted for in required GCA records (e.g. acquisition and disposition record, Form 4473) and is a repeat violation of increased frequency.

(j) Refused ATF right of entry and inspection during hours of operation at the licensed premise.

(k) Failure to respond to a firearm trace request within 24 hours and is a repeat violation.

(l) Discovery of a firearm with an obliterated serial number in FFL's inventory.

(m) Transfer of a firearm to an underage person.

(n) The FFL has been the subject of a WC in lieu of Revocation within the previous 5 years and the current inspection reveals repeated similar violations(s) with no significant improvement.

(o) Any other GCA violation not specifically addressed in this order where revocation may be appropriate.

Case 3:23-cv-00544    Document 1-9    Filed 05/26/23    Page 7 of 11 PageID #: 441

f. Fines/Suspensions/Revocation/ under 18 U.S.C. 922(t) or 922(z).

(1) ATF may revoke, suspend, and/or impose a civil fine for violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§ 922(t), 922(z) and 924(p). In both situations, the proposed sanction (revocation, suspension, and/or fine) must be specifically spelled out in the Notice to Revoke or Suspend License and/or Impose a Civil Fine. The FFL has the same rights to appeal as in other GCA administrative hearings

(2) ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 922(t)(5). This allows for revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a firearm and failure to conduct a NICS check required by 18 U.S.C. § 922(t)(1), where NICS was available and the person would have been denied had a NICS check been conducted. The transfer of the firearm and the failure to conduct the NICS check must be done knowingly.

(3) ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 924(p) for failure to comply with 18 U.S.C. § 922(z)(1) and provide a secure gun storage or a safety device with each transfer of a handgun. With certain exceptions, this allows for the revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a handgun to a non-licensee unless the transferee is provided with a secure gun storage or safety device.

(4) Notification of Civil Fine imposed must be made to Federal Firearms Licensing Center (FFLC) and Financial Management Division (FMD) via memo.

(5) ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed if the field division decides not to pursue revocation, civil fine, and/or suspension. (See 10.e.(3) for Regional ACC concurrence)

g. Denials.

(1) An application for a Federal firearms license may only be denied if the applicant does not meet one or more of the licensing criteria set forth in 18 U.S.C. § 923(d). Generally, ATF will deny an application for renewal of a Federal firearms license based on willful violations of the GCA and the same criteria and procedures outlined for revocation under section 923(e) in section 6 above.

(2) ATF will deny applications in which an applicant: failed to provide material information required on the application or the applicant is less than 21 years old, a prohibited person, made a material false statement on the application, or is a prior willful violator of the GCA. These situations may include "application denial," "hidden ownerships," or "straw applications," which usually involve situations where past willful violators or prohibited persons are responsible parties but are not listed on the application. ATF may also base a revocation on hidden ownership. In certain situations, a referral to ATF Criminal Enforcement may be appropriate.

(3) ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can be later removed if the field division decides not to pursue denial. (See 10.e.(3) for Regional ACC concurrence)

h. Alternate Actions.

   (1) For inspections that merit consideration of revocation in which the DIO proposes an alternate recommendation, the inspection is required to be submitted to the MCP for DAD (IO) review. (ATF O 3200.1A, Monitored Case Program)

   (2) ATF field counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s) to determine willfulness. Simultaneously, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB.

i. Other Administrative Resolutions.

   (1) Pursuant to 27 CFR 478.72-74, the DIO may afford the FFL/applicant the opportunity to submit facts and arguments for review, consideration and make offers of settlement before or after the issuance of a Notice of Revocation/Denial requiring DAD, Industry Operations (IO) approval. Examples include a request for a temporary closure period or a requested date of revocation after an agreed upon liquidation period. In appropriate situations, wherein the division believes the case may be resolved without conducting a hearing, the DIO may also offer the FFL an opportunity to meet with him/her to discuss potential resolutions of the matter after the issuance of a Notice of Revocation or Denial.

   (2) Following the issuance of the Notice to Revoke/Deny a DIO may consider alternatives to issuing a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of a Federal firearms license with the concurrence of the DAD (IO). The DIO should consult and work closely with field counsel on the negotiation of terms and conditions to which ATF may appropriately agree to settle or resolve.

8. GENERAL GUIDANCE. The division management team may consider the appropriate administrative actions. The DIO will seek advice of field counsel and the ACC (East/Central/West), when seeking Administrative Actions (Revocation/Denial/Suspension/Imposition of Civil Fine) for DAD (IO) approval and the AD, Field Operations (FO) when considering the appropriate administrative action.

   a. This order does not mandate doing any administrative action in a sequential or consecutive order. For example, a WC may be held or revocation sought after the first inspection if violations impact public safety or obstruct firearms traceability. Conversely, a WL may be issued even if the prior inspection resulted in a WC.

   b. The DIO or AS will conduct WCs.

   c. The DIO will ensure the timely initiation of administrative action occurs within 30 days of the IOI report submission date. They should finalize and issue the post-conference letter for cases requiring a WC, no later than 90 days after final DIO review unless there are mitigating circumstances. The AS should issue a WL within 15 days of his or her review.

   d. The area office should submit cases involving potential denials/revocations to the DIO within 30 days of the inspection submission date. The DIO has 120 days, inclusive of Counsel review, upon receipt of the inspection to issue the Notice. Field counsel will have a maximum of 60 days to review and prepare the Notice in final form for submission to the DIO for review and issuance. The DAD (IO) will be notified by the DIO via FISB if these periods are not met.

   e. Inspections may be suspended from MCP with DAD (IO) approval if the field division decides not to pursue administrative actions meeting the MCP criteria. Suspension

requests are submitted via Post Inspection Information.

f. Criminal violations and violations that pose a danger to the public should be grounds for revocation, and the field must immediately notify ATF criminal enforcement. This may include situations where firearms are subject to seizure and forfeiture. This order does not prevent division management from pursuing simultaneous regulatory and criminal actions with the concurrence of the U.S. Attorney's Office. There may be instances where the Government resolves the case through a revocation and a criminal plea. If ATF pursues revocation, it will follow procedures, including those required by ATF O 3200.1A, Monitored Case Program.

9. HEADQUARTERS POLICY REVIEW AND ALTERNATE RECOMMENDATIONS.

   a. ATF must handle inspections and investigations with recommendations for administrative actions that meet the criteria of the MCP (e.g. revocations, denials, imposition of civil fine, suspension and/or alternate to revocation/denial etc.) per ATF O 3200.1A, Monitored Case Program.

   b. Alternate recommendations to revocation (see section 7.h) require concurrence of the DAD (IO) before proceeding. Refer to AS Manual for additional guidance.

10. FIELD RESPONSIBILITIES. Responsibilities for field personnel and management are as follows:

    a. Industry Operations Investigator. The IOI:

       (1) Will conduct the inspection per established ATF guidelines, including use of the approved case management system. If they uncover violations, the IOI will obtain and preserve all available evidence and document the violations to show if the violations were willful, including copies of Forms 4473 and Acquisition and Disposition records since only documented violations will be cited in the Notice. The IOI will then make the appropriate recommendation based on the guidelines contained herein and forward the inspection to the AS.

       (2) Must communicate with and notify the AS of violations, findings, and other circumstances impacting public safety upon discovery.

    b. Area Supervisor. The AS:

       (1) Will review all firearms inspection reports and associated exhibits maintained within the approved case management system to ensure the IOI's recommendation meets established guidelines and evidentiary requirements, they adequately performed all relevant inspection work steps, and they correctly entered all necessary data.

       (2) Must communicate with the DIO and notify them of violations, findings, and other circumstances impacting public safety upon discovery.

       (3) Independently evaluate the IOIs recommendation and insert their recommendation in the approved case management system. If they disagree with the IOI recommendation, the AS will document the reason(s) within the recommendation section of the case management system. The AS must submit cases meriting WC, revocation, denial, fine, or suspension to the DIO within 30 days of the IOI submission date.

    c. Director of Industry Operations. The DIO shall:

       (1) Review all inspections that recommend a WC and or alternate thereof. The DIO

shall complete a recommendation in the approved case management system and return to the AS within 15 calendar days.

    (2) Review all inspections resulting in a recommendation of denial, revocation, suspension, fine, or alternate to revocation and complete a recommendation in the approved case management system. Additionally, the DIO must provide justification through the Industry Operations Monitored Case Briefing Paper and submit to FISB.

    (3) Request legal advice from field counsel in all potential alternate recommendations to revocation. Request field counsel and ACC legal advice for all denials, revocations, suspensions, and fines concerning willfulness determinations and litigation hazards.

    (4) Advise the SAC of any administrative actions that deal with potential revocation, denial, alternate to revocation, suspension, or fine recommendations, and other administrative resolutions.

  d. Counsel.

    (1) At the request of the DIO, field counsel will review all inspection reports and exhibits in the approved case management system and provide legal advice on willfulness determinations and significant litigation hazards in all administrative actions. If counsel believes there is insufficient evidence to proceed with the proposed administrative action or believes there are substantial litigation hazards, they will provide written analysis.

    (2) The DIO and counsel should use discretion in determining which violations to allege and only allege willful violations in the Notice. In certain instances, it may not be in the interest of the Government to cite isolated violations wherein there are adequate willful violations to sustain a revocation.

    (3) The ACC for the applicable field division will review and approve all proposed Notices and administrative resolutions for legal soundness, and compliance with this policy prior to final submission to MCP and implementation of these actions.

  e. Special Agent in Charge. The SAC has ultimate division responsibility to ensure that this national policy is properly enforced. To this end, they may establish additional controls in their division.

11. AVAILABILITY. The forms outlined in this order are available at ATFConnect>Documents/Content>Forms. The manual outlined in this order is available at ATFConnect>Organization>Field Operations>Industry Operations>IOI Manual.

12. RECORDS RETENTION REQUIREMENTS. Documents outlined in this order must be retained in accordance with AF O 1340.5A, Records Management Program and ATF O 1340.7A, ATF Records Control Schedule.

13. QUESTIONS. If you have any questions regarding this order, please contact Field Management Staff, 202-648-8400.

Assistant Director
(Office of Field Operations)

Case 3:23-cv-00544    Document 1-9    Filed 05/26/23    Page 11 of 11 PageID #: 445