IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE TACTICAL EDGE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  3:23-cv-00544 |
| | ) | JUDGE RICHARDSON |
| v. | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| MERRICK B. GARLAND, | ) | |
| Attorney General of the United States; | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE; and THE BUREAU OF | ) | |
| ALCOHOL, TOBACCO, FIREARMS | ) | |
| AND EXPLOSIVES | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF**
**OPPOSING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants, Merrick Garland, Attorney General of the United States, the United States

Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), file

this Supplemental Brief Opposing Plaintiff's Motion for Preliminary Injunction.  ECF No. 8-9.

On August 2, 2023, at 8:30 a.m., the Court held a hearing on Plaintiff's Motion for Preliminary

Injunction.  At the conclusion of that hearing, the Court invited the parties to provide supplemental

briefing before a final decision is rendered.  Accordingly, Defendants' state as follows:

**A.  To Prevail on the Pending Motion, Plaintiff Is Required to Satisfy All Elements
of the Preliminary Injunction Test.**

In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court outlined the four-

part test for obtaining preliminary injunction relief:  "A plaintiff seeking a preliminary injunction

*must* establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

injunction is in the public interest." 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (emphasis added). On its face, the Court's language seems clear—a plaintiff *must* establish the factors. *See Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295–96 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (questioning how *Winter* affects the D.C. Circuit's sliding-scale test and noting that "[i]t appears that a party moving for a preliminary injunction must meet four independent requirements").

As recently as 2022, the Sixth Circuit adopted the same reasoning in *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022). "Those seeking a preliminary injunction must meet several requirements. They must show a likelihood of success on the merits. They must show irreparable harm in the absence of the injunction. They must show that the balance of equities favors them. And they must show that the public interest favors an injunction." *Id*. (citing *Winter*, 555 U.S. 7, 20 (2008)).

Regarding these four requirements, however, the Sixth Circuit has previously called them factors that were subject to a balancing test. *See D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (citing *Benisek v. Lamone*, --- U.S. ---, 138 S. Ct. 1942, 1943-44 (2018)) ("Four *factors* determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest.) (emphasis added).

Whether these are treated as requirements or factors will not control the outcome in this particular case. Here, likelihood of success on the merits and public interest are the only issues. *See* ECF No. 35 (joint stipulation as to irreparable harm, and noting that the third and fourth elements merge when the government is a party). Plaintiff cannot prevail on either. Simply put,

if these are requirements Plaintiff's motion fails, and if these are factors subject to balancing, Plaintiff's motion fails.

**B. Plaintiff Cannot Show a Likelihood of Prevailing on the Merits or that Relief Is in the Public Interest.**

**1. Plaintiff Is Unlikely to Prevail on the Merits**

The record is largely undisputed that Plaintiff engaged in various regulatory violations of the Gun Control Act (GCA) and those violations led to ATF revoking its federal firearms licenses. While Plaintiff may attempt to minimize those violations and explain them away as easily correctable mistakes or human error, Plaintiff's efforts should be rejected by this Court. These same arguments have repeatedly proven unsuccessful in other cases. *See Armalite v. Lambert*, 544 F.3d 644, 646 (6th Cir. 2008) (defendant's summary judgment affirmed where the plaintiff "attributed many of the mistakes to human error"); *Shaffer v. Holder*, No. 1:09-cv-0030, 2010 WL 1408829, at *7 (M.D. Tenn. Mar. 30, 2010) (granting defendant's motion for summary judgment where the plaintiff noted "human errors or misunderstandings by some of the employees"). There is no evidence before this Court to suggest the ultimate outcome of this litigation should be any different. Thus, Plaintiff's likelihood of success on the merits is dubious at best based on the precedent. *See id*.

"The Sixth Circuit has joined five other circuits in holding that a willful violation of the GCA requires a deliberate, knowing or reckless violation of its requirements…" *Shaffer*, 2010 WL 1408829, at *10 (citing *Armalite*, 544 F.3d at 647). As the Sixth Circuit has also noted, when a licensee's omissions regarding required records amount to reckless violations of known legal obligations, this is also the same as a "plain indifference" to these known legal obligations. *Armalite*, 544 F.3d at 649. "Willfulness" under the GCA does not require a heightened showing of "bad purpose" or evil motive; rather, evidence of an individual's disregard of a known legal

obligation is entirely sufficient. *Procaccio v. Lambert*, 233 Fed. Appx. 554, 558 (6th Cir. 2007). A single willful violation of the GCA is enough to deny a federal firearms license application or revoke a federal firearms dealer's license. *Appalachian Resources Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004).

Plaintiff's argument that it did not act willfully is not convincing. Defendant need not show any bad purpose on Plaintiff's part. Repeated violations, as demonstrated by those documented in 2018, 2020, and 2022, undoubtedly show a pattern of ongoing violations. ATF engaged in two warning conferences that included review of the applicable laws and regulations, the opportunity to discuss these requirements, and suggestions regarding corrective measures. But to no avail. Plaintiff clearly had knowledge of its legal obligations and disregarded them through repeat violations. And even if Plaintiff's violations lessened after the 2020 compliance inspection, there were subsequent violations nonetheless. Arguments about post-inspection efforts and improvements are also not probative of willfulness. "What matters is the action at the time the violations occurred." *Procaccio v. Lambert*, 233 Fed. Appx. at 559. *See Cucchiara v. Sec'y of Treasury,* 652 F.2d 28, 30 (9th Cir. 1981) ("The fact that [petitioner] has spent a great deal of money trying to correct his faulty recordkeeping system, after the violations, ... is immaterial to the question of willfulness at the time the violations occurred."); *Sturdy v. Bentsen*., No. 97-1786, 1997 WL 611765, at*2 (8th Cir. Oct 6, 1997) ("[A]fter-the-fact efforts to correct the specific violations pointed out to [petitioner] are irrelevant to the issue of willfulness at the time the errors occurred.").

Although not required, repeated violations can constitute sufficient evidence to establish the requisite state of mind under the willfulness standard. *A-TAC Gear Guns Uniforms LLC v. U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives*, 530 F.Supp.3d

1033, 1040 (D. Colo. 2021) (holding that repeated violations can establish sufficient circumstantial evidence of willfulness). After a dealer is informed of the GCA requirements and warned of violations, subsequent repeat violations can suffice to at least show plain indifference to the statutory requirements. *See Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042-43 (10th Cir. 2012). *See RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006) ("Yet *at some point,* when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point,* the failures show the licensee's plain indifference and therefore become willful.") (emphasis in original); *see also Borgelt v. Bureau of Alcohol, Tobacco and Firearms*, 2009 WL 3149436, at *4 (W.D. Wash. Sept. 24, 2009) ("[T]he government often proves willfulness by showing that a licensee repeatedly violated regulations despite knowledge of them and repeated warnings.").

In sum, ATF was authorized to revoke Plaintiff's license based upon the multiple willful violations committed by Plaintiff. *See* 18 U.S.C. §§ 923(e).

### 2. <u>Public Interest Weighs Against Granting Plaintiff Relief</u>

Even if the Court viewed Plaintiff's likelihood of success argument as compelling, the public interest is, nevertheless, paramount. Courts of equity should pay "particular regard for the public consequences" in granting a preliminary injunction. *Winter*, 555 U.S. at 24. There is no scenario in which Plaintiff's own interests to continue operating its business outweigh the public's interest in safety. *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (noting that for purposes of the GCA's overall public safety objectives "[t]he principal agent of federal enforcement is the dealer."); *Fin & Feather Sport Shop, Inc. v. U. S. Treasury Dept.*, 481 F.Supp. 800, 806 (Neb. 1979) (finding "a firearms dealer, by failing to keep the required records, seriously undermines the

5

effectiveness and purpose of the Act and ultimately endangers society." *See also Willingham Sports, Inc. v. ATF,* 348 F.Supp.2d 1299, 1309 n.14 (S.D. Ala. 2004) *aff'd per curiam,* 415 F.3d 1274 (11th Cir. 2005) ("gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms."); *Dick's Sport Center, Inc. v. Alexander*, No. 2:04-CV-74482, 2006 WL 799178, at *5 (E.D. Mich. Mar. 29, 2006) (licensee's "failure to comply with exacting book keeping regulations may hinder the ATF's ability to perform its mandated function.").

Along with the multiple repeat violations, it is important to note that on one occasion Plaintiff transferred a firearm without complying with the National Instant Criminal Background Check System (NICS) background check requirements. This is a serious duty of a Federal firearms licensee which is fundamental to public safety to assure dangerous and prohibited individuals do not acquire firearms. *See Abramski v. U.S.,* 573 U.S. 169, 180 (2014) (Federal firearms law establishes an elaborate system of in-person identification and background checks to ensure that guns are kept "out of criminals and others who should not have them…."). It is accordingly imperative that licensees run background checks prior to the transfer of firearms to alleviate rendering as meaningless the Congressional goal of "keeping 'firearms out of the hands of those not legally entitled to possess them'." *Id.* at 181, *quoting Huddleston,* 415 U.S. at 824, *quoting* S.Rep. No. 1501, 90th Cong., 2d Sess. 22 (1968)).

A critical responsibility of a licensee is to help ensure that the GCA requirements are met. *See A-TAC Gear Uniforms LLC,* 530 F.Supp.3d at 1039 ("ATF cannot monitor every single firearms dealer at every moment. The Act's effectiveness thus rests largely on dealers' taking its regulations seriously."). Here, Plaintiff's failures to comply with the regulatory requirements

6

undermine the GCA's public safety directive.  Keeping firearms out of the hands of criminals and other prohibited persons is a concept that can never be trumped.  The public relies on Defendants (and this Court) to take all conceivable measures to ensure a safe community.  Granting Plaintiff's a preliminary injunction would contradict that mission even if no crime is specifically connected to Plaintiff's firearms.  Surely the standard is not that someone must be harmed before appropriate action is taken.

## CONCLUSION

Notwithstanding whether elements of the preliminary injunction test are considered requirements or factors, Plaintiff cannot satisfy its burden either way.  Because Plaintiff willfully violated the GCA on a repeated basis, it cannot show likelihood of success on the merits.  Moreover, the public's interest in safety is superior to Plaintiff's desire to continue its operations.

For these reasons, Plaintiff's Motion for Preliminary Injunction should be denied.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

By:    s/ Anica C. Jones
        ANICA C. JONES, B.P.R. #025325
        Assistant United States Attorney
        719 Church Street, Suite 3300
        Nashville, TN  37203
        Telephone: (615) 736-5151
        Email:  anica.jones@usdoj.gov

OF COUNSEL:
Jason Libby, Esq.
Bureau of Alcohol, Tobacco, Firearms & Explosives

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, notice was sent by United States mail, postage prepaid, to the following:

John I. Harris III
Schulman, LeRoy & Bennett, P.C.
3310 West End Avenue, Suite 460
Nashville, Tennessee 37203
Email:  jharris@slblawfirm.com
*Counsel for Tactical Edge, LLC*

s/ Anica C. Jones
ANICA C. JONES
Assistant United States Attorney